IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, | § § § | Case No. 1:18-CV-637 |
| | § | COMPLAINT |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| GURBIR S. GREWAL, individually, and in his official capacity as Attorney General of New Jersey; MICHAEL FEUER, individually, and in his official capacity as Los Angeles City Attorney, | § § § § | |
| | § | |
| Defendants. | § § | |

COMPLAINT

Plaintiffs Defense Distributed and Second Amendment Foundation, Inc., by and through undersigned counsel, complain of Defendants as follows:

INTRODUCTION

Pursuant to a license and other authorization from the State Department, Defense Distributed has published and will continue to publish Computer-Aided Design (CAD) and Computer-Numeric Control (CNC) files on its Internet servers in furtherance of its mission to promote firearms knowledge and possession. The Second Amendment Foundation's members and supporters are among Defense Distributed's audience. New Jersey's Attorney General (Gurbir S. Grewal) and Los Angeles's City Attorney (Michael Feuer), have waged an ideologically-fueled program of intimidation and harassment against Defense Distributed. Grewal and Feuer have

threatened and intend to drag Defense Distributed before all manner of far-flung criminal and civil tribunals in an effort to silence the organization.

Alas these state and municipal officers from across the country cannot veto Defense Distributed's constitutionally-protected and federally-licensed speech. The Defendants' threatened legal actions violate the First Amendment speech rights of Defense Distributed and its audience, including SAF's members; run afoul of the Dormant Commerce Clause; infringe upon the Second Amendment rights of those who would make use of the knowledge disseminated by Defense Distributed; constitute a tortious interference with Defense Distributed's business; and are in any event, federally pre-empted by Congress's export control laws as well as Defense Distributed's export license, by which the State Department has explicitly authorized the speech that the Defendants are seeking to silence. Plaintiffs are entitled to declaratory and injunctive relief, damages, and attorney fees.

*The Parties*

1.      Plaintiff Defense Distributed is a Texas corporation organized under the laws of the State of Texas, whose headquarters are located in Austin, Texas, and whose principal place of business is located in Austin, Texas. Defense Distributed was organized and is operated for the purpose of defending the civil liberty of popular access to arms guaranteed by the United States Constitution through facilitating access to, and the collaborative production of, information and knowledge related to the production of arms; and to publish and distribute, at no cost to the public, such information and knowledge on the Internet in promotion of the public interest.

2.      Consistent with the President's role as Commander and Chief, and the delegation of Congress's powers under the Commerce and Necessary and Proper Clauses, Congress has

conferred the President with the exclusive authority to issue licenses and other forms of authorizations for the export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive Order 13637 of March 8, 2013.

3.      Pursuant to its exclusive authority under the AECA,  the State Department issued a license expressly authorizing the Plaintiffs to publish certain firearms files for "unlimited distribution" pursuant to ITAR § 125.4(b)(13).  *See* Exhibit A.

4.      Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. *See* Exhibit B.

5.      Plaintiff Second Amendment Foundation, Inc., is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including members in Texas, New Jersey, and Los Angeles. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of its members. Cody Wilson, Defense Distributed's principal, is a SAF member. SAF members seek to download the files shared by Defense Distributed, as well as use Defense Distributed's facilities to share their own files with others

6.      Defendant Gurbir S. Grewal is the Attorney General of New Jersey.  He is sued in his official and individual capacities.

7.     Defendant Michael Feuer is the City Attorney for Los Angeles, California. He is sued in his official and individual capacities.

JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 2201, and 2202.

9.     Plaintiff Defense Distributed resides within the jurisdiction of the U.S. District Court.

10.    Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action, are situated within the Western District of Texas.

11.    This action involves actions taken by Defendants in New Jersey and Los Angeles with respect to the Plaintiffs' business, activities, and property in Austin. Therefore, venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(3), because there is no district in which this action may otherwise be brought, and both Defendants are subject to this Court's personal jurisdiction.

*Defendants' Threats of Legal Actions Against Defense Distributed*

12.    On July 26, 2018, Defendant Grewal sent a letter to Defense Distributed's headquarters in Austin, Texas.

13.    The letter "directed [Plaintiff] to cease and desist from publishing printable-gun computer files for use by New Jersey residents." *See* Exhibit C.

14.    Grewal asserted that publishing these files would violate New Jersey's "public nuisance laws." *Id.*

15.    Grewal's letter closed with a clear and present threat: "Should you fail to comply

with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018." *Id.*

16.     In a press release, Grewal explicitly reiterated that threat: "Attorney General Grewal threatened Defense Distributed with 'legal action' if it fails to comply with his demand." Grewal also expressed his belief that "[p]osting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner." *See* Exhibit D.

17.     On July 27, 2018, Defendant Feuer caused to be filed in this Court, in the case of *Defense Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, a letter addressed to the Hon. Robert Pitman, who was then presiding over that case. *See* Exhibit E.

18.     The letter, at Dkt. 109-1, expressed Feuer's belief that Defense Distributed's publication of files "would pose a direct and immediate threat to public safety in the City of Los Angeles, and cause numerous violations of California and City laws designed to protect the public from gun violence." *Id.*

19.     Feuer noted that "[as] the City's chief lawyer and prosecutor, it is [his] job to enforce the gun laws of the City and California." *Id.*

20.     Feuer added that "Defense Distributed's blueprints" may violate California civil and criminal laws. *Id.*

21.     Feuer threatened Defense Distributed with legal action: "his office is authorized to file lawsuits to 'enjoin' the manufacture, importation, or possession of an undetectable firearm." *Id.*

22.     Feuer expressed his intent to seek to intervene in that case, for the express purpose of silencing Defense Distributed. *Id.*

23.     To convey this message, at least two of Feuer's attorneys appeared telephonically

during an emergency hearing before Judge Pitman. (At that juncture, the City of Los Angeles was not yet a party to the case, nor had it even filed a motion to intervene.)

24.    On July 28, 2019, Feuer released the following tweet from the @CityAttorneyLA Account: "City Atty Mike Feuer & @ManhattanDA Cyrus Vance, Jr. to @StateDept:  NO #DIY #guns! #gunviolence #GunControl #gunsense ▶️▶️https://goo.gl/L377y3 @ProsecutorsAGV." *See* Exhibit F.

25.    That tweet linked to a press release from the Prosecutors Against Gun Violence, which is chaired by the Los Angeles City Attorney and the Manhattan District Attorney.  It stated that Defense Distributed's "blueprints should not be published under any circumstances." *See* Exhibit G.

26.    On information and belief, Plaintiffs anticipate further legal actions from the Manhattan District Attorney.

*Plaintiff Responds to Defendant Grewal*

27.    On July 27, 2018, Plaintiff responded to Grewal. *See* Exhibit H. Plaintiff explained that the "Letter takes only vague and general positions regarding nuisance and negligence law." Plaintiff also explained that "all actions contemplated by Defense Distributed are fully protected by the First Amendment, and [Grewal's] attempts to prevent such actions constitute an unconstitutional prior restraint and otherwise violate the United States Constitution and the New Jersey Constitution." Plaintiff added that "the Letter constitutes an unlawful threat, in violation of Defense Distributed's Constitutional rights," and "demand[ed] that [the Defendant] withdraw the Letter."

28.    Plaintiff conveyed to the Grewal that "at this time Defense Distribute will attempt to restrict files made available on the internet to prevent download within New Jersey." Plaintiff

stated that "this [modification] should not be construed as an acknowledgment of the validity of your position, and Defense Distributed reserves all of its rights in this regard."

*Great, Irreparable, and Continuing Harm*

29.    But for Defendant Grewal's letter, Defense Distributed would freely distribute the files in New Jersey. However, Defense Distributed has taken steps to prevent the distribution of files in New Jersey because Defense Distributed reasonably fears that Defendant Grewal would pursue civil enforcement proceedings against Plaintiff. *See* Exhibit H. Users with New Jersey-based IP Addresses are currently blocked from accessing the files. *See* Exhibit I. [1]

30.    But for Defendant Feuer's letter, Defense Distributed would freely distribute the files in Los Angeles. However, Defense Distributed has already taken steps to prevent the distribution of files in Los Angeles because Defense Distributed reasonably fears that Defendant Feuer would pursue civil and t enforcement proceedings against Plaintiff. Users with Los Angeles-based IP Addresses are currently blocked from accessing the files. *See* Exhibit I.

31.    Notwithstanding its efforts to placate the Defendants, a legitimate controversy exists between Defense Distributed, and Defendants Grewal and Feuer, as to the legality of Defense Distributed's conduct. Defense Distributed can reasonably expect a continuing campaign of harassment and intimidation aimed at silencing it and tortiously interfering with its business.

32.    Defense Distributed is entitled to appropriate declaratory and injunctive relief against all further acts of harassment and intimidation by Grewal, Feuer, and all others who may act in concert with them.

COUNT ONE

---

[1] Defense Distributed also blocked access to the files from IP addresses based in the following foreign countries: Islamic Republic of Iran, Belarus, Myanmar (Burma), Burundi, Cote d'Ivoire, Cuba, The Democratic Republic of the Congo, Iraq, Lebanon, Liberia, Libyan Arab Jamahiriya, Democratic People's Republic of Korea, Somalia, Sudan, Syrian Arab Republic, Yemen, and Zimbabwe.

42 U.S.C. § 1983

RIGHT OF FREE SPEECH—U.S. CONST. AMEND. I

33.    Defendants' threats of legal actions are invalid on their face, and as applied to Plaintiffs' public speech, are an unconstitutional prior restraint on protected expression. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

34.    Defendants' interruption and prevention of Plaintiffs from publishing the subject files, under color of law, violates Plaintiffs' rights under the First Amendment to the United States Constitution, by virtue of the Fourteenth Amendment, causing Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983.

35.    Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants.


COUNT TWO

42 U.S.C. § 1983

"DORMANT" COMMERCE CLAUSE, U.S. CONST. ART. I, § 8

36.    The threatened legal actions would not only require Plaintiffs to cease sharing files on its Texas-based servers within New Jersey and Los Angeles, respectively, but would also prohibit Plaintiffs from sharing the files within Texas, and other states.

37.    The Supreme Court has recognized that the "Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989).

38.    Through the threatened legal actions, New Jersey and Los Angeles "project[s] its

legislation" into other states, in violation of the "Dormant" Commerce Clause. *See* Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 583 (1986). *See also Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103–04 (2nd Cir. 2003); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 958–59 (N.D. Cal. 2006).

39.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files on its Texas-based servers, under color of law, violates the Plaintiffs rights to freely participate in intrastate and interstate commerce under the "Dormant" Commerce Clause, U.S. Const. art. I, § 8.

40.     Defendants' actions have caused Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983. *See Dennis v. Higgins*, 498 U.S. 439 (1991).

41.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants.

COUNT THREE

42 U.S.C. § 1983

RIGHT TO KEEP AND BEAR ARMS—U.S. CONST. AMEND. II

42.     The fundamental Second Amendment right to keep and bear arms inherently embodies two complimentary guarantees: the right to acquire arms, and the right to make arms.

43.     If one cannot acquire or create arms, one cannot exercise Second Amendment rights. Infringing upon the creation and acquisition of arms of the kind in common use for traditional lawful purposes violates the Second Amendment, as applied to the states by virtue of the Fourteenth Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008); *McDonald*

*v. City of Chicago*, 561 U.S. 742 (2010).

44.     By forbidding Defense Distributed from distributing files that concern the lawful manufacture of firearms, Defendants are violating the Second Amendment rights of Plaintiffs, their customers, members, and visitors.

45.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files, under color of law, violates Plaintiffs' rights under the Second Amendment to the United States Constitution, by virtue of the Fourteenth Amendment, causing Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983.

46.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants

COUNT FOUR

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

PRE-EMPTION BASED ON EXPORT LICENSE ISSUED BY THE STATE DEPARTMENT

47.     Consistent with the President's role as Commander and Chief, and the delegation of Congress's powers under the Commerce and Necessary and Proper Clauses, Congress has conferred the President with the exclusive authority to issue licenses and other forms of authorizations for the export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive Order 13637 of March 8, 2013.

48.     Pursuant to its exclusive authority under the AECA,  the State Department issued a license expressly authorizing the Plaintiffs to publish certain firearms files for "unlimited distribution" pursuant to ITAR § 125.4(b)(13).  *See* Exhibit A.

49.     Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. *See* Exhibit B.

50.     The Defendants' threatened legal actions conflict with the State Department's exclusive authority and seek to interfere with this federal licensing framework. *See* Exhibits C, D, and E.

51.     In a press release, Defendant Grewal expressly stated that he seeks to override the federal government's licensing framework: "The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up." *See* Exhibit D.

52.     New Jersey and Los Angeles can no more prohibit the operation of a federally licensed export framework than could Maryland prohibit the operation of a federally chartered bank. *See McCulloch v. Maryland*, 17 U.S. 316 (1819).

53.     The threatened legal actions are preempted based on Defense Distributed's Export License that was issued by the State Department.

54.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

55.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted.

COUNT FIVE

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

EXPRESS PREEMPTION

56.     Through federal export control law, Congress has expressly preempted state law.

57.     Therefore, the threatened legal actions are expressly preempted by federal export control law. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990).

58.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

59.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted.


COUNT SIX

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

FIELD PREEMPTION

60.     Congress has occupied the entire field of export control law.

61.     Therefore, the threatened legal actions are preempted by field preemption. *See English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

62.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

63.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted by federal export control law.


COUNT SEVEN

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

CONFLICT PREEMPTION

64.    The threatened legal actions would stand as an obstacle and would frustrate the accomplishment of objectives authorized by federal export control law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 375 (2000); *Nat'l Foreign Trade Council, Inc. v. Giannoulias*, 523 F. Supp. 2d 731, 738-742 (N.D. Ill. 2007).

65.    Therefore, the threatened legal actions are preempted by conflict preemption.

66.    "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

67.    Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted by federal export control law.


COUNT EIGHT

TORTIOUS INTERFERENCE WITH CONTRACTS

68.    Defensed Distributed receives advertising revenue from its file-sharing system through contracts with third-parties.  In the past, these revenues have exceeded $75,000 per annum.

69.    Defendants willfully and intentionally sought to interfere with those contracts.

70.    Defense Distributed has taken steps to prevent the distribution of files in New Jersey and Los Angeles because Defense Distributed reasonably fears that Defendants Grewal and Feuer would pursue civil and criminal enforcement proceedings against Plaintiff for doing so.

71.    The willful and intentional actions of Defendants Grewal and Feuer have proximately and directly caused damages to Defense Distributed's contracts.

72.     The willful and intentional actions of Defendants Grewal and Feuer have resulted in actual damages.

73.     Defendants' conduct, as described in this complaint, constitutes tortious interference with contracts. *See ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997).

74.     Plaintiffs are therefore entitled to injunctive relief against Defendants' tortious interference with contracts.

COUNT NINE

TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS

75.     There was a reasonable probability that Defense Distributed was to enter into contract(s) to do business with other third parties in New Jersey and Los Angeles.

76.     The threatened legal actions constitute a wrongful, deliberate, willful, intentional or otherwise tortious interference with prospective contracts in New Jersey and Los Angeles.

77.     Plaintiffs are therefore entitled to injunctive relief against Defendants' tortious interference with prospective contracts.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that violate the First Amendment to the United States Constitution;

2.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions

that violate the Dormant Commerce Clause;

3.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that violate the Second Amendment to the United States Constitution;

4.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted based on Defense Distributed's Export License that was issued by the State Department;

5.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are expressly preempted by federal export control law;

6.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted by field preemption by federal export control law;

7.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted by conflict preemption by federal export control law;

8.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that tortiously interfere with contracts, and damages to be determined for Defendants' tortious interference with contracts;

9.     A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that tortiously interfere with prospective contracts, and damages to be determined for Defendants' tortious interference with prospective contracts;

10.    Actual damages in an amount according to proof at trial;

11.    Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

12.    Any other further relief as the Court deems just and appropriate.


The Plaintiffs hereby demand a jury trial.

Dated: July 29,  2018                    Respectfully submitted,

_Alan Gura_
Virginia Bar No. 68842*
Gura PLLC
916 Prince Street, Suite 107
Alexandria, Virginia 22314
703.835.9085 / Fax 703.997.7665
alan@gurapllc.com
*Admission pro hac vice pending

_/s/ Josh Blackman_
Virginia Bar No. 78292
1303 San Jacinto Street
Houston, Texas 77002
202.294.9003/Fax: 713.646.1766
Josh@JoshBlackman.com
Counsel of Record