# EXHIBIT A

# [Third Reprint]
# SENATE, No. 2465

# STATE OF NEW JERSEY
## 218th LEGISLATURE

INTRODUCED APRIL 12, 2018

**Sponsored by:**
**Senator JOSEPH P. CRYAN**
District 20 (Union)
**Senator NICHOLAS P. SCUTARI**
District 22 (Middlesex, Somerset and Union)
**Assemblyman TIM EUSTACE**
District 38 (Bergen and Passaic)
**Assemblyman PAUL D. MORIARTY**
District 4 (Camden and Gloucester)
**Assemblyman GARY S. SCHAER**
District 36 (Bergen and Passaic)
**Assemblywoman ANNETTE QUIJANO**
District 20 (Union)

**Co-Sponsored by:**
**Senators Turner, Ruiz, Assemblyman Holley, Assemblywoman Swain, Assemblymen Tully, Greenwald, Assemblywomen Murphy, Reynolds-Jackson, Jasey, Assemblyman Giblin, Assemblywoman Pinkin, Assemblyman Johnson, Assemblywoman Downey and Assemblyman Houghtaling**

**SYNOPSIS**
   Establishes crimes of purchasing firearm parts to unlawfully manufacture firearms without a serial number, manufacturing or possessing covert or undetectable firearms, and manufacturing or facilitating the manufacture of firearms using a three-dimensional printer.

**CURRENT VERSION OF TEXT**
   As amended by the General Assembly on September 27, 2018.

**(Sponsorship Updated As Of: 10/30/2018)**

1  AN ACT concerning [1][untraceable][1] firearms and amending
2  [2][N.J.S.2C:39-9] various parts of the statutory law[2].
3
4  BE IT ENACTED *by the Senate and General Assembly of the State*
5  *of New Jersey:*
6
7    [2]1.  N.J.S.2C:39-1 is amended to read as follows:
8    2C:39-1.  Definitions.  The following definitions apply to this
9  chapter and to chapter 58:
10    a.  "Antique firearm" means any rifle or shotgun and "antique
11  cannon" means a destructive device defined in paragraph (3) of
12  subsection c. of this section, if the rifle, shotgun or destructive device,
13  as the case may be, is incapable of being fired or discharged, or which
14  does not fire fixed ammunition, regardless of date of manufacture, or
15  was manufactured before 1898 for which cartridge ammunition is not
16  commercially available, and is possessed as a curiosity or ornament or
17  for its historical significance or value.
18    b.  "Deface" means to remove, deface, cover, alter or destroy the
19  name of the maker, model designation, manufacturer's serial number
20  or any other distinguishing identification mark or number on any
21  firearm.
22    c.  "Destructive device" means any device, instrument or object
23  designed to explode or produce uncontrolled combustion, including (1)
24  any explosive or incendiary bomb, mine or grenade; (2) any rocket
25  having a propellant charge of more than four ounces or any missile
26  having an explosive or incendiary charge of more than one-quarter of
27  an ounce; (3) any weapon capable of firing a projectile of a caliber
28  greater than 60 caliber, except a shotgun or shotgun ammunition
29  generally recognized as suitable for sporting purposes; (4) any
30  Molotov cocktail or other device consisting of a breakable container
31  containing flammable liquid and having a wick or similar device
32  capable of being ignited.  The term does not include any device
33  manufactured for the purpose of illumination, distress signaling, line-
34  throwing, safety or similar purposes.
35    d.  "Dispose of" means to give, give away, lease, loan, keep for
36  sale, offer, offer for sale, sell, transfer, or otherwise transfer
37  possession.
38    e.  "Explosive" means any chemical compound or mixture that is
39  commonly used or is possessed for the purpose of producing an
40  explosion and which contains any oxidizing and combustible materials
41  or other ingredients in such proportions, quantities or packing that an
42  ignition by fire, by friction, by concussion or by detonation of any part
43  of the compound or mixture may cause such a sudden generation of

EXPLANATION – Matter enclosed in bold-faced brackets [thus] in the above bill is not enacted and is intended to be omitted in the law.

Matter underlined thus is new matter.
Matter enclosed in superscript numerals has been adopted as follows:
[1]Senate SLP committee amendments adopted April 16, 2018.
[2]Assembly AJU committee amendments adopted September 17, 2018.
[3]Assembly floor amendments adopted September 27, 2018.

1  highly heated gases that the resultant gaseous pressures are capable of
2  producing destructive effects on contiguous objects. The term shall not
3  include small arms ammunition, or explosives in the form prescribed
4  by the official United States Pharmacopoeia.
5     f. "Firearm" means any handgun, rifle, shotgun, machine gun,
6  automatic or semi-automatic rifle, or any gun, device or instrument in
7  the nature of a weapon from which may be fired or ejected any solid
8  projectable ball, slug, pellet, missile or bullet, or any gas, vapor or
9  other noxious thing, by means of a cartridge or shell or by the action of
10 an explosive or the igniting of flammable or explosive substances. It
11 shall also include, without limitation, any firearm which is in the
12 nature of an air gun, spring gun or pistol or other weapon of a similar
13 nature in which the propelling force is a spring, elastic band, carbon
14 dioxide, compressed or other gas or vapor, air or compressed air, or is
15 ignited by compressed air, and ejecting a bullet or missile smaller than
16 three-eighths of an inch in diameter, with sufficient force to injure a
17 person.
18    g. "Firearm silencer" means any instrument, attachment, weapon
19 or appliance for causing the firing of any gun, revolver, pistol or other
20 firearm to be silent, or intended to lessen or muffle the noise of the
21 firing of any gun, revolver, pistol or other firearm.
22    h. "Gravity knife" means any knife which has a blade which is
23 released from the handle or sheath thereof by the force of gravity or
24 the application of centrifugal force.
25    i. "Machine gun" means any firearm, mechanism or instrument
26 not requiring that the trigger be pressed for each shot and having a
27 reservoir, belt or other means of storing and carrying ammunition
28 which can be loaded into the firearm, mechanism or instrument and
29 fired therefrom.  A machine gun also shall include, without limitation,
30 any firearm with a trigger crank attached.
31    j. "Manufacturer" means any person who receives or obtains raw
32 materials or parts and processes them into firearms or finished parts of
33 firearms, except a person who exclusively processes grips, stocks and
34 other nonmetal parts of firearms.  The term does not include a person
35 who repairs existing firearms or receives new and used raw materials
36 or parts solely for the repair of existing firearms.
37    k. "Handgun" means any pistol, revolver or other firearm
38 originally designed or manufactured to be fired by the use of a single
39 hand.
40    l. "Retail dealer" means any person including a gunsmith, except
41 a manufacturer or a wholesale dealer, who sells, transfers or assigns
42 for a fee or profit any firearm or parts of firearms or ammunition
43 which he has purchased or obtained with the intention, or for the
44 purpose, of reselling or reassigning to persons who are reasonably
45 understood to be the ultimate consumers, and includes any person who
46 is engaged in the business of repairing firearms or who sells any
47 firearm to satisfy a debt secured by the pledge of a firearm.
48    m. "Rifle" means any firearm designed to be fired from the
49 shoulder and using the energy of the explosive in a fixed metallic

1  cartridge to fire a single projectile through a rifled bore for each single
2  pull of the trigger.
3     n. "Shotgun" means any firearm designed to be fired from the
4  shoulder and using the energy of the explosive in a fixed shotgun shell
5  to fire through a smooth bore either a number of ball shots or a single
6  projectile for each pull of the trigger, or any firearm designed to be
7  fired from the shoulder which does not fire fixed ammunition.
8     o. "Sawed-off shotgun" means any shotgun having a barrel or
9  barrels of less than 18 inches in length measured from the breech to
10 the muzzle, or a rifle having a barrel or barrels of less than 16 inches in
11 length measured from the breech to the muzzle, or any firearm made
12 from a rifle or a shotgun, whether by alteration, or otherwise, if such
13 firearm as modified has an overall length of less than 26 inches.
14    p. "Switchblade knife" means any knife or similar device which
15 has a blade which opens automatically by hand pressure applied to a
16 button, spring or other device in the handle of the knife.
17    q. "Superintendent" means the Superintendent of the State Police.
18    r. "Weapon" means anything readily capable of lethal use or of
19 inflicting serious bodily injury.  The term includes, but is not limited
20 to, all (1) firearms, even though not loaded or lacking a clip or other
21 component to render them immediately operable; (2) components
22 which can be readily assembled into a weapon; (3) gravity knives,
23 switchblade knives, daggers, dirks, stilettos, or other dangerous knives,
24 billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots,
25 cesti or similar leather bands studded with metal filings or razor blades
26 imbedded in wood; and (4) stun guns; and any weapon or other device
27 which projects, releases, or emits tear gas or any other substance
28 intended to produce temporary physical discomfort or permanent
29 injury through being vaporized or otherwise dispensed in the air.
30    s. "Wholesale dealer" means any person, except a manufacturer,
31 who sells, transfers, or assigns firearms, or parts of firearms, to
32 persons who are reasonably understood not to be the ultimate
33 consumers, and includes persons who receive finished parts of
34 firearms and assemble them into completed or partially completed
35 firearms, in furtherance of such purpose, except that it shall not
36 include those persons dealing exclusively in grips, stocks and other
37 nonmetal parts of firearms.
38    t. "Stun gun" means any weapon or other device which emits an
39 electrical charge or current intended to temporarily or permanently
40 disable a person.
41    u. "Ballistic knife" means any weapon or other device capable of
42 lethal use and which can propel a knife blade.
43    v. "Imitation firearm" means an object or device reasonably
44 capable of being mistaken for a firearm.
45    w. "Assault firearm" means:
46    (1) The following firearms:
47    Algimec AGM1 type
48    Any shotgun with a revolving cylinder such as the "Street
49 Sweeper" or "Striker 12"

1  Armalite AR-180 type
2  Australian Automatic Arms SAR
3  Avtomat Kalashnikov type semi-automatic firearms
4  Beretta AR-70 and BM59 semi-automatic firearms
5  Bushmaster Assault Rifle
6  Calico M-900 Assault carbine and M-900
7  CETME G3
8  Chartered Industries of Singapore SR-88 type
9  Colt AR-15 and CAR-15 series
10  Daewoo K-1, K-2, Max 1 and Max 2, AR 100 types
11  Demro TAC-1 carbine type
12  Encom MP-9 and MP-45 carbine types
13  FAMAS MAS223 types
14  FN-FAL, FN-LAR, or FN-FNC type semi-automatic firearms
15  Franchi SPAS 12 and LAW 12 shotguns
16  G3SA type
17  Galil type Heckler and Koch HK91, HK93, HK94, MP5, PSG-1
18  Intratec TEC 9 and 22 semi-automatic firearms
19  M1 carbine type
20  M14S type
21  MAC 10, MAC 11, MAC 11-9mm carbine type firearms
22  PJK M-68 carbine type
23  Plainfield Machine Company Carbine
24  Ruger K-Mini-14/5F and Mini-14/5RF
25  SIG AMT, SIG 550SP, SIG 551SP, SIG PE-57 types
26  SKS with detachable magazine type
27  Spectre Auto carbine type
28  Springfield Armory BM59 and SAR-48 type
29  Sterling MK-6, MK-7 and SAR types
30  Steyr A.U.G. semi-automatic firearms
31  USAS 12 semi-automatic type shotgun
32  Uzi type semi-automatic firearms
33  Valmet M62, M71S, M76, or M78 type semi-automatic firearms
34  Weaver Arm Nighthawk.
35       (2) Any firearm manufactured under any designation which is
36  substantially identical to any of the firearms listed above.
37       (3) A semi-automatic shotgun with either a magazine capacity
38  exceeding six rounds, a pistol grip, or a folding stock.
39       (4) A semi-automatic rifle with a fixed magazine capacity
40  exceeding 10 rounds.  "Assault firearm" shall not include a semi-
41  automatic rifle which has an attached tubular device and which is
42  capable of operating only with .22 caliber rimfire ammunition.
43       (5) A part or combination of parts designed or intended to convert
44  a firearm into an assault firearm, or any combination of parts from
45  which an assault firearm may be readily assembled if those parts are in
46  the possession or under the control of the same person.
47       (6) A firearm with a bump stock attached.

1   x. "Semi-automatic" means a firearm which fires a single
2   projectile for each single pull of the trigger and is self-reloading or
3   automatically chambers a round, cartridge, or bullet.
4   y. "Large capacity ammunition magazine" means a box, drum,
5   tube or other container which is capable of holding more than 10
6   rounds of ammunition to be fed continuously and directly therefrom
7   into a semi-automatic firearm. The term shall not include an attached
8   tubular device which is capable of holding only .22 caliber rimfire
9   ammunition.
10   z. "Pistol grip" means a well-defined handle, similar to that found
11   on a handgun, that protrudes conspicuously beneath the action of the
12   weapon, and which permits the shotgun to be held and fired with one
13   hand.
14   aa. "Antique handgun" means a handgun manufactured before
15   1898, or a replica thereof, which is recognized as being historical in
16   nature or of historical significance and either (1) utilizes a match,
17   friction, flint, or percussion ignition, or which utilizes a pin-fire
18   cartridge in which the pin is part of the cartridge or (2) does not fire
19   fixed ammunition or for which cartridge ammunition is not
20   commercially available.
21   bb. "Trigger lock" means a commercially available device
22   approved by the Superintendent of State Police which is operated with
23   a key or combination lock that prevents a firearm from being
24   discharged while the device is attached to the firearm.  It may include,
25   but need not be limited to, devices that obstruct the barrel or cylinder
26   of the firearm, as well as devices that immobilize the trigger.
27   cc. "Trigger locking device" means a device that, if installed on a
28   firearm and secured by means of a key or mechanically, electronically
29   or electromechanically operated combination lock, prevents the
30   firearm from being discharged without first deactivating or removing
31   the device by means of a key or mechanically, electronically or
32   electromechanically operated combination lock.
33   dd. "Personalized handgun" means a handgun which incorporates
34   within its design, and as part of its original manufacture, technology
35   which automatically limits its operational use and which cannot be
36   readily deactivated, so that it may only be fired by an authorized or
37   recognized user.  The technology limiting the handgun's operational
38   use may include, but not be limited to:  radio frequency tagging, touch
39   memory, remote control, fingerprint, magnetic encoding and other
40   automatic user identification systems utilizing biometric, mechanical
41   or electronic systems.  No make or model of a handgun shall be
42   deemed to be a "personalized handgun" unless the Attorney General
43   has determined, through testing or other reasonable means, that the
44   handgun meets any reliability standards that the manufacturer may
45   require for its commercially available handguns that are not
46   personalized or, if the manufacturer has no such reliability standards,
47   the handgun meets the reliability standards generally used in the
48   industry for commercially available handguns.

ee. "Bump stock" means any device or instrument for a firearm that increases the rate of fire achievable with the firearm by using energy from the recoil of the firearm to generate a reciprocating action that facilitates repeated activation of the trigger.

ff. "Trigger crank" means any device or instrument to be attached to a firearm that repeatedly activates the trigger of the firearm through the use of a lever or other part that is turned in a circular motion; provided, however, the term shall not include any weapon initially designed and manufactured to fire through the use of a crank or lever.

gg. "Armor piercing ammunition" means: (1) a projectile or projectile core which may be used in a handgun and is constructed entirely, excluding the presence of traces of other substances, from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or (2) a full jacketed projectile larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight of more than 25 percent of the total weight of the projectile. "Armor piercing ammunition" shall not include shotgun shot required by federal or State environmental or game regulations for hunting purposes, a frangible projectile designed for target shooting, a projectile which the United States Attorney General finds is primarily intended to be used for sporting purposes, or any other projectile or projectile core which the United States Attorney General finds is intended to be used for industrial purposes, including a charge used in an oil gas well perforating device.

hh. "Covert firearm" means any firearm that is constructed in a shape or configuration such that it does not resemble a handgun, rifle, shotgun, or machine gun including, but not limited to, a firearm that resembles a key-chain, pen, cigarette lighter, cigarette package, cellphone, smart phone, wallet, or cane.

ii. "Undetectable firearm" means a firearm [3][constructed entirely of non-metal substances, or a firearm that does not include at least one major component, such as the barrel, slide, cylinder, frame or receiver of the firearm, that is made entirely of metal such that,] that: (1) after removal of all parts other than major components, is not as detectable as the Security Exemplar, by walk-through metal detectors calibrated and operated to detect the Security Exemplar; or (2) includes a major component which,[3] if the firearm were subjected to inspection by the types of detection devices commonly used at airports for security screening, [3][it][3] would not generate an image that accurately depicts the shape of the component.[2] [3]"Undetectable firearm" shall not be construed to include a firearm subject to the provisions of paragraphs (3) through (6) of subsection (p) of 18 U.S.C. s.922.

jj. "Major component" means the slide or cylinder or the frame or receiver of a firearm and, in the case of a rifle or shotgun, also includes the barrel.

kk. "Security Exemplar" means the Security Exemplar fabricated in accordance with subparagraph (C) of paragraph (2) of subsection (p) of 18 U.S.C. s.922.[3]

(cf: P.L.2018, c.39, s.1)

1      **²**2. N.J.S.2C:39-3 is amended to read as follows:
2      2C:39-3. Prohibited Weapons and Devices.
3         a. Destructive devices. Any person who knowingly has in his
4      possession any destructive device is guilty of a crime of the third
5      degree.
6         b. Sawed-off shotguns. Any person who knowingly has in his
7      possession any sawed-off shotgun is guilty of a crime of the third
8      degree.
9         c. Silencers. Any person who knowingly has in his possession
10     any firearm silencer is guilty of a crime of the fourth degree.
11        d. Defaced firearms. Any person who knowingly has in his
12     possession any firearm which has been defaced, except an antique
13     firearm or an antique handgun, is guilty of a crime of the fourth
14     degree.
15        e. Certain weapons. Any person who knowingly has in his
16     possession any gravity knife, switchblade knife, dagger, dirk,
17     stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus
18     or similar leather band studded with metal filings or razor blades
19     imbedded in wood, ballistic knife, without any explainable lawful
20     purpose, is guilty of a crime of the fourth degree.
21        f. Dum-dum or armor piercing ammunition. (1) Any person,
22     other than a law enforcement officer or persons engaged in
23     activities pursuant to subsection f. of N.J.S.2C:39-6, who
24     knowingly has in his possession any hollow nose or dum-dum
25     bullet, or (2) any person, other than a collector of firearms or
26     ammunition as curios or relics as defined in Title 18, United States
27     Code, section 921 (a) (13) and has in his possession a valid
28     Collector of Curios and Relics License issued by the Bureau of
29     Alcohol, Tobacco, Firearms, and Explosives, who knowingly has in
30     his possession any armor piercing ammunition as defined in
31     subsection gg. of N.J.S.2C:39-1 is guilty of a crime of the fourth
32     degree. For purposes of this section, a collector may possess not
33     more than three examples of each distinctive variation of the
34     ammunition described above. A distinctive variation includes a
35     different head stamp, composition, design, or color.
36        g. Exceptions. (1) Nothing in subsection a., b., c., d., e., f., j.
37     or k. of this section shall apply to any member of the Armed Forces
38     of the United States or the National Guard, or except as otherwise
39     provided, to any law enforcement officer while actually on duty or
40     traveling to or from an authorized place of duty, provided that his
41     possession of the prohibited weapon or device has been duly
42     authorized under the applicable laws, regulations or military or law
43     enforcement orders.
44        Nothing in subsection h. of this section shall apply to any law
45     enforcement officer who is exempted from the provisions of that
46     subsection by the Attorney General. Nothing in this section shall
47     apply to the possession of any weapon or device by a law
48     enforcement officer who has confiscated, seized or otherwise taken
49     possession of said weapon or device as evidence of the commission

1    of a crime or because he believed it to be possessed illegally by the
2    person from whom it was taken, provided that said law enforcement
3    officer promptly notifies his superiors of his possession of such
4    prohibited weapon or device.
5        (2)  a. Nothing in subsection f. (1) shall be construed to prevent a
6    pers from keeping such ammunition at his dwelling, premises or
7    other land owned or possessed by him, or from carrying such
8    ammunition from the place of purchase to said dwelling or land, nor
9    shall subsection f. (1) be construed to prevent any licensed retail or
10   wholesale firearms dealer from possessing such ammunition at its
11   licensed premises, provided that the seller of any such ammunition
12   shall maintain a record of the name, age and place of residence of
13   any purchaser who is not a licensed dealer, together with the date of
14   sale and quantity of ammunition sold.
15       b.  Nothing in subsection f.(1) shall be construed to prevent a
16   designated employee or designated licensed agent for a nuclear
17   power plant under the license of the Nuclear Regulatory
18   Commission from possessing hollow nose ammunition while in the
19   actual performance of his official duties, if the federal licensee
20   certifies that the designated employee or designated licensed agent
21   is assigned to perform site protection, guard, armed response or
22   armed escort duties and is appropriately trained and qualified, as
23   prescribed by federal regulation, to perform those duties.
24       (3) Nothing in paragraph (2) of subsection f. or in subsection j.
25   shall be construed to prevent any licensed retail or wholesale
26   firearms dealer from possessing that ammunition or large capacity
27   ammunition magazine at its licensed premises for sale or disposition
28   to another licensed dealer, the Armed Forces of the United States or
29   the National Guard, or to a law enforcement agency, provided that
30   the seller maintains a record of any sale or disposition to a law
31   enforcement agency.  The record shall include the name of the
32   purchasing agency, together with written authorization of the chief
33   of police or highest ranking official of the agency, the name and
34   rank of the purchasing law enforcement officer, if applicable, and
35   the date, time and amount of ammunition sold or otherwise
36   disposed. A copy of this record shall be forwarded by the seller to
37   the Superintendent of the Division of State Police within 48 hours
38   of the sale or disposition.
39       (4) Nothing in subsection a. of this section shall be construed to
40   apply to antique cannons as exempted in subsection d. of
41   N.J.S.2C:39-6.
42       (5) Nothing in subsection c. of this section shall be construed to
43   apply to any person who is specifically identified in a special deer
44   management permit issued by the Division of Fish and Wildlife to
45   utilize a firearm silencer as part of an alternative deer control
46   method implemented in accordance with a special deer management
47   permit issued pursuant to section 4 of P.L.2000, c.46 (C.23:4-42.6),
48   while the person is in the actual performance of the permitted
49   alternative deer control method and while going to and from the

1   place where the permitted alternative deer control method is being
2   utilized.  This exception shall not, however, otherwise apply to any
3   person to authorize the purchase or possession of a firearm silencer.
4       h.  Stun guns.  Any person who knowingly has in his possession
5   any stun gun is guilty of a crime of the fourth degree.
6       i.   Nothing in subsection e. of this section shall be construed to
7   prevent any guard in the employ of a private security company, who
8   is licensed to carry a firearm, from the possession of a nightstick
9   when in the actual performance of his official duties, provided that
10  he has satisfactorily completed a training course approved by the
11  Police Training Commission in the use of a nightstick.
12      j.   Any person who knowingly has in his possession a large
13  capacity ammunition magazine is guilty of a crime of the fourth
14  degree unless the person has registered:   (1) an assault firearm
15  pursuant to section 11 of P.L.1990, c.32 (C.2C:58-12) and the
16  magazine is maintained and used in connection with participation in
17  competitive shooting matches sanctioned by the Director of Civilian
18  Marksmanship of the United States Department of the Army ; or
19      (2) a firearm with a fixed magazine capacity or detachable
20  magazine capable of holding up to 15 rounds pursuant to section 7
21  of P.L.2018, c.39 (C.2C:39-20).
22      k.  Handcuffs.  Any person who knowingly has in his
23  possession handcuffs as defined in P.L.1991, c.437 (C.2C:39-9.2),
24  under circumstances not manifestly appropriate for such lawful uses
25  as handcuffs may have, is guilty of a disorderly persons offense.  A
26  law enforcement officer shall confiscate handcuffs possessed in
27  violation of the law.
28      l.   Bump stock or trigger crank.  Any person who knowingly
29  possesses a bump stock as defined in subsection ee. of N.J.S.2C:39-
30  1 or a trigger crank as defined in subsection ff. of N.J.S.2C:39-1,
31  regardless of whether the person is in possession of a firearm, is
32  guilty of a crime of the third degree.
33      Notwithstanding the provisions of N.J.S.2C:1-8 or any other
34  provision of law, a conviction arising out of this subsection shall
35  not merge with a conviction for possessing an assault firearm in
36  violation of subsection f. of N.J.S.2C:39-5 or a machine gun in
37  violation of subsection a. of N.J.S.2C:39-5 and a separate sentence
38  shall be imposed upon each conviction.  Notwithstanding the
39  provisions of N.J.S.2C:44-5 or any other provisions of law, the
40  sentence imposed pursuant to this subsection shall be served
41  consecutively to that imposed for unlawfully possessing an assault
42  firearm in violation of subsection f. of N.J.S.2C:39-5.
43      m. Covert or undetectable firearms.   Any person who
44  knowingly possesses any covert firearm as defined in subsection hh.
45  of N.J.S.2C:39-1, an undetectable firearm as defined in subsection
46  ii. of N.J.S.2C:39-1, or a firearm enclosed in a container or covering
47  that is designed or modified to allow the firearm to be fired while so
48  enclosed and that disguises or obscures the shape of the firearm

1   such that it does not resemble a handgun, rifle, shotgun, or machine
2   gun is guilty a crime of the third degree.**²**
3   (cf: P.L.2018, c.39, s.2).
4
5       **²[**1.**]** 3.**²**   N.J.S.2C:39-9 is amended to read as follows:
6       2C:39-9.  Manufacture, Transport, Disposition and Defacement
7   of Weapons and Dangerous Instruments and Appliances.   a.
8   Machine guns.   Any person who manufactures, causes to be
9   manufactured, transports, ships, sells or disposes of any machine
10  gun without being registered or licensed to do so as provided in
11  chapter 58 **²**of Title 2C of the New Jersey Statutes**²** is guilty of a
12  crime of the third degree.
13      b.  Sawed-off shotguns.  Any person who manufactures, causes
14  to be manufactured, transports, ships, sells or disposes of any
15  sawed-off shotgun is guilty of a crime of the third degree.
16      c.  Firearm silencers.  Any person who manufactures, causes to
17  be manufactured, transports, ships, sells or disposes of any firearm
18  silencer is guilty of a crime of the fourth degree.
19      d.  Weapons.  Any person who manufactures, causes to be
20  manufactured, transports, ships, sells or disposes of any weapon,
21  including gravity knives, switchblade knives, ballistic knives,
22  daggers, dirks, stilettos, billies, blackjacks, metal knuckles,
23  sandclubs, slingshots, cesti or similar leather bands studded with
24  metal filings, or, except as otherwise provided in subsection i. of
25  this section, in the case of firearms if he is not licensed or registered
26  to do so as provided in chapter 58 **²**of Title 2C of the New Jersey
27  Statutes**²**, is guilty of a crime of the fourth degree.  Any person who
28  manufactures, causes to be manufactured, transports, ships, sells or
29  disposes of any weapon or other device which projects, releases or
30  emits tear gas or other substances intended to produce temporary
31  physical discomfort or permanent injury through being vaporized or
32  otherwise dispensed in the air, which is intended to be used for any
33  purpose other than for authorized military or law enforcement
34  purposes by duly authorized military or law enforcement personnel
35  or the device is for the purpose of personal self-defense, is pocket-
36  sized and contains not more than three-quarters of an ounce of
37  chemical substance not ordinarily capable of lethal use or of
38  inflicting serious bodily injury, or other than to be used by any
39  person permitted to possess such weapon or device under the
40  provisions of subsection d. of N.J.S.2C:39-5, which is intended for
41  use by financial and other business institutions as part of an
42  integrated security system, placed at fixed locations, for the
43  protection of money and property, by the duly authorized personnel
44  of those institutions, is guilty of a crime of the fourth degree.
45      e.  Defaced firearms.  Any person who defaces any firearm is
46  guilty of a crime of the third degree.  Any person who knowingly
47  buys, receives, disposes of or conceals a defaced firearm, except an

1 antique firearm or an antique handgun, is guilty of a crime of the
2 fourth degree.
3  f. (1) Any person who manufactures, causes to be
4 manufactured, transports, ships, sell, or disposes of any **²[**bullet,
5 which is primarily designed for use in a handgun, and which is
6 comprised of a bullet whose core or jacket, if the jacket is thicker
7 than .025 of an inch, is made of tungsten carbide, or hard bronze, or
8 other material which is harder than a rating of 72 or greater on the
9 Rockwell B. Hardness Scale, and is therefore capable of breaching
10 or penetrating body armor and**]** <u>armor piercing ammunition as</u>
11 <u>defined in subsection gg. of N.J.S.2C:39-1</u>² which is intended to be
12 used for any purpose other than for authorized military or law
13 enforcement purposes by duly authorized military or law
14 enforcement personnel, is guilty of a crime of the fourth degree.
15  (2) Nothing in this subsection shall be construed to prevent a
16 licensed collector of ammunition as defined in paragraph (2) of
17 subsection f. of N.J.S.2C:39-3 from transporting the bullets defined
18 in paragraph (1) of this subsection from (a) any licensed retail or
19 wholesale firearms dealer's place of business to the collector's
20 dwelling, premises, or other land owned or possessed by him, or (b)
21 to or from the collector's dwelling, premises or other land owned or
22 possessed by him to any gun show for the purposes of display, sale,
23 trade, or transfer between collectors, or (c) to or from the collector's
24 dwelling, premises or other land owned or possessed by him to any
25 rifle or pistol club organized in accordance with the rules prescribed
26 by the National Board for the Promotion of Rifle Practice; provided
27 that the club has filed a copy of its charter with the superintendent
28 of the State Police and annually submits a list of its members to the
29 superintendent, and provided further that the ammunition being
30 transported shall be carried not loaded in any firearm and contained
31 in a closed and fastened case, gun box, or locked in the trunk of the
32 automobile in which it is being transported, and the course of travel
33 shall include only such deviations as are reasonably necessary under
34 the circumstances.
35  g. Assault firearms. Any person who manufactures, causes to
36 be manufactured, transports, ships, sells or disposes of an assault
37 firearm without being registered or licensed to do so pursuant to
38 N.J.S.2C:58-1 et seq. is guilty of a crime of the third degree.
39  h. Large capacity ammunition magazines. Any person who
40 manufactures, causes to be manufactured, transports, ships, sells or
41 disposes of a large capacity ammunition magazine which is
42 intended to be used for any purpose other than for authorized
43 military or law enforcement purposes by duly authorized military or
44 law enforcement personnel is guilty of a crime of the fourth degree.
45  i. Transporting firearms into this State for an unlawful sale or
46 transfer. Any person who knowingly transports, ships or otherwise
47 brings into this State any firearm for the purpose of unlawfully
48 selling, transferring, giving, assigning or otherwise disposing of that
49 firearm to another individual is guilty of a crime of the second

1  degree. Any motor vehicle used by a person to transport, ship, or
2  otherwise bring a firearm into this State for unlawful sale or transfer
3  shall be subject to forfeiture in accordance with the provisions of
4  N.J.S.2C:64-1 et seq.; provided however, this forfeiture provision
5  shall not apply to innocent owners, nor shall it affect the rights of a
6  holder of a valid lien.
7     The temporary transfer of a firearm shall not constitute a
8  violation of this subsection if that firearm is transferred:
9     (1) while hunting or target shooting in accordance with the
10 provisions of section 1 of P.L.1992, c.74 (C.2C:58-3.1);
11    (2) for shooting competitions sponsored by a licensed dealer,
12 law enforcement agency, legally recognized military organization,
13 or a rifle or pistol club which has filed a copy of its charter with the
14 superintendent in accordance with the provisions of section 1 of
15 P.L.1992, c.74 (C.2C:58-3.1); or
16    (3) for participation in a training course conducted by a certified
17 instructor in accordance with the provisions of section 1 of
18 P.L.1997, c.375 (C.2C:58-3.2).
19    The transfer of any firearm that uses air or carbon dioxide to
20 expel a projectile; or the transfer of an antique firearm shall not
21 constitute a violation of this subsection.
22    j. Any person who manufactures, causes to be manufactured,
23 transports, ships, sells, or disposes of a bump stock as defined in
24 subsection ee. of N.J.S.2C:39-1 or a trigger crank as defined in
25 subsection ff. of N.J.S.2C:39-1 is guilty of a crime of the third
26 degree.
27    k. Purchasing firearm parts to manufacture [1][untraceable] a[1]
28 firearm [1]without a serial number[1]. In addition to any other
29 [1][penalty imposed] criminal penalties provided[1] under [1][current][1]
30 law, a person who [1], with the purpose to manufacture [2]or otherwise
31 assemble[2] a firearm and without being registered or licensed do so
32 as provided in chapter 58 of Title 2C of the New Jersey Statutes,[1]
33 purchases [1]or otherwise obtains[1] separately or as [1]part of[1] a kit [1]a
34 firearm frame or firearm receiver which is not imprinted with a
35 serial number registered with a federally licensed manufacturer or[1]
36 any combination of parts from which a firearm [1]without a serial
37 number[1] may be readily [1][assembled with the purpose to
38 manufacture an untraceable firearm] manufactured [2]or otherwise
39 assembled[2] , but which does not have the capacity to function as a
40 firearm unless manufactured[1] [2]or otherwise assembled[2] is guilty of
41 a crime of the third degree. Notwithstanding the provisions of
42 N.J.S.2C:1-8 or any other law, a conviction under this subsection
43 shall not merge with a conviction for any other criminal offense and
44 the court shall impose separate sentences upon a violation of this
45 subsection and any other criminal offense.
46    As used in this subsection, [1]["untraceable firearm" means an
47 unlawfully manufactured firearm for which the sale or distribution

1  chain from a licensed retailer to the point of its first retail sale
2  cannot be traced by law enforcement officials] "firearm frame or
3  firearm receiver" means the part of a firearm that provides housing
4  for the firearm's internal components, such as the hammer, bolt or
5  breechblock, action, and firing mechanism[1] [2], and includes without
6  limitation any object or part which is not a firearm frame or receiver
7  in finished form but is designed or intended to be used for that
8  purpose and which may readily be made into a firearm frame or
9  receiver through milling or other means[2].
10  [2]l. Manufacturing or facilitating the manufacture of a firearm
11  using a three-dimensional printer.  In addition to any other criminal
12  penalties provided under law it is a third degree crime for:
13     (1) a person who is not registered or licensed to do so as a
14  manufacturer as provided in chapter 58 of Title 2C of the New
15  Jersey Statutes, to use a three-dimensional printer or similar device
16  to manufacture or produce a firearm, firearm receiver, magazine, or
17  firearm component; or
18     (2) a person to distribute by any means, including the Internet,
19  to a person in New Jersey who is not registered or licensed as a
20  manufacturer as provided in chapter 58 of Title 2C of the New
21  Jersey Statutes, digital instructions in the form of computer-aided
22  design files or other code or instructions stored and displayed in
23  electronic format as a digital model that may be used to program a
24  three-dimensional printer to manufacture or produce a firearm,
25  firearm receiver, magazine, or firearm component.
26     As used in this subsection: "three-dimensional printer" means a
27  computer or computer-driven machine or device capable of
28  producing a three-dimensional object from a digital model; and
29  "distribute" means to sell, or to manufacture, give, provide, lend,
30  trade, mail, deliver, publish, circulate, disseminate, present, exhibit,
31  display, share, advertise, offer, or make available via the Internet or
32  by any other means, whether for pecuniary gain or not, and includes
33  an agreement or attempt to distribute.
34     m. Covert or undetectable firearms. Any person who
35  manufactures, causes to be manufactured, transports, ships, sells or
36  disposes of any covert firearm as defined in subsection hh. of
37  N.J.S.2C:39-1 or any undetectable firearm as defined in subsection
38  ii. of N.J.S.2C:39-1 is guilty of a crime of the third degree.[2]
39  (cf: P.L.2018, c.38, s.3)
40
41     [2][2.] 4.[2]   This act shall take effect immediately.