IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § | |
| Plaintiffs, | § § § | |
| v. | § § | 1:18-CV-637-RP |
| GURBIR GREWAL, in his official capacity As New Jersey Attorney General, et al., | § § § § | |
| Defendants. | § § | |

# ORDER

Before the Court is Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction against Defendant Gurbir Grewal, in his official capacity as New Jersey Attorney General. (Mot., Dkt. 52). Plaintiffs request that the Court enjoin enforcement of Section 3(l)(2) of New Jersey Senate Bill 2465, which provides for third degree criminal penalties for distributing digital instructions that may be used to print firearms and firearm components from a three-dimensional printer. Having considered Plaintiffs' submissions and applicable law, the Court declines to exercise jurisdiction over Plaintiffs' claims in this action.

## I. BACKGROUND

Plaintiff Defense Distributed is a Texas corporation that is "committed to legally publishing information about firearms to the public domain on the internet by hosting computer files on its website and making them available to visitors for download." (Mot., Dkt. 52, at 3). Plaintiff Second Amendment Foundation, Inc. is a non-profit organization whose members seek to obtain the information published by Defense Distributed. (First Am. Compl., Dkt. 23, at 4). On June 29, 2018, Plaintiffs entered into a settlement agreement with the United States Department of State concerning the publication of four categories of computer files related to firearms and subject to the

Arms Export Control Act and the International Traffic in Arms Regulations (the "*Defense Distributed I* files"). (*Id.* at 7–9). The Settlement Agreement would have permitted the publication of the *Defense Distributed I* files on the Internet. (*See id.* at 9–10). On June 30, 2018, several States and the District of Columbia filed suit in the United States District Court for the Western District of Washington, seeking to enjoin enforcement of the Settlement Agreement. (*Id.* at 13). The court granted the injunction the next day, and Defense Distributed ceased publishing the *Defense Distributed I* files on the Internet. (*Id.* at 14).

Subsequently, New Jersey passed Senate Bill 2465. In relevant part, Section 3(l)(2) provides for third degree criminal penalties for:

> A person to distribute by any means, including the Internet, to a person in New Jersey who is not registered or licensed as a manufacturer as provided in chapter 58 of Title 2C of the New Jersey Statutes, digital instructions in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component.

(SB 2465 § 3(l)(2), Mot. Ex. B, Dkt. 52-1, at 15). The subsection further provides:

> As used in this subsection: "three-dimensional printer" means a computer or computer-driven machine or device capable of producing a three-dimensional object from a digital model; and "distribute" means to sell, or to manufacture, give, provide, lend, trade, mail, deliver, publish, circulate, disseminate, present, exhibit, display, share, advertise, offer, or make available via the Internet or by any other means, whether for pecuniary gain or not, and includes an agreement or attempt to distribute.

*Id.*

On November 9, 2018, the day after Senate Bill 2465 was passed, Plaintiffs Defense Distributed and Second Amendment Foundation, Inc. filed the instant motion to enjoin enforcement of Section 3(l)(2), alleging that the law violates the First Amendment, Commerce Clause, and Supremacy Clause of the United States Constitution. (Dkt. 52, at 2).

## II. LEGAL STANDARD

The party moving for a temporary restraining order ("TRO") must establish that: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the [TRO] will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "A [TRO] is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (citation and quotation marks omitted).

Plaintiffs allege that they will suffer irreparable harm if Section 3(l)(2) is not enjoined because Section 3(l)(2) will require them to "halt a broad array of constitutionally protected current and ongoing activities." (Mot., Dkt. 52, at 20). Plaintiffs' argument relies on their novel construction of the statute—specifically, that the scope of the statute reaches the activities Plaintiffs enumerate. (*Id.*). The statute has not yet been construed by the State of New Jersey. For the reasons discussed below, the Court finds it appropriate to abstain from reviewing Plaintiffs' claims under the *Pullman* abstention doctrine. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

## III. DISCUSSION

The Supreme Court's landmark *Pullman* decision established that "a federal court may, and ordinarily should, refrain from deciding a case in which state action is challenged in federal court as contrary to the federal constitution if there are unsettled questions of state law that may be dispositive of the case and avoid the need for deciding the constitutional question." *United Home Rentals, Inc. v. Tex. Real Estate Com.*, 716 F.2d 324, 331 (5th Cir. 1983) (citation omitted). In particular,

> One type of case almost universally recognized as appropriate for abstention is that of a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it

3

> free from federal constitutional objection and another that would not. A federal court should not place itself in the position of holding the statute unconstitutional by giving it the latter construction, only to find that the highest court of the state will render the decision futile and unnecessary by adopting the former.

*Id.* at 331–32 (quoting Friendly, Federal Jurisdiction: A General View, 93 (1973)); *see also World of Faith World Outreach Ctr. Church, Inc. v. Morales*. 986 F.2d 962, 968 (5th Cir. 1993) (abstention is appropriate where the state court may interpret the challenged statute "so as to eliminate, or at least to alter materially, the constitutional question presented") (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 29 (1987) (Blackmun, J., concurring)). "Abstention in such circumstances not only serves to minimize federal-state friction, but also avoids premature and perhaps unnecessary constitutional adjudication." *Id.* n.14 (citing *Kusper v. Pontikes,* 414 U.S. 51(1973), in turn citing *Harman v. Forssenius,* 380 U.S. 528, 534 (1965)).

The key limitation on *Pullman* abstention is that the challenged state statute must be "susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching the federal constitutional question." *Kusper*, 414 U.S. at 54 (citing *Zwickler v. Koota*, 389 U.S. 241, 249 (1967), *reversed on other grounds by Golden v. Zwickler*, 394 U.S. 103 (1969)). Thus, "if the state statute in question , although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction." *Harman*, 380 U.S. at 534–35 (citing *Baggett v. Bullitt*, 377 U.S. 360, 375–79 (1964)). Accordingly, the Court must construe Senate Bill 2465 to the extent necessary to determine whether Section 3(l)(2) is fairly susceptible to an interpretation that would avoid Plaintiffs' constitutional challenges.

By its plain terms, Section 3(l)(2) reaches only the distribution of "[1] digital instructions [2] in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model [3] that may be used to program a three-dimensional printer to

manufacture of produce a firearm, firearm receiver, magazine, or firearm component." (SB 2465 § 3(l)(2), Mot. Ex. B, Dkt. 52-1, at 15). Plaintiffs themselves construe the statute in a similarly limited way. (Mot., Dkt. 52, at 11) (the New Jersey law applies "only to speech with this content: 'digital instructions' that 'may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component'"). Nevertheless, Plaintiffs claim that they will suffer irreparable harm if Section 3(l)(2) is not enjoined because it will force them to "halt a broad array of constitutionally protected current and ongoing activities under threat of the new law. These activities include[:]

- public accessibility of files on the DEFCAD website;

- participating in trade shows where Plaintiffs are unable to determine the state of residence of attendees that may view their displays and other advertisements;

- sending advertisements via email lists where Plaintiffs are unable to determine the states of residence of the recipients and have no way of knowing in which states recipients will be when they receive emails; and

- participation in any national advertising network, radio communication, televised media, and other media that may advertise and promote Plaintiffs' respective missions."

(*Id.* at 20).

Plaintiffs appear to base their argument on the definition of "distribute" in Section 3(l)(2), which includes the terms "advertise" and "offer." (*See id.* at 11–12). But, Plaintiffs have failed to acknowledge with respect to irreparable harm what they acknowledge with respect to their First Amendment argument: that Section 3(l)(2) "only" applies to the actions specified in that section. Indeed, Section 3(l)(2) expressly cabins the provided definition of "distribute" to Section 3(l). (SB 2465 § 3(l), Mot. Ex. B, Dkt. 52-1, at 15). Thus, for the statute to reach the "constitutionally protected current and ongoing activities" Plaintiffs identify, Plaintiffs would have to be distributing,

in the course of these activities, (1) digital instructions, (2) in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model, (3) that may be used to program a three-dimensional printer to manufacture of produce a firearm, firearm receiver, magazine, or firearm component.

Plaintiffs do not allege that they are engaged in such distribution in the course of the activities they identify. Plaintiffs allege that Section 3(l)(2) would prevent them from showing "displays" at trade shows; sending "advertisements" via email lists; and promoting and advertising the Plaintiffs' "missions" on a variety of media channels. Nowhere do Plaintiffs specify the content of the "speech" made in these activities, and the Court is skeptical that displays at a trade show, advertisements, and media campaigning about the Plaintiffs' "missions" involve the distribution of "digital instructions" in the form of "computer-aided design files or other code." Similarly, Plaintiffs do not specify the kinds of files allegedly accessible on the DEFCAD website, or what, if any, speech they entail. The Court therefore concludes that a fair reading of Section 3(l)(2) suggests that the section would not reach any of the activities Plaintiffs claim the section would halt.

Accordingly, the Court concludes that the irreparable harm Plaintiffs allege they will suffer is unlikely and speculative. "Clearly demonstrating irreparable injury is a heavy burden to overcome." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). For a temporary injunction to issue, the plaintiff must demonstrate "a *likelihood* that irreparable harm will occur," and "speculative injury is not sufficient" to make this showing. *Morrell v. City of Shreveport*, 536 F. App'x 433, 435 (5th Cir. 2013) (quoting *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001)) (original emphasis). Under a fair reading of the statute, Section 3(l)(2) would not reach the "constitutionally protected current and ongoing activities" Plaintiffs identify. It therefore would not force Plaintiffs to cease those activities, and therefore would not cause Plaintiffs to suffer the irreparable injury of which they complain.

In sum, the Court concludes that Section 3(l)(2) is fairly susceptible to an interpretation under which that section would not reach, and therefore would not cause to be halted, the activities in which Plaintiffs are currently engaged, and which Plaintiffs allege are constitutionally protected. Plaintiffs have therefore failed to demonstrate that they will likely suffer irreparable harm in the TRO's absence. Because Plaintiffs *must* demonstrate a likelihood of irreparable harm for a TRO to issue, and have failed to do so, the Court concludes that Plaintiffs are not entitled to the relief requested. Therefore, it follows that Section 3(l)(2) is fairly susceptible to an interpretation that would dispose of the instant matter without the need to resolve Plaintiffs federal constitutional challenges on the merits. Accordingly, because it is appropriate for the Court to abstain when the state court may interpret the challenged statute "so as to eliminate, or at least to alter materially, the constitutional question presented," *World of Faith,* 986 F.2d at 968, the Court will abstain from adjudicating the instant matter.

In reaching its conclusion, the Court is mindful of the Supreme Court's reluctance "to abstain in cases involving facial challenges to the First Amendment." *Houston v. Hill*, 482 U.S. 451, 467 (1987). The Supreme Court's reluctance, however, arises from the fact that "[i]n such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Id.* at 467–68 (quoting *Zwickler*, 389 U.S. at 252). Here, Plaintiffs have not demonstrated how their speech will be "chilled" by the challenged statute because they have failed to identify the speech content, if any, of the activities they claim the statute will force them to cease, and they have failed to show that these activities fall within the ambit of the statute under a fairly susceptible reading of the statute. *See United States v. Hicks*, 980 F.2d 963, 970 n.8 (5th Cir. 1992) (in contrast to *Houston v. Hill*, appellants who "have not offered any proof that there is a *realistic* and *substantial* danger that [the statute] will be used to chill constitutionally protected speech" have failed to mount a facial

7

overbreadth challenge) (emphasis added). Likewise, the Supreme Court has ruled that abstention is appropriate, even in the context of First Amendment challenges, when the interpretation of a state law "turns upon the choice between one or several alternative meanings of [the] state statute." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 307–09 (1979) (quoting *Baggett* v. *Bullitt*, 377 U.S. 360, 378 (1964); citing *Harrison v. NAACP*, 360 U.S. 167, 176 (1959)).

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court **ABSTAINS** from reviewing this matter until the New Jersey courts have been "afforded a reasonable opportunity to pass upon" Section 3(l)(2). *Id.* (quoting *Harrison*, 360 U.S. at 176).

**SIGNED** on November 13, 2018.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE