IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION


DEFENSE DISTRIBUTED and §
SECOND AMENDMENT FOUNDATION, INC., §
§
        *Plaintiffs*, §
§
        v. §
§
GURBIR GREWAL, in his official capacity as the §
State of New Jersey's Attorney General; §
MICHAEL FEUER, in his official capacity as the §
City of Los Angeles, California's City Attorney; §    Case No. 1:18-CV-637
ANDREW CUOMO, in his official capacity as the §
State of New York's Governor; MATTHEW §
DENN, in his official capacity as the State of §
Delaware's Attorney General; JOSH SHAPIRO, §
in his official capacity as the Commonwealth of §
Pennsylvania's Attorney General; and THOMAS §
WOLF, in his official capacity as the §
Commonwealth of Pennsylvania's Governor, §
§
        *Defendants*. §


**NEW YORK GOVERNOR ANDREW M. CUOMO'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P.
RULE 12(b)(1), RULE 12(b)(2), and RULE 12(b)(3)**

# Table of Contents

Preliminary Statement…………………………………………………………………………..1

Statement of the Facts…………………………………………………………………………..2

    A.    Background and Procedural History……………………………………………….2

    B.    The Allegations and Claims Against New York Governor Cuomo
           in this Action…………………………………………………………………6

Argument………………………………………………………………………………..8

  Point I    PLAINTIFFS DO NOT HAVE PERSONAL JURISDICTION OVER
          GOVERNOR CUOMO BECAUSE THE MERE SENDING OF A CEASE
          AND DESIST LETTER FROM NEW YORK TO TEXAS, AND THE MERE
          MAKING OF A TELEPHONE CALL FROM NEW YORK TO TEXAS,
          ARE INSUFFICENT ACTS TO ESTABLISH "MINIMUM CONTACTS"
          WITH TEXAS………....……………………………………….……..…………8

    A.    General Considerations Regarding Personal Jurisdiction…………………………8

    B.    The Controlling Case is *Stroman Realty Inc. v. Wercinski*, 513 F.3d 476
          (5th Cir. 2008) and it Requires that Governor Cuomo be Dismissed from
          this Action…………………………………………………………………..10

  Point II    WITH REGARDS TO GOVERNOR CUOMO, VENUE IS IMPROPER IN
          THE WESTERN DISTRICT OF TEXAS, SO THE ACTION MUST BE
          DISMISSED PURSUANT TO F.R.C.P. RULE 12(b)(3)...………………….....14

  Point III    THIS ACTION DOES NOT MEET ARTICLE III JUSTICIABILITY
          REQUIREMENTS AND THUS MUST BE DISMISSED PURSUANT
          TO FRCP 12(b)(1)…………………………………………………………..15

    A.    Absence of a Live Controversy…………………………………………………15

    B.    Standing………………………………………………………………………..17

Conclusion…………………………………………………………………………...17

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Accessories Ltd. of Maine, Inc. v. Longchamp U.S.A.*,
   170 F. Supp. 2d 12 (D. Me. 2001) ........................................13

*Advanced Dynamics Corp. v. Mitech Corp.*,
   729 F. Supp. 519 (N.D. Tex. 1990) ........................................14

*Am. Med. Ass'n v. Bowen*,
   857 F.2d 267 (5th Cir. 1988) ........................................16

*Atl. Richfield Co. v. Fed. Trade Comm'n*,
   546 F.2d 646 (5th Cir. 1977) ........................................15

*Aviles v. Kunkle*,
   978 F.2d 201 (5th Cir. 1992) ........................................12

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
   552 F.3d 1324 (Fed. Cir. 2008) ........................................13

*Beacon Enter., Inc. v. Menzies*,
   715 F.2d 757 (2d Cir. 1983) ........................................13

*Bigham v. Envirocare of Utah, Inc.*,
   123 F. Supp. 2d 1046 (S.D. Tex. 2000) ........................................14

*Bullion v. Gillespie*,
   895 F.2d 213 (5th Cir. 1990) ........................................8

*Caprock Plains Fed. Bank Ass'n v. Farm Credit Admin.*,
   843 F.2d 840 (5th Cir. 1988) ........................................16

*Cent. Freight Lines, Inc. v. APA Transp. Corp.*,
   322 F.3d 376 (5th Cir. 2003) ........................................8

*Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*,
   963 F.2d 90 (5th Cir. 1992) ........................................8

*Cottman Transmission Sys., Inc. v. Martino*,
   36 F.3d 291 (3d Cir. 1994) ........................................14

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
   704 F.3d 413 (5th Cir. 2013) ........................................16

*D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*,
   754 F.2d 542 (5th Cir. 1985) ........................................9

*Defense Distributed v. U.S. Dep't of State*,
    838 F.3d 451 (5th Cir. 2016) ....................................................................4

*Defense Distributed v. U.S. Dep't of State*,
    C15-0372RP, Dkt. No. 92 (W.D. Tex) ...................................................4

*Defense Distributed v. U.S. Dep't of State*,
    C15-0372RP (W.D. Tex) ..........................................................................3

*Defense Distributed v. U.S. Dep't of State*,
    C15-0372RP (W.D. Tex), Dkt. No. 32-1 .................................................3

*Dontos v. Vendomation NZ Ltd.*,
    2012 U.S. Dist. LEXIS 122091, 2012 WL 3702044 (N.D. Tex. Aug. 27, 2012)...................10

*Dykes v. Maverick Motion Picture Group, LLC*,
    2011 U.S. Dist. LEXIS 25410, 2011 WL 900276 (M.D. La. Mar. 14, 2011) ........................10

*Expedite It AOG, LLC v. Clay Smith Eng'g, Inc.*,
    2010 U.S. Dist. LEXIS 66026 (N.D. Tex. June 30, 2010) ....................13

*Frank Krasner Enters. v. Montgomery Cty.*,
    401 F.3d 230 (4th Cir. 2005) ..................................................................15

*Freudensprung v. Offshore Tech. Servs.*,
    379 F.3d 327 (5th Cir. 2004) ............................................................. 9-10

*Google, Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) ..................................................................15

*Ham v. La Cienega Music Co.*,
    4 F.3d 413 (5th Cir. 1993) ........................................................................8

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    792 F. Supp. 2d 926 (E.D. La. 2011), aff'd in part, rev'd ....................16

*In re Ramirez*,
    905 F.2d 97 (5th Cir. 1990) ....................................................................15

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ....................................................................9

*Leroy v. Great W. United Corp.*,
    443 U.S. 173 (1979)................................................................................14

*Logan Int'l v. 1556311 Alta. Ltd.*,
    929 F. Supp. 2d 625 (S.D. Tex. 2012) ..................................................10

*Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*,
  858 F.3d 916 (5th Cir. 2017) ................................................................16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................17

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
  481 F.3d 309 (5th Cir. 2007) ..........................................................9-10

*NTE Aviation, Lt. v. LIAT (1974) Ltd.*,
  561 F. Supp. 2d 687 (E.D. Tex. 2007) ..................................................9

*Prestage Farms, Inc. v. Bd. of Supervisors*,
  205 F.3d 265 (5th Cir. 2000) ............................................................17

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998) .........................................................13

*Reisman v. Caplin*,
  375 U.S. 440 (1964) ..........................................................................15

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ............................................................10

*Shotton v. Pitkin*,
  2015 U.S. Dist. LEXIS 114242 (W.D. Okla. Aug. 28, 2015) ...............12

*Stroman Realty, Inc. v. Wercinski*,
  513 F.3d 476 (5th Cir. 2008) ......................................................1, 10-11

*Texas v. United States*,
  523 U.S. 296 (1998) ..........................................................................16

*United States v. Ferrara*,
  54 F.3d 825 (D.C. Cir. 1995) ........................................................12-13

*Washington v. United States Dep't of State*,
  315 F. Supp. 3d 1202 (W.D. Wash. 2018) ..............................................6

*Washington v. United States Dep't of State*,
  318 F. Supp. 3d 1247 (W.D. Wash. 2018) .........................................2, 5-6

*Wyatt v. Kaplan*,
  686 F.2d 276 (5th Cir. 1982) ...............................................................8

**CONSTITUTION**

First Amendment ........................................................................................................7

Second Amendment ............................................................................................. passim

Fourteenth Amendment .............................................................................................7

First, Second, and Fifth Amendments.........................................................................3

U.S. Constitution Due Process Clause .......................................................................1

United States Constitution Tenth Amendment ..........................................................5

**FEDERAL STATUTES**

28 U.S.C.
   § 1391(b)(2) ......................................................................................................14

AECA.......................................................................................................................2, 4

Arms Export Control Act, 22 U.S.C.
   § 2778................................................................................................................2

Administrative Procedure Act....................................................................................5

**FEDERAL REGULATIONS**

22 C.F.R.
   §§ 120-30 ..........................................................................................................2

83 Fed. Reg. 24,166 (May 24, 2018) ........................................................................5

83 Fed. Reg. 24,198 (May 24, 2018) ........................................................................5

**RULES**

F.R.C.P.
   Rule 12(b)(1)......................................................................................................17
   Rule 12(b)(2)...................................................................................................2, 17
   Rule 12(b)(3)......................................................................................................17

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3), Defendant Andrew M. Cuomo, the Governor of the State of New York, files this Motion to Dismiss Plaintiffs' First Amended Complaint. For the reasons set forth below, Governor Cuomo respectfully requests that the Court dismiss this action as against him in its entirety.

## PRELIMINARY STATEMENT

Plaintiffs Defense Distributed and the Second Amendment Foundation, Inc. have attempted to hale New York Governor Andrew M. Cuomo into United States District Court in Texas simply because Governor Cuomo: (1) sent a cease and desist letter from Albany, New York to Defense Distributed in Texas, warning about the public dangers for New York residents of publishing 3-D printable gun files for downloading on the internet, and (2) later that same day, followed up that cease and desist letter with a telephone call made from New York State to Defense Distributed's counsel in Texas reiterating the same points made in the cease and desist letter.

But in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), a case directly on point, the Fifth Circuit squarely held that when a government official from another state sends a cease and desist order into Texas, that action does *not* create the type of "minimum contacts" that are necessary under either the Texas long-arm statute or the Due Process Clause of the U.S. Constitution to create personal jurisdiction over the official from that other state. *Id*. at 483-89. Because that dispositive holding directly applies to the facts in this case – showing that the Plaintiffs have no personal jurisdiction over Governor Cuomo – pursuant to F.R.C.P. Rule 12(b)(2), this action must be dismissed as it relates to the New York Governor.

Furthermore, this lawsuit must be dismissed because venue is improper in the Western District of Texas, and this action does not meet Article III justiciability requirements.

## STATEMENT OF THE FACTS

### A. __Background and Procedural History__[1]

At the end of 2012, Defense Distributed posted on its website computer aided design ("CAD") data files that would allow the creation of guns and their components with a 3-D printer. These 3-D guns are untraceable by law enforcement because they lack serial numbers and are often undetectable by screening devices such as those typically used at airports, schools, or courthouses because of the materials used in their production. *Washington v. United States Dep't of State*, 318 F. Supp. 3d 1247, 1251 (2018). The provision of these plans to the general public represents a clear public safety threat.

The U.S. government concluded that the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, authorizes restrictions on the internet publication of CAD data file used to create 3-D guns. *Id.* Accordingly, after Defense Distributed posted the CAD files on its internet website, the Directorate of Defense Trade Controls ("DDTC"), which is part of the Department of State, notified Defense Distributed that the publication may have been unauthorized and in violation of the AECA's implementing regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120-30. The DDTC explained that making the CAD files available on the internet constituted a disclosure or transfer of technical data to foreign persons and was considered an "export" subject to the AECA and ITAR. The U.S. government advised Defense Distributed to remove the files from its website and to utilize the regular procedure for obtaining an official determination from the DDTC if Defense Distributed believed that the files were not properly subject to export control.

---

[1] The background history of this action is succinctly set forth in *Washington v. United States Dep't of State*, 318 F. Supp. 3d 1247 (W.D. Wash. 2018).

Defense Distributed filed a number of determination requests, and then, along with the Second Amendment Foundation, it filed a lawsuit against the federal government in the United States District Court for the Western District of Texas. *Defense Distributed v. U.S. Dep't of State*, 15-CV-0372 RP (W.D. Tex). That litigation challenged the U.S. government's power to regulate the publication of the CAD files on the internet; the complaint argued that the regulation subjected Defense Distributed's gun-related speech to prior restraints that were applied in an arbitrary manner and in violation of the First, Second, and Fifth Amendments.

Shortly after the Texas litigation was filed, the DDTC determined that some, but not all, of the CAD data files that Defense Distributed wanted to publish on its internet website were technical data subject to the ITAR. At that point, Defense Distributed filed a motion for preliminary injunction in the Texas litigation to preclude the U.S. government from imposing prepublication approval requirements on any of its CAD files.

The U.S. government opposed that motion. The then-Director of the Office of Defense Trade Controls Management, Lisa V. Aguirre, asserted in opposition to that motion that the unrestricted export of Defense Distributed's CAD files would: (1) result in the production of plastic firearms that are fully operable and virtually undetectable by conventional security measures; (2) the use of such weapons to commit terrorism, piracy, assassinations, or other serious crimes would cause serious and long-lasting harm to the foreign policy and national security interests of the United States; (3) efforts to restrict enemies from obtaining these weapons would fail; (4) the proliferation of the weapons and the related technologies would contribute to a more dangerous international environment; and (5) the export would undercut the domestic laws of nations that have more restrictive firearm controls and the United States' foreign relations with those nations would suffer. *Defense Distributed v. U.S. Dep't of State*, 15-CV-0372 RP (W.D. Tex), Dkt. No. 32-1 at ¶ 35.

This Court denied the motion for preliminary injunction and noted that Defense Distributed's avowed purpose was to facilitate "*global* access to, and the collaborative production of, information and knowledge related to the three-dimensional ('3D') printing of arms," and that such activities "undoubtedly increase[] the possibility of outbreak or escalation of conflict" and are of the type that Congress authorized the President to regulate through the AECA. *Id.*, Dkt. No. 43 at 8-9 (emphasis in original).

The Fifth Circuit expressly affirmed this holding, finding that "the State Department's stated interest in preventing foreign nationals – including all manner of enemies of this country – from obtaining technical data on how to produce weapons and weapons parts" constitutes "a very strong public interest in national defense and national security." *Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451, 458 (5th Cir. 2016).

In April 2018, the federal government moved to dismiss Defense Distributed's lawsuit, reiterating that what was at stake was "the United States' ability to control the export of weapons – a system of laws and regulations that seeks to ensure that articles useful for warfare or terrorism are not shipped from the United States to other countries (or otherwise provided to foreigners) without authorization, where, beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability." *Defense Distributed v. U.S. Dep't of State*, 15-CV-0372 RP, Dkt. No. 92 at 1 (W.D. Tex).

Later that month, however, the Department of State drastically changed course. Completely abandoning its prior – completely successful – regulatory and litigation positions, the Department of State entered into a tentative settlement that allowed Defense Distributed and the Second Amendment Foundation to publish CAD files for the automated production of 3-D printed weapons on the internet.  The U.S. government specifically agreed, among other things, to publish a notice of proposed rulemaking and final rule revising the United States Munitions

List ("USML") to allow the distribution of the CAD files, to announce a temporary modification of the USML to allow immediate distribution while the final rule was in development, and to issue a letter to Defense Distributed and others advising that the CAD files were approved for public release and unlimited distribution. The U.S. government also acknowledged and agreed that the temporary modification and letter "permits any United States person ... to access, discuss, use, reproduce, or otherwise benefit from" the CAD files. First Amend. Complt., Exhibit A, p.2.

There were no findings of fact or other statements provided in the agreement that explained the U.S. government's dramatic change of position or that addressed or invalidated the government's prior analysis regarding the likely impacts of publication of the CAD files on the United States' national security interests.

On May 24, 2018, the U.S. government published the promised rulemaking notice, with the public comment period set to end on July 9, 2018. 83 Fed. Reg. 24,198 (May 24, 2018); 83 Fed. Reg. 24,166 (May 24, 2018). The settlement agreement was then signed on June 29, 2018, in the midst of the public comment period, but it was not made public until July 10, 2018.

Several days after the temporary modification was published, the Attorney General of Washington State, along with the Attorneys General of seven other sister states (including New York State) and the District of Columbia, filed a lawsuit in the United States District Court for the Western District of Washington. In that lawsuit, the Attorneys General alleged that the U.S. government's conduct in reaching the settlement was ultra vires and in violation of the Administrative Procedure Act ("APA"), as well as the Tenth Amendment to the United States Constitution. *See Washington v. United States Dep't of State*, 318 F. Supp. 3d 1247.

After an expedited hearing, on July 31, 2018, the District Court found: (1) that plaintiffs had shown a likelihood of success on the merits of their APA claim insofar as the temporary

modification resulted in the removal of one or more items from the USML, (2) that the Attorneys General had shown a likelihood of irreparable injury if an injunction did not issue because Defense Distributed had announced its intent to make the CAD files downloadable from its website on August 1, 2018, and (3) that the balance of hardships and the public interest tipped sharply in favor of the Attorneys General's position. *See Washington v. United States Dep't of State*, 315 F. Supp. 3d 1202 (W.D. Wash. 2018). Thereafter, the District Court addressed the Attorneys General's motion for a preliminary injunction, which it granted for similar reasons on August 27, 2018. *See Washington v. United States Dep't of State*, 318 F. Supp. 3d 1247. Defense Distributed and the Second Amendment Foundation had the option of seeking an appeal of that decision to the Ninth Circuit Court of Appeals, but instead of doing so, they have sought to bring the present action in this Court in Texas. In the meantime, the federal action in the United States District Court in the Western District of Washington continues.

**B.     The Allegations and Claims Against New York Governor Cuomo in this Action**

Here, Plaintiffs allege that New York Governor Cuomo is "actively engaged in an ongoing coercive campaign to stop Defense Distributed's publication" of the CAD files used to make 3-D printable guns. First Amend. Complt., ¶ 102. Plaintiffs only identify *two* ways that Governor Cuomo has allegedly carried out this objective. First, Plaintiffs allege that, on July 31, 2018 – the same day that the United States District Court for the Western District of Washington issued the TRO preventing Plaintiffs from publishing the CAD files at issue – Governor Cuomo "sent Defense Distributed a cease-and-desist letter." *Id*. at ¶ 103. In that letter, Governor Cuomo stated: "You are directed to cease and desist from publishing 3-D printable gun files for use by New York residents." *Id*. ¶ 104. Also, in that letter, which is attached to the Plaintiffs' First Amended Complaint as Exhibit I, Governor Cuomo threatened legal action if Defense

Distributed published the CAD files allowing 3-D printable guns to proliferate throughout New York State. As relevant here, the letter stated:

> It is well-settled that a governmental entity may bring an action to abate a public nuisance of the "conduct or omissions which offend, interfere with or cause damages to the public in the exercise of rights common to all, in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure property, health, safety of comfort of a considerable number of persons." *See Copart Indust. v. Consolidated Edison Co. of N.Y.*, 41 N.Y.2d 564, 568, 362 N.E.2d 968, 394 N.Y.S.2d 169 (1977) (citations omitted). New York has the legal right to abate a public nuisance that, like these gun blueprints, places the public's health, safety, and property at risk. As such, should you refuse to cease and desist, the release of these plans into the State of New York will represent more than just an ill-conceived plan, but a violation of New York law which will be met by legal action.

First Amend. Complt., Exhibit I, p.2.

The second way that Plaintiffs allege that Governor Cuomo violated their rights is by making a telephone call on July 31, 2018 to Plaintiffs' counsel in Texas in order to reiterate the warning contained in the cease and desist letter. Plaintiffs allege that during that call, Plaintiffs' counsel informed Governor Cuomo that the United States District Court for the Western District of Washington had just issued a TRO preventing Plaintiffs from publishing the CAD files at issue in Governor Cuomo's cease and desist letter. First Amend. Complt., ¶ 108.

Based upon Governor Cuomo's cease and desist letter and his telephone call to Plaintiffs' counsel, Plaintiffs assert seven claims against Governor Cuomo (and his co-defendants). Specifically, Plaintiffs assert: (1) a First Amendment violation related to the Freedom of Speech and of the Press; (2) a Second Amendment violation of the Right to Keep and Bear Arms; (3) a Fourteenth Amendment violation of Equal Protection; (4) a Fourteenth Amendment violation of Due Process; (5) a violation of the dormant Commerce Clause; (6) a violation of the Supremacy Clause; and (7) a state court Tortious Interference with a Settlement Agreement claim.[2] For the

---

[2] Plaintiffs have also asserted an eighth claim, but it is solely against Defendant Grewal.

reasons that follow, however, none of these claims can go forward against Governor Cuomo.

## ARGUMENT

### Point I

**PLAINTIFFS DO NOT HAVE PERSONAL JURISDICTION OVER GOVERNOR CUOMO BECAUSE THE MERE SENDING OF A CEASE AND DESIST LETTER FROM NEW YORK TO TEXAS, AND THE MERE MAKING OF A TELEPHONE CALL FROM NEW YORK TO TEXAS, ARE INSUFFICIENT ACTS TO ESTABLISH "MINIMUM CONTACTS" WITH TEXAS.**

### A.    General Considerations Regarding Personal Jurisdiction

Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of making a prima facie showing that jurisdiction exists. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).  And conclusory allegations regarding jurisdiction cannot suffice to satisfy that showing.  *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In deciding whether there is personal jurisdiction over a non-resident defendant, a two-step analysis must be conducted.  *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).  First, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction.  *Id.*  Second, the court must decide whether the exercise of jurisdiction comports with due process.  *Id.*  Since the Texas long-arm statute extends to the limits of due process under the Constitution, *Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*, 963 F.2d 90, 93 (5th Cir. 1992), the determination of a non-resident's amenability to personal jurisdiction under the Texas long-arm statute amounts to an inquiry into whether jurisdiction comports with federal constitutional guarantees.  *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

To meet the requirements of the due process clause, the non-resident must have some "minimum contacts" with the forum that result from an affirmative act or acts, and it must not be unfair or unreasonable to require the non-resident to defend the suit in the forum state. *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985); *NTE Aviation, Lt. v. LIAT (1974) Ltd.*, 561 F. Supp. 2d 687, 689 (E.D. Tex. 2007). Put another way, a court may exercise personal jurisdiction over a non-resident defendant when: (1) the defendant "purposefully availed" himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, *and* (2) the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Both prongs must be satisfied in order for a court to exercise personal jurisdiction over the defendant. *Id.*

The "minimum contacts" prong is further subdivided into contacts that confer "general jurisdiction" and those that confer "specific jurisdiction." "General jurisdiction" exists when a non-resident defendant's contacts with the forum state are "substantial, continuous, and systematic." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *HelicopterosNacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-19 (1984)). Governor Cuomo clearly lacks such contacts with Texas, thus the Court must determine if "specific jurisdiction" exists. When a plaintiff asserts "specific jurisdiction" over a non-resident defendant, a court must determine (1) whether "the defendant purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) whether "the controversy arises out of or is related to the defendant's conduct with the forum state." *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 343 (5th Cir. 2004). Most importantly, though, the fact that a Texas plaintiff suffered some harm in Texas is

insufficient to establish specific jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 473 n.41 (5th Cir. 2002). Rather, the focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation." *Freudensprung*, 379 F.3d at 343. Notably, contacts that are "random, fortuitous, or attenuated" do not satisfy the minimum contacts requirement. *Moncrief*, 481 F.3d at 312.

Importantly, "[e]ach defendant's contacts with the forum must be analyzed individually, and a defendant cannot be subject to personal jurisdiction solely because he participated in an alleged conspiracy with a co-conspirator who had contacts with Texas." *Logan Int'l v. 1556311 Alta. Ltd.*, 929 F. Supp. 2d 625, 631 (S.D. Tex. 2012). *See also Dontos v. Vendomation NZ Ltd.*, 2012 U.S. Dist. LEXIS 122091, 2012 WL 3702044, *4 (N.D. Tex. Aug. 27, 2012) (same); *Dykes v. Maverick Motion Picture Group, LLC*, 2011 U.S. Dist. LEXIS 25410, 2011 WL 900276, *6 (M.D. La. Mar. 14, 2011) (same).

Only if the plaintiff makes a prima facie showing of minimum contacts does the burden shift to the defendant to show that the court's exercise of jurisdiction would not comply with "fair play" and "substantial justice." *Freudensprung*, 379 F.3d at 343. In making a fundamental fairness determination, the court must consider: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the several states' shared interest in furthering fundamental social policies. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d at 487.

### B.  The Controlling Case is *Stroman Realty Inc. v. Wercinski,* 513 F.3d 476 (5th Cir. 2008) and it Requires that Governor Cuomo be Dismissed from this Action

In *Stroman Realty Inc. v. Wercinski*, 513 F.3d 476, the Fifth Circuit concluded that an Arizona Department of Real Estate official did not expressly create a forum in Texas by

contacting a Texas-based business' lawyers and sending two cease and desist orders to that

Texas-based business, which sold timeshares to Arizona consumers.  Critically important here,

the rationale of the Fifth Circuit's decision was that the out-of-state government official's intent

was merely to uphold and enforce the laws of Arizona, and that did not create personal

jurisdiction in Texas.  On this very point, the Fifth Circuit held:

> Here, the totality of the Commissioner's contacts with Texas involves a cease and desist order and correspondence with [plaintiff's] attorneys.  Although the Commissioner has "reached out" to assert her authority over [plaintiff's] Arizona-related business activities, she has not "purposefully availed" herself of the benefits of Texas law like someone actually "doing business" in Texas.  *Hanson*, 357 U.S. at 253.  [Plaintiff] does not allege the Commissioner has made any contacts with Texas apart from hypothetical contacts she may make with other prospective timeshare vendors while attempting to assert "nationwide" authority.  Based on such minimal known contacts, the Commissioner, a nonresident state official, could not have reasonably anticipated being haled into federal court in Texas to defend her enforcement of the Arizona statute.  *World-Wide Volkswagen*, 444 U.S. at 297.

*Stroman Realty*, 513 F.3d at 484.

*Stroman Realty* is controlling here.  Like the cease and desist letters of the Arizona public

official, Governor Cuomo's cease and desist letter addressed what Governor Cuomo determined

was a violation of law *within his own state* – that is, a "public nuisance" to the residents of New

York State.  First Amend. Complt., Exhibit I, p. 2.  Indeed, Governor Cuomo cited *New York*

"public nuisance" law, not Texas law, to Defense Distributed, and he then warned that "a

violation of *New York law*" would "be met by legal action."  *Id*. (emphasis added).  This puts this

case squarely within the parameters of *Stroman Realty*.  As the Fifth Circuit held in *Stroman*

*Realty*, "[b]y seeking to regulate [plaintiff's] activities involving Arizona residents or property,

the Commissioner is not 'expressly aim[ing]' her actions at Texas. … Rather, her intent is to

uphold and enforce the laws of Arizona."  *Stroman Realty*, 513 F.3d at 486.  The same analysis

applies here and it requires dismissal of this action against Governor Cuomo because, as the

chief executive official of New York, he was merely attempting to uphold the laws of New York. *See also Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir. 1992) ("Defendants' only contact with Texas was one telephone call and one letter.... This limited contact alone is insufficient to allow the exercise of specific personal jurisdiction in this case.") (citing *Barnstone v. Congregation Am Echad*, 574 F.2d 286 (5th Cir.1978) (negotiations by telephone and mail with a Texas architect regarding a construction project in Maine did not confer personal jurisdiction in Texas over the Maine defendant)).

Furthermore, the conclusion reached by the Fifth Circuit in *Stroman Realty* is entirely consistent with the decisions of other federal courts addressing substantially similar circumstances. For example, in *Shotton v. Pitkin*, 2015 U.S. Dist. LEXIS 114242 (W.D. Okla. Aug. 28, 2015), a district court in the Tenth Circuit addressed a case where a state official from Connecticut sent correspondence and cease and desist orders to plaintiffs at their headquarters in Oklahoma. In determining whether the out-of-state officials purposefully directed their activities toward Oklahoma, the court made the following crucial observations:

> As the description of the underlying circumstances makes clear, defendants' actions were plainly not aimed at the State of Oklahoma. Rather, they were directed to plaintiff's (and the companies') actions in the State of Connecticut and their alleged violations of Connecticut law. That the alleged violators lived in, or were based in, Oklahoma was incidental. The "focal point" of defendants' efforts was Connecticut, not Oklahoma. … The defendants' efforts were directed to stopping the alleged violations in Connecticut, involving the companies' dealings with Connecticut residents, rather than to any other activity that might have been originating from their operations in Oklahoma generally. In these circumstances, the court concludes plaintiffs have not shown the necessary "purposeful direction" of activities by the defendants to Oklahoma.

*Shotton*, 2015 U.S. Dist. LEXIS 114242, at *6. Thus, that court properly dismissed that action against the Connecticut officials who had sent cease and desist orders into Oklahoma.

Likewise, in *United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995), the court concluded that the chief counsel of the disciplinary board of the New Mexico Supreme Court could not be

properly sued in the District of Columbia for a disciplinary action that she took against an attorney licensed by the board, even though the attorney's alleged misconduct had occurred in the District. Again, the hinge of that decision was that the chief counsel merely sought to enforce New Mexico's ethical standards. *Id*. at 830. That, too, is the hinge on which this case turns: Governor Cuomo's attempt to get Defense Distributed to comply with New York nuisance law was the entire basis for the cease and desist letter and the Governor's follow-up telephone call to Plaintiffs' counsel. *See., e.g.,* First Amend. Complt., ¶¶ 102-08, Exhibit I. Under *Stroman Realty*, that means that there is no personal jurisdiction over Governor Cuomo in Texas.

In sum, because cease and desist letters from out-of-state non-residents are plainly insufficient to create personal jurisdiction, Governor Cuomo must be dismissed from this Texas case. *See, e.g., Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("cease-and-desist letters alone do not suffice to justify personal jurisdiction"); *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008) (for the exercise of personal jurisdiction in an action for declaratory judgment in a patent action, to comport with fair play and substantial justice there must be activities directed at the forum besides letters threatening a lawsuit); *Beacon Enter., Inc. v. Menzies*, 715 F.2d 757, 762-763 (2d Cir. 1983) (cease and desist letter sent by a nonresident defendant to plaintiff in New York alleging that the latter's use of a trademark violated federal law did not constitute a "transaction of business" sufficient to support the exercise of long-arm jurisdiction); *Accessories Ltd. of Maine, Inc. v. Longchamp U.S.A.*, 170 F. Supp. 2d 12, 15 (D. Me. 2001) (in an patent infringement case, the sending of a cease and desist letter into a forum is not sufficient to establish personal jurisdiction); *Expedite It AOG, LLC v. Clay Smith Eng'g, Inc.*, 2010 U.S. Dist. LEXIS 66026, at *11 (N.D. Tex. June 30, 2010) ("The mere act of asserting a trademark or copyright right through a cease and desist letter does not subject that party to specific personal

jurisdiction.").

For all of the above reasons, this action must be dismissed as against Governor Cuomo.

## POINT II

**WITH REGARDS TO GOVERNOR CUOMO, VENUE IS IMPROPER IN THE WESTERN DISTRICT OF TEXAS, SO THE ACTION MUST BE DISMISSED PURSUANT TO F.R.C.P. RULE 12(b)(3).**

This lawsuit against Governor Cuomo also fails because the Western District of Texas is not a proper venue. Invoking 28 U.S.C. § 1391(b)(2), the Plaintiffs assert venue here because "a substantial part of the property that is subject of the action is situated here." Amend. Complt., ¶ 24. But Plaintiffs claims against Governor Cuomo are based upon actions he undertook *in New York State*, not in Texas. Indeed, Governor Cuomo is based in New York State, the cease and desist letter was issued from New York State, and Governor Cuomo made the telephone call to Plaintiffs' counsel from New York State. This is important because, in determining whether or not venue is proper, courts "look[] to the defendant's conduct, and where that conduct took place." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000). "Moreover, the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district." *Id*. Venue requirements serve "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient" forum. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979); *accord Advanced Dynamics Corp. v. Mitech Corp.*, 729 F. Supp. 519, 521 (N.D. Tex. 1990). The "convenience" to a plaintiff of suing several state officials in "a single action" in "one place" is not relevant. *Leroy*, 443 U.S. at 183 (Northern District of Texas was an improper venue for Texas company's action against Idaho, Maryland, and New York securities regulators); *see also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (*Leroy*'s focus on defendants' convenience "still retains viability" despite amendments to

14

§ 1391(b)).  In sum, venue is lacking here, and the case must be dismissed.

**POINT III**

**THIS ACTION DOES NOT MEET ARTICLE III JUSTICIABILITY REQUIREMENTS AND THUS MUST BE DISMISSED PURSUANT TO FRCP 12(b)(1).**

**A.      Absence of a Live Controversy**

It is well settled that a preenforcement federal court challenge to a civil subpoena – which is an even more powerful tool in the hands of a state official than is a cease and desist letter – is unripe where the recipient has an adequate legal forum for review of the civil subpoena before any sanctions can be imposed for noncompliance.  *Reisman v. Caplin*, 375 U.S. 440, 445-49 (1964); *Google, Inc. v. Hood*, 822 F.3d 212, 224-26 (5th Cir. 2016).  Under such circumstances, the civil subpoena recipient suffers "no undue hardship in being remitted" to the comprehensive legal remedy that is already available to him.  *Atl. Richfield Co. v. Fed. Trade Comm'n*, 546 F.2d 646, 649 (5th Cir. 1977); *see In re Ramirez*, 905 F.2d 97, 98–99 (5th Cir. 1990).  And this is true irrespective of whether the civil subpoena was issued under federal or state law.  For a state-issued civil subpoena, the recipient does not suffer harm sufficient to create a ripe federal controversy where he has a full and fair opportunity to assert in state court the "same challenges raised in the federal suit" prior to facing "consequence[s] for resisting the subpoena."  *Google*, 822 F.3d at 226.

This situation here is similar to *Google*.  The cease and desist letter sent by Governor Cuomo is not self-executing; instead, if Defense Distributed were to refuse to comply with it in the future, Governor Cuomo may seek to file suit in a New York State court and, after a full trial, may request an order granting injunctive relief.  To date, though, Governor Cuomo has not brought a nuisance action in a New York State court, and were the Governor to do so, Defense Distributed could raise all of the same objections in that action that it has raised here.  Thus,

under *Google*, this action is simply not ripe.

In sum, Plaintiffs are asserting that *if* the existing federal injunction is lifted, and *if* a permanent injunction is not imposed by that federal court, and *if* Defense Distributed resumes publication of the CAD files in New York State, then Governor Cuomo *could* file a nuisance action in New York State court. But "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also Caprock Plains Fed. Bank Ass'n v. Farm Credit Admin.*, 843 F.2d 840, 845 (5th Cir. 1988) (concluding that "too many ifs" that render an injury a "mere potential[ity]" will make a case unripe).

Moreover, even if the above-described contingencies were likely enough to support a ripe claim, *see Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 924 (5th Cir. 2017), Plaintiffs would still have failed to present a live controversy. Generally, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *In re Oil Spill by Oil Rig Deepwater Horizon*, 792 F. Supp. 2d 926, 931 (E.D. La. 2011), aff'd in part, rev'd in part sub nom. *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413 (5th Cir. 2013). "If a dispute has … evanesced because of changed circumstances … it is considered moot." *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988) (internal citations omitted). Here, the claims against Governor Cuomo are premised on the assertion that he could hinder the Plaintiffs' publication of the CAD files in New York State. However, on the same day that Governor Cuomo issued his cease and desist letter, the federal court in Washington State issued the TRO preventing the Plaintiffs from publishing the CAD files, and now a preliminary injunction is in place accomplishing the same thing. Thus, even if Governor Cuomo's threatened sanction was sufficiently immediate to make this claim ripe, the claim was mooted by the federal court's issuance of the TRO.

## B. Standing

For similar reasons, the Plaintiffs also lack standing to sue Governor Cuomo.  In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court stated that threatened future injury must be "real and immediate; not conjectural or hypothetical" in order to demonstrate Article III standing.  504 U.S. at 559-61.  The Fifth Circuit likewise has been clear that "[w]hile the risk of injury may be founded on a likely and credible chain of events, *the injury must be certainly impending*.  Federal courts consistently deny standing when claimed anticipated injury has not been shown to be more than uncertain potentiality."  *Prestage Farms, Inc. v. Bd. of Supervisors*, 205 F.3d 265, 267-68 (5th Cir. 2000).  And that is the case here.  The "harm" to Plaintiffs allegedly caused by Governor Cuomo is nothing more than an "uncertain potentiality." This is especially so in light of the current federal injunction, since courts have "denied standing because the actions of an independent third party, who was not a party to the lawsuit, stood between the plaintiff and the challenged actions."  *Frank Krasner Enters. v. Montgomery Cty.*, 401 F.3d 230, 235 (4th Cir. 2005).  That is precisely true here.

For the above stated reasons, pursuant to F.R.C.P. Rule 12(b)(1), this action must be dismissed as against Governor Cuomo.

## CONCLUSION

In sum, the Court should grant Governor Cuomo's motion to dismiss for the following reasons:

- In accordance with Fifth Circuit precedent in *Stroman Realty*, Plaintiffs cannot establish personal jurisdiction over Governor Cuomo in Texas merely because he sent a cease and desist letter to Defense Distributed and later made a telephone call to Plaintiffs' counsel in Texas.  Hence, dismissal is required pursuant F.R.C.P. Rule 12(b)(2).

- Additionally, because venue is improper here, dismissal is required pursuant to F.R.C.P. Rule 12(b)(3).

- Finally, pursuant to F.R.C.P. Rule 12(b)(1), this action must be dismissed as related to Governor Cuomo because the action fails to present a live case or controversy and Plaintiffs lack standing to sue Governor Cuomo.

Thus, it is respectfully asserted that dismissal of Governor Cuomo from this action is required for all of these reasons.

Respectfully submitted,

**REESE MARKETOS LLP**

By: _/s/ Pete Marketos_
      Pete Marketos
       State Bar No. 24013101
       pete.marketos@rm-firm.com
      Tyler J. Bexley
       State Bar No. 24073923
       tyler.bexley@rm-firm.com
      750 N. Saint Paul St., Suite 600
      Dallas, Texas 75201-3201
      214.382.9810 telephone
      214.501.0731 facsimile

**ATTORNEYS FOR DEFENDANT**
**N.Y. GOVERNOR ANDREW M. CUOMO**

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

*Counsel for Plaintiffs*
Chad Flores, Esq.
Daniel N. Hammond, Esq.
Jonathan F. Mitchell, Esq.
Matthew A. Goldstein, Esq.
Mary Kathryn Raffetto
Joshua Michael Blackman, Esq.

*Counsel for Defendant Gurbir S. Grewal*
Kenneth W. Taber, Esq.
Ronald Casey Low, Esq.

*Counsel for Defendant Michael Feuer*
Connie K. Chan, Esq.
James P. Clark, Esq.
Jason P. Steed, Esq.
Michael M. Walsh, Esq.

*Counsel for Defendants Josh Shapiro and Thomas Wolf*
J. David Cabello, Esq.
John D. Kimball, Esq.

I hereby certify that on November 19, 2018, I served a copy of the foregoing on the following non-CM/ECF participant by electronic mail:

Counsel for Defendant Matthew Denn
Joseph Handlon, Esq.
Joseph.Handlon@state.de.us

/s/ Pete Marketos
Pete Marketos