IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| vs. | ) ) | Case No. 1:18-CV-637 |
| GURBIR GREWAL, in his official capacity as the State of New Jersey's Attorney General; MICHAEL FEUER, in his official capacity as the City of Los Angeles, California's City Attorney; ANDREW CUOMO, in his official capacity as the State of New York's Governor; MATTHEW DENN, in his official capacity as the State of Delaware's Attorney General; JOSH SHAPIRO, in his official capacity as the Commonwealth of Pennsylvania's Attorney General; and THOMAS WOLF, in his official capacity as the Commonwealth of Pennsylvania's Governor, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

**DEFENDANTS GURBIR S. GREWAL AND MATTHEW DENN'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), 12(b)(3) AND 12(b)(6) AND 28 U.S.C. § 1406(a) AND 1367(c)(3)**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................. 1

FACTUAL BACKGROUND.................................................... 2

ARGUMENT .................................................................. 5

I.     The Court Should Dismiss This Lawsuit for Lack of Personal Jurisdiction...................... 5

II.    The Court Should Also Dismiss this Lawsuit for Lack of Subject Matter
       Jurisdiction......................................................................... 7

       A.     Plaintiffs Have Not Alleged an Injury-in-Fact........................................ 8

       B.     Plaintiffs Have Not Alleged the Requisite Causal Connection Between an
              Alleged Injury and the NJAG's or the DAG's Conduct ....................................... 11

       C.     Plaintiffs' Alleged Injuries are Not Redressable ................................... 12

III.   This Court Should Also Dismiss the Complaint Under FRCP 12(b)(6) for Failure
       to State a Claim......................................................................... 13

       A.     Plaintiffs Fail to Adequately Allege the Deprivation of Any Constitutional
              Rights Under 42 U.S.C. § 1983 ................................................... 13

              1.     Plaintiffs Fail to Allege A Violation of the First Amendment................. 13

              2.     Plaintiffs Fail to Allege a Violation of Their Right to Keep and
                     Bear Arms ................................................................ 15

              3.     Plaintiffs Fail to Allege Any Equal Protection Violation ...................... 16

              4.     Plaintiffs Fail to Allege Any Due Process Violation............................... 17

              5.     Plaintiffs Fail to Allege Any Violation of the Commerce Clause ........... 18

              6.     Plaintiffs Fail to Allege a Supremacy Clause Violation ........................ 19

       B.     Plaintiffs' Tortious Interference with Contract Claims Fail as a Matter of
              Law ........................................................................... 20

CONCLUSION................................................................... 20

TABLE OF AUTHORITIES

Cases

*Air Line Pilots Ass'n, Int'l v. UAL Corp.,*
   874 F.2d 439 (7th Cir. 1989) ................................................................................................ 19

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ................................................................................................................ 7

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997) ................................................................................................................ 9

*Beeler v. Rounsavall*,
   328 F. 3d 813 (5th Cir. 2003) ............................................................................................ 17

*Biven ex rel. Ky. v. Stewart*,
   No. 3:18-CV-00008-GFVT, 2018 WL 3973409 (E.D. Ky. Aug. 20, 2018) ....................... 9, 12

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) .............................................................................................................. 18

*Camden Cty., Bd. Of Chosen Freeholders v. Beretta U.S.A. Corp.*,
   123 F. Supp. 2d 245 (D.N.J. 2000) ...................................................................................... 19

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................................................. 10

*Commodity Futures Trading Comm'n v. Vartuli*,
   228 F.3d 94 (2d Cir. 2000) ............................................................................................ 13, 14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .............................................................................................................. 5

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ........................................................................................................ 15, 16

*Fletcher v. Haas*,
   851 F. Supp. 2d 287 (D. Mass. 2012) ................................................................................... 19

*Giboney v. Empire Storage & Ice. Co.*,
   336 U.S. 490 (1949) .............................................................................................................. 15

*Greer v. W. Virginia*,
   No. 1:16-cv-142, 2017 WL 9516626 (N.D. W. Va. July 19, 2017), *aff'd*, 710 F. App'x
   131 (4th Cir. 2018) ................................................................................................................ 19

*H.P. Hood & Sons, Inc. v. Du Mond*,
   336 U.S. 525 (1949) ............................................................................................... 18

*Kassel v. Consol. Freightways Corp. of Del.*,
   450 U.S. 662 (1981) ............................................................................................... 18

*Levingston v. T G C Indus., Inc.*,
   No. CIV-A-08-1336, 2009 WL 249724 (W.D. La. Jan. 12, 2009) ........................... 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................... passim

*Monkton Ins. Services, Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) .............................................................................. 5, 6

*Muncy v. City of Dallas, Tex.*,
   335 F.3d 394 (5th Cir. 2003) ................................................................................ 18

*Munn v. Ocean Springs, Miss.*,
   763 F.3d 437 (5th Cir. 2014) ................................................................................ 17

*N.Y. State Rifle & Pistol Ass'n v. City of New York*,
   883 F.3d 45 (2d Cir. 2018) ................................................................................... 18

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
   700 F.3d 185 (5th Cir. 2012) ................................................................................ 16

*Nat'l Treasury Employees Union v. U.S. Dep't of Treasury*,
   25 F.3d 237 (5th Cir. 1994) .................................................................................. 10

*Parude v. City of Natchez*,
   72 Fed. App'x 102 (5th Cir. 2003) ....................................................................... 17

*Paul v. Davis*,
   424 U.S. 693 (1976) ............................................................................................... 13

*Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*,
   29 S.W.3d 74 (Tex. 2000) ..................................................................................... 20

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ........................................................................................ 10, 12

*State of Michigan v. Meese*,
   853 F.2d 395 (6th Cir. 1988) ................................................................................ 12

*Stroman Realty, Inc. v. Wercinski*,
   513 F.3d 476 (5th Cir. 2008) .......................................................................... 2, 6, 7

*United States v. Alvarez*,
   567 U.S. 709 (2012) ........................................................................................ 15

*United States v. Irving*,
   509 F.2d 1325 (5th Cir. 1975) ....................................................................... 15

*United States v. Richards*,
   755 F.3d 269 (5th Cir. 2014) ......................................................................... 15

*Warth v. Seldin*,
   422 U.S. 490 (1975) ......................................................................................... 8

*Washington, et al. v. U.S. Dep't of State, et al.*,
   318 F. Supp. 3d 1247 (W.D. Wash. 2018) ............................................ 1, 9, 11

*Wayte v. United States*,
   470 U.S. 598 (1985) ....................................................................................... 17

*Wendt v. 24 Hour Fitness USA, Inc.*,
   821 F.3d 547 (5th Cir. 2016) ........................................................................... 8

<u>Constitution</u>

United States Constitution
   Article III .......................................................................................... 2, 7, 8, 12
   First Amendment ........................................................................... 8, 13, 14, 15
   Second Amendment ............................................................................... 15, 16
   Fourteenth Amendment ............................................................................... 17

<u>Statutes and Codes</u>

Delaware Code Annotated
   Title 11, section 1441 ................................................................................ 3, 16
   Title 11, sections 1448(a)(1)-(7) .................................................................. 16
   Title 11, section 1448A .................................................................................. 3
   Title 11, section 1459(a) ............................................................................ 3, 4

New Jersey Statutes Annotated
   Section 2C:39-9 .............................................................................................. 3
   Section 2C:58-3 ........................................................................................ 3, 16

United States Code
   Title 28, section 1367(c)(3) ........................................................................... 1
   Title 28, section 1406(a) ................................................................................ 1
   Title 42, section 1983 ......................................................................... 6, 13, 18

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure

Rule 12(b)(1)................................................................................................... 1, 7
Rule 12(b)(2)................................................................................................... 1, 5
Rule 12(b)(3)....................................................................................................... 1
Rule 12(b)(6)................................................................................................. 1, 13

<u>Other Authorities</u>

Emma Platoff and Kathryn Lundstrom, *Blocked from giving away 3D-printed gun
blueprints, Texas man says he's selling them instead*, THE TEXAS TRIBUNE (Aug. 28,
2018) .................................................................................................................. 15

*Meet the man who might have brought on the age of 'downloadable guns,'* THE
WASHINGTON POST (July 18, 2018) ..................................................................... 3

The New Jersey Attorney General, Gurbir S. Grewal ("NJAG"), and the Delaware

Attorney General, Matthew Denn ("DAG"), hereby move for dismissal of the claims asserted

against them, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and

12(b)(6).  The NJAG and the DAG further move for dismissal under 28 U.S.C. §§ 1406(a) and

1367(c)(3).

## PRELIMINARY STATEMENT

This is, at bottom, a transparent attempt by Plaintiffs Defense Distributed and Second

Amendment Foundation (together, "Plaintiffs") to block legitimate — and vital — law

enforcement efforts.  While Plaintiffs characterize themselves as "publishers" of "essential

information" with "technical, scientific, artistic, and political value" (*see* First Amended

Complaint ("FAC") ¶¶ 10-13), they admit, and indeed publicly celebrate, the fact that what they

develop, and seek to widely disseminate, are electronic files for the direct 3D printing of guns —

making dangerous, illegal weapons available to terrorists, domestic abusers, felons, and anyone

else disqualified from gun ownership.  *See, e.g.*, *id.* ¶ 32.

The FAC suffers multiple fatal flaws that warrant dismissal.  First, as part of ongoing

litigation involving multiple State Attorneys General and the federal government, another U.S.

District Court has *already* effectively blocked Plaintiffs' ability to disseminate gun printing files.

*Washington, et al. v. U.S. Dep't of State, et al.*, 318 F. Supp. 3d 1247 (W.D. Wash. 2018)

(hereinafter, the "Washington Action").  Second, this Court has no personal jurisdiction over the

NJAG or the DAG.  This Court cannot exercise personal jurisdiction over the NJAG and the

DAG because they both lack the requisite "minimum contacts" with Texas.  In fact, the only

alleged contact with Texas is that the NJAG and the DAG each sent Defense Distributed "cease-

and-desist" letters — conduct the Fifth Circuit has expressly held, in the same out-of-state law

enforcement context, does not satisfy due process requirements for personal jurisdiction in a Texas federal court. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 483-84 (5th Cir. 2008). Third, Plaintiffs' claims also fail because no "case or controversy" exists here sufficient to confer Article III standing upon Plaintiffs. And, finally, Plaintiffs fail to state any claim – and cannot sufficiently allege – that they have been deprived of any Constitutional right. Simply put, Plaintiffs have no protected right to disseminate 3D printable firearms files in violation of New Jersey and Delaware state law. Accordingly, Plaintiffs' claims against the NJAG and the DAG should be dismissed.

## FACTUAL BACKGROUND

3D printing, sometimes known as "additive manufacturing," is a computer-controlled method of building three-dimensional objects out of materials, such as plastic, based upon "instructions" contained in electronic data files. *See, e.g.*, FAC ¶¶ 30-34. Plaintiff Defense Distributed develops and distributes such files for the public to download, enabling anyone with a 3D printer to "print" functional guns designed by Defense Distributed. *See id.*

Defense Distributed's website, Defcad.com, has operated as an unregulated file-sharing website for the benefit of the 3D gun printing community — including individuals, such as members of Second Amendment Foundation ("SAF"), who seek to use the website to download and share gun files. The 3D printed firearms they produce do not have serial numbers, do not trigger metal detectors, are not subject to background checks, and are otherwise untraceable. The NJAG, the DAG, and many other law enforcement authorities believe that the availability of such untraceable firearms to *anyone* — including those statutorily prohibited from possessing firearms — presents a serious threat to public health and safety. Yet, Defense Distributed's

founder, Cody Wilson, celebrates the potential to achieve his long-standing goal of giving anyone and everyone access to such untraceable guns.[1]

In 2015, Defense Distributed and SAF sued the U.S. State Department and various State Department officials (collectively, the "State Department"), asserting the purported right to disseminate their electronic files on the internet.  The Obama Administration and, at least initially, the Trump Administration, took the position that the dissemination of such files constituted an illegal gun export.  Surprisingly, however, in late June 2018, the State Department reversed course, settling the litigation with Defense Distributed, and agreeing to modify certain federal regulations pertaining to the exportation of arms (the "Settlement Agreement").  *See* FAC ¶¶ 27-46 and Exhibit A.

In the wake of that Settlement Agreement, many state law enforcement authorities, including the NJAG and the DAG, took actions to prevent the dissemination of Defense Distributed's 3D printable firearm files.  New Jersey, for example, already had statutes governing the purchase, possession, and manufacture of firearms.  Among other things, those statutes set forth licensing requirements and prohibit certain categories of individuals (such as convicted criminals, the mentally ill, and the drug-dependent) from possessing firearms.  *See* N.J. Stat. Ann. § 2C:58-3; Washington Action, Compl. ¶¶ 96-98.  Delaware law similarly regulates those activities.  *See* Del. Code Ann. tit. 11, §§ 1441, 1448A, 1459(a).

With respect to 3D printable guns in particular, since November 8, 2018, New Jersey expressly prohibits the unlicensed manufacturing or facilitation of manufacturing of a firearm using a 3D printer, as well as the online distribution of digital codes for such purposes.  *See* N.J. Stat. Ann. § 2C:39-9 as amended.  Delaware law likewise prohibits the possession or

---

[1] *See, e.g.*, Meet the man who might have brought on the age of 'downloadable guns,' THE WASHINGTON POST (July 18, 2018).

transportation of a firearm without a serial number or whose origin is otherwise unclear.  *See* Del. Code Ann. tit. 11, § 1459(a).

Because Defense Distributed's widespread dissemination of 3D printable firearm files posed a direct and immediate threat to public health and safety, the NJAG, the DAG, and other Attorneys General, sent cease-and-desist letters to Defense Distributed, indicating that they would initiate legal action to prevent publication of their 3D printable firearm files.  *See, e.g.*, FAC ¶¶ 56-58, 75-87, 95-101.  The NJAG and the DAG engaged in no conduct in Texas, however, beyond issuing these cease-and-desist letters to Defense Distributed, and the FAC does not allege otherwise.

Plaintiffs filed the instant action in this Court on July 29, 2018, just as some Attorneys General, including the NJAG, began filing actions in their own jurisdictions – jurisdictions with a true interest in resolving matters that so directly impact the health and safety of their citizens.[2] The NJAG, the DAG, and 17 other state Attorneys General also joined the Washington Attorney General in the Washington Action, suing Defense Distributed, SAF, Conn Williamson (an individual member of SAF), and the State Department.

On July 31, 2018, the Washington Court issued a temporary restraining order preventing the State Department from implementing certain terms of the Settlement Agreement, specifically the temporary revision of the United States Munitions List to permit Defense Distributed's

---

[2] On July 30, 2018, the NJAG filed a Complaint and an Order to Show Cause seeking, among other things, the issuance of a temporary restraining order enjoining Defense Distributed and Cody Wilson from disseminating its 3D printable firearm files ("NJAG Action").  On July 31, 2018, the Court entered an Order reflecting the agreement of Defense Distributed and Cody Wilson to refrain from uploading any additional 3D printable firearm files to their websites and to block access to such websites from New Jersey IP addresses during the pendency of the action.  On August 27, 2018, Defense Distributed and Cody Wilson removed the NJAG Action to the District of New Jersey.  On September 27, 2018, the NJAG Action was administratively terminated without prejudice pending conclusion of the proceedings in the Washington Action.

publication of 3D printable firearm files.  On August 27, 2018, the District Court issued a preliminary injunction extending that relief.  Defense Distributed has therefore been blocked from legally disseminating its files since July 31, 2018.

## ARGUMENT

### I.      The Court Should Dismiss This Lawsuit for Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of making a *prima facie* showing that personal jurisdiction is proper.  *E.g., Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014).  "To establish that personal jurisdiction is proper, the plaintiff must show that the nonresident defendant 'purposely availed [itself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Id.* (citation omitted).  "Sufficient minimum contacts will give rise to either specific or general jurisdiction." *Id.*  (citation omitted).  Plaintiffs can establish neither here.

As the Supreme Court has explained, the question for general jurisdiction is whether the defendant's "'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted).  Here, the FAC concedes, as it must, that the NJAG and the DAG are both out-of-state residents, and it contains no allegations of any "continuous and systematic" affiliations which would render the NJAG or the DAG "at home" in Texas.

With respect to specific jurisdiction, the Fifth Circuit applies a three-step analysis:  "(1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."  *Monkton Ins. Services*, 768 F.3d at 433 (citation omitted).  Plaintiffs bear

the burden of establishing the first two prongs; only if they are successful doing so does the burden shift to defendant to establish that jurisdiction would somehow nonetheless be unfair or unreasonable.  *Id.*  Further, "[n]or can the plaintiff's own contacts with the forum be used to demonstrate contacts by the defendant."  *Id.* (citation omitted).  Thus, the bare fact that Defense Distributed is a Texas resident does not confer jurisdiction over the NJAG or the DAG.  *See id.*

Here, the FAC contains no allegations that the NJAG or the DAG purposely directed their activities toward Texas or that the NJAG or the DAG availed themselves of the privileges of conducting activities in Texas.  To the contrary, the FAC concedes that the NJAG's and the DAG's activities were *New Jersey-* and *Delaware*-centric in nature.  The NJAG's and DAG's only alleged contacts with Texas — the transmission of cease-and-desist letters to Defense Distributed — were entirely concerned with barring the dissemination of 3D files that would enable New Jersey and Delaware citizens to unlawfully print weapons that are illegal in their respective states, not with any activities in Texas.  *See* FAC ¶¶ 76-80 and Exhibits E, H.

The Fifth Circuit declined to find specific jurisdiction in a case with strikingly similar facts.  In *Stroman Realty, Inc*, plaintiff, a Texas-based real estate company, sued the Commissioner of the Arizona Department of Real Estate, in her official capacity, seeking injunctive and declaratory relief under 42 U.S.C. § 1983, and alleging that her regulatory action violated the Commerce Clause.  513 F.3d at 480-81.  Like the NJAG and the DAG in this case, the Arizona Commissioner's sole contact with Texas was a cease-and-desist order and correspondence with the plaintiff's attorneys.  *Id.* at 484.  In *Stroman Realty*, the Fifth Circuit held that, in sending a cease-and-desist letter to a Texas resident, the Commissioner had not "'purposefully availed' herself of the benefits of Texas law like someone actually 'doing business'" within the state.  *Id.*; *see also Levingston v. T G C Indus., Inc.*, No. CIV-A-08-1336,

6

2009 WL 249724, at *2-3 (W.D. La. Jan. 12, 2009) (finding that a district court in Louisiana did not have personal jurisdiction over the Attorney General of Texas where plaintiff's complaint failed to demonstrate that the Attorney General of Texas had the requisite minimum contacts with Louisiana).

The *Stroman Realty* court's reasoning applies with equal force to this case. Here, the NJAG's and the DAG's activities relative to Defense Distributed were not "directed toward" Texas. Nor does Texas have any interest in evaluating the validity of New Jersey and Delaware law enforcement efforts to protect New Jersey and Delaware residents from illegal activities in those states. As in *Stroman*, the NJAG's and the DAG's activities here were limited to issuing cease-and-desist letters. Thus, as in *Stroman*, exercising jurisdiction over the NJAG or the DAG would violate their right to due process. Accordingly, the claims against the NJAG and the DAG should be dismissed for lack of personal jurisdiction.[3]

## II.    The Court Should Also Dismiss this Lawsuit for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. While Article III of the Constitution grants the federal judiciary authority to adjudicate "cases" and "controversies," federal courts "have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (citation omitted). As the Supreme Court has repeatedly held, an "'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Id.* at 90-91 (citation omitted).

---

[3] Alternatively, because none of the events that give rise to the claims here occurred in this district and this Court does not have personal jurisdiction over Defendants, venue is not proper under 28 U.S.C. § 1391 and this case should be transferred to any district in which it could have been brought pursuant to Federal Rule of Civil Procedure 12(b)(3), such as New Jersey in the case of the NJAG or Delaware in the case of the DAG.

Plaintiffs cannot establish this Court's jurisdiction over a "case" or "controversy" because they cannot show that they have standing to maintain an action and because their claims here are moot.  Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To establish Article III standing, the plaintiff must show, *first*, that he has suffered an "injury in fact," that is, "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"  *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 550 (5th Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  *Second*, there must be a "causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  *Lujan*, 504 U.S. at 560 (citation and alterations omitted).  *Third*, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (citations omitted).  Plaintiffs here cannot meet any of these three requirements.

## A.      Plaintiffs Have Not Alleged an Injury-in-Fact

Plaintiffs allege that the NJAG and the DAG, along with the other Defendants, embarked on a course of conduct aimed at "coercively" interfering with Defense Distributed's supposed right to disseminate its 3D printable firearm files on the internet (and with SAF's supposed right to receive such files), in violation of Plaintiffs' Constitutional rights, and causing damages in excess of $75,000 per year.  *See, e.g.*, FAC ¶¶ 56-87, 95-101, 120-84.  But, as Plaintiffs acknowledge, on August 27, 2018, the Washington Court issued a preliminary injunction effectively blocking Defense Distributed's ability to legally disseminate the files.  *Id.*, ¶ 63.  In enjoining the federal government's planned modification of certain arms export regulations, the Washington Court found that "the irreparable burdens on the private defendants' First

Amendment rights are dwarfed by the irreparable harms the States are likely to suffer if the existing restrictions are withdrawn and that, overall, the public interest strongly supports maintaining the status quo throughout the pendency of this litigation." *Washington Action*, 318 F. Supp. 3d at 1264.  Accordingly, at present, Defense Distributed cannot lawfully disseminate its files and therefore cannot legitimately allege any "invasion of a legally protected interest" resulting from the actions of the NJAG and/or the DAG.  *See Lujan*, 504 U.S. at 560.

The recent case of *Biven ex rel. Ky. v. Stewart*, No. 3:18-CV-00008-GFVT, 2018 WL 3973409 (E.D. Ky. Aug. 20, 2018), presented an analogous situation.  There, the Commonwealth of Kentucky sought a declaratory judgment that its use of a waiver to limit its participation in the federal Medicaid program was in compliance with federal legal mandates.  *Id.* at *2. Defendants, who were Medicaid recipients, had previously challenged the legality of the HHS Secretary's approval of the waiver in a separate action in the U.S. District Court for the District of Columbia, and the D.C. District determined that the Secretary had in fact acted arbitrarily and capriciously in granting the waiver, remanding the matter to HHS.  *Id.*   In finding that Kentucky had no standing to pursue its separate declaratory judgment action in the Eastern District of Kentucky, the court agreed with Defendants that trying to "implement[ ] a waiver that [might be] declared unlawful is not a legally protected interest."  *Id.* at *4.

In the instant case, the Washington Court has gone a step further, ruling decisively on the potential illegality of Defense Distributed's dissemination of its 3D printable firearm files, and enjoining the very regulatory action that would have permitted it.  The fact that the Washington Court's preliminary injunction was issued after Plaintiffs filed this action is, of course, immaterial; injury to a legally-protected interest must be present throughout this litigation to confer standing.  *See, e.g.*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)

("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." (citation omitted)).

For these same reasons, Plaintiffs likewise cannot allege here that their claimed injury is "actual or imminent," as opposed to merely "'conjectural' or 'hypothetical.'"  *See Lujan*, 504 U.S. at 560.  The Washington Court's issuance of a preliminary injunction renders Plaintiffs' alleged injuries to a "legally protected interest" clearly conjectural and hypothetical, and dependent on further decisions of that other court.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 413 (2013) ("'[a]llegations of *possible* future injury' are not sufficient" (citation omitted); courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers" — including other courts — "will exercise their judgment.").

Nor can Plaintiff SAF establish associational standing to bring suit on behalf of its members.  As the Supreme Court has held, an association "can establish standing only as representatives of those of their members who have been injured in fact, and thus could have brought suit in their own right."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).  An organization lacks standing, however, if it fails to adequately "allege[] that there is a threat of . . . injury to any individual member of the association," and thus "fail[s] to identify even one individual" member with standing.  *Nat'l Treasury Employees Union v. U.S. Dep't of Treasury*, 25 F.3d 237, 242 (5th Cir. 1994).

Here, the FAC does not allege that any particular individual members of SAF suffered injuries-in-fact; it only vaguely alleges that "[s]ome SAF members reside in the Defendants' jurisdictions and *seek* to receive" Defense Distributed's files and utilize its platform.  FAC ¶ 13 (emphasis added).  But, the Washington Court's preliminary injunction precludes that.

Additionally, any notion that these unidentified SAF members[4] have suffered "actual or imminent" injury is flatly contradicted by Plaintiffs' own allegations that "countless other members of the public freely engage in the same or similar speech" as that which the NJAG and the DAG are trying to restrict, and that there are "many similarly-situated persons who publish the *Defense Distributed 1* Files and similar files on the internet." FAC ¶¶ 5, 72, 143. The FAC specifically alleges that "independent publishers unaffiliated with Defense Distributed" have not ceased publication and, "[t]o this day, they continue to publish *Defense Distributed I* files and files like them to generally-accessible internet websites" that can be "located by a simple Google search." *Id.*, ¶¶ 54-55. Plaintiffs' thus allege that SAF members may still "seek" and, in fact, access the files in question; it follows that they, too, have suffered no "concrete and particularized," or "actual or imminent," injury.

### B.   Plaintiffs Have Not Alleged the Requisite Causal Connection Between an Alleged Injury and the NJAG's or the DAG's Conduct

Plaintiffs have not, and cannot, demonstrate any injury "'fairly traceable to the challenged action of the defendant, and not. . . the result of the independent action of some third party not before the court.'" *See Lujan*, 504 U.S. at 560 (citation and alterations omitted). To the contrary, the FAC makes clear that the NJAG's and the DAG's actions did *not* cause Defense Distributed to cease dissemination of their 3D printable firearm files; the Washington Court did. While Plaintiffs allege that NJAG is "actively engaged in an ongoing coercive campaign to stop Defense Distributed's publication of [the files]," (FAC ¶¶ 75-87), the FAC clearly alleges that Defense Distributed ceased dissemination only after *the court in the Washington Action* issued a temporary restraining order on July 31, 2018. FAC ¶¶ 53-62. The FAC also alleges only two

---

[4] The FAC refers to SAF member Conn Williamson in various places, but does not allege that he suffered any "concrete and particularized" injury. Further, Conn Williamson is a citizen of Washington State and, as such, does not live in any of the Defendants' jurisdictions.

non-judicial actions taken by the NJAG:  NJAG's July 26, 2018 cease-and-desist letter to Defense Distributed and July 30, 2018 letters to Defense Distributed's internet service providers, DreamHost and Cloudflare.  But Defense Distributed's dissemination of the 3D printable firearm files continued uninterrupted until the issuance of the July 31, 2018 temporary restraining order in the Washington Action.  *Id.*, ¶¶ 52-62, 75-87.  The same reasoning applies to the allegations against the DAG.  *Id.*, ¶¶ 95-101.

It is fundamental that the causation requirement of Article III standing is unmet when the harm alleged is "the result of the independent action of some third party not before the court." *See Lujan*, 504 U.S. at 560 (citation omitted).  And, when that third party is itself a court, the remedy is to appeal that court's decision through the court system.  *See, e.g.*, *State of Michigan v. Meese*, 853 F.2d 395, 398 (6th Cir. 1988) (finding that the Court lacked subject matter jurisdiction where the complained-of injury resulted from a state court decision and not any direct action taken by defendant).  Moreover, the NJAG's and the DAG's participation in the Washington Action, which resulted in the issuance of a temporary restraining order and then a preliminary injunction, hardly constitutes injury "resulting from the putatively illegal action" of the NJAG or the DAG.  *See Simon*, 426 U.S. at 41.

### C.  Plaintiffs' Alleged Injuries are Not Redressable

Finally, prevailing in this action would not redress Plaintiffs' supposed injury, because the court in the Washington Action will rule on the merits of that lawsuit regardless of this Court's resolution of this case.  Thus, prevailing here would not prevent the result Plaintiffs say they seek to avoid.  *See Biven,* 2018 WL 3973409, at *5  (holding that Plaintiffs' claimed injury

was not redressable in the Kentucky district court because of ongoing parallel litigation in

another district).

III.   **This Court Should Also Dismiss the Complaint Under FRCP 12(b)(6) for Failure to State a Claim**

  A.   **Plaintiffs Fail to Adequately Allege the Deprivation of Any Constitutional Rights Under 42 U.S.C. § 1983**

To prevail on their § 1983 claims, Plaintiffs must prove that a person acting under the

color of state law deprived them of a right secured by the Constitution or the laws of the United

States.  *See Paul v. Davis*, 424 U.S. 693, 713 (1976).

Here, Plaintiffs' § 1983 claims (FAC Counts One through Six, ¶¶ 120-73) all ultimately

suffer from the same fatal flaw:  Plaintiffs do not, and cannot, actually challenge the

Constitutionality of the state firearms laws that the NJAG and the DAG are seeking to enforce,

nor the method of their enforcement.  To the contrary, Plaintiffs are attempting to invoke the

protection of the Constitution to further criminal conduct in violation of those valid state laws.

In such circumstances, Plaintiffs cannot allege *any* Constitutional deprivations, and their claims

must be dismissed.

   1.   Plaintiffs Fail to Allege A Violation of the First Amendment

Plaintiffs allege that the NJAG and the DAG have unconstitutionally abridged Plaintiffs'

First Amendment freedoms.  FAC ¶¶ 120-30.  But, these claims are incorrectly premised on the

assumption that the First Amendment protects Plaintiffs' activities in the first instance.  First,

Defense Distributed's 3D printable firearms files do not qualify as speech so as to even trigger

First Amendment protections.  *Commodity Futures Trading Comm'n v. Vartuli*, 228 F.3d 94 (2d

Cir. 2000), makes clear that the printable gun code at issue in this case is simply not speech.  The

*Vartuli* case involved a computer trading program which, depending on market indicators,

instructed customers to buy or sell futures.  *Id*. at 98-99.  Significantly, the program was

"'automatic,' with 'NO complicated rules to follow . . . And NOTHING to interpret.'" *Id*. at 111.  Humans were instructed to mechanically follow the instructions conveyed to them by the program, with no second-guessing.  *Id*.  As a result, the Second Circuit determined that the program's communications were not speech, and therefore not entitled to First Amendment protection, precisely because they required mechanical adherence and did not advance any particular values or truths.  *Id*.

Plaintiffs' 3D printable firearms files are even less likely than the program in *Vartuli* to implicate free speech concerns.  First, as in *Vartuli*, the 3D printable firearms files at issue here require the mechanical following of instructions.  They do not convey instructions to a human, who would then have to take some action to "buy" or "sell" or construct a gun.  Instead, a .stl file instructs another inanimate object — the 3D printer — to manufacture a gun.

Additionally, *Vartuli* at least involved comprehensible language (language commands that the Court ultimately found were not entitled to First Amendment protection), whereas the 3D printable firearms files at issue here do not.  The 3D printable firearms files do not generate comprehensible language to be read or followed by human beings at all.  They simply communicate with another inanimate object to direct the manufacture of a dangerous weapon.

Moreover, while the program in *Vartuli* did not implicate First Amendment values, the 3D printable firearms files at issue here actively undermine First Amendment values.  The firearms files do not seek to achieve "social stability" — instead they seek to place untraceable weapons in the hands of, among others, domestic abusers and terrorists which undermines comprehensive gun legislation passed by duly elected New Jersey and Delaware officials.

Even assuming that Defense Distributed's 3D printable firearms files did qualify as speech under the First Amendment (which they do not), the Supreme Court, however, has long

recognized an exception to the First Amendment for speech integral to criminal conduct, holding that expression constituting a violation of a valid, non-speech-related law is plainly not protected by the First Amendment.  *See, e.g., United States v. Alvarez*, 567 U.S. 709, 717 (2012) (*citing Giboney v. Empire Storage & Ice. Co.*, 336 U.S. 490 (1949) (refusing to extend First Amendment protection to expressive picketing activities that constituted a violation of valid state anti-trade restraint law)); *United States v. Irving*, 509 F.2d 1325, 1329 (5th Cir. 1975) (holding that the First Amendment does not extend to illegal speech); *United States v. Richards*, 755 F.3d 269 (5th Cir. 2014) (reversing the district court and holding that distributing animal crush videos was unprotected speech).

Here, the state firearms laws the NJAG and the DAG seek to effectuate are valid, as discussed below, and never effectively challenged by Plaintiffs.  Plaintiffs' efforts to disseminate Defense Distributed's 3D printable firearms files are therefore "integral to criminal conduct," and not protected expression under the First Amendment.

2. <u>Plaintiffs Fail to Allege a Violation of Their Right to Keep and Bear Arms</u>

Plaintiffs next allege that the NJAG's and the DAG's enforcement efforts violate their Second Amendment rights to make and acquire arms, which they assert are "part and parcel" of the right to keep and bear arms, as construed in *District of Columbia v. Heller*, 554 U.S. 570 (2008).  FAC ¶¶ 131-38.  But, the Supreme Court was clear in *Heller* that Second Amendment rights are not unlimited, specifically holding that "*nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms*."[5]  *Id.* at 626-27 (emphasis added).  The Court added: "We identify these *presumptively lawful*

---

[5] While Defense Distributed initially gave its 3D printable firearms files away for free, it is now selling such files to individuals not in New Jersey and Delaware.  *See* Emma Platoff and Kathryn Lundstrom, *Blocked from giving away 3D-printed gun blueprints, Texas man says he's selling them instead*, THE TEXAS TRIBUNE (Aug. 28, 2018).

regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* n.26 (emphasis added).  Not surprisingly, many post-Heller decisions have upheld federal and state laws regulating the manufacture and sale of firearms.  *See,* e.*g., Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 207 (5th Cir. 2012) (upholding federal law prohibiting federal firearms licensees from selling handguns to persons under the age of 21).

The unrestricted dissemination of, and access to, Defense Distributed's 3D printable firearm files flagrantly violates the "presumptively lawful" laws of New Jersey and Delaware. Both New Jersey and Delaware have detailed statutory regimes governing who can purchase, sell, and manufacture firearms.  *See* N.J. Stat. Ann. 2C:58-3; Del. Code Ann. tit. 11, §§ 1441 and 1448(a)(1)-(7); Washington Action Compl. ¶¶ 96-98.  Among other requirements, gun manufacturers must each register with the proper state authorities; and the purchase of firearms is prohibited for convicted criminals and those who are drug dependent or mentally ill (specifically recognized by *Heller* as presumptively lawful "longstanding prohibitions" (554 U.S. at 626)), and those for whom the issuance of a permit to purchase a handgun would not be in the interests of public health, safety, or welfare.  *See* Washington Action Compl. ¶¶ 96-98.

The distribution of Defense Distributed's 3D printable firearms files, by contrast, would enable *any* individual to manufacture guns at home, without a license, using a 3D printer — in total disregard of these valid New Jersey and Delaware laws.  There is no sound argument under *Heller,* or any other Second Amendment jurisprudence, that Plaintiffs have a Constitutional or statutory entitlement to violate these state laws

3.   Plaintiffs Fail to Allege Any Equal Protection Violation

Plaintiffs misguidedly allege that the NJAG's and the DAG's enforcement activities unconstitutionally target Defense Distributed, but not all "similarly situated persons engaged in

publication of *Defense Distributed I* Files."  *See* FAC ¶¶ 139-46.  Plaintiffs also suggest that the NJAG and the DAG simply "dislike" Defense Distributed.  *Id.* ¶¶ 5, 143.

Even if these unsubstantiated allegations were true, Plaintiffs' contention that the Equal Protection Clause has been violated as a result is totally at odds with Fourteenth Amendment jurisprudence.  "To successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right."  *Parude v. City of Natchez*, 72 Fed. App'x 102, 104 (5th Cir. 2003) (citation omitted); *see also Beeler v. Rounsavall*, 328 F. 3d 813, 816-18 (5th Cir. 2003).  The Fifth Circuit has never, in fact, held that personal vindictiveness would be enough to support an equal protection claim, without some other class-based discrimination.  *See Parude*, 72 Fed. App'x at 104-05.   Nor can the NJAG or the DAG reasonably be expected to prosecute all "similarly situated persons."  That reality hardly renders their enforcement efforts against Plaintiffs improperly selective.  *See Parude*, 72 Fed. App'x at 105; *Wayte v. United States*, 470 U.S. 598 (1985).

### 4.   Plaintiffs Fail to Allege Any Due Process Violation

Plaintiffs allege violations of the Due Process Clause of the Fourteenth Amendment on grounds of vagueness, overbreadth, and deprivation of property.  FAC ¶¶ 147-56.  But none of these claims are supported by legally sufficient factual allegations.

With respect to vagueness, the NJAG's and the DAG's conduct neither "fails to provide [people] of ordinary intelligence fair notice of what is prohibited [n]or . . . authorizes . . . seriously discriminatory enforcement."  *Munn v. Ocean Springs, Miss.*, 763 F.3d 437, 439 (5th Cir. 2014).  To the contrary, the New Jersey and Delaware statutory regimes regulating the manufacture and sale of firearms make abundantly clear what is forbidden, and give fair notice of that.  *See* FAC ¶ 151.  Moreover, to apply the overbreadth doctrine, a plaintiff must show that

the alleged "overbreadth of a statute [is] not only [] real, but substantial . . . judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Notably, Plaintiffs advance no such allegations in the FAC.

Finally, as discussed *supra*, Plaintiffs simply have no legally protected property interest of which they are being deprived because Plaintiffs already have been precluded from disseminating the 3D printable firearms files by the July 31, 2018 temporary restraining order in the Washington Action.  *See, e.g.*, *Muncy v. City of Dallas, Tex.,* 335 F.3d 394, 396 (5th Cir. 2003) (dismissing § 1983 claims of substantive and procedural due process because plaintiffs could not demonstrate property interest in their continued employment).

5.    Plaintiffs Fail to Allege Any Violation of the Commerce Clause

Plaintiffs' reliance on the dormant Commerce Clause likewise has no merit.  *See* FAC ¶¶ 157-66.  Nothing Plaintiffs allege or cite supports the unheard-of position that the Commerce Clause somehow permits Plaintiffs to facilitate the unlawful trafficking of firearms in violation of state law.  The Supreme Court has, in fact, consistently supported states' rights "to impose even burdensome regulations in the interest of local health and safety," *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949), with such regulations subject to a "strong presumption of validity." *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 670 (1981).

Here, the allegations of the FAC fail to demonstrate, even remotely, that Plaintiffs can successfully challenge the validity of the operative New Jersey and Delaware firearms laws as public safety measures.  It necessarily follows, then, that Plaintiffs fail to allege any unconstitutional burden on interstate commerce.  *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45, 65 (2d Cir. 2018) (holding that regulation of right to take guns to out-of-state firing range did not violate dormant commerce clause); *Camden Cty., Bd. Of Chosen Freeholders v. Beretta U.S.A.*

*Corp.*, 123 F. Supp. 2d 245, 253-55 (D.N.J. 2000) (rejecting claim that regulation of gun distribution constituted an unconstitutional violation of the Commerce Clause).

6.     <u>Plaintiffs Fail to Allege a Supremacy Clause Violation</u>

Plaintiffs' claim under the Constitution's Supremacy Clause is based on a legally unsupportable assertion:  that the NJAG's and the DAG's enforcement activities (based on the laws of their respective states) have somehow been "preempted" by federal law permitting Defense Distributed to publish its 3D printable firearms files. *See* FAC ¶¶ 167-73.  But Plaintiffs' alleged federal authorization — the Arms Export Control Act of 1976 and the International Traffic in Arms Regulations, as potentially modified by the Settlement Agreement with the State Department — are not domestic gun regulations at all.  As such, they themselves plainly do not preempt New Jersey or Delaware public safety law.  *See, e.g.*, *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 874 F.2d 439, 447 (7th Cir. 1989) (the area of state criminal law remains "a matter of primary state responsibility," and "[i]n such areas the presumption is against federal preemption");  *Fletcher v. Haas*, 851 F. Supp. 2d 287, 304-05 (D. Mass. 2012) (finding that federal law did not preempt Massachusetts's firearms regulatory scheme); *see also Greer v. W. Virginia*, No. 1:16-cv-142, 2017 WL 9516626, at *4 (N.D. W. Va. July 19, 2017), *aff'd*, 710 F. App'x 131 (4th Cir. 2018) (West Virginia gun regulation not preempted by federal law).

In this case, the State Department is currently enjoined from modifying federal regulations to allow Defense Distributed to disseminate its 3D printable firearms files in the first place — so federal authorization cannot even be credibly alleged.  But, even if that prohibition were lifted, nothing being done at the Federal level vis-a-vis international firearms activities preempts traditional and long accepted state firearms regulation.

**B.**     **Plaintiffs' Tortious Interference with Contract Claims Fail as a Matter of Law**

Plaintiffs' state law causes of action for tortious interference with contract (Counts Seven and Eight) likewise fail to state a claim. *See* FAC ¶¶ 174-84. Plaintiffs cannot state a claim for tortious interference with the Settlement Agreement because the Settlement Agreement does not presently constitute a legally enforceable contract, subject as it is to the injunction in the Washington Action.

With respect to the "existing contract" with Defense Distributed's internet service providers, DreamHost and Cloudflare, Plaintiffs fail to plead key elements of tortious interference with contract: that the NJAG's actions "proximately caused injury" to Plaintiffs resulting in "actual damages or loss." *See, e.g., Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Additionally, Plaintiffs fail to allege that DreamHost or Cloudflare ceased performing under their contracts with Defense Distributed due to any action by the NJAG. *See* FAC ¶¶ 82-87.

Conclusory allegations that the performance of these contracts became "burdensome, more difficult, and of less or no value" as a result of the NJAG's and DAG's letters are far from sufficient to establish the requisite causal connection or damages. The temporary restraining order in the Washington Action, followed by the preliminary injunction, is what effectively blocked Defense Distributed from utilizing the internet to disseminate its 3D printable firearms files a mere one day after the NJAG and DAG sent their letters to DreamHost and Cloudflare. *See id.* ¶¶ 61, 82-87.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' FAC should be dismissed in its entirety as to the NJAG and the DAG.

DATED: November 21, 2018

Respectfully submitted,

Pillsbury Winthrop Shaw Pittman LLP
BY: */s/ Casey Low*

    Casey Low
    Texas Bar No. 24041363
    401 Congress Ave., Suite 1700
    Austin, Texas 78701-4061
    Phone: (512) 580-9600
    Fax:   (512) 580-9601
    casey.low@pillsburylaw.com

    Kenneth W. Taber  (admitted *pro hac vice*)
    Alexander D. Hardiman
    Pillsbury Winthrop Shaw Pittman, LLP
    1540 Broadway
    New York, NY 10036
    212-858-1813
    Fax: 212-858-1500
    kenneth.taber@pillsburylaw.com
    alexander.hardiman@pillsburylaw.com

    Attorneys for Defendants GURBIR GREWAL
    and MATTHEW DENN

OF COUNSEL:

Joseph C. Handlon (DE ID #3952)
Wilson B. Davis (DE ID #5154)
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801

Lorraine Karen Rek
Melissa Medoway
New Jersey Attorney General's Office
124 Halsey Street
5th Floor
Newark, NJ 07102

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2018, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Casey Low*
Casey Low