IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § § § § § § § § § § § § § § § § § § § § | Case No. 1:18-CV-637-RP |
| Plaintiffs, | | |
| v. | | **Plaintiffs' Motion for a Temporary Restraining Order** |
| GURBIR GREWAL, in his official capacity as New Jersey Attorney General; MICHAEL FEUER, in his official capacity as Los Angeles City Attorney; ANDREW CUOMO, in his official capacity as New York Governor; MATTHEW DENN, in his official capacity as Attorney General of the State of Delaware; JOSH SHAPIRO, in his official capacity as Attorney General of Pennsylvania; and THOMAS WOLF, in his official capacity as Pennsylvania Governor, | | |
| Defendants. | | |

Plaintiffs Defense Distributed and the Second Amendment Foundation, Inc., move for a temporary restraining order against the New Jersey Attorney General, Defendant Gurbir Grewal.

## SUMMARY OF THE ARGUMENT

Plaintiffs have submitted a motion for a preliminary injunction. *See* Dkt. 64-1 (hereinafter "PI Motion"). That motion asks the Court to enjoin New Jersey's Attorney General from subjecting Defense Distributed and the Second Amendment Foundation to (1) an unconstitutional criminal statute that was enacted in November, Senate Bill 2465's Section 3(*l*)(2), and (2) an unconstitutional civil censorship campaign that began in July. The Court should act upon that motion as soon as is practicable for the reasons explained therein.

In the meantime—between now and the Court's decision on the motion for a preliminary injunction—Plaintiffs hereby request that the Court enter a temporary restraining order against New Jersey's enforcement of the Section 3(*l*)(2) speech crime. The unconstitutional civil censorship efforts meet the test for a TRO as well. But in light of the Plaintiffs' particularly dire need for immediate relief vis-à-vis the new speech crime, Plaintiffs are willing to let the civil censorship campaign be dealt with solely in the preliminary injunction motion. In this motion, Plaintiffs request only that the Court temporarily restrain the enforcement of Section 3(*l*)(2).

Plaintiffs sought a similar TRO with emergency filings that were lodged less than 48 hours after the law's enactment. Dkt. 52. This Court's denial of that motion, Dkt. 53, rests on a critical misimpression. Plaintiffs now provide the Court with more detailed briefs and evidence to demonstrate that New Jersey's new statute unquestionably criminalizes conduct that Defense Distributed engages in. Therefore, Plaintiffs move for a TRO against New Jersey's enforcement of the unconstitutional Section 3(*l*)(2) speech crime and, to the extent necessary, reconsideration of the Court's November 13, 2018 order denying Plaintiffs' first TRO request.

## ARGUMENT

**I.　　The Court should issue a TRO against New Jersey's enforcement of Section 3(*l*)(2).**

Motions for preliminary injunctions and temporary restraining orders entail the same substantive requirements. *See generally* 11A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2951 (West 2018). Hence, Plaintiffs submit that the Court should grant a TRO as to New Jersey's enforcement of the Section 3(*l*)(2) speech crime for the same reasons that it should grant a preliminary injunction as to that conduct.

**II.　　Plaintiffs are engaged in activities that Section 3(*l*)(2) clearly criminalizes.**

　　**A.　　Plaintiffs are engaged in the "distribution" of "instructions" online.**

In its order regarding the original TRO request, the Court observed that, "for the statute to reach the 'constitutionally protected current and ongoing activities' Plaintiffs identify, Plaintiffs would have to be distributing, in the course of these activities, (1) digital instructions, (2) in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model, (3) that may be used to program a three-dimensional printer to manufacture of produce a firearm, firearm receiver, magazine, or firearm component." Dkt. 53 at 6. On its face, the statute criminalizes far more conduct that that. *See infra* Part II.C. Yet, even under that narrow definition, the Plaintiffs *are* engaged in prohibited activities.

The record demonstrates that Defense Distributed *does* distribute the digital firearms information that Section 3(*l*)(2) criminalizes. *See* PI Motion at 5-9. Defense Distributed did so extensively in the past and desires to continue doing so in the future. The complaint pleads this, the motion for a preliminary injunction details it, and evidence proves it. No saving construction of Section 3(*l*)(2) can avoid this conclusion. Defense Distributed's activities fall squarely within the new speech crime's heartland. Abstention is therefore inappropriate, and irreparable harm has been established.

First, Section 3(*l*)(2) causes irreparable harm—and abstention is unwarranted—because Defense Distributed has published digital firearms information on the internet and intends to do so in the future. *See* FAC ¶¶ 10-11; PI Motion at 5-6; *see also* Dkt. 52 at 2, 19. Specifically, Defense Distributed published digital instructions about 3D printing firearms to the internet's public domain from 2012 to 2013, before *Defense Distributed I* had begun, and again in 2018, after *Defense Distributed I* had been settled.

In the immediate future, Defense Distributed intends to publish via its website both the *Defense Distributed I* Files themselves and an array of similar digital firearms information concerning other firearms and firearm components. Fear of punishment by states like New Jersey prevents Defense Distributed from engaging in its usual publication activities.

Section 3(*l*)(2) unambiguously criminalizes this conduct. It makes it a crime to distribute—"by any means, including the Internet"—"digital instructions in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component." SB 2465 § 3(*l*)(2).

The Court's prior order concluded that the Plaintiffs had not "specif[ied] the kinds of files allegedly accessible on the DEFCAD website, or what, if any, speech they entail." Dkt. 53 at 6. But the complaint does just that, and so does the motion for a preliminary injunction. In particular, the complaint describes the *Defense Distributed I* Files in great detail, showing how they clearly meet the statute's "digital instruction . . ." definition:

> 30. *Defense Distributed I* concerned four defined categories of computer files: the "Published Files," the "Ghost Gunner Files," "CAD Files," and the "Other Files." Together, these four defined categories of files are referred to as the "*Defense Distributed I* Files."
>
> 31. The "Published Files" category of *Defense Distributed I* Files consists of ten separate sets of files. The "Published Files" category consists of stereolithography (.stl) files about firearm components, Initial Graphics Exchange

Specification (.igs) files about firearm components, SoLiDworks PaRT (.sldprt) files about firearm components, SketchUp (.skp) files about firearm components, Standard for the Exchange of Product Data ("STEP") (.stp) files about firearm components, diagrams of firearm components, renderings, "read me" plain text files about firearm assembly methods, "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act, and software licenses. From December 2012 until May 2013 and at other times since then, Defense Distributed published the Published Files on the internet.

32. The "Ghost Gunner Files" category of *Defense Distributed I* Files consists of software, data files, project files, coding, and models containing technical information for a machine, named the "Ghost Gunner," that can be used to manufacture a variety of items, including gun parts.

33. The "CAD Files" category of *Defense Distributed I* Files consists of STEP (.stp) and stereolithography (.stl) files about a lower receiver to the AR-15 rifle.

34. The "Other Files" category of *Defense Distributed I* Files consists of files that contain technical information, to include design drawings, rendered images, written manufacturing instructions, and other technical information that Defense Distributed intends to post to public forums on the Internet; provided, however, that this category only extends insofar as those files regard items that, as of June 29, 2018, were exclusively: (i) in Category I(a) of the United States Munitions List, as well as barrels and receivers covered by Category I(g) of the United States Munitions List that are components of such items; or (ii) items covered by Category I(h) of the United States Munitions List solely by reference to Category I(a), excluding Military Equipment.

FAC ¶¶ 30-34. Evidence verifies the complaint's description of the *Defense Distributed I* Files. *See* Dkt. 23-1 at 8-9 (Settlement Agreement definition); Dkt. 23-2 at 1 (Temporary Modification definition); Dkt. 23-3 (State Department license definition).

Furthermore, evidence shows that files about items such as the "Liberator"—which Defense Distributed published in July—exemplify the kind of digital firearms information that Defense Distributed intends to develop and share in the future. *See* PI Motion at 5-6; PI Motion Ex. 26 ¶ 20. In other words, these files exemplify what Defense Distributed will be "distributing" within the meaning of Section 3(*l*)(2). Without a doubt, the new law criminalizes the online distribution of digital firearms information that Defense Distributed has been engaged in and that it intends to engage in again soon. Reconsideration is especially warranted on this point.

4

### B. Plaintiffs are engaged in the "distribution" of "instructions" via the mail.

Website publications are not the only way in which Defense Distributed satisfies the requirement of distributing "(1) digital instructions, (2) in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model, (3) that may be used to program a three-dimensional printer to manufacture of produce a firearm, firearm receiver, magazine, or firearm component." Dkt. 53 at 6. The irreparable harm requirement is met—and abstention is unwarranted—because Defense Distributed also distributes instructions about 3D printing firearms via U.S. Mail. *See* PI Motion at 7-8.

Specifically, ever since both the State Department and New Jersey acknowledged Defense Distributed's right to do so in September 2018, Defense Distributed has been distributing digital firearms information to certain U.S. persons by mailing such information on electronic storage devices via the U.S. Postal Service. *See* PI Motion at 7-8. "Defense Distributed sold digital firearms information by using an ecommerce platform on DEFCAD to facilitate the transaction and using the U.S. Postal Service as its means of delivering the information." *Id.* (quoting PI Motion Ex. 26 ¶ 26). "After customers entered an order using DEFCAD's online ecommerce platform, and following Defense Distributed's review, Defense Distributed placed purchased information on a USB drive or SD card and mailed the drive or card to domestic-only sales customers via the U.S. Postal Service" *Id.* (quoting PI Motion Ex. 26 ¶ 27).

Just as it targets distribution via the internet, Section 3(*l*)(2) clearly criminalizes speech delivered via the mail. The files at issue meet the "digital instructions" definition because they are the same files that Defense Distributed distributed online. And because the statute expressly defines "distribute" to include "mail," this publication medium is clearly criminalized. Thus, Section 3(*l*)(2) causes irreparable harm—and abstention is unwarranted—because the law clearly

criminalizes another method of distributing digital firearms information that Defense Distributed has been engaged in previously and that it intends to engage in again soon.[1]

### C. Plaintiffs are engaged in the "offering" or "advertising" of "instructions."

Third, the irreparable harm requirement is met—and abstention is unwarranted—because Defense Distributed has offered and advertised its distribution of digital firearms information and desires to do so in the future. *See* PI Motion at 8-9. This secondary activity is a critical part of Defense Distributed's primary effort to successfully distribute digital firearms information. To make distribution possible, Defense Distributed offers and advertises its digital firearms information by way of website advertisements, one-to-one e-mail exchanges, broad media advertising campaigns, and trade show participation. *Id.*

Section 3(*l*)(2) criminalizes this conduct through a broad definition of "distribute." Specifically, the law criminalizes not just actual information sharing (*e.g.*, "give," "provide," and "deliver"), but also acts short of sharing. The statute criminalizes merely "advertis[ing]" and "offer[ing]" to share banned information. Even when no actual transmission of the banned information occurs, Section 3(*l*)(2) makes it a crime for Defense Distributed to "advertise" and "offer" the digital firearms information that it is willing to distribute.

The Court's prior order expressed "skeptic[ism] that displays at a trade show, advertisements, and media campaigning about the Plaintiffs' 'missions' involve the distribution of 'digital instructions' in the form of 'computer-aided design files or other code.'" Dkt. 53 at 6. But a conviction under the statute does *not* turn on whether actual sharing of digital firearms

---

[1] For Defense Distributed, SAF, and anyone else interested in digital firearms information, the postal mail alternative to internet publication is not an "adequate substitute[]." *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994). Among other reasons, internet distribution is essential because it enables the collaborative development of digital firearms information in the public forum now known as the "Open Source Community." *See* PI Motion at 8 & n.5.

information occurs. It is enough to offer, or even advertise, the sharing of such information. And as the complaint pleads—and evidence proves—the distribution of digital firearms information is, indeed, the Plaintiffs' true mission. *See* FAC ¶¶ 10, 12-13; PI Motion at 5.

**III. Abstention is unwarranted.**

    **A. The first order's keystone conclusion should be reconsidered.**

The pleadings and evidence now on file support a simple conclusion: the Plaintiffs are engaged in speech that Section 3(*l*)(2) criminalizes. The test set forth in the Court's prior order has been satisfied multiple times over. With respect to all three categories of conduct—the distribution of digital firearms information via the internet, the distribution of digital firearms information via the mail, and offers and advertisements of those distributions—the Plaintiffs have been in the past and will in the future be "distributing, in the course of the[ir] activities, (1) digital instructions, (2) in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model, (3) that may be used to program a three-dimensional printer to manufacture of produce a firearm, firearm receiver, magazine, or firearm component." Dkt. 53 at 5-6.

The Court found that *Pullman* abstention was warranted because "a fair reading of Section 3(l)(2) suggests that the section would not reach any of the activities Plaintiffs claim the section would halt." Dkt. 53 at 6. But as the record now shows quite clearly, Section 3(*l*)(2) by its plain terms *does* reach Plaintiffs' past and future-planned activities. Now that the Plaintiffs' activities have been correctly defined, the first order's logic must be reconsidered. Under any fair reading of the statute, Section 3(*l*)(2) *does* reach the constitutionally protected current and ongoing activities Plaintiffs identify. The law therefore *does* force Plaintiffs to cease those activities, and therefore *does* cause Plaintiffs to suffer the irreparable injury of which they complain.

7

### B. Chilling effects militate strongly against abstention.

"'[A]bstention . . . is inappropriate for cases [where] . . . statutes are justifiably attacked on their face as abridging free expression.'" *Houston v. Hill*, 482 U.S. 451, 467 (1987) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 489-490 (1965)). Hence, abstention is not appropriate for this case because the Plaintiffs mount serious facial challenges to New Jersey's new speech crime.

The Court's prior order was "mindful" of this rule. Dkt. 53 at 7. Indeed, it acknowledged that abstention was not warranted "in cases involving facial challenges to the First Amendment." Dkt. 53 at 7 (quoting *Houston*, 482 U.S. at 467-68). But the Court, unable to discern what "speech content, if any, of the activities they claim the statute will force them to cease," declined to follow that rule. Dkt. 53 at 7. The current record no longer supports such a conclusion.

The "speech content" involved in facial First Amendment challenges to New Jersey's law is now identified with particularity: the digital firearms information that the Plaintiffs are being prohibited from expressing freely, as well as the offers and advertisements about that speech that are also criminalized. Both the complaint and the motion for a preliminary injunction establish that this speech content qualifies as First Amendment speech of the highest order. *See* FAC ¶ 3; PI Motion at 14 & n.8.

Accordingly, abstention is not warranted here because the Plaintiffs have alleged very justifiable First Amendment claims. The Court should exercise jurisdiction, for to abstain "might itself effect the impermissible chilling of the very constitutional right [Plaintiffs] seek[] to protect." *Houston l*, 482 U.S. at 467-68 (quoting *Zwickler v. Koota*, 389 U.S. 241, 252 (1967)).

### C. Modern abstention precedent supports the exercise of jurisdiction.

The Court justified abstention based on the Fifth Circuit's ruling in *United Home Rentals, Inc. v. Texas Real Estate Commission*. 716 F.2d 324 (5th Cir. 1983) (cited by the original TRO decision). That three-decade-old opinion, decided prior to *Hill*, has never been cited by the Fifth Circuit. This outlier decision is not controlling for three reasons.

First and foremost, *United Home Rentals* involved a real "ambiguity of state law." *Id.* at 333. Not so here. Section 3(*l*)(2) clearly criminalizes all three kinds of activity outlined above, without any ambiguity.[2] The *United Home Rentals* keystone is missing.

Second, *United Home Rentals* relied upon a key dynamic that is missing from this case: "The [*United Home Rentals*] record reveal[ed] that before bringing this quarrel to federal court as a constitutional matter, the parties were engaged in a process of *negotiation and compromise* as to the scope of the [disputed state law]." *Id.* at 334 (emphasis added). The opposite is true here.

New Jersey's Attorney General is *not* willing to engage in a "process of negotiation and compromise" with the Plaintiffs. His goal is to prosecute them, which he threatened to do in a broadcast declaring how "proud" he was to "stop the next Cody Wilson" and use Section 3(*l*)(2) to "come after" "anyone who is contemplating making a printable gun." PI Motion at 11-12 (quoting PI Motion Ex. 2). The "mutually satisfactory" ending that Judge Gee saw on the *United Home Rentals* horizon is nowhere in sight here.

---

[2] Similarly, Section 3(*l*)(2)'s lack of ambiguity makes *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962 (5th Cir. 1993) (also cited by the initial TRO decision) inapplicable. It was "highly likely" that the *Word of Faith* statute did not apply to the Plaintiffs challenging it because of not just one but multiple possible mooting interpretations. *Id.* at 968. No such outs exist here.

9

Finally, *United Home Rentals* involved intertwined administrative proceedings: "[I]t appears from the court's discussion of ongoing state administrative proceedings that [*United Home Rentals*] intermingled *Younger* principles with the principles underlying *Pullman* abstention." *Porter v. Jones*, 319 F.3d 483, 493 n.10 (9th Cir. 2003). No such administrative proceedings exist here. "*United Home Rentals* is therefore inapplicable to the case before us." *Id.*

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). In light of this tradition, the Supreme Court's current abstention precedent now recognizes that federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). Hence, under modern Supreme Court precedent, the obligation to exercise existing jurisdiction is "virtually unflagging." *Id.* The Court should exercise jurisdiction here and temporarily enjoin the enforcement of Section 3(*l*)(2).

## Conclusion

The motion should be granted. The Court should issue a TRO against the New Jersey Attorney General's enforcement of the unconstitutional Section 3(l)(2) speech crime against Plaintiffs. To the extent necessary, Plaintiffs request that the Court reconsider the November 13, 2018 order denying Plaintiffs' first TRO request, Dkt. 53.

Date: December 4, 2018                    Respectfully submitted,

BECK REDDEN LLP
By /s/ Chad Flores
Chad Flores*
cflores@beckredden.com
State Bar No. 24059759
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 | (713) 952-3720 (fax)

FARHANG & MEDCOFF
Matthew Goldstein*
mgoldstein@fmlaw.law
D.C. Bar No. 975000
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040 | (520) 790-5433 (fax)

Josh Blackman
joshblackman@gmail.com
Virginia Bar No. 78292
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003 | (713) 646-1766 (fax)

*Admitted *pro hac vice*

Attorneys for Plaintiffs Defense Distributed
and Second Amendment Foundation, Inc.

**CERTIFICATE OF SERVICE**

On December 4, 2018, I served this filing on the following persons via CM/ECF:

    Counsel for Defendants Gurbir S. Grewal and Matthew Denn
    Kenneth W. Taber
    Ronald Casey Low

    Counsel for Defendant Michael Feuer
    Connie K. Chan
    James P. Clark
    Michael M. Walsh
    Jason P. Steed

    Counsel for Defendants Josh Shapiro and Thomas Wolf
    J. David Cabello
    John D. Kimball

    Counsel for Defendant Andrew Cuomo
    Pete Marketos
    Tyler Bexley

    Counsel for Plaintiffs
    Chad Flores
    Matthew A. Goldstein
    Joshua Michael Blackman


/s/ *Chad Flores*
Chad Flores