IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., *Plaintiffs*, vs. GURBIR GREWAL, in his official capacity as the State of New Jersey's Attorney General; MICHAEL FEUER, in his official capacity as the City of Los Angeles, California's City Attorney; ANDREW CUOMO, in his official capacity as the State of New York's Governor; MATTHEW DENN, in his official capacity as the State of Delaware's Attorney General; JOSH SHAPIRO, in his official capacity as the Commonwealth of Pennsylvania's Attorney General; and THOMAS WOLF, in his official capacity as the Commonwealth of Pennsylvania's Governor, *Defendants*. | § | Civil Action No. 1:18-CV-637 |

**DEFENDANTS THOMAS WOLF AND JOSH SHAPIRO'S MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(B)(1), 12(B)(2) AND 12(B)(6)**

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. FACTUAL & PROCEDURAL BACKGROUND .......... 2

A. Plaintiffs' Case Against the State Department. .......... 2

B. The States' Lawsuit Against the Federal Government in the Western District of Washington. .......... 4

C. This Texas Action Against the Pennsylvania Defendants .......... 6

III. **APPLICABLE STANDARDS OF REVIEW** .......... 7

A. Motion to Dismiss Under Rule 12(b)(1): Lack of Subject Matter Jurisdiction. .......... 7

B. Motion to Dismiss Under Rule 12(b)(2): Lack of Personal Jurisdiction. .......... 7

C. Motion to Dismiss Under Rule 12(b)(6): Failure to State a Claim. .......... 8

IV. **ARGUMENT AND AUTHORITES** .......... 9

A. Plaintiffs' Claims Should be Dismissed Because the Pennsylvania Defendants are Not Subject to Personal Jurisdiction in Texas .......... 9

1. Personal Jurisdiction: General Principles. .......... 9

2. The Court Lacks both General and Specific Jurisdiction Over the Pennsylvania Defendants. .......... 11

B. Plaintiffs' Claims Should be Dismissed for Lack of Subject Matter Jurisdiction Because They Are Barred by the Eleventh Amendment and are not Ripe. .......... 13

1. Plaintiffs' Claims are Barred by Eleventh Amendment Immunity and *Ex Parte Young* Does Not Apply. .......... 13

a. The Exception Under *Ex Parte Young* Does Not Apply Because Plaintiffs Do Not Seek Prospective Relief Relating to Ongoing Conduct. .......... 14

2. Plaintiffs' Claims are Not Ripe. .......... 15

C. The Western District of Texas is Not a Proper Venue for Plaintiffs to Bring Their Claims Against the Pennsylvania Defendants. .......... 17

D. Plaintiffs' Claims are Barred by *Noerr-Pennington* Immunity. .......... 18

E. Plaintiffs Cannot Collaterally Attack the Preliminary Injunction Entered in the Washington Suit with this Suit in the Western District of Texas .......... 19

V. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affordable Hous. Dev. Corp. v. City of Fresno*,
433 F.3d 1182 (9th Cir. 2006) ........ 19

*Alpine View Co. Ltd. v. Atlas Copco AB*,
205 F.3d 208 (5th Cir. 2000) ........ 9

*Atl. Richfield Co. v. F.T.C.*,
546 F.2d 646 (5th Cir. 1977) ........ 16

*Bayou Fleet, Inc. v. Alexander*,
234 F.3d 852 (5th Cir. 2000) ........ 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
__ U.S. __, 137 S.Ct. 1773 (2017) ........ 9

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) ........ 18

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ........ 15, 20

*Chapa v. DOJ*,
339 F.3d 388 (5th Cir. 2003) ........ 13

*Commonwealth of Pennsylvania, et al. v. Defense Distributed, et al.*,
No. 2:18-cv-03208-PD (E.D. Pa. filed Jul.29, 2018) ........ 7

*Def. Distributed v. Dep't of State*,
138 S. Ct. 638 (2018) ........ 3

*Def. Distributed v. U.S. Dep't of State*,
121 F. Supp. 3d 680 (W.D. Tex. 2015) ........ 3

*Def. Distributed v. United States Dep't of State*,
838 F.3d 451 (5th Cir. 2016) ........ 3

*Defense Distributed et al. v. U.S. Dep't of State, et al.*,
No. 1:15-cv-00372-RP (W.D. Tex.) ........ 2, 3, 4

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ........ 18

*Ex parte Young*,
209 U.S. 123 (1908) ........ 13, 14, 15

*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007) ........ 8

*Freudensprung v. Offshore Tech. Servs.*,
379 F.3d 327 (5th Cir. 2004) ........ 10

*Gakuba v. Hollywood Video, Inc.*,
2015 WL 5737589 (D. Or. Sept. 30, 2015) ........ 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ........ 10, 11

*Google, Inc. v. Hood*,
822 F.3d 212 (5th Cir. 2016) ........ 16

*Guidry v. U.S. Tobacco Co., Inc.*,
188 F.3d 619 (5th Cir. 1999) ........ 9

*Hans v. Louisiana*,
134 U.S. 1 (1890) ........ 13

*Hays v. McMillan*,
418 F. Supp. 116 (N.D. Tex. 1976) ........ 15, 20

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
466 U.S. 408 (1984) ........ 9

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261, 296 (1997) ........ 15

*In re Ayers*,
123 U.S. 443 (1887) ........ 13

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
668 F.3d 281 (5th Cir. 2012) ........ 7

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) ........ 9

*Kulko v. Superior Court*,
436 U.S. 84 (1978) ........ 12

*Lacassagne v. Chapuis*,
144 U.S. 119 (1892) ........ 14

*Lavia v. Pa. Dep't of Corr.*,
224 F.3d 190 (3d Cir. 2000) ........ 14

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383, 387 (5th Cir. 2010) .......... 4, 8, 9

*Lopez v. City of Houston*,
617 F.3d 336 (5th Cir. 2010) .......... 16

*MacMillan Bloedel Ltd. v. Flintkote Co.*,
760 F.2d 580 (5th Cir. 1985) .......... 2

*Manistee Town Ctr. v. City of Glendale*,
227 F.3d 1090 (9th Cir. 2000) .......... 19

*Mariana v. Fisher*,
338 F.3d 189 (3d Cir. 2003) .......... 19

*Miller v. Meinhard-Commercial Corp.*,
462 F.2d 358 (5th Cir. 1972) .......... 20

*Monkton Ins. Servs. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) .......... 10

*New W., L.P. v. City of Joliet*,
491 F.3d 717 (7th Cir. 2007) .......... 19

*Norris v. Hearst Trust*,
500 F.3d 454 (5th Cir. 2007) .......... 4, 8

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir.2001) (per curiam) .......... 8

*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) .......... 8

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) .......... 13, 14, 16

*Quern v. Jordan*,
440 U.S. 332 (1979) .......... 14

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) (per curiam) .......... 7, 8

*Religious Tech. Ctr. v. Liebreich*,
339 F.3d 369 (5th Cir. 2003) .......... 9

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) .......... 10

*Sangha v. Navig8 Shipmanagement Private Ltd.*,
882 F.3d 96 (5th Cir. 2018) .......... 10, 11

*Stackhouse v. Commonwealth, Pa. State Police*,
892 A.2d 54 (Pa. Commw. Ct. 2006) .......... 15

*State of Washington et al., v. U.S. Dep't of State et al.*,
No. 2:18-cv-1115-RSL (W.D. Wash. filed Jul. 30, 2018) .......... 4

*Stroman Realty, Inc. v. Antt*,
528 F.3d 382 (5th Cir. 2008) .......... 9, 11, 12

*Stroman Realty, Inc. v. Wercinski*,
513 F.3d 476 (5th Cir. 2008) .......... 10, 11, 12

*Stuart v. Spademan*,
772 F.2d 1185 (5th Cir. 1985) .......... 8

*Terry v. Dewine*,
75 F. Supp. 3d 512, 531 (D.D.C. 2014) .......... 13

*United Mine Workers of Workers of Am. v. Pennington*,
381 U.S. 657 (1965) .......... 18

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*,
535 U.S. 635 (2002) .......... 15

*Video Int'l Prod., Inc. v. Warner–Amex Cable Communications, Inc.*,
858 F.2d 1075 (5th Cir.1988), *cert. denied*, 491 U.S. 906 (1989) .......... 18, 19

*Wagstaff v. U.S. Dep't of Educ.*,
509 F.3d 661 (5th Cir. 2007) (per curiam) .......... 7

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 10

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
517 F.3d 235 (5th Cir. 2008) .......... 8

*Whitehead v. ABB Lummus Global BV*,
235 Fed. Appx. 241 (5th Cir. 2007) .......... 10

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) .......... 14

**Statutes**

42 Pa. C.S. § 8521(b) .......... 14

28 U.S.C. § 1292 .......... 6, 17

28 U.S.C. § 1391(a)(1)-(2) .......... 17

28 U.S.C. § 1391(b) .......... 18

28 U.S.C. § 1391(b)(1) .......... 17

28 U.S.C. § 1391(b)(2) .......... 18

42 U.S.C. § 1983 .......... 7, 9, 14, 18

**Other Authorities**

Unites States Constitution First Amendment .......... 5, 18, 19

FED. R. EVID. 201 .......... 4, 9

Fed. R. Civ. P. Rule 12(b)(1) .......... 1, 7, 13

Fed. R. Civ. P. Rule 12(b)(2) .......... 1, 8, 13

Fed. R. Civ. P. Rule 12(b)(6) .......... 1, 8

United States Constitution Eleventh Amendment .......... 13, 14, 16

Defendants Thomas Wolf and Josh Shapiro, who have been sued in their official capacities as Governor and Attorney General of the Commonwealth of Pennsylvania (collectively, the "Pennsylvania Defendants"), move to dismiss Defense Distributed's and Second Amendment Foundation, Inc.'s (collectively, the "Plaintiffs") First Amended Complaint (the "Am. Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6), and would respectfully show as follows:

# I. INTRODUCTION

The Pennsylvania Defendants are high ranking public officials – the Governor, the Supreme Executive; and the Attorney General, the Chief Law Officer – for the Commonwealth of Pennsylvania ("Pennsylvania") who, as elected representatives, are entrusted with advancing the policy goals of their constituents. They have been sued here for nothing more than doing their jobs by lawfully and appropriately fighting to restrict the unrestrained publication and proliferation of 3-D printed guns in Pennsylvania. They have no contacts with Texas and have taken no action toward Plaintiffs in this forum.

The Plaintiffs sue the Pennsylvania Defendants here based solely on the following five actions:

1. joining 20-other states in sending a letter to Secretary of State Mike Pompeo and then Attorney General Jeff Sessions;

2. joining 7 other states and the District of Columbia in seeking a preliminary injunction in Washington;

3 filing suit in the Eastern District of Pennsylvania to prevent action in Pennsylvania;

4. issuing a press release about the Pennsylvania suit; and

5. issuing a press statement opposing Plaintiffs' actions.

Nonetheless, Plaintiffs bring this suit asking this Court to reach well beyond its borders and enjoin these foreign state officials from protecting their citizens.

By filing this lawsuit, Plaintiffs have: (1) sued strangers to this forum over whom the Court lacks personal jurisdiction; (2) asserted claims for which the Pennsylvania Defendants are immune and the Court lacks subject matter jurisdiction to decide; (3) complained only that the Pennsylvania Defendants have petitioned the Federal Government for redress and engaged in protected political speech; (4) attempted to collaterally attack a preliminary injunction entered by a sister Article III court; (5) filed this suit in an improper venue; and (6) invoked the courts as a means to silence opposing speech on a matter of public concern. Any one of the foregoing would foreclose this lawsuit. All are present here.

For the reasons summarized above and discussed in more detail below, the Court should dismiss all claims against the Pennsylvania Defendants.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Plaintiffs' Case Against the State Department.

Until recently, the federal government prohibited the distribution of Computer Aided Design ("CAD") files for the production of 3-D printed weapons, by including them on the United States Munitions List ("USML") and making them subject to the International Traffic in Arms Regulations ("ITAR").[1]

In 2015, Plaintiffs filed a lawsuit in this Court against the State Department and several of its officers (collectively, the "Federal Government"), challenging the constitutionality of that prohibition. *See Defense Distributed et al. v. U.S. Dep't of State, et al.*, No. 1:15-cv-00372-RP (W.D. Tex.) (Pitman, J.) ("*Defense Distributed I*").[2] This Court declined to enjoin the Federal Government's

---

1 The ITAR are administered by the Directorate of Defense Trade Controls (DDTC) within the Department of State.

2 The Pennsylvania Defendants ask the Court to take judicial notice of the various pleadings and motions that were before it in *Defense Distributed I*. *See MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) ("A court may take judicial notice of related proceedings and records in cases before the same court.").

regulation of the CAD files, finding that "[f]acilitating global access to firearms undoubtedly increases the possibility of outbreak or escalation of conflict." *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 691 (W.D. Tex. 2015). The Fifth Circuit affirmed,[3] and the Supreme Court denied Plaintiffs' petition for writ of certiorari.[4]

On April 6, 2018, after the Court lifted a stay that had been imposed pending the above-referenced appeals, the Federal Government moved to dismiss Plaintiffs' complaint, arguing that the CAD files at issue "can unquestionably facilitate the creation of defense articles abroad" and that "the Department of State has consistently and reasonably concluded that it is not possible to meaningfully curtail the overseas dissemination of arms if unfettered access to technical data essential to the production of those arms is permitted." *See Defense Distributed I*, Dkt. No. 92 at p. 3, 7. If the Federal Government were not permitted to regulate the dissemination of the CAD files, it argued, "they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability." *Id.* at p. 1.

A few weeks after the Federal Government moved to dismiss, Plaintiffs abruptly announced that their case, *Defense Distributed I,* had settled. *See Defense Distributed I*, Dkt. No. 93. The parties filed a stipulation of dismissal with prejudice on July 27, 2018, and, on July 30, 2017, the Court entered a final order of dismissal with prejudice. *See Defense Distributed I*, Dkt. Nos. 112 & 113.

In the *Defense Distributed I* settlement agreement, the Federal Government agreed to: (i) draft and fully pursue a notice of rulemaking and a final rule to remove the CAD files from ITAR jurisdiction; (ii) temporarily modify Category I of the USML to exclude the CAD files from ITAR; (iii) issue a letter to Defense Distributed advising that its CAD files are exempt from ITAR and "approved for public release (i.e., unlimited distribution)"; and (iv) permit "any United States person"

---

3 *See Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016)

4 *See Def. Distributed v. Dep't of State*, 138 S. Ct. 638 (2018).

to "use, reproduce or otherwise benefit from" the files at issue (the "Settlement Agreement"). *See* Am. Compl. at ¶¶40-52 and Dkt. No. 23-1.

Plaintiffs claim that they began sharing the CAD files online on July 27, 2018. *See* Am. Compl. at ¶53.

**B. The States' Lawsuit Against the Federal Government in the Western District of Washington.**[5]

On July 30, 2018, Pennsylvania – together with the states of Washington, Connecticut, Maryland, New Jersey, New York, Oregon and Massachusetts, and the District of Columbia (collectively, the "States") – filed suit against the Federal Government and Plaintiffs under the Administrative Procedures Act, contending that the Settlement Agreement in *Defense Distributed I*, completely reversed the Federal Government's position on the dissemination of the CAD files was done *sub rosa* and in violation of valid administrative process. *See State of Washington et al., v. U.S. Dep't of State et al.*, No. 2:18-cv-1115-RSL (W.D. Wash. filed Jul. 30, 2018) (the "Washington Suit"); *see also* Am. Compl. at ¶59.

The States sought a declaration that the "temporary modification" of the USML is invalid, and an injunction requiring the Federal Government to rescind the procedurally defective modification and refrain from acting on it. *See Washington Suit,* Dkt. No. 1[6]; *see also* Am. Compl. at ¶60.

The States' request for temporary injunctive relief was granted by the Hon. Robert Lasnik on

---

[5] The Pennsylvania Defendants ask the Court to take judicial notice of the complaint, injunction briefing and the injunction orders entered in the Washington Suit, all of which are matters of public record, relevant to the issues at hand and referenced in paragraphs 59-63 of the Amended Complaint. *See* FED. R. EVID. 201; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.")(emphasis added); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010) (When considering a motion to dismiss courts are generally "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.") (emphasis added). Courtesy copies of these documents, printed from www.pacer.gov, are attached hereto.

[6] A true and correct copy of the States' Complaint in the Washington Suit – without the exhibits – is attached as **Exhibit A**.

July 31, 2018 over the Plaintiffs' objection. *See id.*, Dkt. No. 11[7]; *see also,* Dkt. No. 23.[8] The States then moved for a preliminary injunction, which Plaintiffs also opposed. *See id.*, Dkt. Nos. 43 & 63.[9] A central theme of Plaintiffs' opposition to the States' TRO and preliminary injunction in the Washington Suit echoes what they have alleged here – that the relief sought would impose an unconstitutional infringement on free speech. For example, Plaintiffs' opposition to the TRO in the Washington Suit asserted the following:

- "This case implicates foundational principles of free speech."
- "The States demand a prior restraint of constitutionally protected speech . . ."
- "These acts are *expressly* protected by the First Amendment."
- "Each of these injunctions would impose a prior restraint on speech."
- "Fortunately, the bedrock principles of the First Amendment make this case much easier."

*See* Exhibit B at p. 3-5. Plaintiffs' opposition to the preliminary injunction in the Washington Suit similarly argued:

- "The Plaintiffs fail to acknowledge the extraordinary scope of their desired relief: A nationwide prior restraint of all Americans."
- "Although no injunctive relief was issued against [Defense Distributed], the direct result of the temporary restraining order was to render speech that was lawful, unlawful."
- "Neither the ITAR prior restraint nor an injunction from this Court can satisfy strict scrutiny's demanding standard."
- "The First Amendment lies at the heart of this case."

*See* Exhibit D at p. 2, 13-15.

On August 27, 2018, the Hon. Robert Lasnik entered a preliminary injunction against the Federal Government prohibiting it from implementing or enforcing the Temporary Modification of Category I of the USML and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018. *See id.*, Dkt. No.

---

7 A true and correct copy of Plaintiffs' "Opposition to Emergency Motion for Temporary Restraining Order" in the Washington Suit – without the exhibits – is attached as **Exhibit B**.

8 A true and correct copy of the Hon. Robert Lasnik's Temporary Restraining Order in the Washington Suit is attached as **Exhibit C**.

9 A true and correct copy of Plaintiffs' Brief in Opposition to the States' Motion for a Preliminary Injunction in the Washington Suit -- without the exhibits – is attached hereto as **Exhibit D**.

95.[10]

Plaintiffs failed to seek interlocutory appellate review of the preliminary injunction by the U.S. Court of Appeals for the Ninth Circuit, notwithstanding their statutory right to do so. *See* 28 U.S.C. § 1292.

**C. This Texas Action Against the Pennsylvania Defendants.**

On July 29, 2018, Plaintiffs again filed suit in this Court, this time against the Attorney General of New Jersey and the City Attorney of Los Angeles. *See* Dkt. No. 1. They later amended this Texas action on September 17, 2018 – *after* the Western District of Washington had entered the preliminary injunction discussed above – to add additional defendants, including the Pennsylvania Defendants, to complain about the impact of the preliminary injunction in the Washington suit, and assert affirmative claims based upon the same defensive legal theories that were rejected there. *See* Dkt. No. 23.

The Plaintiffs make only five factual allegations concerning the Pennsylvania Defendants in this suit:

1. Shapiro joined with 20 other states' attorneys general in a letter to Secretary of State Mike Pompeo and then Attorney General Jeff Sessions expressing "serious concern about the Department of State's settlement with Defense Distributed and the proposed rules . . . to amend the International Trafficking in Arms Regulations." *See* Am. Compl. at ¶¶56-58 and Dkt. No. 23-4.

2. Shapiro[11] – on behalf of Pennsylvania – joined seven other States and the District of Columbia in the Washington Suit, which resulted in a preliminary injunction against the Federal Government's procedurally defective modification of the USML. *See id.* at ¶¶59-63.

3. Shapiro and Wolf filed suit in the Eastern District of Pennsylvania on July 29, 2018 to enjoin Defense Distributed from publishing the CAD files to Pennsylvania residents (the "Pennsylvania Suit") – a lawsuit that was then held in abeyance pending

---

[10] A true and correct copy of the Hon. Robert Lasnik's Preliminary Injunction in the Washington Suit is attached hereto as **Exhibit E**.

[11] Although it appears the Plaintiffs are impermissibly collaterally challenging the Washington action here, *only* Attorney General Shapiro – and not Governor Wolf – is a party to that action.

resolution of the Washington Suit.[12] *See* Am. Compl. at ¶89.

4. Shapiro and Wolf were quoted in a press release issued on July 29, 2018 discussing the Pennsylvania Suit and Defense Distributed's agreement to block Pennsylvania users from its site, which was described as a "victory" for Pennsylvanians. *See* Am. Compl. at ¶¶90-92 and Dkt. No. 23-7.

5. Shapiro confirmed his opposition to the unrestrained publication of the CAD files in a press statement that was published by Wired Magazine. *See* Am. Compl. at ¶94.

Based only upon this alleged conduct, Plaintiffs have asserted a litany of constitutional claims under 42 U.S.C. § 1983 against the Pennsylvania Defendants, in their official capacities. Each must fail.

## III.
## APPLICABLE STANDARDS OF REVIEW

### A. Motion to Dismiss Under Rule 12(b)(1): Lack of Subject Matter Jurisdiction.

Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (internal quotations omitted). A court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits, and lack of subject-matter jurisdiction may be found in the complaint alone. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A motion to dismiss for lack of subject-matter jurisdiction should be granted where it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief. *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007) (per curiam).

### B. Motion to Dismiss Under Rule 12(b)(2): Lack of Personal Jurisdiction.

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction,

[12] In the Pennsylvania lawsuit, the Pennsylvania Defendants' request for injunctive relief was mooted when Defense Distributed voluntarily agreed to block Pennsylvania users from its site. *See Commonwealth of Pennsylvania, et al. v. Defense Distributed, et al.*, No. 2:18-cv-03208-PD (E.D. Pa. filed Jul.29, 2018), at Dkt. No. 4.

the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court considers a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff has the burden of making a *prima facie* case that personal jurisdiction is proper, *see Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008), and the court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001) (per curiam).

**C. Motion to Dismiss Under Rule 12(b)(6): Failure to State a Claim.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor, *id.*, but need "'not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Ferrer v. Chevron Corp.,* 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005)). To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 548 (2007).

When considering a motion to dismiss courts are generally "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010). In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir. 2007). *See also, See* FED. R. EVID. 201, *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010).

## IV.
## ARGUMENT AND AUTHORITES

### A. Plaintiffs' Claims Should be Dismissed Because the Pennsylvania Defendants are Not Subject to Personal Jurisdiction in Texas.

#### 1. Personal Jurisdiction: General Principles.

Because Section 1983 lacks any provision for service of process, federal courts look to the jurisdictional statutes of the forum state to determine the scope of personal jurisdiction. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008) ("*Antt*"). And because Texas' long-arm statute "extends to the limits of the Constitution," the personal jurisdiction of this Court is governed by the Fourteenth Amendment's Due Process Clause. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). The burden of establishing personal jurisdiction lies with the plaintiff to, at this stage, "present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The plaintiff must do so for each defendant individually. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).

Under the well-established constitutional standard, a court has personal jurisdiction over a nonresident defendant only where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). Such minimum contacts can give rise to either general or specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, __ U.S. __, 137 S.Ct. 1773, 1779-80 (2017).

Courts exercise "general jurisdiction" over any action where the defendant has "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 415 n.9 (1984). This burden is a difficult one, and can be met only where the defendant's forum contacts are so pervasive "as to render them essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"Specific jurisdiction" over a non-resident defendant exists only if: (1) "the defendant purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) "the controversy arises out of or is related to the defendant's conduct with the forum state." *Freudensprung v. Offshore Tech. Servs.,* 379 F.3d 327, 343 (5th Cir. 2004). Put another way, specific jurisdiction is appropriate where the contacts are "relatively few but give rise to the suit." *Whitehead v. ABB Lummus Global BV*, 235 Fed. Appx. 241, 242 (5th Cir. 2007).

The focus of specific jurisdiction is "on the relationship among the **defendant**, the forum, and the litigation." *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014) (emphasis added). A plaintiff's own contacts with the forum state cannot be used to demonstrate contacts by the defendant. *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.")). This includes, relevant here, where a plaintiff alleges to have suffered some harm in the forum state. *See Revell v. Lidov*, 317 F.3d 467, 473 n.41 (5th Cir. 2002).

Only if the plaintiff makes a prima facie showing of minimum contacts does the burden shift to the defendant to show that a court's exercise of jurisdiction would not comport with "fair play" and "substantial justice." *Freudensprung*, 379 F.3d at 343. In making a fundamental fairness determination, the court must consider: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiffs' interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the several states' shared interest in furthering fundamental social policies. *Stroman Realty, Inc. v. Wercinski,* 513 F.3d 476, 487 (5th Cir. 2008) ("*Wercinski*").

**2. The Court Lacks both General and Specific Jurisdiction Over the Pennsylvania Defendants.**

The Pennsylvania Defendants are elected representatives and residents of Pennsylvania – not Texas. *See* Am. Compl. at ¶¶18-19. Neither has contacts with Texas that "are so 'continuous and systematic' as to render them essentially at home" here, and the Amended Complaint does not allege otherwise. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919; *Sangha,* 882 F.3d at 102. Thus, there is no basis for general jurisdiction in this case.

Specific jurisdiction over the Pennsylvania Defendants also is lacking and is controlled by the Fifth Circuit's decisions in a pair of cases involving a Texas real estate broker, Stroman Realty, Inc. ("Stroman"). Both cases involved claims for declaratory and injunctive relief against public officials of non-forum states who had sent cease-and-desist letters to Stroman in Texas. *Antt*, 528 F.3d at 386; *Wercinski*, 513 F.3d at 484. Additionally, in *Antt*, Stroman claimed that California officials had "attacked [it] in letters to the Texas Real Estate Commission" and that Florida officials "used the Texas Attorney General's office to get information" about Stroman. 528 F.3d at 386. In both cases, the Fifth Circuit applied the well-established constitutional standards to hold that the district court sitting in Texas lacked personal jurisdiction over the out-of-state public officials. *Antt*, 528 F.3d at 386-87; *Wercinski*, 513 F.3d at 484-89.

The case for specific jurisdiction over Governor Wolf and Attorney General Shapiro here is far weaker than the argument that the Fifth Circuit rejected in *Antt* and *Wercinski*. Unlike those cases, which at least involved direct contact from the foreign state public officials to the plaintiff in the forum state, here the Plaintiffs do not allege that Governor Wolf or Attorney General Shapiro took a single action within this forum. Specifically, Plaintiffs allege that:

- Attorney General Shapiro sent a letter to Secretary of State Mike Pompeo and then Attorney General Jeff Sessions in ***Washington, D.C.*** (*see* Am. Compl. at ¶¶56-58 and Dkt. No. 23-4);
- The Office of Attorney General joined a lawsuit in the ***State of Washington*** (*see* Am. Compl. at ¶¶59-63);

- The Pennsylvania Defendants filed a complaint in federal court in ***Pennsylvania to prevent action within Pennsylvania;***

- The Pennsylvania Defendants issued a press release about the Pennsylvania lawsuit. *See* Am. Compl. at ¶¶89-94-92 and Dkt. No. 23-7); and

- Shapiro issued a press statement opposing Plaintiffs' actions which was published in Wired Magazine.

While Plaintiffs allege certain other defendants sent cease-and-desist letters or other correspondence to Defense Distributed in Texas – conduct which was insufficient to establish specific jurisdiction in *Antt* and *Wercinski* – the Pennsylvania Defendants did not do so and the Amended Complaint does not allege otherwise.

The alleged conduct by the Pennsylvania Defendants does not amount to purposeful availment of the privileges of conducting business in Texas. *See Wercinski*, 513 F.3d at 484 (allegation that foreign state official "'reached out' to assert her authority" was not purposeful availment). And any argument that the alleged actions of the Pennsylvania Defendants were designed to affect the actions of a Texas-based company, would not be sufficient as a matter of law to establish purposeful availment by "caus[ing] an 'effect'" in Texas. *See Wercinski*, 513 F.3d at 485 (citing *Kulko v. Superior Court*, 436 U.S. 84 (1978)). As the Fifth Circuit has explained, there cannot be effects-based specific jurisdiction because the Pennsylvania Defendants "derived no benefit from any activities relating to the forum" by filing suit elsewhere and issuing press statements in Pennsylvania. *See id.*

The fact that Plaintiffs reached into Pennsylvania to distribute 3-D printed guns does not mean that the Pennsylvania Defendants reached into Texas to stop them.[13] In fact, the Pennsylvania

---

[13] The intra-state actions of high ranking public officials, even involving entities headquartered in other states, do not establish sufficient minimum contacts with those other states required for personal jurisdiction. *See, e.g., Terry v. Dewine*, 75 F. Supp. 3d 512, 531 (D.D.C. 2014) (finding no personal jurisdiction in the District of Columbia over the Attorney General of Ohio); *Gakuba v. Hollywood Video, Inc.*, 2015 WL 5737589, at *4 (D. Or. Sept. 30, 2015) (finding no personal jurisdiction in Oregon over the Attorney General of Illinois, despite law enforcement investigation of company headquartered in Oregon).

Defendants limited their exercise of authority to only Defense Distributed's actions ***in Pennsylvania***. *See* Dkt No. 23-7 (the parties' agreement in the Pennsylvania Suit required Defense Distributed to "make its sites unaccessible ***to Pennsylvania users***") (emphasis added).

The actions that the Pennsylvania Defendants are alleged to have taken simply are not sufficient to invoke either general or specific jurisdiction in Texas. Therefore, the Pennsylvania Defendants should be dismissed pursuant to FED. R. CIV. P. 12(b)(2).

**B. Plaintiffs' Claims Should be Dismissed for Lack of Subject Matter Jurisdiction Because They Are Barred by the Eleventh Amendment and are not Ripe.**

**1. Plaintiffs' Claims are Barred by Eleventh Amendment Immunity and *Ex Parte Young* Does Not Apply.**

Immunity from suit implicates a court's subject matter jurisdiction, and therefore is properly decided pursuant to Rule 12(b)(1). *Chapa v. DOJ*, 339 F.3d 388, 389 (5th Cir. 2003). It is long established that the Eleventh Amendment to the United States Constitution bars all private lawsuits against non-consenting states in federal court. *In re Ayers*, 123 U.S. 443, 505 (1887) ("The very object and purpose of the Eleventh Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."). "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)). Eleventh Amendment immunity bars suits against states and state agencies "regardless of the relief sought." *Id.*

Although states may sometimes waive such immunity, Pennsylvania has expressly withheld its consent to be sued in federal court. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 42 Pa. C.S. § 8521(b)). And a claim against a state government official, in his or her official capacity, including the claims against Governor Wolf and Attorney General Shapiro, here, is "no different from a suit against the State itself" because it "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

**a. The Exception Under *Ex Parte Young* Does Not Apply Because Plaintiffs Do Not Seek Prospective Relief Relating to Ongoing Conduct.**

The courts have developed a limited exception to a state's Eleventh Amendment immunity for certain claims brought under 42 U.S.C. § 1983 ("Section 1983"), but that limited exception does not apply here.[14] To "ensure[ ] that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law," *see Puerto Rico Aqueduct*, 506 U.S. at 146, a federal court "may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). This exception allowing certain kinds of declaratory or injunctive relief against state officials in their official capacity – initially noted in *Ex parte Young*, 209 U.S. 123 (1908) – is "narrow," in that it "applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct*, 506 U.S. at 146; *see also Lacassagne v. Chapuis*, 144 U.S. 119, 124 (1892) (the purpose of injunctive relief is to afford preventative relief, not correct past wrongs).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ***ongoing*** violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)) (emphasis added).

The Amended Complaint here — which asserts claims against Governor Wolf and Attorney General Shapiro in their respective official capacities — fails to allege any claim cognizable under the *Ex parte Young* exception. Although it seeks declaratory and injunctive relief, it does not seek

[14] Section 1983 provides a cause of action against any "person" who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

***prospective*** relief relating to ***ongoing*** conduct. Instead, to the extent it alleges any concrete conduct at all, the actions are discrete, singular events — all of which occurred in the past — that supposedly caused harm to Plaintiffs. *See* Am. Compl. ¶¶62-62 (complaining that the Hon. Robert Lasnik entered a temporary restraining order and preliminary injunction on July 31, 2018 and August 27, 2018, respectively); ¶90-93 (describing a July 29, 2018 press release); ¶94 (describing an August 29, 2018 press statement quoted in Wired Magazine); ¶¶129, 137, 145, 155, 165, 172 (alleging that Governor Wolf's and Attorney General Shapiro's past conduct "caused damages to the Plaintiffs").

Quite simply, Plaintiffs do not allege that Governor Wolf or Attorney General Shapiro are currently engaging in conduct[15] that the Court could enjoin under *Ex parte Young.*[16] Because Plaintiffs only seek declaratory relief related to past alleged conduct, their claims are barred by the Eleventh Amendment. *See Puerto Rico Aqueduct*, 506 U.S. at 146.

**2. Plaintiffs' Claims are Not Ripe.**

"Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010).

The Fifth Circuit has held that non-self-executing directives of a state government do not

---

15 As discussed in Section IV.E *infra*, the Court cannot entertain a collateral attack of the Hon. Robert Lasnik's injunction orders in the Washington Suit, because to do so would interfere with the proper jurisdiction of the Western District of Washington, *see Hays v. McMillan*, 418 F. Supp. 116, 120-21 (N.D. Tex. 1976), and undercut "the ordinary process of law" afforded by our federal appellate process. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995).

16 The same reasoning would apply to the state common law claim in Count VII. Pennsylvania officials maintain sovereign immunity from all claims in their official capacity other than those that seek to restrain officials from performing unlawful affirmative acts. *Stackhouse v. Commonwealth, Pa. State Police*, 892 A.2d 54, 61-63 (Pa. Commw. Ct. 2006). Although generally officials are not immune from claims for declaratory relief, where a plaintiff seeks nothing more than to establish the "legal underpinnings" of a claim that is itself barred by immunity, then the claim for declaratory relief is also barred. *Id.* at 63. Here, like the federal claims, Plaintiff seeks declaratory and injunctive relief arising out of the allegation that the Governor Wolf and Attorney General Shapiro interfered with its settlement agreement "proximately caused . . . actual damages." *See* Am. Compl. ¶177. This claim is thus barred by sovereign immunity.

present a live controversy that is ripe for review where "the issuing agency could not itself sanction non-compliance." *Google, Inc. v. Hood*, 822 F.3d 212, 224 (5th Cir. 2016) (finding pre-enforcement complaint about state administrative subpoena is not yet ripe). In *Google*, the Fifth Circuit reasoned that the recipient of a state administrative subpoena that is "not self-executing and [could] only be enforced by a district court," lacked standing to raise a pre-enforcement challenge to the subpoena because "the recipient would 'suffer no undue hardship from denial of judicial relief' because it could not absent a court order 'be forced to comply with the subpoenas nor subject to any penalties for noncompliance.'" *See id.* at 224-225 (quoting *Atl. Richfield Co. v. F.T.C.*, 546 F.2d 646, 647 (5th Cir. 1977)). Where such further judicial enforcement is required, pre-enforcement claims are not ripe due to "the availability of an adequate remedy at law if, and when, the [party] files an enforcement action." *Id.* at 225.

While *Google* involved a state administrative subpoena, its reasoning applies more forcefully to the conduct here – a press release and a press statement, neither of which is self-executing, nor directed Plaintiffs to do *anything*. Accordingly, any complaints regarding the Pennsylvania Defendants' broad public comments updating their constituents of the status of ongoing litigation, are not ripe for review under any set of facts. And while it is true that the Washington Suit resulted in Judge Lasnik's entry of an injunction preventing Plaintiffs from publishing their CAD files, if Plaintiffs were to violate that order, the States would have to move to enforce that order in his court. Plaintiffs would be able to oppose such a motion and, in doing so, would be afforded an adequate remedy at law and opportunity to be heard in that forum. Indeed, Plaintiffs opposed the Washington Suit injunction in the Western District of Washington prior to its entry and could have moved for interlocutory appellate review had Plaintiffs chosen to do so. *See* 28 U.S.C. § 1292.

For these reasons, Plaintiffs' claims are not ripe and, the Court lacks subject matter jurisdiction to review them.

**C. The Western District of Texas is Not a Proper Venue for Plaintiffs to Bring Their Claims Against the Pennsylvania Defendants.**

In a civil action, venue is proper in either a judicial district where the defendant resides, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or in which a substantial part of property that is the subject of the action is situated. 28 U.S.C. § 1391(a)(1)-(2). Venue also is proper in a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. *Id.* § 1391(a)(3). None of these necessary elements are present in Plaintiffs' case against the Pennsylvania Defendants. Therefore, this matter should be dismissed as to the Pennsylvania Defendants for improper venue.

First, it is undisputed that the Pennsylvania Defendants both reside in Pennsylvania. Venue therefore is improper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(1) (venue is proper where defendant resides).

Second, it is also undisputed that none of the events giving rise to this lawsuit against the Pennsylvania Defendants occurred in the Western District of Texas. They occurred only in Pennsylvania (i.e., the Pennsylvania Suit, press release and press statements), the State of Washington (i.e., the Washington Suit) and Washington D.C. (i.e., the letter to Secretary of State Mike Pompeo and then Attorney General Jeff Sessions). None of the allegations relevant to the Pennsylvania Defendants concerns conduct that occurred in – or was directed at – Texas. Thus, venue also is improper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) (venue is proper in the district where a substantial part of the events occurred).

Finally, as discussed at length *supra*, Plaintiffs have pled no facts to suggest that the District Court for the Western District of Texas has personal jurisdiction over either Governor Wolf or Attorney General Shapiro – meaning that venue also is not possible under § 1391(b)(3). There are no minimum contacts or logical connections between the Pennsylvania Defendants alleged actions

and Texas. Moreover, § 1391(b)(3) venue is appropriate only "if there is no district in which the action may otherwise be brought." Plaintiffs have not – and cannot – make such a showing.

Since none of the three prongs of 28 U.S.C. § 1391(b) apply, the Court should dismiss this matter as to the Pennsylvania Defendants because venue is improper in the Western District of Texas.

### D. Plaintiffs' Claims are Barred by *Noerr-Pennington* Immunity.

The *Noerr-Pennington* doctrine protects the Pennsylvania Defendants' First Amendment right to petition the government for a redress of grievances. *United Mine Workers of Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965); *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961). While initially rooted in antitrust law, *Noerr-Pennington* has since been expanded by the Fifth Circuit to apply to a "broad range of causes that are brought before courts, legislatures, or governmental entities." *Video Int'l Prod., Inc. v. Warner–Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989). The Fifth Circuit has expressly extended the *Noerr-Pennington* doctrine to claims under Section 1983 and for common law tortious interference. *See id.* at 1082-84; *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000).

The constitutionally protected right to petition encompasses the right to petition *all* branches of government: executive, legislative, and judicial. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *see Video Int'l Prod.*, 858 F.2d at 1082. This includes petitions by government officials to *other* governmental agencies. *See, e.g.*, *New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007); *Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1193 (9th Cir.2006); *Mariana v. Fisher*, 338 F.3d 189, 200 (3d Cir. 2003); *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1094 (9th Cir. 2000).[17]

---

17 This case is distinguishable from *Video International Products* on this point, which involved the City of Dallas' *own* zoning enforcement decisions – not an attempt by a state government official to petition the federal government for redress. *See* 858 F.2d at 1086. There, the Fifth Circuit correctly observed that "it is impossible for the government to petition ***itself*** within the meaning of the First Amendment." *Warner–*

*Noerr-Pennington* immunity applies to the Pennsylvania Defendants here because the "kind of petitioning" they engaged in is "nearly as vital to the functioning of a modern representative democracy as petitioning that originates with private citizens." *Manistee Town Ctr.*, 227 F.3d at 1094. Each of Plaintiffs' claims against the Pennsylvania Defendants concerns actions taken in their official capacities, as ombudsmen for their constituents, to lobby (i.e., send a letter to the State Department and issue a press release) and petition (i.e., through the Washington Suit) the Federal Government on an important issue of public policy. Conduct of that sort is fully protected by the First Amendment and, therefore, subject to *Noerr-Pennington* immunity.

For this additional reason, all claims against the Pennsylvania Defendants should be dismissed.

### E. Plaintiffs Cannot Collaterally Attack the Preliminary Injunction Entered in the Washington Suit with this Suit in the Western District of Texas

Plaintiffs seek a declaration that the Pennsylvania Defendants "have unconstitutionally abridged the Plaintiffs' . . . freedoms" by preventing them from publishing the CAD files on the internet, and seek injunctive relief "protecting the Plaintiffs' from such infringement in the future." *See* Am. Compl. at ¶186. But they already lost this suit in Washington State and chose not to appeal.

Plaintiffs' inability to publish the CAD files is not due to any press release or statement issued by the Pennsylvania Defendants, or to any press statements Shapiro may have made to Wired Magazine. It is the injunctive relief entered against the Federal Government in the Washington Suit that prevents Plaintiffs from engaging in the conduct that they ask this Court to allow. *See* Am. Compl. at ¶63; *see also* Exhibit D at p. 13 ("[L]iberty came to a crashing halt . . . when this court issued a [injunction]. Although no injunctive relief was issued against [Plaintiffs], the direct result of

---

*Amex*, 858 F.2d at 1086 (emphasis added). Here, the Pennsylvania Defendants have been sued based upon their petitioning of the Federal Government – not the Commonwealth of Pennsylvania. *See Mariana*, 338 F.3d at 199 (explaining *Video Int'l Prod.* does not stand for the proposition that *Noerr-Pennington* is unavailable to public-entity defendants).

the [injunction] was to render speech that was lawful, unlawful."). Plaintiffs, both of whom are parties to the Washington Suit, vocally opposed the preliminary injunction that was granted. They lost and chose not to seek interlocutory appellate review of the Hon. Robert Lasnik's decision. They cannot now collaterally attack that injunction here. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("Respondents chose not to pursue [the federal appellate process], but instead to collaterally attack the . . . [i]njunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of law.").

"Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972). The relief that Plaintiffs seek – the ability to publish the CAD files – cannot be granted without, in some form or fashion, overruling the preliminary injunction granted by the Western District of Washington. The two cannot coexist. As such, this suit constitutes an impermissible collateral attack on a preliminary injunction entered by a court of equal dignity. Granting Plaintiffs the relief they seek would interfere with the proper jurisdiction of the Western District of Washington. *See Hays*, 418 F. Supp. at 120-21 (dismissing suit as an impermissible collateral attack on preliminary injunction).

The Court should decline Plaintiffs' invitation to commit error by sanctioning a collateral attack, and dismiss this suit in its entirety.

## V.
## CONCLUSION

For each of the foregoing reasons, the Pennsylvania Defendants respectfully pray that this Court grant the relief sought herein and dismiss Plaintiffs' claims.

Dated: December 14, 2018.

Respectfully submitted,

By: */s/ J. David Cabello*

J. David Cabello
Attorney-in-Charge
Texas Bar No. 03574500
Joshua A. Huber
Texas Bar No. 24065457
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile: (713) 228 6605
E-mail: dcabello@blankrome.com
E-mail: jhuber@blankrome.com

John D. Kimball (pending pro hac vice)
BLANK ROME LLP
N.Y. Bar No. 1416031
The Chrysler Building
405 Lexington Ave.
New York, NY 10174 (212) 885-5000
E-mail: jkimball@blankrome.com

**ATTORNEYS FOR THE PENNSYLVANIA DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing and/or attached document was filed electronically in compliance with Local Rule CV-5(a) on December 14, 2018, and was therefore served on all counsel who are deemed to have consented to electronic service through the Court's CM/ECF system. Local Rule CV-5(b)(1).

*/s/ Joshua A. Huber*
Joshua A. Huber