# Exhibit A

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF CONNECTICUT; STATE OF MARYLAND; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF OREGON; COMMONWEALTH OF MASSACHUSETTS; COMMONWEALTH OF PENNSYLVANIA; and the DISTRICT OF COLUMBIA, | NO. COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF STATE; MICHAEL R. POMPEO, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Acting Deputy Assistant Secretary of Defense Trade Controls; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy; DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INC.; AND CONN WILLIAMSON, | |
| Defendants. | |

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1

Plaintiffs the State of Washington, State of Connecticut, State of Oregon, State of Maryland, State of New Jersey, State of New York, Commonwealth of Massachusetts, Commonwealth of Pennsylvania and the District of Columbia (the "States") bring this lawsuit against Defendants United States Department of State, Michael R. Pompeo, Directorate of Defense Controls, Mike Miller, and Sarah Heidema (the "Government Defendants"); as well as Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson.

## I.     INTRODUCTION

1.     This case addresses the threat that downloadable guns, in the form of Computer Aided Design (CAD) files for the automated production of firearms using a 3-D printer[1], will imminently be released on the internet, making these weapons available to virtually anyone.  3-D printed guns are functional weapons that are often unrecognizable by standard metal detectors because they are made out of materials other than metal (e.g., plastic) and untraceable because they contain no serial numbers. Anyone with access to the CAD files and a commercially available 3-D printer could readily manufacture, possess, or sell such a weapon—even those persons statutorily ineligible to possess firearms, including violent felons, the mentally ill and persons subject to protection and no-contact orders.  This serious threat to the national security and to public safety in the State of Washington was caused by the Federal Government's covert and *ultra vires* regulatory about-face, in violation of the Administrative Procedure Act (APA) and the Tenth Amendment to the U.S. Constitution.Until recently, the Federal Government prohibited the distribution of CAD files for the automated production of 3-D printed weapons by including such files on the United States Munitions List (USML) and making them subject to the International Traffic in Arms Regulations (ITAR), which are administered by the Directorate of Defense Trade Controls (DDTC) within the Department of State.  As recently as April of this year, the Government's position was that if such CAD files were distributed via the internet, they

---

[1] 3-D printing refers to technology that allows a person to make a three dimensional product using a digital file or software in conjunction with a printer that is directed by the software. *See, e.g.*, https://3dprinting.com/what-is-3d-printing/ (last visited July 30, 2018).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

could be "easily used overseas to make firearms that are subject to U.S. export controls", where, "beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability."

2. In June 2018, however, the Government completely reversed its position on the dissemination of the CAD files—not publicly or in accordance with a valid administrative process, but by entering an under-the-radar settlement with a private company known as Defense Distributed (DD). *Defense Distributed v. U.S. Dept. of State*, 15-CV-372 RP (W.D. Texas). Defense Distributed's stated objective is to ensure global, unrestricted access to firearms by posting its CAD files online so that virtually everyone will have access to a "downloadable gun." As part of the Settlement Agreement, the Government promised to: (i) draft and fully pursue a notice of rulemaking and a final rule to remove the CAD files at issue from ITAR jurisdiction; (ii) temporarily modify Category I of the USML to exclude the files at issue from ITAR; (iii) issue a letter to Defense Distributed advising that its files are exempt from ITAR and "approved for public release (i.e., unlimited distribution)"; and (iv) permit "any United States person" to "use, reproduce or otherwise benefit from" the files at issue.

3. On July 27, 2018, in accordance with the Settlement Agreement, DDTC published a "Temporary Modification of Category I of the United States Munitions List" that permits the dissemination of certain CAD files in Defense Distributed's possession, including files used to create undetectable and untraceable weapons, as well as a tabletop gun-milling machine called the "Ghost Gunner." This deregulation also applies to other files for the automated production of 3-D printed weapons that may be developed or acquired by Defense Distributed in the future.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

3

4.  Although the Government's deregulation of the CAD files in question is nominally "temporary," it permits Defense Distributed's founder, self-described "crypto-anarchist" Cody Wilson—and anyone else—to immediately disseminate the files by making them available for download via the internet. Wilson and Defense Distributed have announced that they intend to release the files on August 1, 2018. As of that point, the files will be, practically speaking, irretrievable, because they will have been posted on the internet—a bell that cannot be un-rung:



Source: https://defcad.com (accessed July 28, 2018).

5.  The files that Defense Distributed intends to make available for download as of August 1, 2018 include CAD files that can be used to manufacture a variety of weapons, including AR-15 frames[2] and a 3-D printed pistol known as the "Liberator", as well as a "computer-controlled milling machine" called the "Ghost Gunner," which is designed to allow its owner to carve gun parts out of aluminum:

---

[2] An AR-15 is a semi-automatic rifle that is the civilian equivalent of the M-16 and the weapon of choice for many mass shooters.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

4

Source: https://defcad.com (accessed July 28, 2018).

6. According to news reports,[3] the Defense Distributed website's repository of downloadable-gun files will also include "more exotic DIY semi-automatic weapons." "The relaunched site will be open to user contribution, too; Wilson hopes it will soon serve as a searchable, user-generated database of practically any firearm imaginable." According to Wilson: "What's about to happen is a Cambrian explosion of the digital content related to firearms." Wilson says: "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable . . . No amount of petitions or die-ins or anything else can change that."

---

[3] Andy Greenberg, *A Landmark :egal Shift Opens Pandora's Box for DIY Guns*, (July 18, 2018) Wired, *available at* https://www.wired.com/story/a-landmark-legal-shift-opens-pandoras-box-for-diy-guns/, attached hereto as Ex. 1.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

5

7.     The Government entered into the Settlement Agreement in contravention of the statutes and regulations which govern the export designation process.  Among other things, upon information and belief, the State Department: (i) has not provided the relevant Congressional committees with the required 30 days' notice to "temporarily" modify the USML or to achieve the same thing via approval for public release of the information pursuant to 22 C.R.F. §125.4(b)(13); (ii) has not received the concurrence of the Secretary of Defense to "temporarily" change the designation of the files at issue; and (iii) has not followed established commodity jurisdiction procedures before agreeing to "temporarily" exempt the CAD files at issue from ITAR.

8.     The "temporary modification" of USML Category I and approval for public release of the information pursuant 22 C.F.R. §125.4(b)(13) are especially troubling because it involves making CAD files available on the internet, which largely overrides the later need to formally modify the relevant rules.  Moreover, the "temporary modification" on its face applies to recently developed files that the Government has presumably not even seen or evaluated, as well as files that may be developed in the future.

9.     In addition, the Government has acted in an arbitrary and capricious manner, and has abused its discretion, by (i) failing to consider evidence relevant to ITAR jurisdiction over the CAD files; (ii) drastically changing long-established practice and policy without any explanation or sufficient notice; and (iii) failing to study the national- and state-security implications of exempting the CAD files from ITAR.  Upon information and belief, the Government has made no determination regarding the national security implications of the agreement, or its effects on sovereign U.S. states' ability to protect the safety of those within their borders.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

10.     Tellingly, even the notices of proposed rules to amend the ITAR, which the Departments of State and Commerce published on May 24, 2018, make no mention of the dangers posed by the files falling into the hands of terrorist organizations, insurgent groups, transnational organized criminal organizations, or countries subject to the U.S. or U.N. arms embargoes.

11.     The Government Defendants' unlawful actions—if allowed to stand—will lead to the proliferation of untraceable printed guns overseas and within the United States. Domestically, the proliferation of these guns also threatens to cripple the various States' extensive and comprehensive systems of firearms regulations designed to keep guns out of the wrong hands.

12.     For all these reasons, and others detailed below, the Government Defendants have violated the Administrative Procedure Act (APA) and the Tenth Amendment of the U.S. Constitution, which reserves police power to the states. The Plaintiff States seek a declaration that the "temporary modification" of the USML Category I (which constitutes a final agency action) is invalid, and an injunction requiring the Government Defendants to rescind the temporary modification and refrain from acting in a manner inconsistent with such rescission.

## II.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter and the parties hereto pursuant to 28 U.S.C. §§ 1331, 2201, and 2202.

14.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e) because the Plaintiff is located here and a substantial part of the events or omissions giving rise to the claim occurred or will imminently occur here. In particular, the dissemination of the CAD files in question will have an adverse impact on the public safety in the City of Seattle and King County, Washington, which are located in this district. *See* Declarations of King County Sheriff Mitzi Johanknecht

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

(attached hereto as Exhibit 2) and Seattle Police Chief Carmen Best (attached hereto as Exhibit 3). Also, Defendant Second Amendment Foundation, Inc. is located in Bellevue, Washington.

### III.    PARTIES

15.    The States of Washington, Connecticut, Maryland, New Jersey, New York, Oregon, the Commonwealths of Massachusetts and Pennsylvania (Plaintiff States) and the District of Columbia, represented by and through their respective Attorneys General, are sovereign states of the United States of America.  The security of the Plaintiff States is threatened by the Government's deregulation of CAD files for the automated production of 3-D printed weapons via the "temporary modification" of the USML Category I.  The "temporary modification" is also a direct attack on the State's sovereign power to protect the safety of those within its borders, including the power to enact and enforce laws related to the ownership and use of firearms.

16.    Defendant the United States Department of State (State Department) is the executive agency of the United States government responsible for administering and enforcing the ITAR under the authority of the Arms Export Control Act (AECA). The State Department is a party to the Settlement Agreement with Defense Distributed.

17.    Defendant Michael R. Pompeo is sued in his official capacity as the Secretary of State. In this capacity, he is responsible for the operation and management of the State Department, including the operation and management of the Directorate of Defense Trade Controls (DDTC) and administration and enforcement of the ITAR. The Secretary of State is a party to the Settlement Agreement with Defense Distributed.

18.    Defendant DDTC is a subordinate unit within the Department of State Bureau of Political and Military Affairs responsible for administering and enforcing the ITAR. The DDTC

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

enacted the "temporary modification" of the USML Category I, and is a party to the Settlement Agreement with Defense Distributed.

19.  Defendant Mike Miller is sued in his official capacity as the Acting Deputy Assistant Secretary of Defense Trade Controls. The Acting Deputy Assistant Secretary is a party to the Settlement Agreement with Defense Distributed.

20.  Defendant Sarah Heidema is sued in her official capacity as the Director, Office of Defense Trade Controls Policy. The Director, Office of Defense Trade Controls Policy is a party to the Settlement Agreement with Defense Distributed.

21.  Defendant Defense Distributed is a Texas corporation whose headquarters and principal place of business are located in Austin, Texas. Upon information and belief, Defense Distributed advertises and sells items over the internet throughout the nation, including in Washington. Defense Distributed also intends to make available for download from the internet as of August 1, 2018 the CAD files at issue in this Complaint, and these downloads would be available in Washington. Defense Distributed is a necessary party as the Settlement Agreement that it entered into with the other Defendants may be affected by the requested relief, and this may impede Defense Distributed's interests under that Settlement Agreement.

22.  Defendant Second Amendment Foundation, Inc. is a non-profit organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. The Second Amendment Foundation is a necessary party as the Settlement Agreement that it entered into with the other Defendants may be affected by the requested relief, and this may impede the Second Amendment Foundation's interests under that Settlement Agreement.

23.  Conn Williamson is a citizen of the State of Washington. Mr. Williamson is a necessary party as the Settlement Agreement that he entered into with the other Defendants may

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

be affected by the requested relief, and this may impede Mr. Williamson's interests under that Settlement Agreement.

## IV.  ALLEGATIONS

### A.  The Statutory and Regulatory Framework

24.  The Arms Export Control Act (AECA), 22 U.S.C. § 2751 *et seq*., authorizes the President, "[i]n furtherance of world peace and the security and foreign policy of the United States . . . to control the import and the export of defense articles and defense services." 22 U.S.C. § 2778(a)(1). The purpose of the AECA is to reduce the international trade in arms and avoid destabilizing effects abroad through arms exports.  22 U.S.C. § 2751.

25.  Under the AECA, "[t]he President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services."  22 U.S.C. § 2778(a)(1).  Items designated as defense articles or services constitute the United States Munitions List (USML).  *Id*. at § 2778(a)(1).  Category I of the USML lists articles, services, and related technical data for "Firearms, Close Assault Weapons and Combat Shotguns."

26.  Among other things, Category I of the USML includes all firearms up to .50 caliber, and all technical data directly related to such firearms.  *See* 22 C.F.R. § 121.1(I)(a). "Technical data" is information that "is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles."  *Id.* § 120.10(a).  Technical data includes "information in the form of blueprints, drawings, photographs, plans, instructions or documentation" . § 120.10.

27.  As former Director of the Office of Defense Trade Controls Management Lisa V. Aguirre stated in a 2015 declaration filed in federal court, "the 'technical data' provisions serve the purpose of limiting the export of detailed information needed to manufacture, maintain, or

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

10

operate defense articles controlled on the USML. *Defense Distributed v. U.S. Dept. of State,* 15-CV-372 RP Dkt. 32-1 ¶ 14(d). Such export limitations advance the purposes of the AECA by limiting the ability of foreign powers to design, develop, and produce defense articles in lieu of being able to obtain those articles directly. Absent the inclusion of technical data in the ITAR, the ITAR's limits on arms transfers would be of negligible practical effect because the ITAR would leave unregulated the exportation of the fundamental technology, know-how, blueprints, and other design information sufficient for foreign powers to construct, produce, manufacture, maintain, and operate the very same equipment regulated in its physical form by the ITAR." *Id.*

28.     Pursuant to Executive Order 13637, the President has delegated his AECA authority to the State Department.  In turn, the State Department has promulgated the ITAR, which is administered by the DDTC.  *See* 22 C.F.R. §§ 120-130.  Among other things, the DDTC is tasked with maintaining, reviewing and clarifying the USML.

29.     Pursuant to Executive Order 13637, section 1(n), "[d]esignations including changes in designations, by the Secretary of items or categories that shall be considered as defense articles and defense services subject to export control under section 38 (22 U.S.C. 2778) shall have the concurrence of the Secretary of Defense."

30.     In addition, the Executive Branch must give notice to the International Relations Committee of the House of Representatives and to the Committee on Foreign Relations of the Senate at least 30 days in advance of removing an item from the USML.  22 U.S.C. § 2778(f)(1). Such notification must be made in accordance with the procedures applicable to reprogramming notifications under section 634A(a) of the Foreign Assistance Act of 1961, 22 U.S.C. § 2394-1. *Id.*

31.     Subject to the procedural requirements above and other provisions of AECA, ITAR allows the Deputy Assistant Secretary for Defense Trade Controls to order the temporary

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   modification of any ITAR regulation.  However, it may do so only "in the interest of the security

2   and foreign policy of the United States"—not merely as an interim measure before a final rule

3   can be passed.  22 C.F.R. § 126.2.

4       32.     For situations where there is doubt that a particular item to be exported falls on

5   the USML, ITAR contains a commodity jurisdiction (CJ) procedure.  22 C.F.R. § 120.4.  Upon

6   written request, the DDTC will provide a determination as to whether a certain item, service, or

7   data is within the jurisdiction of ITAR.  *Id.*

8       33.     As the Director Aguirre explained in her 2015 declaration, the CJ determination

9   "entails consultation among the Department of State, Defense, Commerce and other U.S.

10  Government agencies and industry in appropriate cases." Ex. 4 ¶ 19. Assessments are made on

11  a case-by-case basis, evaluating whether the article is covered by the USML, is functionally

12  equivalent to an article on the USML, or has substantial military or intelligence application.  A

13  determination made pursuant to the commodity jurisdiction process takes into account "(i) The

14  form and fit of the article; and (ii) The function and performance capability of the article." Ex. 4

15  ¶ 20.

16      34.     22 C.F.R. § 120.4(f) requires that "State, Defense and Commerce will resolve

17  commodity jurisdiction disputes in accordance with established procedures.  State shall notify

18  Defense and Commerce of the initiation and conclusion of each case."

19  **B.      The Defense Distributed CAD Files**

20      35.     Defense Distributed is a Texas corporation founded by Cody Wilson, a self-

21  described "crypto-anarchist" who believes that "governments should live in fear of their

22  citizenry." His company's objective is for everyone in the world to have access to guns, and to

23  make meaningful gun regulation impossible.

24

COMPLAINT FOR DECLARATORY        12         ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                        800 Fifth Avenue. Suite 2000
                                             Seattle, WA  98104-3188
                                             (206) 464-7744

36.     In or around early May 2013, Defense Distributed posted CAD files on DEFCAD.org, a website it created to serve as an open-source repository for weapons designs, including software code used to automatically manufacture the "Liberator" pistol. The Liberator is a plastic firearm which contains 6-oz piece of steel, which can be easily removed, enabling it to avoid detection in walk-through metal detectors.

37.     Defense Distributed described these CAD files as "essentially blueprints that can be read by CAD software."  As the Federal Government stated in a court filing in April 2018, these files are "indispensable to a three-dimensional ('3-D') printing process used to create firearms and their components."  All a user would need to do is connect to a 3-D printer, download the CAD files, and enter a print command, in order to create a real, functional weapon within hours or minutes.

38.     On May 8, 2013, the Office of Defense Trade Controls Compliance, which is responsible for compliance with and civil enforcement of the AECA and ITAR, sent Defense Distributed a letter noting that "it is unlawful to export any defense article or technical data for which a license or written approval is required without first obtaining the required authorization from the DDTC." That letter is attached hereto as Exhibit 5.  The letter explained that "disclosing (including oral or visual disclosure) or transferring foreign data to a foreign person, whether in the United States or abroad, is considered an export under § 120.17 of the ITAR."  It requested that Defense Distributed remove ten specific CAD files from public access "immediately" and advised that Defense Distributed could submit a request for CJ determination for the files. Defense Distributed submitted a CJ determination request on June 21, 2015.

39.     Separately, Defense Distributed submitted a CJ determination request for the "Ghost Gunner," an automated firearms metal milling machine. In April 2015, the DDTC determined that the Ghost Gunner machine itself was not subject to the jurisdiction of the State

13

1    Department, but that the "project files and data files for producing a defense article on a 3D

2    printer or similar device constituted technical data on that defense article that would be subject

3    to ITAR regulation."

4        40.    The DDTC completed its review of Defense Distributed's original requests on

5    June 4, 2015 and determined that six of those files were subject to ITAR control: (i) the

6    Liberator pistol; (ii) the .22 caliber electric pistol; (iii) the 5.56/.223 muzzle brake; (iv) the

7    Springfield XD- 40 tactical slide assemble; (v) the sub-caliber insert; and (vi) the VZ-58 front

8    sight.

9        41.    In making its CJ determination, the DDTC noted that the CAD files could be used

10   to "automatically find, align, and mill" a defense article such as a firearm on a 3-D printer or

11   other manufacturing device, and that manufacture of a defense article in this way requires

12   considerably less know-how than manufacture in reliance on conventional technical data, which

13   merely *guides* the manufacture of a defense article and requires additional craftsmanship, know-

14   how, tools, and materials.

15   **C.    Defense Distributed's Lawsuit against the Federal Government**

16       42.    In May 2015, Defense Distributed sued the Federal Government in a Texas

17   federal district court, seeking an injunction to prevent the Government from regulating Defense

18   Distributed's dissemination of the CAD files. *Def. Distributed v. U.S. Dept. of State*,

19   15-CV-372 RP (W.D. Texas).

20       43.    In defending against that lawsuit, the Government stated it was "particularly

21   concerned that [the] proposed export of undetectable firearms technology could be used in an

22   assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or to

23   compromise aviation security overseas in a manner specifically directed at U.S. persons." As

24   the Government explained, the CAD files "are 'technical data' that are regulated by the ITAR

COMPLAINT FOR DECLARATORY        14        ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                          800 Fifth Avenue. Suite 2000
                                                  Seattle, WA 98104-3188
                                                   (206) 464-7744

1  because, absent such regulation, providing the CAD designs to a foreign person or foreign

2  government would be equivalent to providing the defense article itself, enabling the complete

3  circumvention of ITAR's export regulations."

4      44.    Along with its opposition to Plaintiffs' preliminary injunction motion, the

5  Government submitted an affidavit from Lisa V. Aguirre, who was then the Director of the

6  Office of Defense Trade Controls Management. *See* Ex. 4, Dkt. 32-1. Among other things,

7  Director Aguirre stated  that: (i) "[t]he 'Liberator' firearm included in DD's CAD designs

8  presents a specific and unique risk  to the national security and foreign policy interests of the

9  United States"; (ii) making the CAD files available online would provide terrorist organizations

10 with firearms, which could be used against the United States or its allies; and (iii) "[a]cess to

11 weapons technology coupled with the uncontrolled ubiquitous means of productions . . . could

12 contribute to armed conflict, terrorist or criminal acts, and seriously undermine global export

13 control and non-proliferation regimes designed to prevent the dangerous and destabilizing spread

14 and accumulation of weapons and related technologies." Ex. 4 at ¶ 35(c).

15     45.    The federal district court accepted the Government's arguments and declined to

16 preliminarily enjoin the Government's regulation of the CAD files.  In doing so, the court found

17 that "[f]acilitating global access to firearms undoubtedly increases the possibility of outbreak or

18 escalation of conflict." *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 691

19 (W.D. Tex. 2015).

20     46.    On appeal, the Fifth Circuit affirmed the district court's refusal to enjoin the

21 Government's enforcement efforts, focusing on both the national security implications of the

22 CAD files and the permanent nature of the internet:

23         Even if Plaintiffs–Appellants eventually fail to obtain a permanent injunction, the
        files posted in the interim [if a preliminary injunction issued] would remain online

24         essentially forever, hosted by foreign websites such as the Pirate Bay and freely

COMPLAINT FOR DECLARATORY          15        ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                           800 Fifth Avenue. Suite 2000
                                            Seattle, WA  98104-3188
                                               (206) 464-7744

available worldwide . . . ***Because those files would never go away***, a preliminary injunction would function, in effect, as a permanent injunction as to all files released in the interim. ***Thus, the national defense and national security interest would be harmed forever***.

*Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 461 (5th Cir. 2016) (emphasis added).

47. On January 8, 2018, the Supreme Court denied Defense Distributed's petition for a writ of certiorari. *Def. Distributed v. Dep't of State*, 138 S. Ct. 638 (2018).

48. After the district court lifted the stay of proceedings that had been imposed pending the above-referenced appeals, the Government in April 2018 moved to dismiss Defense Distributed's complaint, arguing that the CAD files at issue "can unquestionably facilitate the creation of defense articles abroad" and that "the Department of State has consistently and reasonably concluded that it is not possible to meaningfully curtail the overseas dissemination of arms if unfettered access to technical data essential to the production of those arms is permitted." If the Government were not permitted to regulate the dissemination of the CAD files, it argued, "they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability."

49. Mere weeks after the Government moved to dismiss, Wilson and Defense Distributed abruptly announced that their case had settled. According to news reports, "the government surprised the plaintiffs by suddenly offering them a settlement with essentially everything they wanted."[4] On July 27, 2018, the parties filed a stipulation of dismissal with prejudice.

**D. The Government's Settlement Agreement with Defense Distributed**

50. The Settlement Agreement was apparently finalized in April 2018, but was not executed by the parties until June 29, 2018, and was not made public until July 10, 2018. A true

---

[4] Exhibit 1

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

16

and correct copy of the Settlement Agreement, which is published on DDTC's website (https://www.pmddtc.state.gov),  attached hereto as Exhibit 6.

51.     Pursuant to Paragraph 1 of the Settlement Agreement, the Government Defendants have committed to:

a.     "draft and . . . fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the [Defense Distributed] Action";

b.     "announce[ ], while the above-referenced rule is in development, . . . a temporary modification, consistent with [ITAR], of USML Category I to exclude the technical data that is the subject of the Action . . . on or before July 27, 2018";

c.     "issu[e] . . . a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files[5] are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR"; and

d.     "acknowledge[ ] and agree[ ] that the temporary modification of USML Category I permits any United States person . . . to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the

---

[5] These terms are defined as follows, by reference to Defense Distributed's complaint:
- "Published Files": "technical information regarding a number of gun-related items, including a trigger guard, grips, two receivers, a magazine for AR-15 rifles, and a handgun".
- "Ghost Gunner Files": "files containing technical information on a machine, named the "Ghost Gunner," that can be used to manufacture a variety of items, including gun parts".
- "CAD Files": files which Defense Distributed has made requests to the Department of Defense Office of Prepublication Review and Security for prepublication review since September 2, 2014.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

17

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise

2  benefit from the Published Files, Ghost Gunner Files, and CAD Files."

3  52.  Importantly, Paragraphs 1(a), (b), and (d) of the Settlement Agreement apply to

4  "the technical data that is the subject of the Action," which is defined to include "Other Files,"

5  i.e., those that "Defense Distributed has and will continue to create and possess . . . that contain

6  technical information, to include design drawings, rendered images, written manufacturing

7  instructions." In other words, they include existing files that the Government presumably has not

8  seen or evaluated, as well as files that may be created or acquired by Defense Distributed in the

9  future.

10  53.  There is no indication in the Settlement Agreement (or elsewhere) that any

11  analysis, study or determination was made by the Government Defendants, in consultation with

12  other agencies, before the Government agreed to remove the CAD Files from the USML

13  Category I. In fact, the Settlement Agreement states that it "does not reflect any agreed-upon

14  purpose other than the desire of the Parties to reach a full and final conclusion of the Action, and

15  to resolve the Action without the time and expense of further litigation." Ex. 6 ¶ 5.

16  54.  Upon information and belief, neither the House Committee on Foreign Relations

17  nor the Senate Committee on Foreign Relations received the required 30 days' advance notice

18  of the "temporary modification" referenced in Paragraphs 1(b) or (d) of the Settlement

19  Agreement. The temporary modification went into effect on July 27, 2018, without providing

20  any such notice to Congress.

21  55.  In addition, there is no indication in the Settlement Agreement (or elsewhere) that

22  the Secretary of Defense has concurred in the changes to designation to which the Government

23  Defendants committed, as required by Executive Order 13637. There is also no indication that

24

COMPLAINT FOR DECLARATORY          18
AND INJUNCTIVE RELIEF

1    the Government Defendants have followed the established procedures for making a CJ

2    determination before allowing Defense Distributed to disseminate its CAD files.

3         56.    Since the Settlement Agreement became public, Cody Wilson and Defense

4    Distributed have repeatedly and adamantly claimed that the "temporary modification" pursuant

5    to the Settlement Agreement will effectively negate all gun violence prevention efforts. Among

6    other things, Wilson tweeted a photo of a tombstone announcing the death of "gun control," and

7    stated: "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'?

8    No.  The internet will serve guns . . . No amount of petitions or die-ins or anything else can

9    change that." *See* Ex. 1.

10   **E.    The Government's Actions in Accordance with the Settlement Agreement**

11        57.    On May 24, 2018, as promised, the Government published notices of proposed

12   rulemaking by the State and Commerce Departments, which would remove Plaintiffs' CAD files

13   from the USML Category I.  *See* International Traffic in Arms Regulations: U.S. Munitions List

14   Categories I, II, and II, 83 Fed. Reg. 24,198 (May 24, 2018); Control of Firearms, Guns,

15   Ammunition and Related Articles the President Determines No Longer Warrant Control Under

16   the United States Munitions List (USML), 83 Fed. Reg. 24,166 (May 24, 2018).

17        58.    According to the Department of State's Notice of Proposed Rule, it "is engaged

18   in an effort to revise the U.S. Munitions List so that its scope is limited to those defense articles

19   that provide the United States with a critical military or intelligence advantage or, in the case of

20   weapons, are inherently for military end use."  According to the State Department, the articles

21   that would be removed from the list "do not meet this standard."  For this reason, the notice

22   proposes to remove all non-automatic firearms up to .50 caliber (and any related technical data)

23   from the USML under the jurisdiction of the State Department, and move jurisdiction over these

24

COMPLAINT FOR DECLARATORY                    19              ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                                               800 Fifth Avenue, Suite 2000
                                                                      Seattle, WA  98104-3188
                                                                         (206) 464-7744

1    products over to the Commerce Department, which, due to its looser export controls,[6] do not

2    typically take action to prohibit the publication of the data.

3         59.    The Department of Commerce's Proposed Rule, filed the same day, describes

4    how its Export Administration Regulations (EAR) will apply to items no longer controlled under

5    the USML.  Although the Department of Commerce would not comprehensively restrict the

6    export of technology related to firearms, it would have authority to impose a restriction on a

7    case-by-case basis if it determines the export would be contrary to the national security or foreign

8    policy interests of the United States, the promotion of human rights, or regional stability.

9    *See* 15 C.F.R. § 742.6. But the Department of Commerce cannot restrict the export of technology

10   already in the public domain, including through posting on publicly available sites on the

11   internet. *See* 15 C.F.R. §§ 734.3(b)(3), 734.7(a)(4). If the Government Defendants' improper

12   deregulation of the CAD files at issue is not enjoined, and Defense Distributed makes its

13   repository of files available online, the Department of Commerce will be unable to make an

14   independent determination about whether national security or other concerns warrant restricting

15   the unlimited dissemination of those files in accordance with the EAR.

16        60.    The public comment period for both notices concluded on July 9, 2018, the day

17   before the Settlement Agreement became public.

18        61.    On July 27, 2018, as promised, DDTC published a notice on its website entitled

19   "Temporary Modification of Category I of the United States Munitions List." attached hereto as

20   Ex. 7. This notice states that "the Acting Deputy Assistant Secretary for Defense Trade Controls

21   has determined that it is in the interest of the security and foreign policy of the United States to

22

23

24        [6] ITAR requires any exporter of items on the USML to register with the State Department, *see* 22 C.F.R.
     122.1(a), but Commerce Department regulations include no similar registration requirement.

COMPLAINT FOR DECLARATORY                      20            ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                                              800 Fifth Avenue, Suite 2000
                                                                     Seattle, WA 98104-3188
                                                                        (206) 464-7744

1　temporarily modify United States Munitions List (USML) Category I to exclude" the technical

2　data described in the Settlement Agreement.

3　　　　62.　　Upon information and belief, the Government did not actually "determine" that

4　"it is in the interest of the security and foreign policy of the United States" to permit the global

5　dissemination of CAD files that can be used to automatically manufacture undetectable and

6　untraceable weapons.　The notion that *removal* of an item from the USML is in the national

7　security interest defies common sense.　This statement also contradicts the Settlement

8　Agreement, which provides that the parties' agreement thereto does not "reflect any agreed-upon

9　purpose other than the desire of the Parties to reach a full and final conclusion of the Action, and

10　to resolve the Action without the time and expense of further litigation."

11　　　　63.　　In sum, the Government's covert agreement to deregulate the CAD files by way

12　of the Settlement Agreement—which culminated in the enactment of the "temporary

13　modification" on July 27, 2018—are final agency decisions that not only failed to comply with

14　procedural requirements, but that have far-reaching implications for national security and the

15　safety and security of the State and people of Washington.

16　**F.　　Adverse Effects on the States' Public Safety Laws**

17　　　　64.　　Each of the States in this matter have extensive and comprehensive statutory and

18　regulatory schemes regarding firearms. The aim of the States' laws is the same: To protect the

19　public by keeping guns out of the hands of those who should not possess them – minors,

20　convicted felons, the mentally ill, and those subject to protective and no-contact orders. The

21　States' ability to protect the public will be seriously undermined if the Government's action is

22　allowed to stand because the Government's action will allow anyone – including those ineligible

23　to possess firearms – to easily obtain untraceable guns by simply printing them.

24

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

21

1      **1.      Washington's Firearms Laws**

2      65.     The State of Washington has a comprehensive statutory scheme regulating the

3      possession, licensing, registration, and use of firearms and dangerous weapons.

4      66.     These laws promote public safety by keeping guns out of the hands of those who,

5      for various reasons, should not have access to them, including minors, persons convicted of

6      violent felonies, the mentally ill, and persons subject to various protection and no-contact orders.

7      67.     As noted, Cody Wilson's express intent is to eviscerate *any* regulation of firearms

8      by providing to anyone—including the categories of persons just mentioned—the ability to

9      easily manufacture firearms that can evade metal detectors, are untraceable because they carry

10     no markings, and shoot bullets that cannot be forensically linked to the gun.  The Government

11     Defendants' unlawful action in removing from the USML CAD files like those Mr. Wilson

12     intends to disseminate will allow Mr. Wilson and others like him to achieve their dream.

13     68.     Indeed, the Government Defendants' unlawful action will effectively cripple

14     Washington's ability to enforce its firearm and dangerous weapons regulations—to the great

15     detriment of the public and public safety.

16     69.     Washington law prohibits certain persons from obtaining or possessing firearms.

17     For example, persons cannot possess firearms if they have been convicted or found not guilty by

18     reason of insanity of crimes including serious felony offenses and certain crimes committed by

19     one family member against another (e.g., stalking, reckless endangerment, coercion). Wash Rev.

20     Code §§ 9.41.040(1), (2)(a)(i)-(ii). Persons subject to a variety of protection and no contact

21     orders are also prohibited from possessing firearms.[7] Wash Rev. Code § 9.41.040(2)(a)(iii).

22     Persons who have been involuntarily committed for mental health treatment may not possess

23     —————————————————

24     [7] These include sexual assault protection orders (Wash Rev. Code 7.90), stalking protection orders (Wash. Rev. Code 7.92), anti-harassment protection orders (Wash Rev. Code 10.14), and domestic violence protection orders (RCW 26.50).

COMPLAINT FOR DECLARATORY          22          ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                                800 Fifth Avenue. Suite 2000
                                                    Seattle, WA 98104-3188
                                                    (206) 464-7744

firearms. Wash Rev. Code § 9.41.040(2)(a)(iv). Finally, persons under the supervision of the Washington Department of Corrections cannot possess firearms or ammunition. Wash Rev. Code § 9.41.045.

70.     Washington law also has set up an extensive system of rules to ensure these persons cannot buy firearms. For example, a person who applies to buy a pistol from a dealer must provide a laundry list of information, including his or her name, residential address, date and place of birth, driver's license number or state identification card number, and statement that the buyer is eligible under Washington law to possess the gun, as well as a description of the gun, including the make, model, caliber and manufacturer's number. Wash Rev. Code § 9.41.090(5). The dealer cannot deliver the pistol to the buyer, even if he or she is eligible to possess the gun, unless the manufacturer's number for the gun is recorded on the application and transmitted to the local police chief or sheriff where the buyer lives. *Id.* The dealer must keep a record in a book of each pistol sold, including information about the person buying the weapon (e.g., name, address, etc.) and the weapon (e.g., caliber, make, model and manufacturer's number), and the book must be signed by both the buyer and the dealer in one another's presence. Wash Rev. Code § 9.41.110(9)(a). The dealer is also obligated to give to the buyer a copy of a pamphlet advising the buyer of legal restrictions on the use of firearms and firearms safety. Wash Rev. Code § 9.41.090(5) (year).

71.     One of the cornerstones of Washington's firearms regulatory structure is the use of background checks. Essentially all sales or transfers of firearms in Washington are subject to background checks.[8] Wash. Rev. Code § 9.41.113(1). This includes not just sales by dealers, but also sales or transfers at gun shows and online. *Id.* Even sales or transfers between unlicensed

---

[8] The exceptions to this rule are extremely limited (e.g., transfers between immediate family members, antique firearms, to prevent imminent death or great bodily harm, etc.). RCW 9.41.113(4).

parties must be run through a licensed dealer in order to ensure that a background check is completed. Wash Rev. Code § 9.41.113(3). The purpose of the background check is simple and obvious: to ensure that persons prohibited by law from possessing firearms are unable to do so.

72.     The Government's "temporary modification" of the USML Category I to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the automated production of 3-D printed weapons quite literally nullifies the State of Washington's laws prohibiting certain categories of persons from possessing firearms.

73.     If the "temporary modification" is left in place, the State of Washington stands to suffer extreme and irreparable harm.  Persons ineligible to possess firearms under Washington law will easily be able to obtain downloadable guns that they can produce at home using a 3-D printer.  Washington law enforcement will have no means of detecting such weapons using standard equipment such as metal detectors, and no means of tracing such weapons because they have no serial numbers.

74.     3-D printers are widely available to the general public in Washington. For example, Amazon has hundreds of 3-D printers on its website for sale to the public. In addition, such printers are widely accessible at Washington colleges and universities, including the University of Washington in Seattle. *See, e.g.*, https://itconnect.uw.edu/learn/workshops/3d-printing-consultation/ (University of Washington); https://vcea.wsu.edu/fiz/3d-printing/ (Washington State University); https://www.cwu.edu/multimodal-education/3d-printing (Central Washington University).

75.     The dangers posed by the Government's actions that will allow the imminent dissemination of the technology needed to print guns is recognized by two of Washington's preeminent law enforcement officers, Seattle Police Chief Carmen Best and King County Sheriff Mitzi Johanknecht. As Sheriff Johanknecht attests, "Ghost guns are an extreme risk to public

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

24

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

safety that would disrupt the ability of law enforcement to conduct, solve and prevent violent crimes." Ex. 2 ¶ 8.

76.     In sum, the Government's actions are an extreme infringement on the State of Washington's sovereign right to enact and enforce its public safety laws.

**2.      Connecticut's Firearms Laws**

77.     Connecticut comprehensively regulates the possession, sale and transfer of all firearms within and into the state and bans the most dangerous military-style firearms completely.  It also regulates the classes of people who may lawfully possess otherwise lawful firearms and prohibits individual from possessing firearms who pose the most serious threat to public safety, and in some instances, themselves.

**a.      Connecticut's regulation of all lawful firearm owners**

78.     In Connecticut, people who wish to possess handguns—pistols or revolvers—are required to have a valid pistol permit; an eligibility certificate to purchase pistols or revolvers; an eligibility certificate to purchase long guns, or a be a police officer or one of the exemption listed in law. Not everyone who wishes to have a pistol permit in Connecticut is granted one; he or she must be a person is a suitable person to receive such permit. Conn. Gen. Stat. Ann. § 29-28. Individuals who wish to possess a pistol or revolver must satisfy basic safety training requirements. Conn. Gen. Stat. Ann. § 29-36f(b); Conn. Gen. Stat. § 29-28 (b).

**b.      Connecticut's regulation of sale, purchase and transfer of possession of all firearms, even between lawful firearm owners**

80.     Connecticut closely regulates the sale and transfer of all firearms, even between lawful firearm owners. In Connecticut, no person, firm or corporation shall sell, deliver or otherwise transfer any pistol or revolver to any person who is prohibited from possessing a pistol or revolver. Conn. Gen. Stat. § 29-33(a). The purchaser of a pistol or revolver must have a valid permit to carry a pistol or revolver. Conn. Gen. Stat. § 29-33(b). Compliance with these requirements is ensured by requiring all sales or transfers of pistols or revolvers in Connecticut

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

25

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

be made through a process established by the Connecticut Department Emergency Services and Public Protection. Conn. Gen. Stat. § 29-33(c).

81.     Similarly, Connecticut regulates the sale and transfer of long guns such as rifles and shotguns. All parties to such transfers must ensure, through a process established by the Connecticut Department Emergency Services and Public Protection, that the purchaser of the long gun has a valid long gun eligibility certificate that has not been revoked or suspended. Conn. Gen. Stat. § 29-36l(f).

82.     Connecticut regulation also restricts how many firearms a person can sell as year without becoming a federally licensed firearm dealer or obtaining a permit. Conn. Gen. Stat. § 29-28.

83.     Unlike many states, Connecticut's firearm regulations extend to the sales, transfers or exchanges taking place at "gun shows." Connecticut requires that gun show sellers obtain an authorization number from the Connecticut Special Licensing and Firearms Unit. Conn. Gen. Stat. § 29-37g(c).

### c.     Connecticut's prohibition on possession of a firearm by certain persons

84.     Connecticut prohibits certain persons from obtaining or possessing firearms. For example, persons cannot possess firearms if they have been convicted or found not guilty by reason of insanity of crimes including serious felony offenses and certain crimes committed by one family member against another Conn. Gen. Stat. § 53a-217. No person convicted for a Felony or a Misdemeanor crime of domestic violence involving the use or threatened use of physical force or a deadly weapon may possess any firearms in Connecticut. Conn. Gen. Stat. § 29-36f(b); Conn. Gen. Stat. § 29-28 (b).

85.     The types of crimes that render someone ineligible to possess a firearm in

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

26

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Connecticut are wide ranging and include: 1) illegal possession of narcotics or other controlled substances; 2) criminally negligent homicide; 3) assault in the third degree ; 4) Assault of a victim 60 or older in the third degree; 5) threatening; 6) reckless endangerment in the first degree; 7) unlawful restraint in the second degree; 8) riot in the first degree; 9) riot in the second degree; 10) Inciting to riot; 11) stalking in the second degree; or 12) anyone who has been convicted as delinquent for the commission of a serious juvenile offense, or 13) anyone who has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect; 14) anyone who has been confined in a hospital for persons with psychiatric disabilities within the preceding sixty months by order of a probate court; 15) anyone who has been voluntarily admitted to a hospital for persons with psychiatric disabilities within the preceding six months for care and treatment of a psychiatric disability and not solely for alcohol or drug dependency; or 15) anyone who is subject to a firearms seizure order issued pursuant to Connecticut General Statute Section 29-38c after notice and an opportunity to be heard has been provided to such person; 16) anyone who is an alien illegally or unlawfully in the United States; 17) anyone who satisfies any of the federal disqualifiers listed in Title 18 U.S.C Chapter 44. *See* Conn. Gen. Stat. § 29-28(b);  Conn. Gen. Stat. § 29-36f(b).

86.   Connecticut also prohibits a person under the age of 21 years of age from obtaining a pistol or revolver. Conn. Gen. Stat. § 29-36f(a).

### d.   Connecticut's regulation of assault weapons and machine guns

87.   Connecticut prohibits the possession of an assault weapon or any "part or combination of parts" that can be readily assembled into an assault weapon, Conn. Gen. Stat. § 53-202c unless the owner obtained a Certificate of Possession prior to January 1, 2014. Conn. Gen. Stat. § 53-202d.

88.   Any Connecticut resident who owns a fully automatic weapon or machine gun is

1    required to complete a state form registering that firearm with Connecticut immediately upon

2    receiving it, and upon an annual basis. Conn. Gen. Stat. § 53-202(g).

3        89.    The Government's "temporary modification" of the USML Category I to permit

4    "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD

5    files for the automated production of 3-D printed weapons quite literally nullifies the State of

6    Connecticut's laws prohibiting certain categories of persons from possessing firearms.

7        90.    If the "temporary modification" is left in place, the State of Connecticut stands to

8    suffer extreme and irreparable harm. Persons ineligible to possess firearms under Connecticut

9    law will easily be able to obtain downloadable guns that they can produce at home using a 3-D

10   printer.  Connecticut law enforcement will have no means of detecting such weapons using

11   standard equipment such as metal detectors, and no means of tracing such weapons because they

12   have no serial numbers.

13       91.    In sum, the Government's actions are an extreme infringement on the State of

14   Connecticut's sovereign right to enact and enforce its public safety laws.

15       **3.    Maryland's Firearms Laws**

16       92.    The State of Maryland has one of the most robust firearms regulatory regimes in

17   the country. For instance, Maryland prohibits certain categories of persons from buying or

18   possessing a firearm. This includes minors under the age of 21, and persons previously convicted

19   of certain serious crimes, including crimes of violence. Md. Code Ann., Pub. Safety § 5-133.

20   Persons who have been involuntarily committed to a mental health facility, or are under the

21   protection of a court-appointed guardian, or have been found incompetent to stand trial, or are

22   addicted to a controlled dangerous substance, or are subject to a protective order are all

23   prohibited from possessing a firearm as well. *Id*.

24       93.    Sales and other transfers of firearms in Maryland are extensively regulated to

COMPLAINT FOR DECLARATORY          28          ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                            800 Fifth Avenue. Suite 2000
                                                   Seattle, WA  98104-3188
                                                      (206) 464-7744

1   ensure that prohibited persons are unable to obtain a weapon. A person seeking to purchase, rent,

2   or receive a handgun must first obtain a handgun qualification license. Md. Code Ann., Pub.

3   Safety § 5-117.1. To obtain such a license, applicants must, among other things, make a sworn

4   statement that they are not prohibited under federal or State law from possessing a handgun, pass

5   a fingerprint-based background check, and complete an approved firearms safety training course.

6   *Id*. Further, a person must submit a firearm application before the person purchases, rents, or

7   transfers a handgun in Maryland.  Md. Code Ann., Pub. Safety §§ 5-117, 5-118. That transaction

8   must be executed within 90 days of the application's approval and must be reported to the State

9   Police, including a description of the firearm and its serial number. Md. Code Ann., Pub. Safety

10   § 5-123. Firearm dealers are required to maintain records of every transaction, including the

11   name and address of the purchaser, a precise description, including make, model, caliber, and

12   serial number of each firearm acquired or sold, and the date of sale.  Md. Code Ann., Pub. Safety

13   § 5-145. Further, persons moving to Maryland from out-of-state must register their firearms with

14   the State Police, which requires the applicant to submit information such as their name, address,

15   and Social Security number, as well as the make, model, and manufacturer's serial number of

16   the firearm. Md. Code Ann., Pub. Safety § 5-143.

17         94.     Maryland also prohibits the possession of certain types of firearms. Assault

18   weapons, including assault pistols, may not be bought, possessed, sold, or transported into the

19   State. Md. Code Ann., Crim. Law § 4-303. Detachable magazines with a capacity of more than

20   ten rounds of ammunition are also prohibited from being bought, sold, or possessed. Md. Code

21   Ann., Crim. Law § 4-305.

22         95.     Maryland's carefully constructed regulatory regime will be upended if the

23   Government's action is permitted to stand. Persons currently prohibited from possessing

24   firearms would be able to easily circumvent Maryland law by simply manufacturing a gun on a

COMPLAINT FOR DECLARATORY      29      ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF              800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

3-D printer. The firearms thus produced will be unregistered, unmarked, and virtually untraceable, directly harming Maryland's interest in a well-regulated firearms market and potentially leading to an increase in violent crime.

### 4. New Jersey's Firearms Laws

96. New Jersey not only has statutes related to the purchase and possession of guns, but also laws relating to who can manufacture firearms. In New Jersey, under N.J.S.A. 2C:39-9, it is illegal to manufacture a weapon without being registered or licensed to do so. And N.J.S.A. 2C:39-10 makes it a crime to knowingly violate the regulatory provision relating to the manufacturing of firearms in N.J.S.A. 2C:58-1, which provides that every manufacturer of firearms shall register with the proper State authorities. Yet Defense Distributed's codes would enable individuals to manufacture guns, without a license, using a 3D printer at home, no matter what state law says – and indeed, founder Cody Wilson has celebrated this result.

97. New Jersey also has an extensive system of rules for people purchasing firearms. A person must obtain a firearms purchaser identification card before purchasing, receiving, or otherwise acquiring a firearm. Under N.J.S.A. 2C:58-3(c), the following people are prohibited from obtaining a purchaser identification card, and thus prohibited from purchasing firearms:  those who have been convicted of crimes and disorderly persons offenses involving acts of domestic violence (N.J.S.A. 2C:58-3(c)(1)); those who are drug dependent (N.J.S.A. 2C:58-3(c)(2)); those who are confined for mental disorders to hospitals, mental institutions or sanitariums (N.J.S.A. 2C:58-3(c)(2)); those who suffer from a physical defect or disease that would make it unsafe for him to handle firearms (N.J.S.A. 2C:58-3(c)(3)); those who have been confined for a mental disorder (N.J.S.A. 2C:58-3(c)(3)); those who are alcoholics and are unable to produce proof demonstrating that they no longer suffer from that particular disability in a manner that would interfere with or handicap them in the handling of firearms (N.J.S.A.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

30

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

2C:58-3(c)(3)); juveniles (N.J.S.A. 2C:58-3(c)(4)); those for whom the issuance of a permit to purchase a handgun or firearms purchaser identification card would not be in the interests of the public health, safety, or welfare (N.J.S.A. 2C:58-3(c)(5)); those who are subject to restraining orders issued pursuant to the "Prevention of Domestic Violence Act" prohibiting them from possessing firearms (N.J.S.A. 2C:58-3(c)(6); those who were adjudicated delinquent for offenses which, if committed by an adult, would constitute a crime involving the unlawful use or possession of weapons, explosives, or destructive devices (N.J.S.A. 2C:58-3(c)(7)); those who had a firearm seized pursuant to the Prevention of Domestic Violence Act (N.J.S.A. 2C:58-3(c)(8)); and those who are named on the consolidated Terroristic Watchlist maintained by the Terrorist Screening Center administered by the Federal Bureau of Investigation (N.J.S.A. 2C:58-3(c)(9)). And New Jersey bans all assault weapons. N.J.S.A. 2C:39-5(f).

98.    Finally, New Jersey law prohibits "certain persons" from purchasing, owning, possessing, or controlling any and all firearms under N.J.S.A. 2C:39-7(b), due to their prior convictions for aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, sexual assault, bias intimidation, endangering the welfare of a child, stalking, or a crime involving domestic violence.  Those persons face a mandatory term of imprisonment with at least five years of parole ineligibility if they purchase, own, possess, or control a firearm. N.J.S.A. 2C:39-7(b).

### 5.    New York's Firearms Laws

99.    For over a century, in order to promote public safety, New York law has regulated the possession and use of guns and has prohibited certain persons from obtaining or possessing firearms. *See* NY Penal Law §§ 265.00, 265.01, 265.20(a)(3), 400.00; *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 84 (2012), cert. denied, 133 S. Ct. 1806 (2013). For example, New York licenses the possession of "firearms," which are defined, as a general matter, as any

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

31

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

pistol or revolver; a shotgun having one or more barrels less than eighteen inches in length; a rifle having one or more barrels less than sixteen inches in length; and any assault weapon. *See* NY Penal Law §§ 265.01, 265.20(a)(3), 400.00. These measures remain the law today.

100.     Licenses are limited "to those over twenty-one years of age, of good moral character, without a history of crime or mental illness, and 'concerning whom no good cause exists for the denial of the license.' " *Kachalsky v. County of Westchester*, 701 F.3d 81, 86 (quoting PL § 400.00(1).); NY Penal Law §§ 265.00, 265.01, 265.20(a)(3), 400.00. Persons subject to a variety of protection orders are also prohibited from maintaining licenses. NY Penal Law § 400.00(1); NY Criminal Procedure Law § 530.14; Family Court Act §842-a.

101.     Every license application triggers an investigation into the applicant by local law enforcement, including an investigation into the applicant's mental health history. PL § 400.00(4); *Kachalsky*, 701 F.3d at 87. Firearms subject to licensure must be disclosed to and registered with licensing officials. N.Y. Penal Law § 400.00(7) (mandating that each license "specify the weapon covered by calibre, make, model, manufacturer's name and serial number, or if none, by any other distinguishing number or identification mark . . . .").

102.     New York has also enacted specific criminal prohibitions on the possession of rifles and shotguns by certain mentally ill individuals. PL §§ 265.01(6), 265.00(16). Penal Law § 265.01(6), enacted in 1974, provides that "a person who has been certified not suitable to possess a rifle or shotgun . . . and refuses to yield possession of such rifle or shotgun upon the demand of a police officer" is guilty of criminal possession of a weapon in the fourth degree.  Id. § 265.01(6). Law enforcement is authorized to take firearms "possessed by such person."

103.     New York's Secure Ammunition and Firearms Enforcement Act of 2013 (SAFE Act) generally restricts the transfer and possession of "assault weapons"—defined, as a general matter, as rifles, shotguns, and pistols that are (1) semiautomatic, (2) in the case of a pistol or

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

32

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  rifle, able to accept a detachable ammunition magazine, and (3) equipped with at least one feature

2  on an enumerated list of military style features. Penal Law § 265.00(22).[1]  Possession of a

3  prohibited assault weapon constitutes the Class D felony of Criminal Possession of a Weapon in

4  the Third Degree. Id. § 265.02(7)-(8)[9].

5      104.    The Government's "temporary modification" of the USML Category I to permit

6  "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD

7  files for the automated production of 3-D printed weapons quite literally nullifies the New

8  York's laws prohibiting certain categories of persons from possessing firearms. If the "temporary

9  modification" is left in place, the New York stands to suffer extreme and irreparable

10  harm.  Persons ineligible to possess firearms under New York law will easily be able to obtain

11  downloadable guns that they can produce at home using a 3-D printer.  New York law

12  enforcement will have no means of detecting such weapons using standard equipment such as

13  metal detectors, and no means of tracing such weapons because they have no serial numbers.

14      **6.    Oregon's Firearms Laws**

15      105.    Oregon law also limits the availability and manufacture of firearms to protect the

16  public safety and in the exercise of its police powers. Or. Rev. St. 166.170(1) provides: "[e]xcept

17  as expressly authorized by state statute, the authority to regulate in any matter whatsoever the

18  sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms or

19  any element relating to firearms and components thereof, including ammunition, is vested solely

20  in the Legislative Assembly." Under this authority, the Oregon Legislature enacted Or. Rev. St.

21  166.410, which states that "[a]ny person who manufactures or causes to be manufactured within

22

23  [9] The Act does not prohibit possession of any firearm that was lawfully possessed before the law's effective date of January 15, 2013. See Penal Law § 265.00(22)(g)(v). Persons who lawfully possessed a banned assault weapon at that time may continue to do so, but must register the weapon with the Superintendent of the State Police. Id. § 400.00(16-a).]\

24

COMPLAINT FOR DECLARATORY                    33          ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                                            800 Fifth Avenue. Suite 2000
                                                                              Seattle, WA 98104-3188
                                                                                 (206) 464-7744

1    this state, or who imports into this state, or offers, exposes for sale, or sells or transfers a handgun,

2    short-barreled rifle, short-barreled shotgun, firearms silencer or machine gun, otherwise than in

3    accordance with [the Oregon statutes] is guilty of a Class B felony."

4        106.    Thus, Oregon law prohibits certain persons from obtaining or possessing

5    firearms. For example, Oregon law prohibits certain felons, certain individuals under the

6    jurisdiction of juvenile court, certain individuals with will mental illnesses and certain persons

7    subject to stalking orders from possession firearms. Or. Rev. St. 166.250; Or. Rev. St. 166.255.

8    Under Or. Rev. St. 166.470(1), it is unlawful to knowingly and intentionally sell, deliver or

9    otherwise transfer a firearm to such persons.

10       107.    Oregon law also has set up an extensive system of rules to ensure unauthorized

11    persons cannot buy firearms. For example, with certain exceptions (for example, transfers to

12    family members), only a gun dealer may transfer a firearm. Or. Rev. St. 166.435(2). A person

13    who applies to buy a handgun from a dealer must provide valid government identification

14    bearing a photograph and date of birth, and the dealer must complete a transaction record with

15    the signature of the purchaser. This transaction record much include the federal firearms license

16    number of the dealer, the business name of the dealer, the place of transfer, the name of the

17    person making the transfer, the make, model, caliber and manufacturer's number of the handgun

18    and the type, the social security number of the purchaser, and the issuer and identification

19    number of the identification presented by the purchaser. The dealer must also obtain the

20    thumbprints of the prospective purchaser and contact the Department of State Police

21    ("Department") to conduct a criminal background check. Or. Rev. St. 166.412; Or. Rev. St.

22    166.418.

23       108.    Oregon law also requires a request for a criminal background check to transfer a

24    gun at a gun show. Or. Rev. St. 166.433(2); Or. Rev. St. 166.438.

COMPLAINT FOR DECLARATORY     34      ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF      800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### 7.    Massachusetts' Firearms Laws

109.    Massachusetts carefully regulates the possession, licensing, and use of firearms and other inherently dangerous weapons. Among the goals of these laws is limiting access to deadly weapons by persons who may inflict harm – be it negligently or intentionally – on themselves or others. These laws also recognize that criminal use of firearms is a significant problem, that guns should be registered and traceable in the event of theft or criminal misuse, and that possession of firearms should be limited to responsible persons who meet all requirements for licensure. *See, e.g.*, *Commonwealth v. Reyes*, 464 Mass. 245, 250 (2013); *Jupin v. Kask*, 447 Mass. 141, 153-154 (2006)

110.    Under Massachusetts law,[10] a person may not possess or carry a firearm without obtaining a license from the appropriate licensing authority. Persons may not obtain a license to carry a firearm if they: (1) have committed certain offenses, including violent crimes and laws regulating the use, possession, or sale of a controlled substance; (2) have been committed to a hospital or institution for mental illness, or alcohol or substance misuse, subject to limited exceptions; (3) were younger than 21 years old at the time of submitting an application; (4) are currently subject to an order for suspension or surrender of firearms in connection with an abuse prevention order; (5) have an outstanding arrest warrant in any state or federal jurisdiction; (7) have been dishonorably discharged from the armed forces of the United States; (8) are a fugitive from justice; or (9) have renounced their United States citizenship. M.G.L. c. 140, § 131(d).

111.    A licensing authority also may deny a person a license to carry firearms if the licensing authority determines that the person is unsuitable for a license based on: (i) reliable

---

[10] The Massachusetts-specific allegations contained herein constitute a summary of some of the most relevant provisions of Massachusetts law. It is not an exhaustive or complete list of all relevant statutes, regulations, or other provisions.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  and credible information that the applicant or licensee has exhibited or engaged in behavior that

2  suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or

3  (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a

4  risk to public safety. M.G.L. c. 140, § 131(d).

5        112.    Anyone who wishes to sell, rent, or lease firearms must apply for and obtain a

6  license. Such licenses are valid for three years. No license may issue until an investigation into

7  the applicant's criminal history has been completed. A licensee must record all sales of firearms

8  to include a complete description of the firearm (including the make and type of firearm) and the

9  person purchasing the firearm (including the person's sex, residence, and occupation). The police

10  may inspect the premises of a licensee at all times. M.G.L. c. 140, §§ 122-124. Reports of all

11  transactions must be made by licensees to Massachusetts's Department of Criminal Justice

12  Information Services with information that includes the make, model, serial number, caliber,

13  barrel length, and gun surface finish. 803 C.M.R. 10.00.

14        113.    It is unlawful to manufacture a firearm in Massachusetts or to deliver a firearm

15  to a dealer in Massachusetts without a serial number permanently inscribed on a visible metal

16  surface of the firearm. M.G.L.  269, § 11E.

17        114.    Anyone who purchases or obtains a firearm from any source other than a licensed

18  dealer must, within seven days of receiving the firearm, report in writing to the Commissioner

19  of the Massachusetts Department of Criminal Justice Information Services the name and address

20  of the seller or donor and the buyer or donee, together with a complete description of the firearm,

21  including the caliber, make, and serial number. M.G.L. c. 140, § 128B.

22        115.    Only handguns that meet the safety and performance standards expressed in state

23  law and regulations, including protection against accidental discharge and explosion upon firing,

24  may be sold. M.G.L. c. 140D, § 123, clauses 18 to 20. The Secretary of the Massachusetts

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

36

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Executive Office of Public Safety and Security has compiled an approved firearms roster,

2    pursuant to M.G.L. 140, § 131-3/4 and 501 C.M.R. 7.00.

3         116.    It is unlawful to sell, offer for sale, transfer, or possess any weapon, capable of

4    discharging a bullet or shot, that is not detectable as a weapon or potential weapon by x-ray

5    machines commonly used at airports or walk-through metal detectors. M.G.L. c. 140, § 131N.

6         117.    The sale, transfer, or possession of an "Assault weapon," as defined in M.G.L. c.

7    140, § 121, is prohibited. M.G.L. c. 140, § 131M.

8         118.    All firearms that are used in the commission of a crime must be traced by the

9    licensing authority for the city or town in which the crime took place. M.G.L. c. 140, § 131Q.

10        **8.    Pennsylvania's Firearms Laws**

11        119.    Pennsylvania, like the other states, also has a robust system of state firearms laws

12   designed to keep the public safe and that would be undermined if the Government's action is

13   allowed to stand. Section 6105 of the Pennsylvania's Firearms Act mandates that any person

14   who has been convicted of certain enumerated offenses inside or outside of Pennsylvania

15   "regardless of the length of sentence" or whose conduct meets certain specified criteria "shall

16   not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control,

17   sell, transfer or manufacture a firearm in this Commonwealth."  18 Pa. C.S. § 6105(a).  The

18   definition of "firearm" in section 6105 "shall include" any weapons which are "designed to or

19   may readily be converted to" expel any projectile by the action of an explosive or the frame or

20   receiver of any such weapon.  18 Pa. C.S. § 6105(i).  The "downloadable guns" that Defense

21   Distributed promises to make available constitutes a "firearm" under this section of the Firearms

22   Act because it is a weapon that is designed and, by 3D printing, "may readily be converted to"

23   expel bullets by an explosive. *Id.*  Depending on the underlying offense or criteria, violation of

24   section 6105, by individuals who shall not possess, use, control, sell, transfer or manufacture the

Defendants' firearm in the Commonwealth is a second degree felony or first or third degree misdemeanor. 18 Pa. C.S. § 6105(a)(1). Each firearm wrongly possessed by a felon constitutes a separate offense.

120. By law, the State Police "shall have the responsibility to administer the provisions of" Pennsylvania's Uniform Firearms Act, and are assigned certain specific duties thereunder. 18 Pa. C.S. § 6111.1.(a), (b). Among these duties, the State Police must: (1) review criminal histories, delinquency histories, and mental health histories of potential firearms' purchasers or transferees; make all reasonable efforts to identify the legal owner of any firearm confiscated or recovered by law enforcement; (3) establish a telephone number for inquires by licensed firearms manufacturer, importers, and dealers; and (4) provide information regarding the firearms laws and firearms safety. 18 Pa. C.S. § 6111.1

121. Section 6106 of the Firearms Act mandates, with limited exceptions, that, outside of one's home or "fixed place of business," firearms may not be carried in the Commonwealth "without a valid and lawfully issued license." 18 Pa. C.S. § 6106(a). Violation of this section constitutes a third degree felony unless the unlawful carrier of the firearm is "eligible" to have a valid license, in which case the violation is a first degree misdemeanor. *Id.*

122. Under section 6109 of the Firearms Act, a "license to carry a firearm" is required to carry a concealed firearm "on or about one's person or in a vehicle throughout this Commonwealth." 18 Pa. C.S. § 6109(a). In order to apply for a concealed carry license, you must be "21 years of age or older" and the application itself must be "uniform throughout this Commonwealth" and only "on a form prescribed by the Pennsylvania State Police." 18 Pa. C.S. § 6109(b),(c). In filling out the application, the licensee must identify one of the following reasons for applying for a firearm license: "self-defense, employment, hunting and fishing, target shooting, gun collecting or another proper reason." 18 Pa. C.S. § 6109(c).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

38

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

123.     Applicants must also sign and date the following statement under penalty of perjury, certifying that they have "never been convicted of a crime that prohibits [them] from possessing or acquiring a firearm under Federal or State law," are "of sound mind," and "have never been committed to a mental institution." *Id.* Applicants must also authorize the relevant law enforcement officials to research all records necessary to verify the certification and promise to "promptly notify" them if they are issued a license but later "knowingly become ineligible to legally possess or acquire firearms." *Id.*

124.     Then, before a license is issued, the sheriff must "conduct [an] investigation" of the applicant including an investigation of the applicant's "record of criminal conviction," whether or not the applicant "is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year," and has a "character and reputation" such that the applicant "will not be likely to act in a manner dangerous to public safety." 18 Pa. C.S. § 6109(d).  The sheriff must also "conduct a criminal background, juvenile delinquency and mental health check." *Id*

125.     As can be seen, these various requirements and background checks serve to keep Pennsylvanians safe by keeping guns out of the hands of those who should not have access to them. This system, however, will be effectively nullified if those ineligible to buy or possess firearms can avoid the legal prerequisites for lawful possession by simply printing an untraceable gun at home or elsewhere.

**9.     District of Columbia's Firearms Laws**

126.     The District of Columbia, like the States, has a comprehensive statutory scheme regulating the possession, licensing, and registration of firearms. Certain types of weapons are prohibited entirely.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
39
ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

127.    District of Columbia law prohibits certain persons from registering firearms.[11] For example, persons cannot register firearms if they have been acquitted by reason of insanity within the last five years, or have been voluntarily or involuntarily committed to a mental hospital or institution in that time. D.C. Code § 7-2502.03. Other persons prohibited from registering firearms include persons convicted of a felony, persons with a history of violent behavior, under indictment for a crime of violence or a weapons offense, or convicted within the previous five years of:  (a) use, possession, or sale of any narcotic or dangerous drug; (b) assault or threats; (c) two or more impaired driving offenses; (d) intrafamily offenses punishable as misdemeanors; or (e) stalking. D.C. Code § 7-2502.03(a)(2)–(4).

128.    The District of Columbia also prohibits the registration of certain types of firearms, including "unsafe" pistols, assault weapons, and .50 caliber firearms. D.C. Code §§ 7-2502.02, 7-2501.01(3A)(A) (defining "assault weapon").

129.    One of the cornerstones of the District of Columbia's firearms regulatory structure is the use of background checks. All persons seeking to register a firearm (or obtain a license to carry concealed) are subject to background checks. D.C. Code § 7-2502.04(a); § 22-4506.  The purpose of the background check is simple and obvious: to ensure that persons prohibited by law from possessing firearms are unable to do so.

130.    The Government's "temporary modification" of the USML Category I to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the automated production of 3-D printed weapons quite literally nullifies the District of Columbia's laws prohibiting certain categories of persons from possessing firearms.

---

[11] Registration is a prerequisite to firearm possession and carrying in the District of Columbia. D.C. Code § 7-2502.01(a). *See also* D.C. Code § 22-4504 (license required to carry firearm within the District "either openly or concealed").

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

40

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

131.     If the "temporary modification" is left in place, the District of Columbia stands to suffer extreme and irreparable harm.  Persons ineligible to possess firearms under District of Columbia law will easily be able to obtain downloadable guns that they can produce at home using a 3-D printer, and even produce guns which are explicitly prohibited in the District because they are assault weapons such as the AR-15. See D.C. Code Sec. 7-2501.01(3A)(A) (defining assault weapons).  District of Columbia law enforcement will have no means of detecting such weapons using standard equipment such as metal detectors, and no means of tracing such weapons because they have no serial numbers. In sum, the Government's actions are an extreme infringement on the District of Columbia's right to enact and enforce its public safety laws.

## V.     CAUSES OF ACTION

### Count I:
### Violation of the Administrative Procedure Act—*Ultra Vires* Conduct

132.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

133.     Under the Administrative Procedure Act (APA), a court must set "aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

134.     The Government Defendants' enactment of a "temporary modification" of the USML Category I so as to deregulate CAD files used for the production of 3-D printed guns constitutes a final agency action that is *ultra vires* and should be set aside by the Court. Likewise, Defendants approval of the CAD files for public release and effective removal from USML Category I constitutes a final agency action that is *ultra vires* and should be set aside by the Court.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

41

135. The Government Defendants may only exercise the authority conferred to them by statute. Neither the AECA nor ITAR confer upon the Government Defendants the power to modify the USML Category I, temporarily or otherwise, without 30 days' notice to the relevant Congressional committees and without concurrence of the Defense Department.

136. Upon information and belief, the Government Defendants did not provide advance notice of the proposed temporary modification to the House Committee on Foreign Affairs and to the Committee on Foreign Relations of the Senate, and did not receive the concurrence of the Secretary of Defense, before enacting the modification on July 27, 2018.

137. According to Rep. Engel, Ranking Member of the House Committee on Foreign Affairs, notice of the terms of the settlement has not been provided by the President or the State Department. *See* "Engel Decries State Department Policy to Allow 3-D Gun Printing," Press Release (July 20, 2018), *available at* https://democrats-foreignaffairs.house.gov/news/press-releases/engel-decries-state-department-policy-allow-3-d-gun-printing, attached hereto as Ex. 8.

138. The Government Defendants also lack statutory authority to determine that the Plaintiffs' CAD files should be removed from the Category I list and approval of the CAD files for public release without following the "established procedures" for commodity jurisdiction. This is especially relevant here because, in effect, the "temporary modifications" and approval for public release at issue will negate—in large part—the need for final rulemaking with respect to the data at issue, because once the data is on the internet, the damage to the national security and public safety in the State of Washington will be irreparable.

139. In addition, although ITAR allows the Deputy Assistant Secretary for Defense Trade Controls to order the temporary modification of any ITAR regulation, it may do so only "in the interest of the security and foreign policy of the United States." 22 C.F.R. § 126.2.

140.     The temporary modification enacted by DDTC on July 27, 2018 and the approval of the CAD files for public release sent the same day are not in the interest of the security and foreign policy of the United States, and, upon information and belief, Government Defendants have made no determination otherwise.

141.     In addition, Government Defendants lack statutory authority to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit" from CAD files for the automated production of 3-D printed weapons, as this would allow "any United States person" to manufacture, possess, and sell firearms made from the files.  As such, this provision would violate numerous provisions of Washington's statutory scheme regulating firearms, including laws that promote public safety by keeping guns out of the hands of minors, persons convicted of violent felonies, the mentally ill, and persons subject to various protection and no-contact orders.  For similar reasons, this provision would also violate numerous provisions of the federal Gun Control Act, including 18 U.S.C. § 922(x)(2) (prohibiting handgun possession by minors), § 922(g) (prohibiting firearm possession by felons and domestic abusers), and § 922(p) (prohibiting the manufacture of undetectable firearms).  Government Defendants lack any authority to amend, rescind, or waive any portion of these laws.

142.     For these reasons, the State of Washington is entitled to a declaration that the "temporary modification" is invalid, and an injunction requiring Government Defendants to rescind the temporary modification and restore the status quo until a proper administrative process is completed.

**Count II:**
**Violation of the Administrative Procedure Act—Action Not in Accordance with Law**

143.     All of the foregoing allegations are repeated and realleged as though fully set

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

43

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

forth herein.

144.    Under the APA, a court must set aside agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

145.    As alleged above, upon information and belief, Government Defendants did not give 30 days' notice to the required Congressional Committees or receive concurrence from the Secretary of Defense before enacting the "temporary modification" of USML Category I to remove the CAD files at issue from ITAR regulation on July 27, 2018 as well as the approval of the CAD files for public release on the same day.

146.    Upon information and belief, Government Defendants also did not follow established procedures before granting Defense Distributed an exception to ITAR jurisdiction.

147.    Furthermore, it is unlawful for Government Defendants to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the automated production of 3-D printed weapons, as this purports to allow prohibited individuals to possess, manufacture, and sell firearms made using such files, in violation of existing state and federal law.

148.    For these reasons, the State of Washington is entitled to a declaration that the "temporary modification" is invalid, and an injunction requiring Government Defendants to rescind the temporary modification and restore the status quo until a proper administrative process is completed.

**Count III:**
**Violation of the Administrative Procedure Act—Arbitrary and Capricious Agency Action**

149.    All of the foregoing allegations are repeated and realleged as though fully set

forth herein.

150. Under the APA, a court must set "aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A).

151. A court may hold that an agency action is arbitrary and capricious when the agency has failed to consider relevant evidence or articulate a satisfactory explanation for its action. An agency's departure from prior practice can serve as an additional basis for finding an agency's action to be arbitrary and capricious.

152. Upon information and belief, Government Defendants have provided no explanation for the Government's complete reversal of its position on the CAD files at issue. The Government has released no reports, studies, or analyses to explain why CAD files for the automated production of 3-D printed weapons should be removed from ITAR regulation or that the files should be publically released. It appears that Government Defendants have also failed to consider or acknowledge the serious national security concerns or the threat to public safety posed to states, including the Plaintiff States, created by the export of the CAD files.

153. Government Defendants' enactment of a "temporary modification" to exclude the CAD files at issue from ITAR jurisdiction, the approval of the CAD files for public release, and the agreement to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" the CAD files is arbitrary and capricious because the Government has not offered a reasoned explanation for ignoring or countermanding its earlier factual determinations. It is also arbitrary and capricious because it is contrary to the purposes of AECA, which requires the State Department to administer AECA to reduce the international trade in arms and avoid destabilizing effects abroad through arms export. *See* 22 U.S.C. § 2751. It is also

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

45

arbitrary and capricious because it is an extreme infringement of the Plaintiff States' sovereign right to exercise its police power by enacting and enforcing public safety laws that restrict certain persons' possession of firearms and provide for licensing and tracking gun ownership.

154.    For these reasons, the Plaintiff States are entitled to a declaration that the "temporary modification" is invalid, and an injunction requiring Government Defendants to rescind the temporary modification and restore the status quo until a proper administrative process is completed.

## Count IV:
## Violation of the Tenth Amendment

155.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

156.    The structure and limitations of federalism allow the States great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons. The police power is a critical function reserved to the States by the Tenth Amendment.

157.    While the regulation of health and safety is primarily and historically a matter of State and local concern, the Federal Government can set uniform national standards in these areas—but only if Congress makes its intent to alter the usual constitutional balance between the States and the Federal Government "unmistakably clear" in the language of the statute.

158.    Government Defendants' enactment of a "temporary modification" to the USML permitting "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the automated production of 3-D printed weapons and the approval of the CAD files for public release purports to allow any U.S. citizen to manufacture and use an

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

46

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

undetectable and untraceable weapon—regardless of their age, mental health status, or criminal history—in violation of Washington's public safety laws.

159.    Government Defendants' action infringes on the Plaintiff States' exercise of its police power and enforcement of its safety laws, including (i) prohibiting certain United States persons from possessing firearms—such as minors, persons convicted of violent felonies, the mentally ill, and persons subject to various protection and no-contact orders; (ii) regulating the acquisition and tracking the ownership of firearms; (iii) using serial numbers to trace weapons; and (iv) keeping government buildings and other public places safe through the use of metal detectors.

160.    Government Defendants were not authorized by Congress to infringe upon the Plaintiff States' police power to this extreme degree, which is well outside the scope of any authority delegated by AECA.  Indeed, Government Defendants failed even to follow the required administrative procedures before enacting the temporary modification, including providing Congress with 30 days' notice and obtaining the Secretary of Defense's concurrence. Rather, Government Defendants enacted the temporary modification unilaterally on July 27, 2018, completely reversing the Government's previous position as to the CAD files at issue while sidestepping Congressional review and flouting APA requirements.

161.    As such, the State of Washington is entitled to a declaration that the "temporary modification" is an unconstitutional violation of the Tenth Amendment, and an injunction requiring Government Defendants to rescind the temporary modification and restore the status quo until a proper administrative process is completed.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

47

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

## VI.     PRAYER FOR RELIEF

2      WHEREFORE, the State of Washington requests that the Court enter a judgment against

3   Defendants and award the following relief:

4          a.     Declare that the "temporary modification" of the USML Category I and

5   the approval of the CAD files for public release are unlawful and *ultra vires* agency

6   action, including to the extent it purports to permit "any United States person" to "use,

7   reproduce or otherwise benefit from" the files at issue in violation of state and federal

8   law;

9          b.     Declare that the "temporary modification" of the USML Category I and

10  approval of the CAD files for public release are an unconstitutional violation of the Tenth

11  Amendment;

12         c.     Declare that the "temporary modification" of the USML Category I and

13  approval of the CAD files for public release are null and void;

14         d.     Issue an injunction requiring Defendants to rescind the "temporary

15  modification" of the USML Category I and to rescind the approval of the CAD files for

16  public release;

17         e.     Issue an injunction prohibiting Defendants and anyone acting in concert

18  with them from taking any action inconsistent with the rescission of the "temporary

19  modification" of the USML Category I and the rescission of the approval of the CAD

20  files for public release;

21         f.     Award the State its costs and reasonable attorneys' fees; and

22         g.     Award such additional relief as the interests of justice may require.

23  Respectfully submitted this 30th day of July, 2018.

24

COMPLAINT FOR DECLARATORY                    48          ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                                              800 Fifth Avenue, Suite 2000
                                                                        Seattle, WA  98104-3188
                                                                            (206) 464-7744

ROBERT W. FERGUSON
Attorney General

*/s/ Jeffrey Rupert*
JEFFREY RUPERT, WSBA #45037
Division Chief
KRISTIN BENESKI, WSBA #45478
Assistant Attorney General
TODD BOWERS, WSBA #25274
Deputy Attorney General
JEFF SPRUNG, WSBA #23607
Assistant Attorney General
JeffreyR2@atg.wa.gov
KristinB1@atg.wa.gov
ToddB@atg.wa.gov
JeffS2@atg.wa.gov
*Attorneys for Plaintiff State of Washington*


GEORGE JEPSEN
Attorney General of Connecticut

*/s/ Kimberly Massicotte*
KIMBERLY MASSICOTTE, CT-04111
Associate Attorney General
JOSEPH RUBIN, CT-00068
Associate Attorney General
MAURA MURPHY OSBORNE, CT-19987
Assistant Attorney General
Connecticut Office of Attorney General
55  Elm St.
P.O. Box 120
Hartford, CT 06141-0120
*Attorneys for Plaintiff State of Connecticut*


BRIAN E. FROSH
Attorney General of Maryland

*/s/ Julia Doyle Bernhardt*
JULIA DOYLE BERNHARDT
JENNIFER KATZ
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MA  21202
(410) 576-7291

49

1    jbernhardt@oag.state.md.us
     jkatz@oag.state.md.us
2    *Attorneys for Plaintiff State of Maryland*

3

4    GURBIR GREWAL
     Attorney General of New Jersey

5    */s/ Jeremy M. Feigenbaum*
     JEREMY M. FEIGENBAUM
6    Assistant Attorney General
     Office of the Attorney General
7    Richard J. Hughes Justice Complex
     25 Market Street, 8th Floor, West Wing
8    Trenton, NJ  08625-0080
     (609) 376-2690
9    Jeremy.Feigenbaum@njoag.gov
     *Attorneys for Plaintiff State of New Jersey*

10

11   BARABARA D. UNDERWOOD
     Attorney General of New York

12   */s/ Barbara D. Underwood*
13   BARBARA D. UNDERWOOD
     Attorney General of New York
14   28 Liberty Street
     New York, NY 10005
15

16   MAURA HEALEY
     Attorney General of Commonwealth of
17   Massachusetts

18   */s/ Jonathan B. Miller*
     JONATHAN B. MILLER
19   Assistant Attorney General
     Office of the Massachusetts Attorney General
20   One Ashburton Place
     Boston, MA 02108
21   617-963-2073
     Jonathan.Miller@state.ma.us
22   *Attorneys for Plaintiff Commonwealth of*
     *Massachusetts*

23

24

COMPLAINT FOR DECLARATORY          50          ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                              800 Fifth Avenue. Suite 2000
                                                     Seattle, WA  98104-3188
                                                       (206) 464-7744

JOSH SHAPIRO
Attorney General of Commonwealth of
Pennsylvania

/s/ Josh Shapiro
JOSH SHAPIRO
Attorney General
Office of the Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120
(717) 787-3391
*Attorneys for Plaintiff Commonwealth of
Pennsylvania*


KARL A. RACINE
Attorney General for the District of Columbia

/s/ Robyn Bender
ROBYN BENDER
Deputy Attorney General
Public Advocacy Division
JIMMY ROCK
Assistant Deputy Attorney General
Public Advocacy Division
*Attorneys for Plaintiff District of Columbia*


***Pro Hac Vice* motions forthcoming for all
counsel of record not barred in the Western
District of Washington**

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

51

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1          **<u>DECLARATION OF SERVICE</u>**

2          I hereby certify that on July 30, 2018, I electronically filed the foregoing document with

3  the Clerk of the Court using the CM/ECF system, which will serve a copy of this document upon

4  all counsel of record.

5          DATED this 30th day of July, 2018, at Olympia, Washington.

6

7                         */s/ Jeffrey Rupert*
                          Assistant Attorney General

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT FOR DECLARATORY        52        ATTORNEY GENERAL OF WASHINGTON
AND INJUNCTIVE RELIEF                           800 Fifth Avenue, Suite 2000
                                               Seattle, WA  98104-3188
                                               (206) 464-7744