# Exhibit B

1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

FOR THE WESTERN DISTRICT OF WASHINGTON

8

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF CONNECTICUT; STATE OF MARYLAND; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF OREGON; COMMONWEALTH OF MASSACHUSETTS; COMMONWEALTH OF PENNSYLVANIA; and the DISTRICT OF COLUMBIA, | No. 2:18-cv-01115 |
| | OPPOSITION TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER |
| Plaintiffs, | |
| v. | ORAL ARGUMENT REQUESTED |
| UNITED STATES DEPARTMENT OF STATE; MICHAEL R. POMPEO, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Acting Deputy Assistant Secretary of Defense Trade Controls; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy; DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INC.; and CONN WILLIAMSON, | |
| Defendants. | |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

1

**TABLE OF CONTENTS**

2

3   I. THE PLAINTIFFS SEEK AN UNCONSTITUTIONAL PRIOR RESTRAINT ON

4       SPEECH ................................................................................................................ 1

5   II. THE PLAINTIFFS CANNOT SUCCEED ON THE MERITS BECAUSE THE

6       COURT HAS NO JURISDICTION .................................................................... 3

7
        A.  This Court Lacks Jurisdiction to Review State Department Licensing
8
            Decisions Under the APA because of a Clear Delegation of Authority and
9
            Lack of Judicially Manageable Standards .............................................. 4
10
        B.  AECA Section 2778(h) Precludes the Court from Reviewing the State
11
            Department's Decision to Remove Defense Articles from the USML .................. 7
12
        C.  No Congressional Notification Requirements Apply ........................................... 10
13
        D.  No Commodity Jurisdiction Requirements Apply ................................................. 12
14
15      CONCLUSION ................................................................................................................ 13
16

17

18

19

20

21

22

23

24

25

26

OPPOSITION TO EMERGENCY MOTION                    Immix Law Group PC
FOR TEMPORARY RESTRAINING ORDER

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

## I. The Plaintiffs Seek an Unconstitutional Prior Restraint on Speech

The Attorneys General of eight states and the District of Columbia have styled this case as a mundane administrative law matter. Their proposed remedy sounds innocuous enough, and perhaps even a little familiar: enjoin the current administration from reversing a position taken by the prior administration. However, that description of the case is dangerous window dressing. This case implicates foundational principles of free speech.

Simply put, the States demand a prior restraint of constitutionally protected speech that is *already* in the public domain. We know that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). That presumption of liberty is even heavier where, as here, the speech is *already* available on the Internet, and has been available for years. In *The Pentagon Papers Case*, Justice White remarked that when "publication has *already* begun," the "efficacy of equitable relief . . . to avert anticipated damages is doubtful at best." *New York Times Co. v. U.S.*, 403 U.S. 713, 732 (1971) (White, J., concurring) (emphasis added). Yet, nine Attorneys General, who swore an oath to the Constitution, failed to even mention the First Amendment in their emergency pleadings. Such a careless disregard for the Bill of Rights fails to meet the "heavy burden" needed to justify a prior restraint. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).

Moreover, the prior restraints in this case would not be restricted to the named defendants: nine Attorneys General seek to infringe the liberties of *all* Americans. The settlement under siege expressly protects the rights of "*any* United States person" to "access, discuss, use, reproduce, or otherwise benefit from the technical data." ECF 2-1 at 4-5 (emphasis added). *Any* means *all*. Granting the proposed injunctive relief would not only silence the three named Defendants, but it would immediately censor over three hundred million Americans. Today, the validity of nationwide injunctions is subject to a robust debate. But never before has any court entertained a global injunction on the freedom of speech of *all* Americans.

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 1

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

The constitutional principles at stake in this case are simple enough. Yet, the facts are admittedly perplexing—especially for a Court asked to grant an emergency temporary restraining order. The most straightforward way to understand this complicated case is to trace the three documents that were generated by the State Department on July 27, 2018: (1) the license, (2) the temporary modification, and (3) the settlement agreement. They are separate, but interconnected.

1. The State Department issued a **license** that authorized Defense Distributed to publish, for "unlimited distribution," certain "technical data" that was subject to litigation in the Western District of Texas. *See* Exhibit A at 2.

2. Through the **temporary modification**, the State Department authorized the distribution of that "technical data," in addition to certain "other files," without any prior restraint. *See* Exhibit B.[1]

3. Under the terms of the **settlement agreement**, "*any* United States person" can now "access, discuss, use, reproduce, or otherwise benefit from the technical data," and "other files," that are covered by the **temporary modification**. *See* Exhibit C at 3 (emphasis added).

Let's unpack this nesting doll. Through its unique **license**, Defense Distributed can distribute the "technical data" that was at issue in the Western District of Texas litigation. However, Defense Distributed, like "any [other] United States person," can rely on the **temporary modification**, working in tandem with the **settlement agreement**, in order to "access, discuss, use, reproduce, or otherwise benefit from the technical data." These acts are *expressly* protected by the First Amendment. In *Sorrell v. IMS Health Inc.*, the Court recognized "that the *creation and dissemination* of information are speech within the meaning of the First Amendment." 564 U.S. 552, 570 (2011). *See also Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to

---

[1] In 1981, the Office of Legal Counsel warned the State Department that its regulation of "technical data" raised "*serious constitutional questions*." *See* Constitutionality of the Proposed Revision of the Int'l Traffic in Arms Regulations, 5 U.S. Op. Off. Legal Counsel 202, 205-06 (1981) (emphasis added).

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 2

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

imagine what does fall within that category, as distinct from the category of expressive conduct" (some internal quotation marks omitted)). *See* Josh Blackman, *The 1st Amendment, 2nd Amendment, and 3D Printed Guns*, 81 Tenn. L. Rev. 479 (2014), http://bit.ly/2OvXBvu.

Yet, the Plaintiffs seek to block all three attributes of this framework: the license, the temporary modification, and the settlement agreement. Each of these injunctions would impose a prior restraint on speech, and silence "any United States person" who was previously *authorized* by the federal government to "creat[e] and disseminat[e] . . . information."

Fortunately, the bedrock principles of the First Amendment make this case much easier. A finding that a constitutional right "'is either threatened or in fact being impaired'. . . mandates a finding of irreparable injury." *Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373-74 (citations omitted). Outside of court papers, the Attorney General of Washington bluntly acknowledged the purpose of his litigation: to "make it as difficult as humanly possible to *access this information*."[2] That statement against interest, by itself, is enough to deny the Temporary Restraining Order in its entirety.

## II. The Plaintiffs Cannot Succeed on The Merits Because the Court has no Jurisdiction

The Plaintiffs cannot succeed on the merits: the State Department's actions are not subject to judicial review, the duty to notify Congress has not yet been triggered, and the Commodity Jurisdiction procedure simply does not apply. Their entire challenge under the Administrative Procedure Act ("APA") suffers from serious misunderstandings of the Arms Export Control Act ("AECA") and International Traffic in Arms Regulations ("ITAR") requirements. This complaint cannot form the basis for emergency injunctive relief.

---

[2] Cyrus Farivar, 20 states take aim at 3D gun company, sue to get files off the Internet, *Ars Technica* (Jul. 30, 2018), http://bit.ly/2NX1dp7.

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 3

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

**A.** **This Court Lacks Jurisdiction to Review State Department Licensing Decisions Under the APA because of a Clear Delegation of Authority and Lack of Judicially Manageable Standards**

The APA expressly excludes from review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Courts determine whether an agency action is committed to the discretion of an agency based on the nature of the delegation of authority and the statutory language. *See Webster v. Doe*, 486 U.S. 592, 599-600 (1988). This narrow exception to judicial reviewability is especially prevalent in cases involving agency decisions relating to foreign affairs and national security. Such cases involve "judgments on questions of foreign policy and the national interest" that are not "fit for judicial involvement." *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Mar. Admin.*, 215 F.3d 37, 42 (D.C. Cir. 2000).

In addition, where the language of a statute provides no justiciable standard by which a court can review the agency's exercise of its delegated authority, the matter is treated as committed to the agency's discretion. *See Webster*, 486 U.S. at 600 (a statute allowing the Director of the CIA to terminate employment of any employee whenever he found termination "advisable" for the national interest "fairly exude[d] deference" and thereby precluded judicial review under the APA). In particular, statutes have been consistently interpreted to preclude judicial review under the APA when they use language that permits an executive official, such as the President or another agency official, to take action that the official "deems" in the "national interest." *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005) (construing a statute, which allows the Attorney General to waive a requirement if waiver is in the "national interest," as being committed to the discretion of the Attorney General).

Plaintiffs claim, without any authority, that "the State Department's actions are mandatory and non-discretionary." ECF 2 at 14. However, the AECA delegates broad authority and discretion to the President, or his delegate, to issue a license when he determines that such action is "consistent with the foreign policy interests of the United States," 22 U.S.C. § 2751,

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 4

and "in furtherance of world peace and the security and foreign policy of the United States." *Id.* § 2778(a)(1). "This standard fairly exudes deference to the [President], and appears to us to foreclose the application of any meaningful judicial standard of review." *See Webster*, 486 U.S. at 600. Pursuant to this authority, the State Department has issued a license under ITAR § 125.4(b)(13) for Defense Distributed and the Second Amendment Foundation (SAF) to publish certain technical data on firearms into the public domain. *See* Exhibit A. The State Department further issued a temporary modification under ITAR § 126.2 to permit United States persons to access, discuss, use, reproduce, or otherwise benefit from the technical data at issue. *See* Exhibit B.

The State Department's licensing decisions fit squarely within 5 U.S.C. § 701(a)(2)'s exclusion from judicial review, because it constitutes "agency action [that] is committed to agency discretion by law." The AECA's delegation of authority to control arms exports is decidedly one involving foreign affairs and national security—matters clearly within the State Department's discretionary authority. Furthermore, the lack of judicially manageable standards precludes review. Courts have affirmed this broad grant of authority to the President under the AECA to control the export of firearms on foreign policy grounds. In doing so, they broadly construe statutes that grant the President authority to act in such sensitive matters of foreign affairs. For example, the Federal Circuit observed:

> In the external sector of the national life, Congress does not ordinarily bind the President's hands so tightly that he cannot respond promptly to changing conditions or the fluctuating demands of foreign policy. Accordingly, when Congress uses far-reaching words in delegating authority to the President in the area of foreign relations, courts must assume, unless there is a specific contrary showing elsewhere in the statute or in the legislative history, that the legislators contemplate that the President may and will make full use of that power in any manner not inconsistent with the provisions or purposes of the Act. In a statute dealing with foreign affairs, a grant to the President which is expansive to the reader's eye should not be hemmed in or "cabined, cribbed, confined" by anxious judicial blinders.

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 5

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

*B-West Imports, Inc.* v. *United States*, 75 F.3d 633, 636 (Fed. Cir. 1996) (quoting *South Puerto Rico Sugar Co. Trading Corp. v. United States*, 334 F.2d 622, 632 (Ct. Cl. 1964)); *see also Samora* v. *United States*, 406 F.2d 1095 (5th Cir. 1969) ("The delegation to the President by subsection (a) of the power 'to control, in furtherance of world peace and the security and foreign policy of the United States, the export and import of arms, ammunition, and implements of war, including technical data relating thereto,' is directed to the conduct of international affairs, in which the executive branch of our government traditionally has been dominant.").

In *U.S. Ordnance, Inc. v. U.S. Dep't of State*, the Plaintiffs "ask[ed] the Court to direct the Department of State (the 'Department') and its employees to issue plaintiff a license to export M16 machine guns to foreign countries." 432 F. Supp. 2d 94, 99 (D.D.C. 2006), vacated as moot sub nom. *U.S. Ordnance, Inc. v. Dep't of State*, 231 F. App'x 2 (D.C. Cir. 2007). Judge Huvelle found that the court lacked subject matter jurisdiction to review the denial of the license under the Administrative Procedure Act. Specifically, the Court cited two factors court for "reject[ing] plaintiff's invocation of the APA and declin[ing] to review the agency's denial of plaintiff's applications for licenses to export M16 machine guns." *Id.* at 99. First, she cited the "clear statutory language" of the Arms Export Control Act, in which the "delegation of authority to control arms exports is decidedly one involving foreign affairs and national security." *Id.* at 98-99.

Second, Judge Huevelle recognized that there is an "absence of judicially manageable standards to guide the Court's review" concerning the issuance of export licenses. The Court added, that "the AECA provides that the President, or his delegate, may approve the exportation of defense articles when he determines that such action is 'consistent with the foreign policy interests of the United States,' and 'in furtherance of world peace and the security and foreign policy of the United States.'" *Id.* (citations and quotations omitted). *See*

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 6

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

*also Corrie v. Caterpillar, Inc.* 503 F.3d 974 (9th Cir. 2007) (claims that implicated sales financed under the AECA were nonjusticiable).

This determination of whether to issue a license is for the elected branches, and not the courts—and certainly not for the states—to make. Indeed, the Plaintiffs' suit stands as an obstacle and frustrates the accomplishment of objectives authorized by federal export control law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 375 (2000); *Nat'l Foreign Trade Council, Inc. v. Giannoulias*, 523 F. Supp. 2d 731, 738-742 (N.D. Ill. 2007). Moreover, the states are not within the "zone of interest" to challenge these actions. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). There is no basis to review the State Department's issuance of the license.

### B. AECA Section 2778(h) Precludes the Court from Reviewing the State Department's Decision to Remove Defense Articles from the USML

The Plaintiffs contend that "Defendants have provided no explanation for the Government's complete reversal of its position on the files at issue." ECF 2 at 18. Therefore, the States claim, the government's actions are arbitrary and capricious. This claim is reckless. As a threshold matter, the changed position began during the Obama Administration; not the Trump Administration. 78 Fed. Reg. 22,740 (April 16, 2013) ("The Department intends to publish final rules implementing the revised USML categories and related ITAR amendments periodically, beginning with this rule.").

Moreover, the federal government has provided *ample* support to explain its position: the Plaintiffs simply did not mention it. On May 24, 2018, the Department of State published a proposed rule in the Federal Register seeking to transfer responsibility for the licensing of firearms exports from the ITAR U.S. Munitions List ("USML") to the Department of Commerce Export Administration Regulations ("EAR") Commerce Control List. 83 Fed. Reg. 24,198 (May 24, 2018). *See* Exhibit F. The proposed rule offers several detailed findings and studies to justify

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 7

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

transferring the responsibility from the State Department to the Commerce Department. For example:

1. **Reduce burden hours**: "The Department believes the effect of this proposed rule would decrease the number of license applications submitted to the Department under OMB Control No. 1405–0003 by approximately 10,000 annually, for which the average burden estimates are one hour per form, which results in a burden reduction of 10,000 hours per year." *Id.* at 24200.

2. **Reduced costs**: "In addition to the reduction in burden hours, there will be direct cost savings to the State Department that would result from the 10,000 license applications no longer being under the ITAR once these items are moved to the EAR." *Id.*

3. **Save taxpayers $2.5 million annually**: "It is the case, however, that the movement of these items from the ITAR would result in a direct transfer of $2,500,000 per year from the government to the exporting public, less the increased cost to taxpayers, because they would no longer pay fees to the State Department and there is no fee charged by the Department of Commerce to apply for a license.." *Id.* at 24201.

Again, the Plaintiffs repeatedly make baseless charges that the government has failed to justify this new position, yet they do not cite the Federal Register proposed rule that explains in depth why the change was made. The intent of the proposed rule is fully consistent with the AECA, which provides that "[t]he President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services." 22 U.S.C. § 2778(a)(1). The items so designated constitute the ITAR USML. *Id.*

Plaintiffs also make another fatal error: they repeatedly assert, without any evidence that the government failed to notify Congress prior to removing an article from the USML. However, the proposed rule—which they do not cite—is only *proposed*. It is not final. Therefore, nothing has been removed from the USML. Therefore, the requirement to notify Congress has not been triggered yet. See 22 U.S.C. § 2778(f)(1) ("The President may not remove any item from the Munitions List until 30 days after the date on which the President has provided notice of the proposed removal [to Congress]").

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 8

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

Moreover, the Settlement Agreement does not require the removal of anything from the USML. *See* Exhibit C. Rather, Section 1(a) of the agreement only requires that the State Department commit to draft and fully pursue removal of the technical data at issue in this action from the USML, "to the extent authorized by law (including the Administrative Procedure Act)." The proposed rule explained that the government was *expressly* complying with the requirements of the notice-and-comment rulemaking process, even though it determined that it was not required to do so:

> The Department of State is of the opinion that controlling the import and export of defense articles and services is a foreign affairs function of the United States government and that rules implementing this function are exempt from sections 553 (rulemaking) and 554 (adjudications) of the Administrative Procedure Act (APA). Although the Department is of the opinion that this proposed rule is exempt from the rulemaking provisions of the APA and without prejudice to its determination that controlling the import and export of defense services is a foreign affairs function, the Department is publishing this proposed rule with a 45-day provision for public comment. *Id.* at 24200.

The government engaged in a sterling rulemaking process, and more than adequately justified its agency action—the action is certainly not "arbitrary and capricious."

In any event, even if the State Department removed the subject technical data from the USML—it didn't—the AECA expressly, clearly, and unequivocally precludes judicial review of such decisions:

> **(h) Judicial review of designation of items as defense articles or services**
>
> The designation by the President (or by an official to whom the President's functions under subsection (a) have been duly delegated), in regulations issued under this section, of items as defense articles or defense services for purposes of this section **shall not be subject to judicial review**.

22 U.S.C. § 2778(h) (emphasis added).

The Plaintiffs contend that this provision is irrelevant because "the States are not challenging the federal defendants' designation of the computer code at issue as defense articles, but instead their decision to remove the code from the USML." ECF 2 at 15. We cannot repeat

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 9

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

this point enough: Nothing has been removed from the USML! The rule is only in its proposed form.

Furthermore, Plaintiffs argue that "designation," as used in 2778(h), does not include decisions on what should not be designated. They argue that the section only applies to decisions on what should be designated on the USML and not decisions on what should not be on the USML. Plaintiffs do not offer any authority to support their position. Nor can they. Courts have rejected prior attempts to narrow application of 2778(h) as "strained and unreasonable," especially in light of the overall intent of the AECA, which "was enacted to permit the Executive Branch to control the export and import of certain items in order to further 'world peace and the security and foreign policy' of the United States." *Karn v. United States Department of State*, 925 F.Supp. 1, 6 (D.D.C. 1996) ("To parse the statute as the plaintiff suggests makes little sense in light of the objectives of the AECA."); *see also U.S. v. Roth*, 628 F.3d 827, 832 (6th Cir. 2011) ("Initially, we take note that courts may not review whether items are properly designated as defense articles on the Munitions List.").

Plaintiffs' litigating position places more weight on "designation" than any reasonable construction of the statute will bear because it is axiomatic that either decision necessarily entails the other. Even if this Court was to accept Plaintiffs' argument that 2778(h) only applies to designations of items as defense articles, the question becomes one of semantics—i.e., the Court can just as easily find that proposed rule seeks to designate a limited subset of firearms as defense articles. Either way, such Department of State designations on the USML are not subject to judicial review under 2778(h).

C.    **No Congressional Notification Requirements Apply**

**Not a single Congressional notification requirement** applies to the State Department's issuance of the subject approvals or the proposed rule. Nevertheless, throughout various sections of their Motion, the Plaintiffs claim that the State Department failed to provide Congressional

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 10

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

notifications. However, they fail to cite *any section* of the AECA that actually applies a Congressional notification requirement to the actions at issue.

To be sure, the AECA contains various Congressional notification requirements. Specifically, it requires the State Department to formally notify Congress:

- before issuance of any license or other approval for export sales of "Major Defense Equipment" that exceed certain dollar-value thresholds;

- before the approval of exports of commercial communications satellites to certain destinations and persons;

- and before approval of certain other transactions.

*See e.g.,* 22 U.S.C. §§ 2776(c), 2776(d). In addition, the President must provide Congressional notification in advance of removing an item from the USML. *Id.* at § 2778(f)(1). However, no Congressional notification requirements apply to the State Department's obligations under the terms of the Settlement Agreement.

Without question, Congressional notification requirements do not apply to the State Department's issuance of a license to publish technical data. Nor is Congressional notification required for the State Department to make a commitment to draft and to fully pursue a rulemaking authorized by law (including the Administrative Procedures Act). That commitment can include the publication in the Federal Register of a notice of proposed rulemaking, seeking to revise USML Category I to exclude the technical data that is the subject of the Action. Critically, the Settlement Agreement does not require the State Department to remove anything from the USML. It only requires that the State Department commit to draft and pursue such change in compliance with the APA and any other applicable laws, to include the AECA and its Congressional notification requirements. Any possible challenge to a potential removal is not yet ripe.

Furthermore, Congressional notification requirements do not apply to the State Department's issuance of a *temporary* order suspending or modifying the ITAR under Section 126.2. *See* Exhibit B. Here, Plaintiffs confuse and conflate the difference between a temporary

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 11

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

order under ITAR Section 126.2 and the actual removal of an article from the USML requiring Congressional notification. ITAR Section 126.2 permits the State Department to "**order** the **temporary** suspension or modification of any or all of the regulations of this subchapter in the interest of the security and foreign policy of the United States." 22 C.F.R. 126.2 (emphasis added). Such suspension is a temporary order that does not remove anything from the USML. In sharp contrast, removal of a defense article from the USML is a permanent act that requires rulemaking and Congressional notification.

Finally, as noted above, no Congressional notification is required for the State Department to issue a proposed rule that merely *proposes* a transfer defense articles to Commerce Department's export jurisdiction. Of course, § 2778(f)(1) requires that the President provide Congressional notification in advance of removing an item from the USML in a final rule, but no final rule has been issued.

### D. No Commodity Jurisdiction Requirements Apply

Plaintiffs claim "Defendants also lack statutory authority to issue the license and temporary modification "without following the 'established procedures' for commodity jurisdiction." ECF 2 at 16. Here, the Plaintiffs fundamentally misunderstand the established scope and purpose of the ITAR commodity jurisdiction procedure. Pursuant to ITAR Section 120.4, the government can respond to public requests for case-by-case determinations of whether a particular product (*i.e.*, XYC Company's widget) is on the USML. *See* 22 C.F.R. 120.4. This Commodity Jurisdiction procedure under ITAR Part 120 is a completely separate process from the State Department licensing procedures. *See e.g.,* 22 C.F.R. 125 ("Licenses for the Export of Technical Data and Classified Defense Articles").

Plaintiffs also confuse and conflate the Commodity Jurisdiction procedure with State Department decisions to remove an entire class of items from the USML. The District Court for the District of Columbia explained this distinction in *Karn v. United States Department of State*:

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 12

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

> Designating an export such that it is subject to the AECA and the ITAR requires first describing the type of item in the regulations, and second, if asked by a potential exporter, confirming that the item in question is or is not covered by such description. The commodity jurisdiction procedure provides the latter function. . . .

925 F.Supp. 1, at 7 (D.D.C. 1996).

The commodity jurisdiction process simply does not apply to temporary modifications of the ITAR under 126.2 or other licensing decisions. Nor does it apply to agency decisions to amend the regulations to transfer export jurisdiction of defense articles to the Department of Commerce.

## III.  Conclusion

The Plaintiffs can challenge the proposed rule in due time when it is finalized. But they cannot mount a collateral attack on a legitimate executive action in order to censor speech. *See* Exhibit E. The Emergency Motion for a Temporary Restraining Order should be denied.

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 13

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

DATED this 31st day of July, 2018.

IMMIX LAW GROUP PC

By _____

Joel B. Ard, WSBA # 40104
Immix Law Group PC
701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Fax: (503) 802-5351
E-Mail: joel.ard@immixlaw.com
Attorneys for defendants Defense Distributed,
Second Amendment Foundation, Inc., and
Conn Williamson


Josh Blackman
1303 San Jacinto Street
Houston, TX 77002
Phone: (202) 294-9003
E-Mail: Josh@JoshBlackman.com
Attorneys for defendants Defense Distributed,
Second Amendment Foundation, Inc., and
Conn Williamson
*Admission Pro Hac Vice Pending


Matthew Goldstein
Snell & Wilmer LLP
One South Church Avenue, Suite 1500
Tucson, AZ 85701
Phone: (202) 550-0040
E-Mail: mgoldstein@swlaw.com
Attorneys for defendants Defense Distributed,
Second Amendment Foundation, Inc., and
Conn Williamson
*Admission Pro Hac Vice Pending

OPPOSITION TO EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER
Page 1

Immix Law Group PC

701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Facsimile: 503-802-5351

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2018, I served the foregoing by filing it with the Court's CM/ECF system, which automatically notifies all counsel of record.

I CERTIFY UNDER PENALTY OF PERJURY under the laws of the United States of America that the foregoing is true and correct.

DATED this July 31, 2018.

IMMIX LAW GROUP PC

By _____

Joel B. Ard, WSBA # 40104
Immix Law Group PC
701 5th Ave Suite 4710
Seattle, WA 98104
Phone: (206) 492-7531
Fax: (503) 802-5351
E-Mail: joel.ard@immixlaw.com

Attorneys for defendants Defense Distributed,
Second Amendment Foundation, Inc., and
Conn Williamson