# Exhibit D

The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STATE OF WASHINGTON, et al.,

          Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
STATE, et al.,

          Defendants.

No. 2:18-cv-01115-RSL

PRIVATE DEFENDANTS'
BRIEF IN OPPOSITION TO
PLAINTIFF STATES' MOTION FOR A
PRELIMINARY INJUNCTION

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711

### SUMMARY OF THE ARGUMENT

The Plaintiffs fail to acknowledge the extraordinary scope of their desired relief: A nationwide prior restraint of all Americans. Because of the request's suppressive nature, the First Amendment imposes a "heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). It is no surprise, then, that the United States has abandoned any effort to defend this unconstitutional scheme. The Plaintiffs do not even try to satisfy strict scrutiny because they cannot.

Similarly, the Plaintiffs fail to acknowledge that the information they are so eager to censor *already exists in the public domain*. The cat is out of the bag and can't go back in. Since publication has already been completed, the "efficacy of equitable relief . . . to avert anticipated damages is doubtful at best." *New York Times Co. v. U.S.*, 403 U.S. 713, 732 (1971) (White, J., concurring). Anyone with Internet access already has access to the speech at issue. Silencing Defense Distributed does no good.

The State Department's decision to settle the federal litigation in Texas was correct. The government acted reasonably and prudently—as part of a comprehensive reform—to balance competing constitutional and statutory concerns. It was justified in issuing the license and making the temporary modification. These actions restored to all United States persons their right to enjoy the First Amendment's freedoms in the technical data and other files at issue. If ever a court finds itself confronting those merits, it should uphold the actions in full.

But the Court cannot reach the dispute's merits because it lacks the jurisdiction to do so. This is the wrong court, in that it is *not* the court that issued the judgment being assailed. These are the wrong plaintiffs, in that they bring nothing more than hypothetical generalized grievances. And this is the wrong forum, in that Congress has said—repeatedly in no uncertain terms—that this part of the Executive Branch's work is off limits to judicial second-guessing.

The Plaintiffs' motion brandishes "security" concerns dozens of times. But "'security' is a broad, vague generality whose contours should not be invoked to abrogate the fundamental law

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

1

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

embodied in the First Amendment." *New York Times Co. v. United States*, 403 U.S. 713, 719 (1971). The motion should be denied.

## FACTS

### A.     Defense Distributed's Texas Case Against the State Department

In 2015, Defense Distributed and the Second Amendment Foundation, later joined by Conn Williamson, (collectively, "Defense Distributed") filed a lawsuit in the United States District Court for the Western District of Texas against the State Department and several of its officers. The suit challenged the constitutionality of the prior restraint of public speech imposed under the ITAR. *Def. Distributed v. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015). Several months later, the Supreme Court issued *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), to explain that content-based prior restraints on public speech must be reviewed with strict scrutiny.

The district court's first major interlocutory ruling found that Defense Distributed's publication of the files was speech, and that the State Department's prior restraint was content-based. *Def. Distribted*, 121 F. Supp. 3d at 691-92. But instead of applying strict scrutiny, as required by *Reed*, the court reviewed the State Department's prior restraint with mere intermediate scrutiny and declined to issue a preliminary injunction. *Id.* at 695-701.

A divided Fifth Circuit panel affirmed. *Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016). But it declined to reach the likelihood of success on the merits. *Id.* at 461. Instead, it ruled *solely* based on "the balance of harm and the public interest." *Id.*

The merits were, however, reached by two important opinions. Judge Jones emphasized the common nature of this speech in a panel dissent: "the State Department's application of its 'export' control regulations to this domestic Internet posting appears to violate the governing statute, represents an irrational interpretation of the regulations, and violates the First Amendment as a content-based regulation and a prior restraint." *Id.* at 463-64. (Jones, J. dissenting).

The judges dissenting from the denial of rehearing en banc also reached the merits. *Def. Distributed v. Dep't of State*, 865 F.3d 211 (5th Cir. 2017). Their opinion explained that the district

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

2

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

court's kind of "flawed preliminary injunction analysis permits perhaps the most egregious deprivation of First Amendment rights possible: a content based prior restraint. *Id.* at 212.

After the appeal's conclusion, the district court ordered the parties to make settlement demands. That initiated a process under which the parties reached a settlement. *See Defense Distributed et al. v. U.S. Dept. of State, et al*, No. 15-cv-372 (W.D. Tex.) (Dkts. 88, 93, 95).

**B.     The Government's Rationale for the Settlement Agreement**

During the original case and its appeals, the Obama administration engaged in a comprehensive reform of the ITAR, known as the Export Control Reform Initiative ("ECR"). A goal of the reform was to transfer items of lesser significance to maintaining a military or intelligence advantage from the export jurisdiction of the State Department, under ITAR, to the export jurisdiction of the Commerce Department, under the Export Administration Regulations ("EAR"). *See e.g.,* 78 Fed. Reg. 22,740 (April 16, 2013); *see also* Fact Sheet on President's Export Control Reform Initiative (April 20, 2010). **Exhibit A**.

The ECR list transfers included articles and technical data from each of the twenty-one USML categories. USML Category I designates "Firearms, Close Assault Weapons and Combat Shotguns." 22 C.F.R. § 121.1. As part of ECR, in May 2018, the State Department announced its plan to amend the ITAR to transfer control of certain articles at USML Category I from the State Department to the Commerce Department. *See* 83 Fed. Reg. 24,198 (May 24, 2018). That shift placed the Justice Department in an odd position with respect to the *Defense Distributed* litigation because, unlike the State Department, the Commerce Department does not impose a prior restraint on public speech under EAR. As a result, the Justice Department would be forced to defend a soon-to-be-irrelevant prior restraint against Defense Distributed, and only Defense Distributed. A settlement made eminent sense.

Moreover, the State Department's litigation position was in direct conflict with prior Justice Department legal opinions. Since 1978, the Justice Department had advised Congress, the White House, and the State Department that imposing a prior restraint on public speech under the

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

3

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

ITAR would violate the First Amendment.[1]  These opinions were provided to certain State Department defendants in the Texas case (Dkt. 48-1 at Exhibit E) and were included in the record of the case. *See* No. 15-cv-372 (Dkt. 8 at App. 99-196).

For example, the Justice Department's "1997 Report on the Availability of Bombmaking Information" advised Congress on the dangers posed by the availability of bombmaking information on the Internet:

> Law enforcement agencies believe that, because the availability of bombmaking information is becoming increasingly widespread (over the Internet and from other sources), such published instructions will continue to play a significant role in aiding those intent upon committing future acts of terrorism and violence.

Dkt. 48-1 at Exhibit D at 2.  Still, the Justice Department opined that the government lacked the power to impose a prior restraint on such speech:

> Anyone who teaches or publishes bombmaking information—including those who do so for wholly legitimate reasons, such as explosives manufacturers, the military, and encyclopedia publishers—could foresee that some unknown recipient of the teaching or information will use it for unlawful ends; *but the First Amendment would not permit culpability on that basis*.

*Id.* at 24 (emphasis added).  Despite these long-standing positions, the Department of Justice still defended—as was its duty—the State Department's prior restraint of speech under ITAR.

The public records provide a sound basis for the State Department's decision to settle the case.  This settlement supported the government's long-term plan to transfer articles and technical data from the State Department to the Commerce Department.  Moreover, this transition began during the Obama administration's ECR, which the State Department confirmed in the instant action. *See* Dkt. 16 at n. 6.  Further, the public record shows that the Justice Department has long advised the State Department that applying the ITAR to public speech violates the First Amendment.  The State Department's July 31, 2018 press briefing was consistent with this advice:

---

[1] *See* Department of Justice letters, memoranda and report issued between 1978 and 1997. Dkt. 48-1 at exhibits A-D.

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

4

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

The Department of Justice was advising the State Department on this entire legal matter. The Department of Justice suggested that the State Department and the U.S. Government settle this case, and so that is what was done. We were informed that we would've lost this case in court, or would have likely lost this case in court based on First Amendment grounds. We took the advice of the Department of Justice, and here we are right now.

Dkt. 35-1 at Exhibit A.

### C. Gun Control Groups Attempt to Block the Settlement Agreement

On July 25, 2018—two days before the Settlement Agreement was scheduled to go into effect—three gun control groups sought to block it. The groups argued that the Settlement Agreement violated the Administrative Procedures Act ("APA") for two reasons: first, because the State Department did not provide Congressional notification, and second because the State Department did not obtain Department of Defense concurrence for the authorizations promised in the settlement. *See* No. 15-cv-372 (Dkt.'s 96 and 97).

On July 27, 2018, Judge Pitman heard emergency oral arguments with respect to the Motion to Intervene and the Motion for a Temporary Restraining Order. The Interveners submitted letters from the New Jersey Attorney General and Los Angeles City Attorney for the court's consideration. They asserted that Defense Distributed's speech violated local laws in their respective jurisdictions. Following oral argument, Judge Pitman found that the gun control groups' interest was too generalized to establish a right to intervene. As a result, they could not establish an injury in fact sufficient to confer standing. *Id.* at Dkt. 111. He therefore denied the Motion to Intervene. *Id.* Later that evening, the parties entered a Stipulation of Dismissal as part of the Settlement Agreement. Shortly thereafter, Judge Pitman entered an order dismissing the lawsuit with prejudice. *Id.* at Dkt. 113.

Following Judge Pitman's order denying intervention, on July 27, 2018, pursuant to the terms of the Settlement Agreement, the State Department issued two authorizations for Defendants' public speech concerning the files.

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

5

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

- First, the State Department issued Defense Distributed a license pursuant to 22 C.F.R. § 125.4(b)(13). *See* Dkt. 8-1 at Exhibit A. This license authorized the Defendants to publish, for "unlimited distribution," certain "technical data" that was subject to litigation in the Western District of Texas.

- Second, the State Department made a temporary modification to USML Category I, pursuant to 22 C.F.R. § 126.2 *See* Dkt. 8-2 at Exhibit B. Under this temporary modification, the State Department would "exclude" the technical data identified in the Settlement Agreement from Category I.

Further under the Settlement Agreement, the State Department expressly acknowledged that "any United States person" can now "access, discuss, use, reproduce, or otherwise benefit from the technical data," and "other files," that are covered by the temporary modification. *See* Dkt. 8-3 at Exhibit C at 1(d).

In the late hours of Friday, July 27, 2018, Defense Distributed shared ten subject files covered by the authorizations on DEFCAD.com. For the next five days, Defense Distributed, the Second Amendment Foundation, and Conn Williamson, as well as any "U.S. person" were free to commit their public speech into the public domain.

### D. The Subject Files are Already Posted Online and are Freely Available.

*Each* of the ten files posted by Defense Distributed on July 27 was already in the public domain before that date. **Exhibit B.** The State Department press briefing acknowledged this fact: the subject files "have been available not just from this one website, but many websites." Dkt. 35-1 at Exhibit A. And, following this court's Temporary Restraining Order, these files *remain* in the public domain. Defense Distributed is apparently the only party that is heeding the State Department's prior restraint. The files continue to be freely exchanged by countless persons in

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

6

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

paper[2] and electronic[3] form.  The *Washington Times* aptly summarized the current state of affairs: "Cody Wilson, the site's founder, complied, but much of the rest of the internet stepped in to fill the void. 'Do your human duty and share,' said one Twitter user who linked to the files on a file-sharing site."[4]  On information and belief, the Plaintiffs have not sought any legal action against the countless parties that have shared these files following this Court's TRO.

### E.  This Court's Temporary Restraining Order

At the July 31, 2018 hearing on the Plaintiffs' Motion for TRO, this Court noted: "I am making the finding that we are going to maintain what I consider to be the status quo, which is no posting of instructions on how to produce 3-D guns on the Internet from the defendants or from anyone else, without running afoul of the federal law." *See* TRO Hearing Transcript ("Tr.") 43:10-14.  Even though the Court made clear that no injunctive relief would be issued against Defense Distributed, the decision effectively made speech that was previously lawful unlawful.

The ensuing TRO issued by this Court ordered that the State Department "shall preserve the status quo *ex ante* as if the modification has not occurred and the letter had not been issued." This language operates as a prior restraint on Defense Distributed because the ITAR requires approval from the "cognizant" government agency *prior* to publishing technical data in the public domain. 22 C.F.R.§§ 120.11(a)(7), 125.4(b) (13).

Moreover, as counsel for Defendant explained to the Court at the hearing, the Court's order applied retroactively to remove the requisite cognizant authority for Defense Distributed's otherwise lawful speech.  The TRO operated as a take-down order that required Defense Distributed to remove the files from the Internet. Defense Distributed complied promptly.

---

[2] *See e.g.*, C J Awe low, "The Liberator Code Book: An Exercise in the Freedom of Speech," avail. www.amazon.com/Liberator-Code-Book-Exercise-Freedom/dp/1724740733 (**Exhibit C**).

[3] *See e.g.,* https://thepiratebay.org/torrent/8444391/DefDist_Liberator_Pistol, https://www.codeisfreespeech.com, https://grabcad.com/library/ar-15-m16-a1, https://www.cncguns.com/downloads.html (**Exhibit D**).

[4] *See e.g.*, "Judge's order backfires as activists rush to share 3D gun designs," Washington Times (August 1, 2018), http://bit.ly/2P5pAlQ  (**Exhibit E**).

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

7

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

## ARGUMENT

The Plaintiffs do not want to maintain the status quo. They want to alter it. The true status quo was the state of affairs that existed *before* the TRO issued. That status quo respected the Constitution. At that point, the State Department had authorized Defense Distributed and all U.S. persons to share the information at issue; and pursuant to this authorization, Defense Distributed committed that information to the public domain for five days. Plaintiffs then sued to change that status quo—to end the right of all U.S. persons to share the information by having this Court turn back the clock on State Department's actions done pursuant to the Settlement Agreement.

In this effort, Plaintiffs bear all of the burdens. They must establish all of the requisite legal propositions and all of the requisite facts, and they must to do so "*by a clear showing*." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). And because they wish to alter the status quo instead of preserve it, precedent demands that the Court "be *extremely cautious* about issuing a preliminary injunction." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (emphasis added) (quoting *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984)).

The parties do not dispute what the preliminary injunction elements are. The dispute is about whether the Plaintiffs have established them clearly. They have not done so.

The Court lacks subject-matter jurisdiction for several reasons. The Plaintiffs' claims are meritless both for APA-related and Constitutional reasons. And even if it were a close case, the national interest in preserving First Amendment rights outweighs the Plaintiffs speculative fears.

## I.     The Court Lacks Jurisdiction.

### A.     The Court Lacks Jurisdiction to Collaterally Attack a Dismissed Case.

Plaintiffs' suit constitutes an impermissible collateral attack on the resolution of a separate federal civil action: *Defense Distributed, et al., v. United States Department of State, et al.*, No. 15-cv-372-RP (W.D. Tx.). This Court has nothing to do with that dismissed matter from the Western District of Texas.

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

8

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

1   "This truth cannot be concealed by 'artful pleading.'" *Treadaway v. Acad. of Motion*

2   *Picture Arts & Scis.*, 783 F.2d 1418, 1421 (9th Cir. 1986). Whether they say so or not, the

3   Plaintiffs' current suit counts as a collateral attack because it impugns the result of that litigation

4   as an illegal outcome that ought to be voided. *See Robinson v. Volkswagenwerk AG*, 56 F.3d 1268,

5   1274 (10th Cir. 1995); *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358 (5th Cir. 1972).

6   Ultimately, that action yielded a settlement agreement and was dismissed with prejudice

7   pursuant to a Rule 41(a)(1)(ii) stipulation. *See* No. 15-cv-372, Dkt. 112. In essence, the Plaintiffs

8   seek to overturn that outcome here. But jurisdictional limitations stop them from doing so.

9   If the Plaintiffs had tried to attack the initial case's judgment *in the court that rendered it*,

10  they would lose for lack of jurisdiction. The Supreme Court has explained that "[n]either the Rule

11  nor any provision of law provides for jurisdiction of the court over disputes arising out of an

12  agreement that produces the stipulation." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

13  375, 378 (1994); *accord Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1076 (9th

14  Cir. 1999). Indeed, the rule applies with extra force where, as here, the court rendering the

15  judgment (1) did not reserve jurisdiction or incorporate the terms of dismissal in its order, and so

16  did not retain jurisdiction itself; (2) refused, prior to the settlement, to allow third parties to scuttle

17  the agreement, *id.* at Dkt. 111; and then (3) added its own order of dismissal following the parties'

18  stipulation, *id.* at Dkt. 113. *See Hagestad v. Tragesser*, 49 F.3d 1430, 1433 (9th Cir.1995); *In re*

19  *Hunter*, 66 F.3d 1002, 1006 (9th Cir.1995).

20  Given that the Plaintiffs had no right to obtain their injunction from the court that actually

21  supervised the settlement and rendered the judgment at issue, the Plaintiffs therefore also cannot

22  obtain that relief from this Court. Just as in *Ord v. United States*, 8 F. App'x 852 (9th Cir. 2001),

23  "[w]e look to the substance of the complaint to determine whether an action should be

24  characterized as a collateral attack or as an entirely distinct action," and just as in *Ord*, the Court

25  should hold that Plaintiffs "may not upset the principles of judicial comity, fairness and efficiency

26

that underlie the basic rule against horizontal appeals." *Id.* at 854.  For these reasons, jurisdiction is lacking.

## B. The Court Lacks Jurisdiction Because of Statutory Limitations.

### 1. 5 U.S.C. § 701 Bars Review.

The APA excludes from judicial review any "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see generally Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n v. Mar. Admin.*, 215 F.3d 37, 41-42 (D.C. Cir. 2000).  All of the Plaintiffs' APA claims seek review of Executive Branch actions that fall within this exclusion.  As a result, "this court lacks jurisdiction." *Id.*

Section 701(a)(2) covers a wide swath of Executive Branch decisions regarding "foreign policy and the national interest." *Id.*; *see also United States v. Hawkins,* 249 F.3d 867, 873 n.2 (9th Cir. 2001) ("[C]ourts have long recognized that the Judicial Branch should defer to decisions of the Executive Branch that relate to national security.").  In particular, statutes meet this threshold when they use language that permits an executive official, such as the President or another agency official, to take action that the official "deems" in the "national interest." *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005).  More generally, actions fall within this prohibition when the statute at issue supplies no justiciable standard by which a court can review the agency's exercise of its delegated authority. *See Webster*, 486 U.S. at 600.  This is another case in point.

Here, review of the Plaintiffs' claims is barred.  The Executive Branch acted pursuant to two statutes.  First, 22 U.S.C. § 2751 directs the government to take action "consistent with the foreign policy interests of the United States."  Second, 22 U.S.C. § 2778(a)(1) directs the government to take action "in furtherance of world peace and the security and foreign policy of the United States."  These standards "exude[] deference to the [Executive Branch], and appear[] to . . . foreclose the application of any meaningful judicial standard of review." *Webster*, 486 U.S. at 600.  The AECA's delegation of authority to control arms exports is decidedly one involving

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

foreign affairs and national security—matters clearly within the State Department's discretionary authority.

Courts have affirmed this broad grant of authority to the President under the AECA to control the export of firearms on foreign policy grounds. In doing so, they broadly construe statutes that grant the President authority to act in such sensitive matters of foreign affairs. *See B-West Imports, Inc.* v. *United States,* 75 F.3d 633, 636 (Fed. Cir. 1996); *Samora* v. *United States,* 406 F.2d 1095 (5th Cir. 1969); *see also U.S. Ordnance, Inc. v. U.S. Dep't of State,* 432 F. Supp. 2d 94 (D.D.C. 2006), *vacated as moot sub nom. U.S. Ordnance, Inc. v. Dep't of State*, 231 F. App'x 2 (D.C. Cir. 2007); *Corrie v. Caterpillar, Inc*. 503 F.3d 974 (9th Cir. 2007). This Court should do so again here.

Plaintiffs claim, without any authority, that the State Department's authorizations carried mandatory and non-discretionary requirements under Section 2778(f)(1) for Congressional notification and Department of Defense consultation under Executive Order 13637. Motion 11-13; Tr. 11:19-20. But neither of these requirements apply to State Department's issuance of the subject authorizations. The authorizations at issue in this case do not *remove* anything from the UMSL; and the authorization under Section 126.2 (i.e., the temporary modification) merely *excludes* items for a period of time while the government pursues a permanent change.

### 2. AECA Section 2778(h) Bars Review.

Even if the State Department removed the subject files from the USML—it didn't—the AECA expressly, clearly, and unequivocally precludes judicial review of such decisions:

> **(h) Judicial review of designation of items as defense articles or services**
>
> The designation by the President (or by an official to whom the President's functions under subsection (a) have been duly delegated), in regulations issued under this section, of items as defense articles or defense services for purposes of this section **shall not be subject to judicial review**.

22 U.S.C. § 2778(h) (emphasis added).

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

11

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

1   Plaintiffs' motion fails to address Section 2778(h) because they cannot.  Courts have rightly

2   rejected prior attempts to narrow the application of 2778(h) as "strained and unreasonable,"

3   especially in light of the overall intent of the AECA, which "was enacted to permit the Executive

4   Branch to control the export and import of certain items in order to further 'world peace and the

5   security and foreign policy' of the United States." *Karn v. U.S. Dep't of State*, 925 F. Supp. 1, 6

6   (D.D.C. 1996).  Even if Plaintiffs return to their earlier argument that a removal is not a

7   designation, the argument is one of semantics—i.e., the Court can just as easily find the State

8   Department seeks to designate a limited subset of firearms on the USML.

9   **C.      The Plaintiffs Lack Standing.**

10   Those are not the only jurisdictional problems at issue.  Additionally, Plaintiffs have not

11   suffered the kind of injury that standing requires.  A "generalized grievance is not a particularized

12   injury" that will confer standing, *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015), but

13   a generalized grievance is all that the Plaintiffs assert.

14   "Generalized grievances" involve "harm . . . [that] is not only widely shared, but is also of

15   an abstract and indefinite nature," the quintessential example being "harm to the common concern

16   for obedience to law." *Id.* (quoting *Fed. Election Com'n v. Akins*, 524 U.S. 11, 23 (1998)).  Though

17   cloaked in different language, a "common concern for obedience to law" is exactly what Plaintiffs

18   cite as their basis for standing—their fear that persons will follow the law less because of what

19   Defense Distributed says.  That is a classic "generalized grievance."

20   Plaintiffs have also failed to establish standing's requisite "causal connection between the

21   injury and the conduct complained of." *Novak*, 795 F.3d at 1018.  This showing "cannot be too

22   speculative, or rely on conjecture about the behavior of other parties." *Ecological Rights Found.*

23   *v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000).  Yet all the injuries Plaintiffs identify

24   stem from this type of conjecture.  They require, at minimum, a third-party not permitted to carry

25   a firearm and not otherwise capable of obtaining one to purchase the necessary equipment and

26

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

12

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

1  materials, download the files from Defense Distributed's website (to the exclusion of any other),

2  print the parts, and follow a myriad of steps to properly construct the firearm.  This does not suffice.

3      Third, Plaintiffs have failed to show standing's redressability element.  A claim "lacks

4  redressability if the plaintiff will nonetheless suffer the claimed injury if a court rules in its favor."

5  *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, 894 F.3d 1005, 1013 (9th Cir.

6  2018).  This is precisely the case here.  Even if the Court orders the State Department to issue the

7  requested notifications, even if the Department revokes the settlement, and even if Defense

8  Distributed never publishes the files again, there is no unringing the bell.

9      The designs at issue in this litigation have already been posted online, and thousands of

10 Internet users have already downloaded them.  Now, they are freely available for anyone to

11 download from a variety of sources other than Defense Distributed, to say nothing of the many

12 alternative designs that are also readily available.  Even if the Court grants Plaintiffs all the relief

13 they seek, they will continue to suffer the very same injuries they cite as the basis for standing.

14 Their claims are not redressable. *See Exp.-Imp. Bank*, 894 F.3d at 1013.

15 **II.    The Claims are Meritless.**

16     **A.    The Requested Injunction Would Violate the First Amendment.**

17     On Friday, July 27, 2018, the U.S. District Court for the Western District of Texas allowed

18 the Private Defendants to enter into the settlement with the State Department.  For the next five

19 days, Defense Distributed, the Second Amendment Foundation, and Conn Williamson, as well as

20 any "U.S. person" were free to commit their public speech into the public domain.

21     That liberty came to a crashing halt on the evening of Tuesday, July 31, 2018 when this

22 court issued a Temporary Restraining Order.  Although no injunctive relief was issued against the

23 Private Defendants, the direct result of the temporary restraining order was to render speech that

24 was lawful, unlawful.  A permissible website on Monday became an illegal website on Tuesday—

25 all because of this Court's order.  That put the Private Defendants to an intractable choice: exercise

26 their rights and face severe criminal penalties, or go dark.  They went dark.

But for this Court's TRO, "any U.S. person," to include Defense Distributed, would be able to freely, and legally, share certain types of information without seeking a license from the State Department. However, because of this Court's temporary restraining order, such conduct is now illegal. If a preliminary injunction is granted, this court-imposed prior restraint of speech will continue for months, or perhaps even years into the future.

"Strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based." *Reed,* 135 S. Ct. at 2228. Further, "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). That presumption is even heavier where, as here, the speech is *already* available on the Internet, and has been available for years. In *the Pentagon Papers Case*, Justice White remarked that when "publication has *already* begun," the "efficacy of equitable relief . . . to avert anticipated damages is doubtful at best." *New York Times Co. v. U.S.*, 403 U.S. 713, 732 (1971) (White, J., concurring) (emphasis added). Neither the ITAR prior restraint nor an injunction from this Court can satisfy strict scrutiny's demanding standard.

Each time that the Supreme Court has encountered arguments like the Plaintiffs', it has rejected them. In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), for example, the Court made clear that the "prospect of crime . . . by itself does not justify laws suppressing protected speech." *Id.* at 245. Furthermore, *Ashcroft* established the proposition that restraints cannot be justified where, as here, the supposed "harm does not necessarily follow from the speech, but depends upon some unquantified potential for subsequent criminal acts." *Id.* at 249. Indeed, "it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party." *Bartnicki v. Vopper*, 532 U.S. 514, 529–30 (2001).

Plaintiffs claim that First Amendment has "no bearing" on this "APA challenge, which is focused on the Government's failure to follow mandatory procedures." But as the Court observed

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

14

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

1  during oral arguments, "there are First Amendment issues at play here, which are very serious and

2  will need to be looked at very closely as we move to the next phase on preliminary injunction."

3  Tr. at 43. The time to study the "very serious" "First Amendment issues" "very closely" is now.

4  The First Amendment lies at the heart of this case.

5       Second, Plaintiffs assert that the "Private Defendants' First Amendment claim . . . has been

6  rejected" by the U.S. District Court for the Western District of Texas, as well as the Fifth Circuit.

7  Motion at 17. Not so. The arguments Defense Distributed advances in this Court are distinct from

8  those advanced in prior litigation. Moreover, neither the Western District of Texas nor the Fifth

9  Circuit had the opportunity to consider the case on the merits; the case was resolved in the Fifth

10 Circuit at a preliminary stage on different grounds that do not parallel this case—with significant

11 dissenting opinions that found a First Amendment violation.

12      Third, Plaintiffs assert that "[i]t is highly questionable whether files that instruct a 3D

13 printer to produce a gun" constitute speech protected by the First Amendment. Motion at 17. They

14 add that "[a]ll one has to do is 'open the file and click 'Print' and the file 'communicate[s] directly'

15 with the 3D printer to produce a weapon.'" *Id.* at 18 (citing *CFTC v. Vartuli*, 228 F.3d 94, 111 (2d

16 Cir. 2000)). But the files do not automatically print a gun. Creating a gun requires additional

17 craftsmanship, know-how, tools, and materials. *See* No. 15-cv-372 (Dkt. 36-2 at Ex. 1 ¶¶ 4-36).[5]

18      Plaintiffs' argument was also rightly rejected by the Western District of Texas. *Def.*

19 *Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 691-696 (W.D. Tex. 2015). Instead of

20 applying *Vartuli*, the Court should apply *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2nd

21 Cir. 2001). This follow-up decision from the Second Circuit teaches that the First Amendment

22 applies because the files at issue in this case are not "intended to be used 'mechanically' and

23 'without the intercession of the mind or the will of the recipient." *Id.* (citations omitted). That is,

24

25     [5] This is the Declaration of Cody Wilson filed under seal in Case No. 15-cv-372 because the

26 information may constitute ITAR technical data. Document is available for in camera
    inspection upon request.

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

15

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

the First Amendment applies here because the files at issue are an "expressive means for the exchange of information and ideas." *Junger v. Daley*, 209 F.3d 481, 485 (6th Cir. 2000) ("Because computer source code is an expressive means for the exchange of information and ideas about computer programming, we hold that it is protected by the First Amendment."); *see also Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733 (2011).

Judge Pitman correctly analyzed this point. He concluded that "the files are intended to be used by others as a baseline to be built upon, altered and otherwise utilized." *Def. Distributed*, 121 F. Supp. 3d at 692. Therefore, Judge Pitman found, "at least for the purpose of the preliminary injunction analysis, the Court will consider the files as subject to the protection of the First Amendment." *Id.* The Plaintiffs' description of the relevant technology is incorrect, and their application of the First Amendment has been rightly rejected by the Western District of Texas.

Fourth, Plaintiffs also cite precedents that rejected First Amendment challenges to the AECA. *See e.g., United States v. Chi Mak*, 683 F.3d 1126 (9th Cir. 2012). But none of these cases concerned *public* speech. Plaintiffs also completely fail to address the *Bernstein* line of cases. *See Bernstein v. U.S. Dep't of State*, 922 F. Supp. 1426 (N.D. Cal. 1996); *Bernstein v. U.S. Dep't of State*, 945 F.Supp. 1279 (N.D. Cal. 1996); *Bernstein v. U.S. Dep't of State*, 974 F.Supp. 1288 (N.D. Cal. 1977); *Bernstein v. United States Dep't of State*, 176 F.3d 1132 (9th Cir.); *Bernstein v. DOC*, No. C-95-0582-MHP, 2004 U.S. Dist. LEXIS 6672 (N.D. Cal. April 19, 2004). In this line of cases, the United States District Court for the Northern District of California held that application of the AECA to public speech—that is computer code—was unconstitutional. From very early on, the judiciary has rightly recognized that the AECA cannot control public speech.

At bottom, Defense Distributed's rights to publish the subject files are *expressly* protected by the First Amendment. In *Sorrell v. IMS Health Inc.*, the Court recognized "that the *creation and dissemination* of information are speech within the meaning of the First Amendment." 564 U.S. 552, 570 (2011); *see also Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

16

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

fall within that category, as distinct from the category of expressive conduct" (some internal quotation marks omitted)). *See* Josh Blackman, *The 1st Amendment, 2nd Amendment, and 3D Printed Guns*, 81 Tenn. L. Rev. 479 (2014).[6]

## B. The State Department Did Not Violate the APA.

The Plaintiffs' are repeatedly mistaken about how the statutes at issue work. Once the Court realizes how they truly operate, the Plaintiffs' APA challenges become easy to reject. Four basic errors warrant attention.

### 1. The Authorizations Do Not "Remove" Anything from the USML.

The temporary modification and license issued under the settlement may eliminate the State Department's ability to control dissemination of the subject files once published on the Internet. However, these documents do not "remove" any article or technical data from the USML.

At this Court's July 31, 2018 hearing on Plaintiffs Motion for Temporary Restraining Order, Plaintiffs told the Court that the "language" of the temporary modification states would "*remove* items from the list." Tr. 13:11-12 (emphasis added). They reiterate this at page 12 and in note 20 of their instant motion. The Plaintiffs offer no authority to support this argument.

Critically, the temporary modification does not use the language "remove." Instead, it uses the language "exclude." This distinction matters: the temporary modification and license do not,

---

[6] The requested injunction would also violate the Second Amendment because it fails any level of scrutiny. *See District of Columbia v. Heller*, 554 U.S. 570 (2008); *Young v. Hawaii*, No. 12-17808, 2018 WL 3542985, at *4 (9th Cir. July 24, 2018) (the two-step test); *Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) . As the most basic means of acquiring something is to make it, the Second Amendment necessarily secures the individual right to create the arms that might be kept or carried. The injunction Plaintiffs request, however is both over-inclusive in that it prohibits even law-abiding American citizens from lawfully accessing and downloading designs and under-inclusive in that it only prohibits Defense Distributed from posting its designs, leaving others free to post whatever designs they wish online. *See Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (statute that was "both under-inclusive and over-inclusive" failed to satisfy strict scrutiny); *Young*, 2018 WL 3542985, at *23 (noting that "the substantial overbreadth or impreciseness of a government action must be considered" in intermediate scrutiny analysis). More importantly, Plaintiffs' broad, abstract interest in enforcing their laws cannot afford them or the court unlimited discretion to restrict longstanding Second Amendment rights. *See Young*, 2018 WL 3542985, at *23.

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

and in fact cannot "remove" or otherwise change the content of the USML. The State Department is authorized to issue authorizations that temporarily exclude items from the list in order to respond to specific situations, on a case-by-case basis, while it pursues a permanent removal. *See* 22 U.S.C. § 2778(g)(6); 22 C.F.R. § 126.2. In addition, the State Department also has discretion to approve the use of certain exemptions to the USML, such as the license issued to Defendants under Section 125.4(b)(13). Exclusions and exemptions—well-understood terms to those steeped in export control law—are not formal removals.

Plaintiffs' advance no authority to the contrary. In fact, their motion identifies three other temporary modifications issued by the State Department. Motion at n.20. Each modification temporarily "excludes" items from consideration under the ITAR. This Court should further take notice that Plaintiffs do not allege, let alone provide any proof, that any Congressional notifications were provided for the three temporary modifications cited in their motion. Why? Because notifications are not required for temporary exclusions issued under ITAR Section 126.2.

Moreover, Plaintiffs assert that the temporary authorization removes article from the USML. They are simply incorrect. Firearms *remain* listed at (1) USML Category I and the State Department's registration requirements at ITAR parts 122 and 129; (2) the ITAR restrictions on "brokering" at Part 129 remain; and (3) the ITAR restrictions on "defense services"[7] at Part 124 concerning firearms and associated technical data remain. These restrictions will continue to apply, despite the temporary modification, even where all the information used in a defense service is posted on the Internet or otherwise in the public domain.[8]

---

[7] *See e.g.,* 22 C.F.R. § 120.9(a)(1) ("Defense service" includes "[t]he furnishing of assistance (including training) to foreign persons, whether in the United States or abroad in the design, development, engineering, manufacture, production, assembly, testing, repair, maintenance, modification, operation, demilitarization, destruction, processing or use of defense articles").

[8] *See e.g.,* 22 C.F.R. § 124.1(a) ("The requirements of this section apply whether or not technical data is to be disclosed or used in the performance of the defense services described in §120.9(a) of this subchapter (e.g., all the information relied upon by the U.S. person in performing the defense service is in the public domain or is otherwise exempt from licensing requirements of this subchapter pursuant to §125.4 of this subchapter).")

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

18

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

## 2. The Congressional Notification Requirement Does Not Apply.

The Plaintiffs claim that the State Department failed to give Congressional notifications. However, they fail to cite *any section* of the AECA or the ITAR that actually applies a notification requirement to the State Department authorizations at issue. No such authority exists. This error has been well documented by authorities within the export control community.[9]

The ACEA section that Plaintiffs cite, Section 2778(f)(1), only requires notification when an item is removed from the USML. *See* 22 U.S.C. § 2778(f)(1) ("The President may not **remove** any item from the Munitions List until 30 days after the date on which the President has provided notice of the proposed removal [to Congress]") (emphasis added). As explained *supra*, the Settlement Agreement does not require the "removal" of anything from the USML.

Further, nothing in ITAR sections 125.4(b)(13) or 126.2, which govern the authorizations, implicates Congressional notification requirements. And to be clear, the Department's issuance of a *temporary* order suspending or modifying the ITAR under Section 126.2 may temporarily "exclude" the subject files but, as discussed *supra*, Plaintiffs misrepresent the language of the temporary modification. The authorization does not include the word "remove."

## 3. The Department of Defense Was Not Required to Concur in the Authorizations.

Authorizations issued under ITAR sections ITAR sections 125.4(b)(13) and 126.2 do not require concurrence by the Department of Defense. Rather, like with Congressional notifications under the AECA, the Department of Defense is only required to concur to "designations" (i.e., additions or removals) "of items or categories of items" on the USML. Executive Order 13637 Section 1(n). Again, the State Department's issuance of the subject authorizations did not result in the removal of any items from the USML.

---

[9] *See e.g.,* "Federal Court Incorrectly Says DDTC Jumped the Gun on Gun Printing Plans," Clif Burns, Bryan Cave LLP, available at www.exportlawblog.com/archives/9218 (Dkt. 48 at Exhibit I) ("Nothing has been removed from the USML by the Settlement Agreement, and, thus, no section 38(f) notice was required as a result of the Settlement Agreement.").

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

19

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

### 4. The Commodity Jurisdiction Requirements Do Not Apply.

Plaintiffs suggest that the State Department was required to comply with ITAR's commodity jurisdiction process before issuing the authorizations. *See* Motion at 12. They are incorrect. The ITAR requires that the Department initiate the commodity jurisdiction process in response to a request from a potential exporter. *See Karn v. United States Department of State*, 925 F.Supp. 1, at 7 (D.D.C. 1996) ("Designating an export such that it is subject to the AECA and the ITAR requires first describing the type of item in the regulations, and second, if asked by a potential exporter, confirming that the item in question is or is not covered by such description. The commodity jurisdiction procedure provides the latter function. . .")

Pursuant to ITAR Section 120.4, the government can respond to public requests for case-by-case determinations of whether a particular product (i.e., XYC Company's widget) is on the USML. *See* 22 C.F.R. § 120.4. This procedure is a completely separate process from the State Department authorization procedures. *See e.g.,* 22 C.F.R. § 125 ("Licenses for the Export of Technical Data and Classified Defense Articles"). The commodity jurisdiction process does not apply in the absence of such a request. Specifically, it does not apply to temporary modifications of the ITAR under 126.2 or other authorization decisions.

Plaintiffs also contend that the State Department's actions are arbitrary and capricious because the agency offered "no reason for the about-face" on restricting publication of the subject files. Motion 16. Not so. As a matter of public record, the transition began during the Obama administration over half a decade ago. And four decades ago, the Justice Department advised the State Department that the prior restraint under ITAR violated the First Amendment. The record in this case provides sound and well-reasoned bases to justify the agency action. At bottom, the Plaintiffs simply disagree with the Executive Branch's policy judgment. This sort of generalized grievance is suited for the political branches, not the judicial branch.

Finally, Plaintiffs argue that the State Department's authorizations are ultra vires because they will abrogate federal laws (Motion 14-15). This position is a red herring. The authorizations

do not affect separate federal prohibitions on the possession of firearms by felons, persons subject to restraining orders, or the mentally ill, *see* 18 U.S.C. §§ 922 (g)(1) (felons and certain state-law misdemeanants); 922(g)(8) (court-issued restraining orders); 922(g)(4) (persons adjudicated as mentally ill), or prohibitions on the manufacture, possession, sale, import, or transfer of undetectable firearms, *see* 18 U.S.C. § 922(p); An Act to Extend the Undetectable Firearms Act of 1988 for 10 Years, Pub. L. 113-57 (Dec. 2 2013); or other federal laws.

## III.  Irreparable Harm is Lacking.

"An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury, or a conjectural or hypothetical injury." *Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).  But in this case, the Plaintiffs' showing is too "remote" because of the extraordinarily attenuated chain of logic needed to connect the requested relief to the supposed harm.  The Plaintiffs' showing is also too "conjectural" and "hypothetical" because their key points pertain to unspecified individuals committing unspecified violations of the law at unspecified times to unspecified extents.

In addition, the Plaintiffs' alleged harm may occur regardless of what happens in this case: all of the relevant files were already in the public domain before Defense Distributed published them on July 27, 2018.  Moreover, files like these continue to be freely exchanged by countless persons.  What happens in this case will not supply any true redress for the alleged concerns.

Finally, Plaintiffs fail to explain why 3D files present a risk of irreparable harm greater than other types information on the Internet that explains how to make weapons.  Way back in 1997, Justice Department advised Congress, "that anyone interested in manufacturing a bomb, dangerous weapon, or a weapon of mass destruction can easily obtain detailed instructions from readily accessible sources, such as legitimate reference books, the so-called underground press, and the Internet." Dkt. 48-1 at Exhibit D at 3.  And, DOJ advised, censoring such information would violate the First Amendment.

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

21

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

## IV.    The Balance of Equities and the Public Interest Favor the Defendants.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373-74 (citations omitted).   And Protecting Constitutional rights always advances the public interest.  *E.g.*, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  Preserving the status quo stops that Constitutional harm and advances that Constitutional public interest not just for the Defendants, but for all American citizens that share in the First Amendment's protections.

Further, the public interest demands that the State Department, not this Court, make certain judgments. *See Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937) (statutory scheme of Congress "is in itself a declaration of public interest which should be persuasive" to courts). The determination of whether to issue a license for the export of munitions is for the elected branches, and not the courts—and certainly not for the states—to decide.[10]  Granting Plaintiffs the relief they request will open the floodgates of litigation against the State Department with other challenges, frustrating the accomplishment of objectives authorized by federal export control laws. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 375 (2000); *Nat'l Foreign Trade Council, Inc. v. Giannoulias*, 523 F. Supp. 2d 731, 738-742 (N.D. Ill. 2007).

### CONCLUSION

The Court should deny the motion.

---

[10]  Accordingly, the actual public expressed widespread opposition to the State Department's prior restraint under the ITAR. In June 2015, the State Department proposed a rule to amend ITAR's "public domain" definition to unambiguously impose a prior restraint on public speech. *See* 80 Fed. Reg. 31,525, 31,528 (June 3, 2015). This proposal drew over 9,000 public comments. The vast majority of which, including industry leaders: IBM, GE, former State Department employees, the Association of American Universities, the Association of Public and Land-grant Universities, and the Council on Government Relations. **Exhibit F**.

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

22

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040

DATED this 15th day of August, 2018.


BECK REDDEN LLP                              FARHANG & MEDCOFF


/s/Charles Flores                            /s/Matthew Goldstein
Charles Flores                               Matthew Goldstein
cflores@beckredden.com                       Farhang & Medcoff
/s/Daniel Hammond                            4801 E. Broadway Blvd., Suite 311
Daniel Hammond                               Tucson, AZ 85711
dhammond@beckredden.com                      Phone: (202) 550-0040
Beck Redden LLP                              mgoldstein@fmlaw.law
1221 McKinney Street, Suite 4500             *Admitted Pro Hac Vice
Phone: (713) 951-3700
*Admitted Pro Hac Vice
                                             IMMIX LAW GROUP PC
Attorneys for Defendants
Defense Distributed
                                             /s/Joel B. Ard
                                             Joel B. Ard, WSBA # 40104
                                             Immix Law Group PC
                                             701 5th Ave Suite 4710
                                             Seattle, WA 98104
                                             Phone: (206) 492-7531
                                             Fax: (503) 802-5351
                                             joel.ard@immixlaw.com

                                             Attorneys for Defendants
                                             Defense Distributed, Second Amendment
                                             Foundation, Inc., and Conn Williamson

1

## CERTIFICATE OF SERVICE

2

    I certify that on August 15, 2018, I served the foregoing by filing it with the Court's CM/ECF system, which automatically notifies all counsel of record.

3

4

    I CERTIFY UNDER PENALTY OF PERJURY under the laws of the United States of America that the foregoing is true and correct.

5

6

    DATED this August 15, 2018.

               FARHANG & MEDCOFF

7

8

By  /s/Matthew Goldstein
       Matthew Goldstein

9

       Farhang & Medcoff
       4801 E. Broadway Blvd., Suite 311

10

       Tucson, AZ 85711
       Phone: (202) 550-0040

11

       mgoldstein@fmlaw.law
       *Admitted Pro Hac Vice

12

13

       Attorneys for Defendants
       Defense Distributed, Second Amendment

14

       Foundation, Inc., and Conn Williamson

15

16

17

18

19

20

21

22

23

24

25

26

PRIVATE DEFENDANTS' BRIEF IN
OPPOSITION TO STATES' MOTION
FOR A PRELIMINARY INJUNCTION
No. 2:18-cv-01115-RSL

24

FARHANG & MEDCOFF
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040