IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| vs. | ) ) ) | |
| GURBIR GREWAL, in his official capacity as the State of New Jersey's Attorney General, et al., | ) ) ) ) ) | Case No. 1:18-CV-637 |
| *Defendants.* | | |

**DEFENDANTS GURBIR S. GREWAL AND MATTHEW DENN'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiffs' Personal Jurisdiction Arguments are Frivolous ..................................................... 2

    II.    Plaintiffs' Arguments Concerning Subject Matter Jurisdiction Are Unavailing ................... 5

    III.    Plaintiffs' Opposition Fails to Save their Constitutional and Tortious Interference Claims .. 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ............................................................................................................. 7

*In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig.*,
    299 F. Supp. 3d 324 (D.N.H. 2017) ................................................................................... 3

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ........................................................................................................... 8

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995) ........................................................................................................... 7

*Defense Distributed, et al. v. U.S. Dep't of State, et al.*,
    121 F. Supp. 3d 680 (W.D. Tex. 2015) .......................................................................... 2, 9

*Defense Distributed v. U.S. Dep't of State*,
    838 F.3d 451 (5th Cir. 2016) ............................................................................................. 8

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ........................................................................................................... 3

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ....................................................................................................... 4, 5

*Kulko v. Superior Court*,
    436 U.S. 84 (1978) ............................................................................................................. 4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................................... 6, 8

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ........................................................................................................... 3

*Miller v. Meinhard-Commercial Corp.*,
    462 F.2d 358 (5th Cir. 1972) ............................................................................................. 7

*N.Y. State Rifle & Pistol Ass'n v. City of New York*,
    883 F.3d 45 (2d Cir. 2018) ................................................................................................ 9

*Republic of Pan. v. BCCI Holdings (Lux.) S.A.*,
    119 F.3d 935 (11th Cir. 1997) ........................................................................................... 3

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ................................................................................................................8

*Stroman Realty, Inc. v. Wercinski*,
    513 F.3d 476 (5th Cir. 2008) ................................................................................................2, 4

*Time Warner Cable, Inc. v. Hudson*,
    667 F.3d 630 (5th Cir. 2012) ....................................................................................................9

*Trois v. Apple Tree Auction Ctr., Inc.*,
    882 F.3d 485 (5th Cir. 2018) ....................................................................................................5

*United Rope Distribs. v. Seatriumph Marine Corp.*,
    930 F.2d 532 (7th Cir. 1991) ....................................................................................................3

*Universal City Studios, Inc. v. Corley*
    273 F.3d 429 (2d Cir. 2001) .....................................................................................................8

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..................................................................................................................4

*Washington, et al. v. U.S. Dep't of State, et al.*,
    318 F. Supp. 3d 1247 (W.D. Wash. 2018) ............................................................................1, 6

### DEFENDANTS GURBIR S. GREWAL AND MATTHEW DENN'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

The New Jersey Attorney General, Gurbir S. Grewal (the "NJAG"), and the Delaware Attorney General, Matthew Denn (the "DAG"), respectfully submit this reply memorandum in further support of their November 21, 2018 motion to dismiss Plaintiffs' First Amended Complaint (Dkt. 57, hereinafter the "Motion to Dismiss").

### PRELIMINARY STATEMENT

Plaintiffs' December 12, 2018 opposition to the Motion to Dismiss ("Opp.") sets forth specious arguments for claiming personal jurisdiction over the NJAG and the DAG — arguments this Court should now summarily reject. First, their suggestion that the NJAG and the DAG are somehow "judicially estopped" from challenging jurisdiction here, based on their ongoing participation in the Washington Action, is nonsensical on its face. Opp. at 7. The NJAG and the DAG have obviously never taken the position in the Washington Action that jurisdiction attaches over *themselves, as defendants, in Texas*.

Second, Plaintiffs completely misconstrue the Supreme Court's "purposeful availment" standard, and cite no support for their novel contention that an out-of-state governmental authority can be hauled into court wherever the effects of its law enforcement activities are felt. The Fifth Circuit's *Stroman Realty* decision, which establishes exactly the opposite, controls here instead.

Plaintiffs likewise fail to articulate any basis for this Court's subject matter jurisdiction. The First Amended Complaint ("FAC") is, in fact, almost entirely concerned with Plaintiffs' inability to publish their 3D printable firearm files on the internet — an activity Plaintiffs concede is encompassed by the Washington Court's in-force preliminary injunction. *See* Opp. at 7; *Washington, et al. v. U.S. Dep't of State, et al.*, 318 F. Supp. 3d 1247, 1264 (W.D. Wash.

1

2018) (the "Washington Action"). As for any non-internet-based activity — including the non-internet activities alleged in Plaintiffs' two Temporary Restraining Order ("TRO") motions — this Court has already held, twice, that the *Pullman* abstention doctrine dictates that this Court not address those activities. *See* Order Denying TRO, Dkt. 53, at 3-4; Order Denying TRO, Dkt. 69, at 3-5.

Finally, Plaintiffs have not shown that their 3D printable firearms files are in fact protected speech. But, even if they were, the NJAG's and the DAG's law enforcement activities still pass muster under the then-applicable "intermediate scrutiny" standard. *See Defense Distributed, et al. v. U.S. Dep't of State, et al.*, 121 F. Supp. 3d 680, 693 (W.D. Tex. 2015). Plaintiffs also fail to respond at all to the NJAG and the DAG's arguments with respect to the dormant Commerce Clause and Plaintiffs' tortious interference claims. *See* Motion to Dismiss at 18-20.

Accordingly, Plaintiffs' claims here against the NJAG and the DAG should be dismissed, or in the alternative, transferred to a proper venue.

## ARGUMENT

### I.  Plaintiffs' Personal Jurisdiction Arguments are Frivolous

Plaintiffs advance a series of fatally flawed arguments in their attempt to manufacture personal jurisdiction over the NJAG and the DAG in this Court. *See* Opp. at 8-14. But, the necessary minimum contacts with Texas required by controlling precedents simply do not exist here. To the contrary, the only contact with Texas alleged in the FAC — the transmission of cease-and-desist letters to Defense Distributed — was concerned with enforcing New Jersey and Delaware law, and therefore cannot establish personal jurisdiction over the NJAG and the DAG in Texas. *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 480-84 (5th Cir. 2008) (out-of-state official did not "'purposely avail[]' herself of the benefits of Texas law" where her alleged

misconduct merely involved enforcing her own state's law and, as here, her sole contact with Texas was the issuance of a cease-and-desist letter to a Texas resident).

Plaintiffs nonetheless argue, first, that the NJAG and the DAG are somehow judicially estopped from challenging personal jurisdiction here based on their own jurisdictional allegations against Plaintiff Defense Distributed in the complaint in the Washington Action. *See* Opp. at 8-10. This argument is a non-starter, however, because the doctrine of judicial estoppel applies only when a party "assume[s] a *contrary position*" to a position successfully taken in a different proceeding. *Id.* at 8; *New Hampshire v. Maine*, 532 U.S. 742, 742-43 (2001) (emphasis added). Here, the NJAG and the DAG's position in the Washington Action — that *Defense Distributed* has sufficient contacts with the state of Washington, *see* Washington Action Dkt. 29 at ¶ 13 — is by no means "contrary" to the wholly unrelated proposition that the *NJAG and DAG* lack minimum contacts with Texas.

Any jurisdictional due process analysis obviously focuses on whether *the defendant* has minimum contacts with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Here, the NJAG and the DAG have never taken the "contrary" position that the matters at issue do, in fact, confer jurisdiction over them in Texas. *See In re Atrium Med. Corp. C-Qur Mesh Prods. Liab. Litig.*, 299 F. Supp. 3d 324, 330 (D.N.H. 2017) (judicial estoppel did not bar defendant's personal jurisdiction defense where defendant had not persuaded courts in related actions to exercise personal jurisdiction over it). There is thus no judicial estoppel here.

Plaintiffs next assert that, under a Fifth Amendment analysis, they need only establish that the NJAG and the DAG have "minimum contacts with the Nation as a whole — not just Texas." Opp. at 11 n.6. But that nationwide jurisdiction analysis applies only when a federal statute provides the basis for personal jurisdiction — which is certainly not the case here. *See Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997); *United Rope*

3

*Distribs. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534-35 (7th Cir. 1991) (finding no personal jurisdiction over defendant, despite "these national contacts," where the federal statute at issue did "not authorize service of process"). With no federal statute providing a basis for personal jurisdiction here, only the NJAG and DAG's contacts *with Texas* are relevant to the Court's personal jurisdiction inquiry. Those contacts are insufficient.

Plaintiffs' other attempts to conjure up minimum contacts with Texas fare no better. Opp. at 11-13. Each flies in the face of well-established Supreme Court and Fifth Circuit jurisprudence holding that (1) "purposeful availment" of the privilege of conducting activities in the forum state involves "*commercial, profit-oriented enterprise,*" e.g., Stroman Realty, 513 F.3d at 484-85 (citing *Kulko v. Superior Court*, 436 U.S. 84 (1978); (emphasis added)), and (2) the locus of the "effects" of a defendant's alleged conduct is irrelevant unless that conduct was aimed at the forum in a meaningful way, *see id.* at 486; *Walden v. Fiore*, 571 U.S. 277, 290 (2014). The decisions cited by Plaintiffs are all consistent with these principles; indeed, *none* found jurisdiction over an out-of-state governmental authority attempting to enforce its own state's law to protect its own citizens. *See* Opp. at 11-13.[1]

As for Plaintiffs' appeal to the "nationwide" nature of the injunction in the Washington Action, that proves too much. *See* Opp. at 12. It instead undercuts the very notion that the

---

[1] In *J. McIntyre Mach., Ltd. v. Nicastro*, the Supreme Court declined to find personal jurisdiction over a foreign manufacturer who had no office in the forum state, paid no taxes and owned no property there, did not specifically advertise there, and did not have employees there. 564 U.S. 873, 877-87 (2011). In *Walden v. Fiore*, the Supreme Court held that the defendant police officer's conduct was not directed at the forum state (and therefore did not satisfy the minimum contacts requirement) simply because he directed his conduct at plaintiffs whom he knew had connections with the forum state. 571 U.S. at 289. The court noted that plaintiffs' reasoning "improperly attributes a plaintiff's forum connections to the defendant," *id*. —precisely what Plaintiffs are attempting to do here. Plaintiffs' references to their alleged publication of materials at a public library and to the NJAG's letters to Defense Distributed's internet service providers do not change this analysis. *See* Opp. at 13.

4

NJAG and DAG's conduct was directed at Texas in particular, or that they sought to "change Texas law", or "literally becom[e] governing officials *of Texas*[.]" *See id.* at 11-12; *see also J. McIntyre Mach., Ltd.*, 564 U.S. at 880-87 (rejecting jurisdiction based on defendant's nationwide product distribution system where defendant did not otherwise manifest an intention to benefit from or submit to the laws of the forum state).

Finally, there is no basis for permitting Plaintiffs to conduct "jurisdictional discovery" here into a purported relationship with the three firearm safety groups that unsuccessfully sought to intervene in the prior proceeding before thus Court. *See* Opp. at 14. The FAC contains no allegations of *any* relationship between those groups and the NJAG or the DAG, let alone an *agency* relationship arguably sufficient to establish impute jurisdiction. *See* FAC ¶¶ 43-45; *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018).[2] More importantly, the FAC does not include any claims against these groups, nor are they parties to this action. The FAC only alleges that they sought to block the Settlement Agreement, but were not permitted to intervene. FAC ¶ 45. It therefore strains credulity to suggest that jurisdiction over the NJAG and the DAG exists because of these three non-parties.

**II.     Plaintiffs' Arguments Concerning Subject Matter Jurisdiction Are Unavailing**

Plaintiffs cite cases from other jurisdictions for the proposition that "the threat of punishment delivered by [the NJAG's and DAG's] cease and desist letters confers standing." Opp. at 4. Even if that were the law in the Fifth Circuit — and it's not — Plaintiffs still miss the mark. As discussed previously in the Motion to Dismiss, the FAC itself alleges that Defense Distributed ceased dissemination of its 3D printable firearms files only after the Washington Court issued a temporary restraining order on July 31, 2018. *See* Motion to Dismiss at 11-12.

---

[2] Nor is the unsupported suggestion of "some kind of cooperation" between the NJAG and the groups sufficient for these purposes. *See* Opp. at 14 n.8.

5

That fact alone is fatal to any assertion by Plaintiffs that their alleged injury is "fairly traceable to the challenged action" of the NJAG and the DAG. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs nonetheless go to great lengths attempting to argue that the preliminary injunction entered in the Washington Action does not deprive them of standing to bring the instant action. *See* Opp. 5-8. Those arguments are unavailing for two reasons, however. First, the clear gravamen of the FAC is that Defendants, including the NJAG and the DAG, have, through that injunction, prevented Plaintiffs from publishing their 3D printable firearms files on the internet. *See, e.g.*, FAC ¶ 3 ("Defense Distributed desires and intends to resume its publication of these files on the internet . . . . But the Defendants forced Defense Distributed to stop publishing the files on the internet."); ¶¶ 53-62 (describing Plaintiffs' activities, the NJAG's and DAG's response, and the Washington Action). Indeed, Plaintiffs concede that the Washington Court's injunction encompasses *the internet publication of Plaintiffs' digital firearms information*. *See* Opp. at 7; Washington Action at 1264 ("Regulation under the AECA means that the files cannot be uploaded to the internet . . . ."). In support of their purported right to publish their files on the internet, Plaintiffs in fact made the same First Amendment-related arguments before the Washington Court that they make here. *E.g.*, Private Defendants' Brief in Opposition to Plaintiff States' Motion for a Preliminary Injunction, dated Aug. 15, 2018, at 13-17.

Therefore, even crediting Plaintiffs' assertion that their inability to publish their files to the internet initially stemmed from the NJAG's and the DAG's cease-and-desist letters, Opp. at 6-7, the indisputable fact remains that Plaintiffs' right to publish their 3D printable firearms files on the internet was squarely before the Washington Court, and the Washington Court enjoined such publication. As a direct result then, there is now no live "case or controversy" before this

6

Court. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013) (an "'actual controversy' must exist not only 'at the time the complaint was filed,' but through 'all stages' of the litigation.").[3]

Second, because dissemination of Plaintiffs' 3D printable firearms files to the internet is not currently a legally protected interest, *see* Motion to Dismiss at 8-10, Plaintiffs have to allege some *other* redressable injury to establish standing — yet the FAC alleges no such thing. Nor do the FAC's fleeting references to Defense Distributed's publication of firearms information "at a public library" specify whether such publication is internet-based or not, *see, e.g.*, FAC ¶¶ 11, 53, or allege any injury to its library-based activity, apparently a one-time event that has already occurred. While Plaintiffs' motions for a temporary restraining order and preliminary injunction describe various additional non-internet-based activities allegedly affected by the NJAG's enforcement of its state's new firearm regulation, such as participating in trade shows, Dkt. 66 at 6-7; Dkt. 67 at 8-9, 22, this Court has already determined that it ought not decide any asserted Constitutional questions relating to those activities on the basis of the *Pullman* abstention doctrine. *See* Dkt. 53 at 3-4; Dkt. 69 at 3-5; Dkt. 78 at 5. In any event, those additional activities are not alleged in the FAC to have been a target of the NJAG's or the DAG's law enforcement efforts, or to have been a subject of their cease-and-desist letters or letters to internet service

---

[3] Relatedly, as the Supreme Court explained in *Celotex*, litigants cannot collaterally attack the ruling of one court by filing, on the same factual basis, an action in another court that would decide the same issues. *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (respondents chose not to appeal to the district court in which the bankruptcy judge in the original action was serving, "but instead to collaterally attack [the bankruptcy court's injunction] in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law."); *see also Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360-61 (5th Cir. 1972) (court refused to hear proceeding where subject matter was the same as in a separate bankruptcy proceeding in a different district, because to do so "would be in effect to reopen the bankruptcy proceedings and retry the merits in a collateral proceeding."). Therefore, this Court, to the extent it would be effectively retrying the issues that the Washington Court has already decided and which can only be appealed to the Ninth Circuit, lacks jurisdiction to decide the instant case.

providers (the allegations which form the basis of Plaintiffs' causes of action against the NJAG and the DAG).

For all of these reasons, Plaintiffs' have not alleged a concrete and particularized injury to a legally protected interest that is likely to be redressed by a favorable decision of this Court. *See Lujan*, 504 U.S. at 560-61.

### III. Plaintiffs' Opposition Fails to Save their Constitutional and Tortious Interference Claims

Plaintiffs' arguments that their 3D printable firearms files constitute protected speech, and that any regulation of that "speech" must satisfy "strict scrutiny" are untenable. *See* Opp. at 16-19. None of the cases Plaintiffs cite as "controlling" precedents mandate the conclusion that these files are speech protected by the First Amendment. Two of the cases cited do not even concern computer code: *Sorrell* dealt with pharmacy records and *Bartnicki* dealt with a taped telephone conversation. *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011); *Bartnicki v. Vopper*, 532 U.S. 514 (2001). *Universal City Studios, Inc. v. Corley*, which did deal with computer code, held only that "instructions that communicate information *comprehensible to a human* qualify as speech whether the instructions are designed for execution by a computer or a human (or both)." 273 F.3d 429, 448 (2d Cir. 2001) (emphasis added).

The FAC does not allege that Plaintiffs' 3D printable firearms files communicate such information. *See* FAC ¶¶ 30-34. Nor did the Fifth Circuit weigh in on this issue in *Defense Distributed I*. *See Defense Distributed v. U.S. Dep't of State,* 838 F.3d 451, 461 (5th Cir. 2016) ("This case presents a number of novel legal questions, including whether the 3D printing . . . files at issue here may constitute protected speech under the First Amendment . . . we take no position on the ultimate outcome other than to agree with the district court that it is not yet time to address the merits.").

But even assuming that the 3D printable firearms files at issue here were protected speech, there is no basis for requiring a "strict scrutiny" analysis. *See* Opp. at 18-19. As this Court correctly acknowledged in *Defense Distributed I*, the Supreme Court has held that regulations are "content-neutral," and therefore subject only to "intermediate scrutiny," where they are aimed at "secondary effects" of a particular message. *Defense Distributed*, 121 F. Supp. at 693. The Fifth Circuit has likewise found regulations "aimed not at suppressing a message, but at other 'secondary effects,'" to be content-neutral, "even where the regulation governed a specific topic of speech." *Id*.

Under such "intermediate scrutiny," "a court must sustain challenged regulations 'if they further an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Id.* (citing *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 641 (5th Cir. 2012)). Here, the complained-of law enforcement activity should be sustained because it was content-neutral and plainly undertaken to protect the safety and health of the citizens of New Jersey and Delaware. *See* FAC Ex. E and H (the NJAG's and the DAG's cease-and-desist letters referencing concern for the safety of citizens of New Jersey and Delaware).

Plaintiffs' responses to the other Constitutional arguments raised by the NJAG and the DAG in their Motion to Dismiss, *see* Opp. at 19-20, fare no better. They make no attempt, for example, to show a colorable claim under the dormant Commerce Clause. To the contrary, Courts have repeatedly upheld firearm regulations that incidentally burden interstate commerce. *See* Motion to Dismiss at 18-19 (citing, *inter alia*, *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45 (2d Cir. 2018)). Nor have Plaintiffs bothered to respond to the NJAG and the DAG's arguments that claims have not been stated here for tortious interference with the

9

Settlement Agreement or with contracts with internet service providers. *See* Motion to Dismiss at 20.

## CONCLUSION

For the reasons set forth in the opening brief and herein, Plaintiffs' FAC should be dismissed as to the NJAG and the DAG, or in the alternative, should be transferred.

DATED: December 21, 2018

          Respectfully submitted,

          Pillsbury Winthrop Shaw Pittman LLP

          BY:  /s/ Casey Low
               Casey Low
               Texas Bar No. 24041363
               401 Congress Ave., Suite 1700
               Austin, Texas 78701-4061
               Phone:  (512) 580-9600
               Fax:     (512) 580-9601
               casey.low@pillsburylaw.com

               Kenneth W. Taber (admitted *pro hac vice*)
               Alexander D. Hardiman (*pro hac vice* pending)
               Benjamin D. Tievsky (admitted *pro hac vice*)
               Pillsbury Winthrop Shaw Pittman, LLP
               1540 Broadway
               New York, NY 10036
               212-858-1813
               Fax: 212-858-1500
               kenneth.taber@pillsburylaw.com
               alexander.hardiman@pillsburylaw.com
               benjamin.tievsky@pillsburylaw.com

               Attorneys for Defendants GURBIR S. GREWAL and MATTHEW DENN

OF COUNSEL:

Joseph C. Handlon (DE ID #3952)

Wilson B. Davis (DE ID #5154)
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801

Lorraine Karen Rak
Melissa Medoway
Jeremy Feigenbaum
New Jersey Attorney General's Office
124 Halsey Street
5th Floor
Newark, NJ 07102

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Casey Low*
Casey Low