IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § | Case No. 1:18-CV-637-RP |
| Plaintiffs, | § § | |
| v. | § § | **Plaintiffs' Response to the** |
| | § | **Motions to Dismiss of Defendants** |
| GURBIR GREWAL, in his official capacity | § | **Thomas Wolf and Josh Shapiro** |
| as New Jersey Attorney General; MICHAEL | § | |
| FEUER, in his official capacity as Los | § | |
| Angeles City Attorney; ANDREW CUOMO, | § | |
| in his official capacity as New York | § | |
| Governor; MATTHEW DENN, in his official | § | |
| capacity as Attorney General of the State of | § | |
| Delaware; JOSH SHAPIRO, in his official | § | |
| capacity as Attorney General of Pennsylvania; | § | |
| and THOMAS WOLF, in his official capacity | § | |
| as Pennsylvania Governor, | § | |
| | § | |
| Defendants. | § | |

Plaintiffs Defense Distributed and Second Amendment Foundation, Inc. file this response to Defendants Thomas Wolf and Josh Shapiro's motion to dismiss, Dkt. 75.

## Argument

Most of this motion's arguments match those made by the other defendants' motions to dismiss. *See* Dkts. 50, 55, 77. Accordingly, most of the this motion's arguments should be rejected for the reasons set forth in Plaintiffs' responses to the other motions, Dkts. 59, 73. Inasmuch as salient differences exist, they do not make the case against Governor Wolf Attorney General Shapiro weaker than the case against the others. They make it stronger.

## I. Personal jurisdiction exists.

The motion seeks a Rule 12(b)(2) dismissal for lack of personal jurisdiction. Dkt. 75 at 9-13. The Court should reject this argument because Governor Wolf and Attorney General Attorney General Shapiro are judicially estopped from challenging personal jurisdiction, and because even if not, their argument fails in substance.

### A. Judicial estoppel bars the motion's denial of minimum contacts.

First, the Court should reject the motion's attempt to deny "minimum contacts" because judicial estoppel bars it. Plaintiffs' judicial estoppel argument regarding New York, New Jersey, and Delaware's officials, Dkt. 73 at 2, 8-10; Dkt. 83 at 4, applies with equal force to both Governor Wolf and Attorney General Attorney General Shapiro.

"Under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001). The doctrine bars more than just exactly contradictory positions. It bars the assertion of "inconsistent" theories. *Id.* (quoting Moore's Federal Practice). Absent a valid

explanation, "a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* (quoting Wright & Miller's Federal Practice & Procedure). This is "firmly established" Fifth Circuit law. *U.S. ex. rel. Bernard Lumber Co., Inc. v. Lanier-Gervais Corp.*, 896 F.2d 162, 168 (5th Cir. 1990).

Here, the judicial estoppel doctrine bars Attorney General Shapiro and Governor Wolf from challenging personal jurisdiction in Texas because they espoused an inconsistent theory of personal jurisdiction in *State of Washington v. United States Department of State*, No. 2:18-cv-1115-RSL (W.D. Wash.). The Commonwealth of Pennsylvania is a named plaintiff in that action, and it is represented by Attorney General Shapiro.[1] *See id.* Dkt. 29 (live complaint). The position regarding personal jurisdiction that Pennsylvania has successfully espoused in the Washington action is completely at odds with the position regarding personal jurisdiction that Attorney General Shapiro and Governor Wolf take in this case.

In this case, Attorney General Shapiro and Governor Wolf take the position that personal jurisdiction's "minimum contacts" exist only in Pennsylvania. Dkt. 55 at 14-20; Dkt. 75 at 9-13. But in the Washington case, Pennsylvania—along with the rest of the plaintiffs there—(1) took the position that there is nothing wrong with Pennsylvania having to litigate that case away from Pennsylvania, and (2) took the position that personal jurisdiction's "minimum contacts" exist as to Defense Distributed in Washington. *See State of Washington v. United States Department of State*, No. 2:18-cv-1115-RSL, Dkt. 29 at 7; *id.* Dkt. 119.

In this way, Attorney General Shapiro and Governor Wolf are trying to maintain incoherent positions in an effort to gain undue advantages. *See* Dkt. 73 at 2, 8-10. For as a recent filing explained, "the same keystone event controls personal jurisdiction in both cases: a

---

[1] Since judicial estoppel applies both to the party directly at issue *and those in privity with them*, *see, e.g.*, *Milton H. Greene Archives, Inc. v. Marilyn Monroe* LLC, 692 F.3d 983, 996 (9th Cir. 2012), both Attorney General Shapiro *and* Governor Wolf are responsible for the litigating position Attorney General Shapiro took in the Washington action.

Texas-based website publishing digital firearms information online." Dkt. 83 at 4. If Defense Distributed is amenable to suit anywhere for publishing digital firearms information on that Texas-based website, then by that same logic, Attorney General Shapiro and Governor Wolf are amenable to suit in Texas for acting to shut down that Texas-based website. No coherent "minimum contacts" theory can *both* justify the Washington action's jurisdiction over Defense Distributed *and* defeat this action's jurisdiction over Pennsylvania's officials.

This motion's defendants have also taken contradictory positions concerning personal jurisdiction in their suit against Defense Distributed in the Eastern District of Pennsylvania.[2] In that case, both Governor Wolf and Attorney General Shapiro expressly embraced the use of a "directed at" jurisdictional theory for this dispute. *See Calder v. Jones*, 465 U.S. 783 (1984). Even though Defense Distributed's only conduct took place in Austin, Pennsylvania's officials took the position that Pennsylvania's federal courts have personal jurisdiction over Defense Distributed because Defense Distributed's publication of a website from Texas is an "act[] *in this district* [the Eastern District of Pennsylvania] *directed at* the Plaintiffs."[3] But now, when they no longer deem such a position advantageous, Governor Wolf and Attorney General Shapiro have changed course and taken the position that a "directed at" jurisdictional theory cannot be employed here. This too entails precisely the kind of inconsistency in theories that the judicial estoppel doctrine serves to prohibit.

"Restated, the doctrine of estoppel prevents a party from 'having it both ways,'" *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 268 (5th Cir. 2004), and "courts may apply it flexibly to achieve substantial justice," *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th

---

[2] Governor Wolf and Attorney General Shapiro have accepted that the Pennsylvania action's filings should be accounted for in the Rule 12 analysis. *See* Dkt. 75 at 7 n.12.
[3] *Commonwealth of Pennsylvania, et al., v. Defense Distributed, et al.*, No. 2:18-cv-03208-PD, Dkt. 16 at 3-4, ¶9 (E.D. Pa.) (emphasis added); *see also id.* at 6, ¶ 19.

Cir. 2011) (en banc). The Court should apply the doctrine here and hold that Governor Wolf and Attorney General Shapiro are barred from denying personal jurisdiction.

### B. Minimum contacts exist.

Second, the Court should reject the jurisdictional argument on the merits. Specific personal jurisdiction may be exercised over a nonresident "if the defendant has 'purposefully directed' his activities at residents of the forum" to a sufficient degree. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *see Calder*, 465 U.S. 783 (reaffirmed by *Walden v. Fiore*, 571 U.S. 277 (2014)). The complaint's allegations regarding jurisdiction, FAC ¶¶ 2, 5, 26, 56-63, 88-94, 119; *see* Dkt. 75 at 11-12, establish that that test has been met here.

The complaint alleges that Governor Wolf and Attorney General Shapiro "forced Defense Distributed to stop publishing the files on the internet," Dkt. 23 ¶3 (hereinafter "FAC"), which is an activity that necessarily occurred in Texas because that is the place at which Defense Distributed publishes its website, *see* FAC ¶ 25. In other words, the complaint alleges that the action "arises from actions that the Defendants took and intend to take against Defense Distributed's activities in Austin, Texas and Defense Distributed's property in Austin, Texas, including computer servers and library materials." FAC ¶ 26.

The complaint's more specific allegations accord with this overall assertion. Attorney General Shapiro and Governor Wolf did not just try to undo the *Defense Distributed I* Settlement Agreement (a Texas contract) with out-of-court advocacy. *See* FAC ¶¶ 56-58. They did so by actually deploying the "color of state law," 42 U.S.C. § 1983, at their disposal. To "force Defense Distributed to stop publishing the files on the internet," FAC ¶ 3, Attorney General Shapiro and Governor Wolf went beyond the step of issuing a cease-and-desist letter and took direct legal action. Attorney General Shapiro sued Defense Distributed and SAF in *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL, *see* FAC

¶¶ 59-63, and both Attorney General Shapiro and Governor Wolf sued Defense Distributed in *Commonwealth of Pennsylvania, et al., v. Defense Distributed, et al.*, No. 2:18-cv-03208-PD (E.D. Pa.), *see* FAC ¶ 89 (both Governor Wolf and Attorney General Shapiro are named plaintiffs in this action). These activities amount to "an ongoing coercive campaign to stop Defense Distributed's publication of the *Defense Distributed I* Files." FAC ¶ 88.

Lest there be any doubt about this effort's persistent nature, the complaint invokes Governor Wolf and Attorney General Shapiro's own public statements as the basis for its allegation that they harbor an *ongoing* intent to "stop Defense Distributed's publication of the *Defense Distributed I* Files to the internet's public domain." FAC ¶¶ 90-94. It is therefore completely plausible for the complaint to allege that Governor Wolf and Attorney General Shapiro "have credibly threatened to meet the prospect of Defense Distributed publishing the *Defense Distributed I* files on the internet with escalated punishment." FAC ¶ 119.

Like the case's other defendants, Governor Wolf and Attorney General Shapiro's conduct meets the test for "minimum contacts" because they are exercising their official power to have their home state's law govern what a Texas business does in Texas. They are not just trying to enjoy the benefit of Texas law. They are purporting to *dictate* Texas law (albeit unconstitutionally). In the same way that a "defendant might well fall within the State's authority by reason of his attempt to *obstruct* its laws," *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (plurality op.), Governor Wolf and Attorney General Shapiro are subjecting themselves to personal jurisdiction in Texas by using the color of their Pennsylvania offices to declare which Texas activities are legal and illegal, and to stop them.

*Stroman Realty Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), does not warrant dismissal of the action against Governor Wolf and Attorney General Shapiro for essentially the same reasons that it does not warrant dismissal as to Defendants Andrew M. Cuomo, Gurbir S.

Grewal and Matthew Denn. *See* Dkt. 73 at 12-13. Several material distinctions make that precedent inapplicable here, and apply with equal force to the companion decision, *Stroman Realty, Inc. v. Antt*, 528 F.3d 382 (5th Cir. 2008).

First, *Stroman Realty Inc. v. Wercinski* did not involve anything like the nationwide injunction issued in the Washington action, *State of Washington v. United States Department of State*, No. 2:18-cv-1115-RSL (W.D. Wash.). By choosing—voluntarily and intentionally—to obtain a *nationwide* injunction against the State Department, Attorney General Shapiro's actions changed the federal speech permissions[4] that apply to citizens in all fifty states, including Texas. That constitutes a very substantial act of purposeful availment that distinguishes this case from *Stroman Realty*, which cannot be applied as a "mechanical" rule, *see Miss. Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982) ("whether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state"). And even if the instant action does not "arise from" that conduct, it certainly qualifies as being "related to" it for purposes of specific jurisdiction.

Second, *Stroman Realty Inc. v. Wercinski* did not involve anything like the additional lawsuit that both Attorney General Shapiro and Governor Wolf brought against the Plaintiffs, *Commonwealth of Pennsylvania, et al., v. Defense Distributed, et al.*, No. 2:18-cv-03208-PD (E.D. Pa.). *See* FAC ¶ 89. The Pennsylvania action "seeks an injunction stopping Defense Distributed's publication of the *Defense Distributed I* Files," *id.*, which by definition entails Texas contacts because Texas is where Defense Distributed is headquartered and where it

---

[4] *See* Dkt. 73 at 12-13 n.1 ("To be clear again, the injunction has *not* deprived anyone of the Constitutional right to publish digital firearms information on the internet; but it has deprived them of the federal regulatory change and license that the states concede served as a sufficient basis for engaging in that same activity.").

publishes its website. *See* FAC ¶ 25. Texas is also where Defense Distributed "publishes information about firearms at a brick-and-mortar public library in digital formats that patrons can access via computer workstations at the library." FAC ¶ 11. As Governor Wolf and Attorney General Shapiro made clear in a key filing, their Pennsylvania suit sought "a nationwide permanent injunction directly compelling [Defense Distributed] to remove all downloadable guns from their websites and cease posting them elsewhere." *Commonwealth of Pennsylvania, et al., v. Defense Distributed, et al.*, No. 2:18-cv-03208-PD, Dkt. 20 at 5 n.4 (E.D. Pa.).

Third, *Stroman Realty Inc. v. Wercinski* did not involve efforts to censor an actual library in Texas. But that is precisely what Governor Wolf and Attorney General Shapiro's censorship campaign entails, since, as noted above, "Defense Distributed also publishes information about firearms at a brick-and-mortar public library in digital formats that patrons can access via computer workstations at the library." FAC ¶ 11; *see id.* ¶ 25 ("The public library that displays Defense Distributed's publications is in Austin, Texas."). FAC ¶ 25. Attorney General Shapiro's reference to "posting them elsewhere" in his Pennsylvania court filing encompasses Defense Distributed's local library. The motion is therefore wrong to say that Governor Wolf and Attorney General Shapiro "limited their exercise of authority to only Defense Distributed's actions **in Pennsylvania**." Dkt. 75 at 13.[5]

Another error occurs when the motion says that minimum contacts do not exist because Governor Wolf and Attorney General Shapiro "derived no benefit from any activities relating to the forum." Dkt. 75 at 12. That suggestion contradicts what the complaint pleads about the defendants' publicity efforts, which celebrated the actions they took to censor Defense Distributed as a "success[]". Dkt. 23-7 at 1. It is quite plausible to conclude that these elected

---

[5] Also, that case also involves Attorney General Shapiro and Governor Wolf's supposed power to make Defense Distributed change the way it preserves documents because of the litigation. *See id.* Dkt. 2 at 4. Those documents are housed in Texas.

officials derived a "benefit" from actions that they chose to tout so publicly to their voter base. *See, e.g.*, FAC ¶ 91 ("Pennsylvania Attorney General Josh Shapiro deemed stopping Defense Distributed's publication of the Defense Distributed I Files a 'victory.'").

The next best case the motion can find is *Terry v. Dewine*, 75 F. Supp. 3d 512, 531 (D.D.C. 2014) (cited at Dkt. 75 at 12 n.13). But the distinction between *Terry* and this case is obvious. The *Terry* defendant was let off the jurisdictional hook because his forum contact was that of "[b]eing hauled into court as a *defendant*." *Id.* at 531 (emphasis in original). Not so here. Attorney General Shapiro chose to be the *plaintiff* in the Washington action and both Governor Wolf and Attorney General Shapiro chose to be *plaintiffs* in the Pennsylvania action.[6]

Finally, the Court should reject the constitutional "due process" argument about personal jurisdiction[7] because it accounts only for Governor Wolf and Attorney General Shapiro's contacts with Texas, as opposed to the nation as a whole. The Supreme Court has never held that this rule should be applied when determining the due process limitations that apply to a federal court exercising federal question jurisdiction. Instead, the Supreme Court decided as recently as last year to "leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco County*, 137 S. Ct. 1773, 1783–84 (2017).

---

[6] Similarly, the motion tries to show that zero Texas contacts occurred by citing *Gakuba v. Hollywood Video, Inc.*, No. 3:15-CV-00496-BR, 2015 WL 5737589 (D. Or. Sept. 30, 2015) (cited at Dkt. 75 at 12 n.13). But *Gakuba* does *not* hold that the actions at issue (what the motion calls "intra-state actions of high ranking public officials") count as no forum contact at all. It acknowledges the opposite—that they *do* count as a "contact with the State." *Id.* at *4. The *Gakuba* plaintiff's shortcomings (there was only a "single" such contact, and it was "attenuated" from the action at issue) do not exist as to the repeated, directly-relevant contacts at issue here.

[7] Governor Wolf and Attorney General Shapiro's motion appears to argue only about constitutional limitations on the Court's exercise of personal jurisdiction.

Plaintiffs submit that, for a case in this posture, the applicable due process limitations are those of the Fifth Amendment—not the Fourteenth Amendment—and that they are satisfied if a defendant has established minimum contacts with the Nation as a whole—not just Texas. *See id.*; *Lone Star Package Car Co. v. Baltimore & O. R. Co.*, 212 F.2d 147, 153–54 (5th Cir. 1954); *United Rope Distributors, Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 535 (7th Cir. 1991); *First Flight Co. v. Nat'l Carloading Corp.*, 209 F. Supp. 730, 737 (E.D. Tenn. 1962). This rule is consistent with *Bristol-Myers Squibb*, which recognizes that the constitutional "restrictions on the exercise of personal jurisdiction by a federal court" are *not* the same as the "the due process limits on the exercise of specific jurisdiction by a State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783–84.[8] By that measure—one that accounts not just for Governor Wolf and Attorney General

---

[8] Plaintiffs' rule is also consistent with the Advisory Committee Notes to Rule 4, which explain that where, as here, a defendant asserts that the exercise of personal jurisdiction *by a federal court* offends constitutional due process protections, the applicable law comes *not* from the Fourteenth Amendment's state-centric analysis, but from the Fifth Amendment: "A defendant may assert the territorial limits of the court's reach set forth in subdivision (k), including the constitutional limitations that may be imposed by the Due Process Clause of the Fifth Amendment." Fed. R. Civ. P. 4 Advisory Committee Note to Subdivision (e). Some courts used to think otherwise because of language from Rule 4 *that was deleted* in the 1993 amendments. But under Rule 4's current text, there is no longer any justification for requiring a federal court to conduct its "minimum contacts" analysis by pretending that it is a state court bound by the Fourteenth Amendment:

> There remain constitutional limitations on the exercise of territorial jurisdiction by federal courts over persons outside the United States. These restrictions arise from the Fifth Amendment rather than from the Fourteenth Amendment, which limits state-court reach and which was incorporated into federal practice by the reference to state law in the *text of the former subdivision (e) that is deleted by this revision*. The Fifth Amendment requires that any defendant have affiliating contacts with the United States sufficient to justify the exercise of personal jurisdiction over that party.

Fed. R. Civ. P. 4 Advisory Committee Note to Subdivision (k) (emphasis added); *see also Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 418 (9th Cir. 1977) (linking the issue to the deleted provision that "service be made 'under the circumstances and in the manner prescribed by the [state] statute'"); *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1364 (D. Colo. 2014), *aff'd sub nom. Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799 (10th Cir. 2016).

Shapiro's contacts with Texas, but for their contacts with the nation as a whole—Governor Wolf and Attorney General Shapiro undoubtedly have the requisite "minimum contacts."

## II.     The complaint alleges ongoing illegal conduct.

The motion seeks a Rule 12(b)(1) dismissal on the ground that the Eleventh Amendment immunizes Governor Wolf and Attorney General Shapiro from this action.   Dkt. 75 at 13-15. While acknowledging that an action for "***prospective*** relief relating to ***ongoing*** conduct" is valid, the motion denies that the complaint alleges any "ongoing" conduct.  *Id.*  Not so.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"   *Verizon Md., Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002). Plaintiffs complaint does that in spades by expressly alleging that Pennsylvania's officials are engaged in an ongoing course of unconstitutional conduct that warrants prospective relief.

For example, Paragraph 88 alleges that "Pennsylvania Governor Tom Wolf and Pennsylvania Attorney General Josh Shapiro are *actively engaged in an ongoing* coercive campaign to stop Defense Distributed's publication of the Defense Distributed I Files."  FAC ¶ 88 (emphasis added).  Many other paragraphs do so as well.  *See* FAC ¶ 4 ("Defendants . . . refuse to acknowledge Defense Distributed's right to publish the computer files at issue on the internet."); *id.* ¶ 5 ("Under the color of state law, the Defendants are waging a coordinated and politically-fueled campaign to censor Defense Distributed—and only Defense Distributed."); *id.* ¶ 7 ("The Defendants' wrongdoing has already inflicted substantial constitutional harms upon the Plaintiffs. Their wrongdoing continues to inflict these harms at present. Their wrongdoing will do nothing but escalate and continue harming the Plaintiffs in the future unless this Court intervenes."); *id.* ¶ 74 ("The Defendants have inflicted very serious constitutional harms on the

Plaintiffs already, and they have demonstrated a commitment to escalate their unconstitutional course of conduct in the immediate future."); *id.* ¶ 93 ("In the July 29, 2018 press release, Pennsylvania Governor Tom Wolf and Pennsylvania Attorney General Josh Shapiro committed to 'continue seeking' to block Defense Distributed's publication of the Defense Distributed I Files to the internet."); *id.* ¶ 94 ("On August 29, 2018, Pennsylvania Attorney General Josh Shapiro renewed his commitment to stopping Defense Distributed's publication of the Defense Distributed I Files to the internet in statements published by Wired Magazine."); *id.* ¶ 119 ("Absent relief from this Court, the Plaintiffs reasonably expect that the Defendants' wrongful conduct will continue. Going forward, the Defendants have credibly threatened to meet the prospect of Defense Distributed publishing the Defense Distributed I files on the internet with escalated punishment. If the Defendants' illegal actions are not enjoined, they will cause a permanent state of unconstitutional censorship."); *see also* ¶ 186 (requesting prospective relief).

Because of these allegations, the case fits squarely within the authorization that *Ex parte Young*, 209 U.S. 123 (1908), supplies for Section 1983 actions seeking injunctive and declaratory relief. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).[9]

## III. The action is ripe.

Next, the motion seeks dismissal for lack of ripeness. Dkt. 75 at 15-16. According to this argument, the case against Governor Wolf and Attorney General Shapiro is not ripe because the press statements at issue are "not self-executing" and would do harm only with "further judicial enforcement." *Id.* The Court should reject this for several reasons, including those set forth in the Plaintiffs' response to the City Attorney of Los Angeles' motion, Dkt. 59 at 5-7.

---

[9] Alternatively, the motion's immunity argument fails because Governor Wolf and Attorney General Shapiro waived any immunity they may have (or are estopped from asserting it) by choosing to sue Defense Distributed in the Washington action and Pennsylvania actions. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) ("a State's voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity").

Well-established precedent holds that standing to assert First Amendment actions exists where, as here, the plaintiff has an "actual and well-founded fear that the law will be enforced against them" imminently. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014). This holds true even though the defendant has yet to follow through and initiate the enforcement action. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992). "*Ex parte Young* thus speaks of enjoining state officers 'who threaten and are about to commence proceedings.'" *Id.* Those precedents supply direct support for the ripeness of Plaintiffs' action here.

Defendants rely solely on *Google, Inc. v. Hood*. 822 F.3d 212 (5th Cir. 2016). But that decision expressly acknowledges *Morales* and the other precedents Plaintiffs rely upon. *Id.* at 226-28. "In suits such as this one, which the plaintiff intends as a 'first strike' to prevent a State from initiating a suit of its own, the prospect of state suit must be imminent, for *it is the prospect of that suit which supplies the necessary irreparable injury*." *Id.* at 226-27 (emphasis added).

A cease-and-desist letter threatening enforcement action meets the test for standing, including the ripeness requirement. *See Dana's R.R. Supply v. Attorney Gen., Florida*, 807 F.3d 1235, 1241 (11th Cir. 2015) ("The businesses have properly alleged standing on their free-speech claim. Each business has been injured by the receipt of a cease-and-desist letter from the Attorney General threatening enforcement action, which could result in fine or imprisonment; that action is, and any future enforcement action would be, directly traceable to the State of Florida; and a declaration by this court that the no-surcharge law is unconstitutional will remedy the businesses' harm. The businesses' harm is sufficiently particularized and imminent, and the likelihood of their speech being chilled is sufficiently great, for review by this court."). In light of that rule, it suffices just as well for Governor Wolf and Attorney General Shapiro to have

*actually* commenced multiple enforcement actions against the Plaintiffs, FAC ¶¶ 89, and to have publicly promised that they will *not* relent, FAC ¶¶ 90-94.  *See id.*

   *Google*'s facts distinguish it from this case.  First, the *Google* plaintiff was turned away because the complaint pertained to "a fuzzily defined range of enforcement actions that do not appear imminent."  *Id.* at 227; *see id.* at 228 ("In sum, as underscored by Hood's apparent need to gather considerable information before he can determine whether an enforcement action is warranted, the prospect of one is not sufficiently imminent or defined to justify an injunction."). Here, though, the enforcement actions are both well-defined and imminent.  And whereas the court in *Google* could not "predict what conduct [the defendant] might one day try to prosecute," *id.*, the conduct that Governor Wolf and Attorney General Shapiro are in the process of punishing is perfectly clear: the Plaintiffs' publication of the *Defense Distributed I* Files.  By virtue of Governor Wolf and Attorney General Shapiro's press release and—more importantly, their actual initiation of litigation against the Plaintiffs—the record shows exactly what is entailed by their ongoing effort to censor the Plaintiffs.  Their goal is to obtain, "a nationwide permanent injunction directly compelling [Defense Distributed] to remove all downloadable guns from their websites and cease posting them elsewhere."  *Commonwealth of Pennsylvania, et al., v. Defense Distributed, et al.*, No. 2:18-cv-03208-PD, Dkt. 20 at 5 n.4 (E.D. Pa.).

   At bottom, the motion errs by mistaking the role that Governor Wolf and Attorney General Shapiro's press release plays in this action.  Even if the press release's statements are not themselves actionable wrongdoing, they at least serve as proof of the ongoing and imminent direct enforcement actions that *are* actionable.  Ripeness law does not let courts "ignore [a] state's thinly veiled threat to enforce the law against [plaintiff]." *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 820 (M.D. Tenn. 2013). Governor Wolf and Attorney General Shapiro's efforts are not veiled at all.  Their actions have been completely unveiled multiple times already,

showing the Court precisely what is at issue. The course of wrongdoing that they have engaged in already illustrates exactly what kind of wrongdoing they will continue to engage in unless the complaint's request for declaratory and injunctive relief is granted.

Finally, the Defendant's ripeness argument fails to consider the chilling effects of their actions, which have been pleaded expressly, *see* FAC ¶ 118 ("The Defendants' conduct chills the Plaintiffs' exercise of rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and federal law. The chilling effect reaches Defense Distributed's publication of the *Defense Distributed I* Files, SAF members' receipt of those files, and other related exercises of rights under the First Amendment, Second Amendment, Fourteenth Amendment, and federal law."). Such chilling constitutes a distinct harm that suffices to confer standing even when no actual enforcement has occurred. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 520 (5th Cir. 2014); *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) ("a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing"); *Dana's R.R. Supply*, 807 F.3d at 1241.

## IV. Venue is proper.

Next, the motion seeks a Rule 12(b)(1) dismissal for improper venue. Dkt. 75 at 17-18. The Court should reject this for the same reason that it should reject the parallel argument made by the City of Los Angeles's City attorney, Dkt. 59 at 12-13.

Specifically, venue as to both Governor Wolf and Attorney General Shapiro is proper under 28 U.S.C. § 1391(b)(2), which authorizes lawsuits in the district where "a substantial part of the events or omissions giving rise to the claim occurred." *See Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (a "substantial connection" is all that is required). That provision applies here because Governor Wolf and

Attorney General Shapiro are acting to punish the Plaintiffs for conduct that takes place in Defense Distributed's Austin headquarters and a brick-and-mortar public library in Austin. *See* FAC ¶ 25 ("Defense Distributed resides in Austin, Texas. Defense Distributed's principal place of business has always been Austin, Texas. The vast majority of Defense Distributed's activities, including research, design, development, manufacturing, and publishing, have always occurred in and around Austin. All of Defense Distributed's employees live in or near Austin. The public library that displays Defense Distributed's publications is in Austin, Texas."); *id.* ¶ 26 ("This action arises from actions that the Defendants took and intend to take against Defense Distributed's activities in Austin, Texas and Defense Distributed's property in Austin, Texas, including computer servers and library materials."). Thus, a substantial connection exists to this district and venue is proper under Section 1391(b)(2).

## V. The *Noerr-Pennington* doctrine does not warrant dismissal.

The motion seeks a Rule 12(b)(1) dismissal on the ground that the *Noerr-Pennington* doctrine immunizes Governor Wolf and Attorney General Shapiro from this action. Dkt. 75 at 18-19. The Court should reject this for several reasons, including those set forth in the Plaintiffs' response to the City Attorney of Los Angeles' motion, Dkt. 59 at 13-14.

First, the *Noerr-Pennington* doctrine does not warrant dismissal because it does not apply to Section 1983 actions. Although the Fifth Circuit has held that it may sometimes apply, the Supreme court has not, and the Plaintiffs respectfully submit that no such application of the doctrine is warranted. *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000).

Second, the *Noerr-Pennington* doctrine does not warrant dismissal because, even if it applies to Section 1983 cases in general, this action does *not* seek to hold Governor Wolf and Attorney General Shapiro liable for the conduct identified as protected petitioning—namely, "send[ing] a letter to the State Department", "issu[ing] a press release," and "petition[ing] (i.e.,

through the Washington Suit) the Federal Government on an important issue of public policy." Dkt. 75 at 19. The motion says that this suit "concerns" those activities, Dkt. 75 at 19, but that is true only insofar as Governor Wolf and Attorney General Shapiro's *past* activities serve as evidence of the *future* threat they pose to the Plaintiffs. This action seeks no retrospective relief for any of the quoted conduct. Instead, it seeks to enjoin the Pennsylvania officials' *future efforts* to directly violate the Plaintiffs' constitutional rights.

None of the motion's precedents hold that *Noerr-Pennington* bars that kind of action. To the contrary, in accordance with *Ex parte Young*, 209 U.S. 123 (1908), precedent has approved of Section 1983 injunction just like the one requested here. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992); *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013); *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006).

Finally, this argument does not warrant dismissal because even if the *Noerr-Pennington* doctrine protects these two defendants, it only goes so far as to limit the *scope* of the available remedy. In no event could it warrant dismissing any cause of action in full.

Footnote seventeen of the motion effectively concedes this. Dkt. 75 at 17-18. There, the motion concedes that the *Noerr-Pennington* doctrine does *not* protect Governor Wolf and Attorney General Shapiro's efforts to censor the Plaintiffs with legal action *in Pennsylvania state court*—as opposed to a federal court. Because of the case cited in the footnote, *Video Int'l Prod., Inc. v. Warner-Amex Cable Communications*, Inc., 858 F.2d 1075, 1084 (5th Cir.1988), *Noerr-Pennington*'s only possible application here is to activity about petitioning *of the federal government*—not activity about petitioning Pennsylvania's own courts. Thus, even if the *Noerr-Pennington* argument is completely successful, the Plaintiffs would still be entitled to a judgment in their favor that enjoins Governor Wolf and Attorney General Shapiro from violating

the Plaintiffs' rights in Pennsylvania's own courts. Disputes about the scope of a remedy are not grounds for dismissing an entire action under Rule 12.

## VI.    The collateral attack argument is wrong.

Finally, the motion seeks dismissal on the ground that this action constitutes a collateral attack upon the Washington action. Dkt. 75 at 19-20. Specifically, the motion says that this case amounts to a collateral attack because "the injunctive relief entered against the Federal Government in the Washington Suit that prevents Plaintiffs from engaging in the conduct that they ask this Court to allow." *Id.* The Court should reject this for several reasons.

First, the Court should notice that the motion's current argument contradicts the position that Attorney General Shapiro and Governor Wolf took before the federal district court in Pennsylvania. In that case, Attorney General Shapiro and Governor Wolf took a position that completely contradicts their current motion. Specifically, they told the court in Pennsylvania that the Washington action *did not* warrant stopping other cases that pitted Defense Distributed directly against a state official. Instead, they took the position that "the Washington matter is completely different from" the Pennsylvania action, that the Washington action's injunction "does not directly restrain Defendants' conduct," and that Defense Distributed's role in the Washington action is merely "tangential" because "the Washington Plaintiffs are not seeking direct relief against them":

> We oppose Defendants' request for adjournment because the Washington Matter is ***completely different*** from the one before this Court, and the Washington order is ***only "temporary"*** and ***does not directly restrain Defendants' [Defense Distributed's] conduct***. Rather, that Court temporarily enjoined only "[t]he federal government defendants and all of their respective officers, agents, and employees" from implementing or enforcing the "Temporary Modification of Category I of the United States Munitions List" and a July 27, 2018 letter from the U.S. Department of State to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation.") (Washington Matter Doc. No. 23 at 7). None of these items are before Your Honor.

> Only one of the four Defendants in this matter, Defense Distributed, is named in the Washington Matter and ***its presence is tangential***; the Washington Plaintiffs are ***not seeking direct relief against them***. ("Defense Distributed is a necessary party as the Settlement Agreement that it entered into with the other Defendants may be affected by the requested relief, and this may impede Defense Distributed's interests under that Settlement Agreement") (Washington Matter Doc. No. 1, ii 21).
>
> By contrast, the matter before Your Honor does not concern the federal government, the temporary rule, the settlement agreement or the letter. Rather, this matter concerns the Defendants' involvement in making 3D printable guns easily and widely accessible to Pennsylvanians and others in various states across the nation. . . . .

*Commonwealth of Pennsylvania, et al., v. Defense Distributed, et al.*, No. 2:18-cv-03208-PD, Dkt. 20 at 1-2 (E.D. Pa.) (emphasis added) (footnote omitted). That same filing made the key point again later: "The temporary order in the Washington Matter does not enjoin any of the Defendants in this matter from doing anything; it is temporary and binds only the federal government." *Id.* at 5 n.4. The motion does not mention any of this, let alone explain it.

In any event, regardless of what prior filings said, the point's fate is clear now. The Court should reject the motion's "collateral attack" argument because of the fundamental point that Plaintiffs have now argued repeatedly: "the Washington action's preliminary injunction does *not* stop the Plaintiffs from engaging in the speech at issue." Dkt. 83 at 2. "Procedurally, it does not do so because it issues directions to the State Department alone—not the Plaintiffs." *Id.* "Substantively, it does not do so because it decides only whether two past State Department actions complied with the Administrative Procedure Act—not whether the Plaintiffs have an ongoing constitutional right to publish the files at issue on the internet, mail them to U.S. persons inside the United States, advertise them, and/or distribute them by other lawful means." *Id.*; *see also* Dkt. 83 at 2-3; Dkt. 73 at 2-8; Dkt. 67 at 5 & n3; id. at 26 & n.14.

Without actually saying "judicial estoppel," the motion tries to make such an argument by criticizing how the Plaintiffs here opposed the Washington action's motion for a preliminary injunction. It suggests that the Plaintiffs here should be faulted for warning the Washington court about the action's First Amendment implications. Dkt. 75 at 5. Critically, though, judicial estoppel cannot apply to the Plaintiffs here because *their argument did not succeed*.

The only argument on this topic that succeeded in the Washington action's injunction proceedings—and the only argument that could therefore give rise to judicial estoppel—is the one that Pennsylvania and the other plaintiff states made: "The Private Defendants' First Amendment arguments . . . have no bearing on the States' APA challenge, which is focused on the Government's failure to follow mandatory procedures." *State of Washington v. United States Department of State*, No. 2:18-cv-1115-RSL, Dkt. 43 at 17 (W.D. Wash.); *see id.* at 17 ("Even if the Private Defendants' First Amendment claim were directly implicated here (which it is not) . . ."); *id.* Dkt. 68 at 7 ("the First Amendment is inapposite to the merits of this APA case because the Government has never asserted it as a basis for its actions").

At bottom, the Court's should *not* base its understanding of the Washington action on secondary matters like what the parties' briefs said about it at one time or another. The decision should turn on how the Washington action's primary materials—the governing pleadings and orders—define that action. So understood, there is no basis for the motion to say that a collateral attack is under way.

In several places, the motion deems it worthwhile to mention the Plaintiffs' failure to take an interlocutory appeal from the Washington action's preliminary injunction as though it is relevant. Dkt. 75 at 16, 20. It is not. *See In re UAL Corp. (Pilots' Pension Plan Termination)*, 468 F.3d 444, 453 (7th Cir. 2006) ("Thirty years ago we called 'frivolous' an argument that failure to take an interlocutory appeal forfeits the litigant's position.").

Finally, and alternatively, to the extent that a meaningful conflict between this action and the Washington action were to arise, this action would necessarily take precedence because it was filed first. *See Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) ("regardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of the issues"); *see also Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.").

## Conclusion

The motion should be denied. Alternatively, the Court should grant the Plaintiffs leave to amend the complaint for the purpose of curing any identified deficiencies.

Date: December 28, 2018

Respectfully submitted,

BECK REDDEN LLP
By /s/ Chad Flores
Chad Flores*
cflores@beckredden.com
State Bar No. 24059759
Daniel N. Hammond*
Texas State Bar No. 24098886
dhammond@beckredden.com
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 | (713) 952-3720 (fax)

FARHANG & MEDCOFF
Matthew Goldstein*
mgoldstein@fmlaw.law
D.C. Bar No. 975000
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040 | (520) 790-5433 (fax)

Josh Blackman
joshblackman@gmail.com
Virginia Bar No. 78292
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003 | (713) 646-1766 (fax)

*Admitted *pro hac vice*

Attorneys for Plaintiffs Defense Distributed
and Second Amendment Foundation, Inc.

**CERTIFICATE OF SERVICE**

On December 28, 2018, I served this filing on the following persons via CM/ECF:

      Counsel for Defendants Gurbir S. Grewal and Matthew Denn
      Ronald Casey Low
      Kenneth W. Taber
      Benjamin D. Tievsky

      Counsel for Defendant Michael Feuer
      Connie K. Chan
      James P. Clark
      Michael M. Walsh
      Jason P. Steed

      Counsel for Defendants Josh Shapiro and Thomas Wolf
      J. David Cabello
      John D. Kimball

      Counsel for Defendant Andrew Cuomo
      Pete Marketos
      Tyler Bexley

      Counsel for Plaintiffs
      Chad Flores
      Daniel N. Hammond
      Matthew A. Goldstein
      Joshua Michael Blackman

                       /s/ *Chad Flores*
                       Chad Flores