IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 1:18-CV-637 |
| vs. | ) ) | |
| GURBIR S. GREWAL, in his official capacity as New Jersey Attorney General, et al. | ) ) ) | |
| *Defendants.* | ) | |

**DEFENDANT GURBIR S. GREWAL'S MOTION TO SEVER AND TO TRANSFER**
**VENUE PURSUANT TO 28 U.S.C. § 1404(a) AND 28 U.S.C. § 1406(a)**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................................... 2

ARGUMENT ..................................................................................................................... 5

I.   The Court Should Transfer Venue to the District of New Jersey Under 28 U.S.C.
     § 1404(a). .............................................................................................................. 5

     A.   The Public Interests Overwhelmingly Favor Transfer ..................................... 6

     B.   The Private Interests Likewise Favor Transfer. .............................................. 9

II.  The Court Should Transfer Venue to the District of New Jersey Under 28 U.S.C. §
     1406(a). .............................................................................................................. 14

     A.   The Events Giving Rise to Plaintiffs' Claims Occurred in New Jersey, Not the Western
          District of Texas. .................................................................................... 15

     B.   This Case Should be Transferred to the District of New Jersey in the Interest of Justice. 16

III. Plaintiffs' Joinder of the State Department Does Not Preclude a Transfer As the Wholly
     Unrelated Claims Against the NJAG Are Easily Severed. ....................................... 17

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Applewhite v. Reichhold Chem., Inc.*,
   67 F.3d 571 (5th Cir. 1995) ....................................................................17

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of N.J.*,
   910 F.3d 106 (3d Cir. 2018)......................................................................7

*Athletic Training Innovations, LLC v. eTagz, Inc.*,
   No. 12-2540, 2013 WL 360570 (E.D. La. Jan. 30, 2013)......................13

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
   571 U.S. 49 (2013)..................................................................................14

*Balthasar Online, Inc. v. Network Solutions, LLC*,
   654 F. Supp. 2d 546 (E.D. Tex. 2009) ...................................................17

*Bigham v. Envirocare of Utah, Inc.*,
   123 F. Supp. 2d 1046 (S.D. Tex. 2000) .................................................16

*Bolt v. Toyota Indus.*,
   351 F. Supp. 2d 597 (E.D. Tex. 2004) ...................................................14

*Bulkley & Assocs., LLC v. Occupational Safety & Health Appeals Bd. of Cal.*,
   No. 4:18-cv-642, 2019 WL 2411544 (E.D. Tex. June 7, 2019) .............12

*Busch v. Robertson*,
   No. 3:05-CV-2043-L, 2006 WL 1222031 (N.D. Tex. May 5, 2006) ......14

*Clemons v. WPRJ, LLC*,
   928 F. Supp. 2d 885 (S.D. Tex. 2013) ...................................................14

*Defense Distributed v. Att'y Gen. of N.J.*,
   972 F.3d 193 (3d Cir. Aug. 25, 2020)...............................................4, 20

*Defense Distributed v. Grewal*,
   971 F.3d 485 (5th Cir. Aug. 19, 2020)............................................ *passim*

*Defense Distributed v. U.S. Dep't of State*,
   838 F.3d 451 (5th Cir. 2016) ..............................................................9, 18

*Drake v. Filko*,
   724 F.3d 426 (3d Cir. 2013).....................................................................7

*El Aguila Food Prods., Inc. v. Gruma Corp.*,
    167 F. Supp. 2d 955 (S.D. Tex. 2001) ...................................................................17

*Ellis v. Great Southwestern Corp.*,
    646 F.2d 1099 (5th Cir. 1981) .........................................................................15

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
    762 F.2d 464 (5th Cir. 1985) ..........................................................................11

*Gault v. Yamunaji, L.L.C.*,
    No. A-09-CA-078-SS, 2009 WL 10699952 (W.D. Tex. Apr. 17, 2009) .........................15, 16

*Gen. LED OPCO, LLC v. Principal LED, LLC*,
    No. SA-17-CV-01281-OLG, 2018 WL 7351698 (W.D. Tex. Mar. 14, 2018) ......................16

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962)..................................................................................15

*Graham v. Dyncorp Int'l, Inc.*,
    973 F. Supp. 2d 698 (S.D. Tex. 2013) ...................................................................16

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)...................................................................................7

*Jones v. TEPPCO Terminaling & Mktg. Co., LLC*,
    No. 4:11-CV-27-CWR-FKB, 2011 WL 8198697 (S.D. Miss. Dec. 22, 2011)......................16

*Krinsk v. SunTrust Banks, Inc.*,
    654 F.3d 1194 (11th Cir. 2011) ........................................................................13

*Langton v. Cbeyond Comm'n, L.L.C.*,
    282 F. Supp. 2d 504 (E.D. Tex. 2003)...................................................................15

*Morris v. Northrop Grumman Corp.*,
    37 F. Supp. 2d 556 (S.D.N.Y. 1999)....................................................................18

*Omaha Tribe of Nebraska v. Barnett*,
    245 F. Supp. 2d 1049 (D. Neb. 2003)....................................................................7

*Quantum Catalytics, LLC v. VantagePoint Venture Partners*,
    No. H-07-2619, 2008 WL 5272483 (S.D. Tex. Dec. 16, 2008) ..................................13

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ...............................................................18, 19, 20, 21

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ..........................................................................10

*Stroman Realty, Inc. v. Wercinski*,
   513 F.3d 476 (5th Cir. 2008) ........................................................... *passim*

*Sullivan v. Office of Tex. Att'y Gen.*,
   No. 18-CV-303, 2019 WL 1598222 (W.D. Tex. Apr. 15, 2019) .....................................12, 13

*TransFirst Group, Inc. v. Malgiarditi*,
   237 F. Supp.3d 444 (N.D. Tex. 2017) .......................................................17

*Washington v. U.S. Dep't of State*,
   318 F. Supp. 3d 1247 (W.D. Wash. 2018)..................................................18, 19

*Washington v. U.S. Dep't of State*,
   443 F. Supp. 3d 1245 (W.D. Wash. 2020) ...................................................18

*Visual Sciences v. Integrated Commc'ns*,
   660 F.2d 56 (2d Cir. 1981) ...............................................................11

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .........................................................5, 10, 14

*Walden v. Fiore*,
   571 U.S. 277 (2014)......................................................................11

*Westberry v. GusTech Comm'ns, LLC*,
   No. 3:17-CV-3162-D, 2018 WL 3548869 (N.D. Tex. July 24, 2018)...................................14

*Ex Parte Young*,
   209 U.S. 123 (1908)......................................................................12

<u>Constitutions</u>

United States Constitution
   First Amendment ..........................................................................2, 9
   Second Amendment...........................................................................3, 7
   Fourteenth Amendment .......................................................................3
   Commerce Clause............................................................................3, 10
   Supremacy Clause...........................................................................3

<u>Statutes and Codes</u>

United States Code
   Title 28 Section 1391(b)(2)...............................................................15
   Title 28 Section 1404 ..................................................................5, 14, 21
   Title 28 Section 1404(a) ............................................................... *passim*
   Title 28 Section 1406..................................................................5, 21
   Title 28 Section 1406(a) ............................................................... *passim*

Fair Labor Standards Act of 1938
    29 U.S.C. § 203.............................................................................................................14

New Jersey Statutes Ann.
    Section 2C:39-9(*l*)(2) .................................................................................... *passim*

Texas Civil Practice and Remedies Code Ann.
    Section 17.042...............................................................................................................12

## Rules and Regulations

Federal Rules of Civil Procedure
    Rule 21 ............................................................................................................................17

New Jersey Court Rules
    Rule 2:12A-1....................................................................................................................8

Defendant Gurbir S. Grewal, the Attorney General of New Jersey (NJAG), hereby files this motion to sever Plaintiffs' claims against him and transfer venue to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

## INTRODUCTION

Defense Distributed and the Second Amendment Foundation, Inc. ("Plaintiffs") seek to enjoin the NJAG's enforcement of New Jersey laws that prevent the dissemination of printable gun files—which can be used by any individual with access to a 3D printer to produce untraceable, undetectable firearms—to New Jersey residents. Plaintiffs seek to enjoin the NJAG from enforcing New Jersey public nuisance law against them, and specifically seek an injunction against N.J. Stat. Ann. § 2C:39-9(*l*)(2), a New Jersey criminal statute enacted while this suit was pending, that makes it a crime to distribute certain files capable of producing firearms using a 3D printer "to a person in New Jersey" who is not a licensed manufacturer. As Judge Higginson noted in his concurrence in the prior Fifth Circuit appeal, a transfer under 28 U.S.C. § 1404(a) would be appropriate given that in cases "against government officials who attempt to enforce a state law, so for no personal or commercial profit, the litigation has taken place in the governmental official's state."

In line with that opinion, the NJAG now moves for an Order transferring the case to the District of New Jersey under 28 U.S.C. §§ 1404(a) and 1406(a). The reasons for granting a transfer are clear: Plaintiffs seek to enjoin the NJAG from enforcing New Jersey public nuisance law and § 2C:39-9(*l*)(2), a New Jersey criminal statute that has no connection to Texas whatsoever. Were this matter to remain in Texas, this Court would need to adjudicate threshold jurisdictional issues, including Plaintiffs' uphill battle to establish jurisdiction over the new claims against § 2C:39-9(*l*)(2), before reaching the merits of the case. Conversely, if a transfer is granted, the District of New Jersey could rule on *immediate* injunctive relief, because no threshold jurisdictional issues exist as they do here. Indeed, as Plaintiffs have *already* sued the NJAG in the District of New

Jersey to pursue these same claims, they can hardly object to litigating in that forum. Thus, under the relevant public and private factors governing transfers under 28 U.S.C. § 1404(a), New Jersey's interest in not having an out-of-state court determine the validity of its laws weighs heavily in favor of a transfer. A transfer will also avoid entirely the risk of conflicting rulings on novel constitutional issues *and on the meaning of state law itself*—in two different circuits, no less— created by Plaintiffs' effort to litigate these issues in this district and in the District of New Jersey. It will likewise eliminate the needless expenditure of judicial resources that litigating the same dispute between the same parties before two courts necessarily entails.

Plaintiffs' recent joinder of unrelated claims against U.S. State Department officials as defendants does not change the analysis. Instead, the Court should simply sever and transfer the claims against the NJAG, as these claims arise out of distinct underlying factual events and implicate different legal issues, and litigating all claims together in this district would undermine— not promote—judicial economy. Therefore, the NJAG seeks an Order severing the claims against him and transferring venue to the District of New Jersey under 28 U.S.C. §§ 1404(a) and 1406(a).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs commenced this action in July 2018 to challenge the NJAG's enforcement of New Jersey public nuisance law against their dissemination of printable gun files to New Jersey residents. Plaintiffs' First Amended Complaint, filed on September 17, 2018, alleged claims related to a July 26, 2018 cease-and-desist letter that the NJAG sent to Defense Distributed, warning that its dissemination of these files for use by New Jersey residents would violate New Jersey's public nuisance law. Am. Compl. ¶¶ 75-80 (ECF No. 23). Plaintiffs alleged that the enforcement action threatened by the NJAG's letter, along with the NJAG's participation in a multistate action in the Western District of Washington, violated Plaintiffs' rights under the First,

Second and Fourteenth Amendments, the Commerce Clause and the Supremacy Clause, and also asserted claims for tortious interference with contract. *Id.*[1]

On November 9, 2018, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order (TRO) and Preliminary Injunction seeking to enjoin § 2C:39-9(*l*)(2), a New Jersey criminal statute enacted the day prior, which makes it a crime to distribute certain files capable of producing firearms using a 3D printer "to a person in New Jersey" who is not a licensed firearms manufacturer. *See* Pls.' Mot. 1-2 (ECF No. 52). This Court denied Plaintiffs' motion on multiple grounds, noting, in particular, that *Pullman* abstention was proper because the statute is susceptible to an interpretation that would avoid (or at least "alter materially") the constitutional dispute, and thus the New Jersey courts should be allowed to construe the statute to determine its reach in the first instance. (ECF No. 53). Plaintiffs then filed a second Motion for TRO as well as a separate renewed Motion for a Preliminary Injunction on December 4, 2018, again seeking to enjoin § 2C:39-9(*l*)(2). (ECF Nos. 64-1, 66). This Court denied that second Motion for TRO on December 6, 2018. (ECF No. 69).

Meanwhile, on November 21, 2018, the NJAG moved to dismiss the Amended Complaint for lack of personal jurisdiction. (ECF No. 57). This Court granted that motion in an opinion and order issued January 30, 2019 that also denied Plaintiffs' second Motion for a Preliminary Injunction based on lack of personal jurisdiction. (ECF No. 100).[2] Six days later, Plaintiffs filed

---

[1] After Defense Distributed failed to comply with the NJAG's July 26 cease-and-desist letter, on July 30, 2018 the NJAG filed a civil action against the company in New Jersey state court seeking to enjoin its dissemination of printable gun files to New Jersey residents. *See* Am. Compl. ¶ 81, ECF 23. That action was removed to the U.S. District Court for the District of New Jersey and later administratively terminated without prejudice.

[2] Of the defendants named in the First Amended Complaint, only the NJAG remains, as Plaintiffs did not appeal the dismissal as to those other defendants. Op. 14-15 (ECF No. 100).

suit against the NJAG in the District of New Jersey asserting substantially the same claims as in this action. *See* Pls.' Am. Compl., No. 3:19-cv-4753 (D.N.J. ECF No. 17); *Defense Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193, 196-97 (3d Cir. Aug. 25, 2020). Plaintiffs' pleading in the New Jersey action expressly sought injunctive relief against § 2C:39-9(*l*)(2) on the same grounds as their multiple applications for injunctive relief against that statute filed in this Court.[3] *See* No. 3:19-cv-4753, ECF No. 17 (D.N.J. Feb. 20, 2019).

But Plaintiffs also continued pursuing this action, filing a motion on February 27, 2019 asking this Court to reconsider its January 30 dismissal ruling. (ECF No. 102). Because Plaintiffs were clearly pursuing the same claims against the NJAG in both forums at once, on March 7, 2019, the District of New Jersey stayed the New Jersey case pending resolution of this action, while at the same time making clear it is ready and willing to hear that case as soon as this action is resolved. *See Defense Distributed v. Att'y Gen. of N.J.*, 972 F.3d at 197. Plaintiffs appealed the stay order and related administrative orders, and on August 25, 2020 the Third Circuit dismissed these appeals for lack of appellate jurisdiction. *Id.* at 196. Plaintiffs then filed a petition for rehearing *en banc* of the panel's decision; that petition was denied on September 23, 2020. *See* No. 19-1729, Doc. 112 (3d Cir. Sept. 23, 2020).

Plaintiffs also appealed this Court's January 30, 2019 dismissal on jurisdictional grounds to the Fifth Circuit, which on August 19, 2020 reversed, finding the allegations of the Amended Complaint stated a *prima facie* case of jurisdiction over the NJAG. *Defense Distributed v. Grewal* ("*Grewal*"), 971 F.3d 485 (5th Cir. Aug. 19, 2020). The mandate issued to this Court on September 11. *See* No. 19-50723, Doc. 00515561921.

---

[3] In the New Jersey action, Plaintiffs filed a motion for a preliminary injunction against § 2C:39-9(*l*)(2) nearly identical to the motions for injunctive relief they filed in this Court. *Defense Distributed v. Att'y Gen. of N.J.*, 972 F.3d at 197.

On November 10, 2020—two months after the remand—Plaintiffs filed a Second Amended Complaint ("SAC"), for the first time formally asserting claims against N.J. Stat. Ann. § 2C:39-9(*l*)(2), and expressly asking this Court to enjoin enforcement of the statute. ECF No. 117, ¶¶ 141-61, 312-17, 344. Plaintiffs also, for the first time, named U.S. State Department officials as defendants (collectively, "State Department"), asserting unrelated claims against the State Department based on its performance of a 2018 Settlement Agreement between it and Defense Distributed. *Id.* ¶¶ 95-131.

The NJAG now moves to sever Plaintiffs' claims against him and to transfer venue to the District of New Jersey in accordance with 28 U.S.C. §§ 1404 and 1406.

## ARGUMENT

### I. The Court Should Transfer Venue to the District of New Jersey Under 28 U.S.C. § 1404(a).

Plaintiffs ask this Court to take the unprecedented step of ruling on the enforceability of New Jersey laws, including a New Jersey criminal statute that has never been construed by any court. This Court should decline the invitation. 28 U.S.C. § 1404(a) allows for a transfer "to any other district or division where it might have been brought or to any district or division to which all parties have consented." At the outset, there is no question this action could originally have been brought in the District of New Jersey, as Plaintiffs themselves also filed suit against the NJAG there, asserting these same claims and seeking this same relief. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (noting that "the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed"). Additionally, as set forth below, the relevant public and private interest factors clearly weigh in favor of a transfer to the District of New Jersey.

A.    The Public Interests Overwhelmingly Favor Transfer.

New Jersey's strong interest in not having an out-of-state court determine the validity of its laws and the public interest in avoiding conflicting judgments on novel issues of constitutional law undoubtedly warrant transfer. To determine whether transfer is proper under § 1404(a), courts weigh a number of public factors, including: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.

Beginning with the second and third factors, the Fifth Circuit has made clear that, as a general matter, states should not be forced to defend challenges to their state laws in faraway forums. *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008). *Stroman* held that an Arizona state official was not subject to personal jurisdiction in Texas where the totality of her contacts with Texas consisted of sending a cease-and-desist letter threatening an enforcement action against a Texas resident. *Id.* The Court pointed to a number of special state sovereignty interests making jurisdiction inappropriate, expressing concern that any state official "could potentially be subjected to suit in any state where the validity of her state's laws were in question." *Id.* at 486. That would undermine all states' "*strong interest* in not having an out-of-state court evaluate the validity of its laws," because such out-of-state courts lack the "special expertise interpreting [the state's] laws" that local courts have. *Id.* at 487 (emphasis added). And such a rule "would create an avenue for challenging the validity of one state's laws in courts located in another state. This practice would greatly diminish the independence of the states." *Id.* at 488.

Indeed, Judge Higginson's concurrence in the prior appeal here pointed to these exact concerns as a reason for granting a transfer under § 1404(a), explaining, "[o]ur observation in *Stroman* was that '[w]hen a state defends its laws in a faraway forum, it loses the benefit of having

6

the laws examined by local state or federal courts—courts that have special expertise interpreting its laws.'" *Grewal*, 971 F.3d at 499 n.3 (Higginson, J., concurring) (quoting *Stroman*, 513 F.3d at 487). As he noted, in "cases against *government officials* who attempt to enforce a state law, so for no personal or commercial profit, the litigation has taken place in the government official's state." *Id.* (emphasis in original) (citing cases); *see also, e.g., Omaha Tribe of Nebraska v. Barnett*, 245 F. Supp. 2d 1049, 1056 (D. Neb. 2003) (granting motion to dismiss for improper venue where plaintiff sought to challenge state tobacco escrow statutes enacted by South Dakota, Missouri and Iowa, noting that the relevant "activities and events" all occurred in those states). Plaintiffs have not identified any case to the contrary.

This reasoning is all the more powerful in the context presented here. The heart of Plaintiffs' claims is their challenge to § 2C:39-9(*l*)(2), a New Jersey criminal statute which has no connection to Texas, and which was not even the subject of the cease-and-desist letter on which Plaintiff rely to claim personal jurisdiction. SAC, ¶¶ 141-61. The second and third public factors—in particular the interest "in having localized interests decided at home"—thus strongly support a transfer to the District of New Jersey.

The third public interest factor—local courts' familiarity with New Jersey's overall statutory framework regulating firearms and the public policies those laws promote—provides particular support for a transfer. The District of New Jersey and the Third Circuit specifically have been the primary fora for deciding legal challenges to New Jersey firearms laws since *District of Columbia v. Heller*, 554 U.S. 570 (2008), and indeed have been instrumental in developing the applicable Second Amendment framework for such challenges. *See, e.g., Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of N.J.*, 910 F.3d 106 (3d Cir. 2018); *Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013). These courts' special expertise in evaluating the validity of New Jersey firearms

regulations is yet another reason why the District of New Jersey is the more appropriate venue for Plaintiffs' challenges to the validity of New Jersey laws, in particular § 2C:39-9(*l*)(2).

Lastly, the fourth factor—the interest in avoiding unnecessary problems of conflict of laws—also favors a transfer.[4] As an initial matter, this litigation raises the distinct possibility of an inter-circuit conflict over the interpretation of New Jersey law. Specifically, this Court previously recognized that § 2C:39-9(*l*)(2) is susceptible of more than one interpretation, and that the most reasonable interpretation eliminates or at least mitigates the constitutional issues Plaintiffs assert. Order Denying Pls.' Mot. for TRO 7-8 (ECF No. 53); Order Denying Pls.' Second Mot. for TRO 9-11 (ECF No. 69). This case is only in Texas because this is where Defense Distributed brought suit. Future challenges or enforcement of § 2C:39-9(*l*)(2) will, instead, be overwhelmingly, if not exclusively, handled by New Jersey state courts, the District of New Jersey, and the Third Circuit. In fact, Defense Distributed's parallel lawsuit pending in the District of New Jersey involves additional plaintiffs who have sought, and who will likely continue to seek, resolution of their claims in the Third Circuit. Allowing Plaintiffs to litigate their claims against § 2C:39-9(*l*)(2) in Texas—and potentially in both Texas and New Jersey—thus risks the untenable scenario of two circuits splitting over the meaning of a *state* criminal statute. Not only would transfer eliminate that risk, but the Third Circuit has an easy way to resolve those interpretive questions—and thus potentially avoid the constitutional issue altogether—in certification to the New Jersey Supreme Court, a tool unavailable to the Fifth Circuit. *See* N.J. Court Rule 2:12A-1.

Transfer likewise avoids conflicting rulings on the constitutional issues themselves. *Stroman* is again instructive. The Fifth Circuit explained there that compelling an Arizona official

---

[4] The first public interest factor cuts neither one way nor the other as both this District and the District of New Jersey are among the busiest districts in the nation. *See* Declaration of Casey Low in Support of Motion to Sever and To Transfer Venue, Ex. A.

to defend a constitutional challenge to Arizona laws in Texas "could lead to a multiplicity of inconsistent verdicts on a significant constitutional issue," while "if the cause of action is litigated in Arizona federal court, judicial efficiency and uniformity prevail." *Stroman*, 513 F.3d at 487-88.

So, too, here. As in *Stroman*, Plaintiffs' challenge to New Jersey's public nuisance law and § 2C:39-9(*l*)(2) raises novel constitutional issues relating to, among other things, what First Amendment protection, if any, applies to the dissemination of printable gun files. The Fifth Circuit stressed that fact in a separate decision affirming the denial of Plaintiff Defense Distributed's attempt to enjoin federal regulations that prohibit the dissemination of these files on the internet. *See Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451, 461 (5th Cir. 2016) (noting that the appeal "presents a number of novel legal questions" concerning the First Amendment). The risk of inconsistent judgments on these "novel legal questions" is especially clear given Plaintiffs' strategy of seeking to simultaneously litigate their claims against § 2C:39-9(*l*)(2) in the District of New Jersey. And, because these courts sit in different circuits, this creates a significant risk of a split between the Third and Fifth Circuits on First Amendment law. A transfer averts entirely this risk of conflicting rulings and a possible split, not to mention the needless expenditure of judicial resources to have *two* federal courts adjudicate the same dispute between the same parties.

B.    The Private Interests Likewise Favor Transfer.

The private factors make the need for a transfer even clearer. Courts in this Circuit examine a number of private interest factors when determining whether to transfer a case under 28 U.S.C. § 1404(a), including "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 371 F.3d at 203. The first three factors favor transfer, as Plaintiffs' claims against § 2C:39-9(*l*)(2) and their Commerce Clause claim turn on the meaning and intent

9

of New Jersey state laws and on the intent of the NJAG's cease-and-desist letter, and the sources of proof relevant to these issues (including any non-party witnesses) are all in New Jersey.

The fourth factor, in particular, supports a transfer because venuing this matter in New Jersey would obviate the need to adjudicate threshold jurisdictional issues undecided by the Fifth Circuit and thus make this litigation more expeditious and less expensive. Specifically, if this matter is not transferred, this Court will have to make additional findings of fact to establish personal jurisdiction over Plaintiffs' newly added claims challenging § 2C:39-9(*l*)(2) before addressing any application for injunctive relief. Three hurdles in particular arise.

First, there is little question this Court lacks personal jurisdiction with respect to Plaintiffs' claims against § 2C:39-9(*l*)(2). As a threshold matter, jurisdiction must be evaluated on a claim-by-claim basis, *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006), meaning that even if, as the Fifth Circuit found, a cease-and-desist letter establishes jurisdiction for claims arising out of that letter,[5] this Court must separately evaluate whether jurisdiction exists for a challenge to a state statute *not* mentioned in the letter (and that did not even exist at the time the letter was sent). Importantly, the Fifth Circuit's reasoning makes clear that jurisdiction has not been shown over claims challenging this statute. The panel stressed that jurisdiction at the motion to dismiss stage was proper as to the Amended Complaint because those "claims are *based on* Grewal's cease-and-desist letter," which warned only against violating New Jersey's public nuisance law. *Grewal*, 971 F.3d at 492 (emphasis added); *see also id.* (distinguishing *Stroman* as

---

[5] New Jersey intends to file a petition for a writ of certiorari challenging the Fifth Circuit's determination that the NJAG purposely availed himself of the benefits of Texas law by sending a single cease-and-desist letter to a Texas resident warning it not to violate New Jersey law. *Grewal*, F.3d at 491, 496. Should certiorari be granted, this matter would need to be stayed pending resolution of the jurisdictional issue. Such a potentiality is obviated by transfer to the District of New Jersey.

being "more a product of Arizona's regulatory scheme than it was the cease-and-desist letter itself. Not so for the plaintiffs' claims here, many of which are based on injuries stemming solely and directly from Grewal's cease-and-desist letter."). In no way is Plaintiffs' challenge to § 2C:39-9(*l*)(2) "based on" a letter that never mentioned the statute and that was sent *months* before the statute was enacted. Instead, Plaintiffs' request to enjoin enforcement of § 2C:39-9(*l*)(2) is quite clearly "more a product of [New Jersey's] regulatory scheme than it was the cease-and-desist letter." *Id.* Indeed, § 2C:39-9(*l*)(2) expressly only prohibits a person from distributing covered files "*to a person in New Jersey.*" The New Jersey Legislature's decision to pass this statute in no way establishes any contacts with Texas.[6]

Second, all of Plaintiffs' requests for relief—whether to enjoin enforcement of § 2C:39-9(*l*)(2) or the public nuisance common law—require them to satisfy a higher burden of proof at this stage of the litigation. While the Fifth Circuit found sufficient allegations of personal jurisdiction existed for Plaintiffs to survive the NJAG's *motion to dismiss*, that is insufficient for an injunction. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985) (explaining that, while "a plaintiff need only make a prima facie showing of jurisdiction in response to a motion to dismiss," "more is required" before the "court may validly enter a preliminary injunction"); *Visual Sciences v. Integrated Commc'ns*, 660 F.2d 56, 59 (2d Cir. 1981) ("A prima facie showing will not suffice . . . where a plaintiff seeks preliminary injunctive relief."). Indeed, the panel recognized a dispute as to whether the NJAG's cease-and-desist letter was intended to prevent Plaintiffs' dissemination to New Jersey residents only, or to residents of

---

[6] Nor does the NJAG's passing reference to Plaintiffs' founder at the signing of § 2C:39-9(*l*)(2), because the Fifth Circuit specifically held this did not "represent direct contacts with Texas," as "the broadcast event the plaintiffs reference took place in New Jersey." *Grewal*, 971 F.3d at 492. Under *Walden v. Fiore*, 571 U.S. 277 (2014), a statement in New Jersey at the signing of a New Jersey law does not establish jurisdiction in Texas even if effects are felt there.

other states as well, but found "at this stage of the litigation, we are required to resolve all factual disputes in favor of the plaintiff." *Grewal*, 971 F.3d at 493 n.6. As Judge Higginson noted, however, "[i]f, in fact, Grewal attempted to prevent the distribution of the files only within the state of New Jersey," there would be no personal jurisdiction, and that fact dispute was left for the district court to resolve. *Id.* at 497 n.1 (Higginson, J., concurring). The analysis of such questions will require factual discovery—on an issue entirely unrelated to the merits themselves.

Third, this Court will have to adjudicate the NJAG's argument that Texas's long-arm statute does not authorize personal jurisdiction with respect to *any* of Plaintiffs' claims. The statute allows courts to exercise jurisdiction over a "nonresident" that "does business" in Texas if that nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" or "commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042. As the Fifth Circuit laid out in *Stroman*, an out-of-state public official sued in his official capacity under *Ex Parte Young*, 209 U.S. 123 (1908), does not fit the statutory definition of "nonresident." 513 F.3d at 482-83; *see also Bulkley & Assocs., LLC v. Occupational Safety & Health Appeals Bd. of Cal.*, No. 4:18-cv-642, 2019 WL 2411544, at *4 (E.D. Tex. June 7, 2019) (agreeing with this analysis and holding that out-of-state government actors do not qualify as "nonresidents" under the statute). Likewise, *Stroman* questioned whether a state official's "faithful enforcement of allegedly unconstitutional [state] statutes" can qualify as "doing business" under the statute. 513 F.3d at 483; *see also Sullivan v. Office of Tex. Att'y Gen.*, No. 18-CV-303, 2019 WL 1598222, at *6 (W.D. Tex. Apr. 15, 2019) (agreeing with *Stroman*'s analysis to hold that the long-arm statute does not reach an out-of-state

official sued in their official capacity under *Ex Parte Young*).[7] This Court did not previously decide whether the long-arm statute confers jurisdiction, and the Fifth Circuit expressly did *not* reach this issue as it based its holding solely on due process. *Grewal*, 971 F.3d at 496.[8]

As long as this case is venued in this district, this Court will have to resolve these threshold issues to establish personal jurisdiction, which will require additional motion practice and hearings before this Court. But if the case is transferred to New Jersey, *all* of these jurisdictional issues disappear, because all parties agree jurisdiction is proper in that district. That not only spares the parties and the district court the time and expense required to adjudicate these preliminary issues— and the factual discovery relating to those non-merits questions—but it also means Plaintiffs can *immediately* seek injunctive relief against § 2C:39-9(*l*)(2) and New Jersey's public nuisance law.

Relatedly, as long as Plaintiffs maintain their parallel action against the NJAG in the District of New Jersey, the parties will be litigating Plaintiffs' claims in two forums. But a transfer would dissolve the stay and thus moot any appeal, putting an end to this unnecessary two-front battle and avoiding the need for further piecemeal litigation. *See Quantum Catalytics, LLC v. VantagePoint Venture Partners*, No. H-07-2619, 2008 WL 5272483, at *3 (S.D. Tex. Dec. 16,

---

[7] *Stroman* did not decide the statutory issue because the defendant there conceded the general applicability of the long-arm statute. *Id.* But the NJAG has objected to personal jurisdiction at every stage of the litigation, including on remand.

[8] Given that Plaintiffs' SAC raises new allegations of personal jurisdiction including with respect to their claims against § 2C:39-9(*l*)(2), the NJAG may properly renew his personal jurisdiction defenses, including any defenses that were previously waived. *See, e.g., Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) (stating a defendant may raise new defenses to an amended complaint, including defenses that were waived in response to the *initial* complaint, where the amendment "changes the theory or scope of the case"); *Athletic Training Innovations, LLC v. eTagz, Inc.*, No. 12-2540, 2013 WL 360570, at *3 (E.D. La. Jan. 30, 2013) (allowing defendant who sought dismissal of initial complaint for lack of personal jurisdiction to file renewed motion to dismiss the amended complaint which "contains different and additional allegations regarding personal jurisdiction").

2008) (where plaintiffs had already sued the defendant in the District of Massachusetts "on the identical claims asserted here," ordering transfer to that district under § 1404 to avoid inefficiency of "utilizing the resources of two courts to resolve the same issues involving the same parties" and "the possibility of inconsistent rulings"); *Busch v. Robertson*, No. 3:05-CV-2043-L, 2006 WL 1222031, at *7 (N.D. Tex. May 5, 2006) (finding parallel litigation brought by plaintiffs in a different venue that involved overlapping issues, similar subject matter, closely related questions, and identical parties weighed heavily in favor of transfer); *Westberry v. GusTech Comm'ns, LLC*, No. 3:17-CV-3162-D, 2018 WL 3548869, at *9 (N.D. Tex. July 24, 2018) (ordering transfer to a district where there was pending parallel litigation "involv[ing] a nearly identical FLSA claim brought against the same defendants by a proposed class that will overlap with the class proposed in this case"); *cf. Bolt v. Toyota Indus.*, 351 F. Supp. 2d 597, 601 (E.D. Tex. 2004) (noting that this factor favored venuing the case in the district where the parties were able to most expeditiously resolve their claims). A transfer thus would make adjudication of Plaintiffs' claims more "easy, expeditious and inexpensive." *Volkswagen*, 371 F.3d at 203.

Taken as a whole, the relevant public and private interest factors tilt the balance sharply in favor of granting a transfer to the District of New Jersey under 28 U.S.C. § 1404(a).

## II. The Court Should Transfer Venue to the District of New Jersey Under 28 U.S.C. § 1406(a).

28 U.S.C. § 1406(a) allows for transfer where, as here, a matter has been filed in the "wrong" district and would be more properly brought in another district. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013); *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 897 (S.D. Tex. 2013) ("[A] district is 'wrong' within the meaning of § 1406(a) whenever there exists an 'obstacle (to) an expeditious and orderly adjudication on the merits.'" (citing *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1105 (5th Cir. 1981))). "The language

14

of [§] 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Once an objection to venue has been raised by the defendant, the plaintiff bears the burden of demonstrating that venue is proper in the district in which the action is pending. *Langton v. Cbeyond Comm'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003). As set forth below, this matter should be transferred under § 1406(a) because the events forming the basis of Plaintiffs' claims all took place in New Jersey, and the interest of justice favors transfer.

A.    The Events Giving Rise to Plaintiffs' Claims Occurred in New Jersey, Not the Western District of Texas.

To establish proper venue in this district under 28 U.S.C. § 1391(b)(2), Plaintiffs must show the Western District is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." For this showing, courts look "to the defendants' conduct, and where that conduct took place, rather than focusing on the activities of the plaintiff." *Gault v. Yamunaji, L.L.C.*, No. A-09-CA-078-SS, 2009 WL 10699952, at *5 (W.D. Tex. Apr. 17, 2009) ("Thus, § 1391(b)(2) requires courts to focus on the *defendant's conduct alone*; the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district.") (emphasis added).

Plaintiffs here simply cannot meet their burden to prove that a "substantial part" of the events giving rise to their claims occurred in the Western District of Texas. Instead, the New Jersey Legislature's enactment of § 2C:39-9(*l*)(2) necessarily took place in New Jersey and has no connection to Texas. The NJAG's drafting of a cease-and-desist letter likewise took place in New Jersey. That Plaintiffs may have felt effects of that letter in the Western District of Texas is not relevant to the venue analysis, as the focus is on the "defendants' conduct, and where that conduct

15

took place, rather than focusing on the activities of the plaintiff." *Gault*, 2009 WL 10699952, at *5; *see also Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1049 n.2 (S.D. Tex. 2000). Indeed, Plaintiffs repeatedly emphasize that this case concerns only the application of New Jersey law to their "publishing digital firearms information via the internet *to persons in New Jersey*." SAC, ¶¶ 176-78 (emphasis added), *see also id.* ¶¶ 155, 182-83 (describing dissemination of materials "to persons in New Jersey"). This strong nexus to New Jersey precludes any assertion that a *substantial* part of the events underlying Plaintiffs' claims occurred within this district.

Conversely, there is no question that a substantial part of the events forming the basis of their claims occurred in New Jersey, and thus venue is proper in the District of New Jersey. Plaintiffs conceded as much by filing suit against the NJAG in that district asserting these very same claims, including their challenge to § 2C:39-9(*l*)(2).

B.     This Case Should be Transferred to the District of New Jersey in the Interest of Justice.

Because venue is improper in this district, a transfer to the District of New Jersey is warranted in the interest of justice. "Under § 1406(a), the interest of justice does not focus on the interest of the individual parties but on the efficient administration of the court system." *Jones v. TEPPCO Terminaling & Mktg. Co., LLC,* No. 4:11-CV-27-CWR-FKB, 2011 WL 8198697, at *3 (S.D. Miss. Dec. 22, 2011). Moreover, courts in this circuit routinely find that transfer generally serves the interest of justice and efficiency over dismissal when venue is improper. *See Gen. LED OPCO, LLC v. Principal LED, LLC*, No. SA-17-CV-01281-OLG, 2018 WL 7351698, at *1 (W.D. Tex. Mar. 14, 2018); *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 705 (S.D. Tex. 2013).

A transfer to New Jersey is plainly in the interest of justice, as these same parties are already litigating these same claims there and a transfer would dissolve the stay of Plaintiffs' New Jersey action, thus allowing them to immediately seek injunctive relief. By contrast, as long as venue

remains in this district, this Court will have to decide threshold jurisdictional issues before reaching the merits and, in light of the parallel litigation in New Jersey, a trial would risk conflicting rulings on the validity and meaning of New Jersey law. *See supra*, I.A. In other words, a transfer is the most efficient means of adjudicating this dispute and avoids this risk of conflicting rulings. *Cf. TransFirst Group, Inc. v. Malgiarditi*, 237 F. Supp.3d 444, 460 (N.D. Tex. 2017) (concluding transfer was in the interest of justice as it would avoid "the potential risk of inconsistent judgments, piecemeal litigation in separate judicial districts, and the inefficiencies and burdens inherent in having nearly identical and overlapping actions proceeding in two separate judicial districts").

## III.   Plaintiffs' Joinder of the State Department Does Not Preclude a Transfer As the Wholly Unrelated Claims Against the NJAG Are Easily Severed.

Plaintiffs cannot defeat a transfer by adding unrelated claims against the U.S. State Department. The Court should instead sever the claims against the NJAG pursuant to Fed. R. Civ. P. 21. Courts have "broad discretion to order the severance of particular claims and afford them separate treatment when doing so advances the administration of justice and no party suffers prejudice by virtue of the severance." *El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 959-60 (S.D. Tex. 2001) (citing *Applewhite v. Reichhold Chem., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995)). More specifically, "if the suit might have been brought against one or more defendants in the transferee court, the claims against those defendants may be severed and transferred while the other claims are retained in the original court." *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549-50 (E.D. Tex. 2009).

Where, as here, a party seeks to sever and transfer particular claims, the severance inquiry is "more focused on judicial efficiency" than other considerations. *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014). That said, in deciding whether to sever claims generally, courts consider whether (1) "the claims arise out of the same transaction or occurrence," (2) "the claims

present some common questions of law or fact," (3) "settlement of the claims or judicial economy would be facilitated," (4) "prejudice would be avoided if severance were granted," and (5) "different witnesses and documentary proof are required for the separate claims." *Id.* at 680 n.40 (quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (S.D.N.Y. 1999)).

These considerations weigh heavily in favor of severance, particularly because Plaintiffs' newly added claims against the State Department arise out of a completely distinct set of operative facts. These claims are based on a prior lawsuit Defense Distributed filed against the State Department, challenging then-existing *federal* export control regulations which required a license to disseminate printable gun files. SAC, ¶¶ 82-86; *see also Defense Distributed v. U.S. Dep't of State ("Def. Dist. I")*, 838 F.3d 451 (5th Cir. 2016) (affirming this Court's denial of injunctive relief against the federal regulations). Those parties resolved that suit through a June 2018 Settlement Agreement, in which the State Department agreed to make certain deregulatory changes that would allow Defense Distributed to disseminate the files. *Id.*, ¶¶ 89-91. The State Department's efforts to deliver those deregulatory outcomes have consistently been enjoined as unlawful agency action. *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247 (W.D. Wash. 2018) (permanently enjoining Temporary Modification and license issued to Defense Distributed); *Washington v. U.S. Dep't of State*, 443 F. Supp. 3d 1245 (W.D. Wash. 2020) (preliminarily enjoining January 2020 final rules that removed the files from U.S. Munitions List and placed them under Commerce Department regulations that did little to prevent their proliferation). Plaintiffs' SAC thus alleges the State Department breached its obligations under the Settlement Agreement and asserts several causes of action based on this theory. SAC, ¶¶ 130-31, 184-254.

Plainly, these unrelated allegations are insufficient to support combining this case with their separate, pending suit against the NJAG. New Jersey was not a party to the Settlement

Agreement or a party in *Def. Dist. I*. Likewise, the State Department had no involvement in the NJAG's cease-and-desist letter or New Jersey's enactment of § 2C:39-9(*l*)(2). As such, these claims do not "arise out of the same transaction or occurrence." *In re Rolls Royce*, 775 F.3d at 680 n.40. Similarly, the claims do not involve "common questions of law or fact." *Id.* In particular, while Plaintiffs complain about the NJAG's participation in the Washington actions, Plaintiffs are explicit that their claims against the State Department are in no way related to those lawsuits. *See* SAC, ¶¶ 98-99 (stressing that the "Settlement Agreement was never the subject of any claim in the *Washington* case," that that case was targeted solely at actions of the *State Department*, and that Defense Distributed's conduct was not at issue in those cases). Thus, the first and second *Rolls Royce* factors favor severance.

So, too, does the fifth factor, because proving these two distinct sets of underlying operative facts will necessarily require different witnesses and documentary proof. In particular, evidence relevant to the claims against the NJAG—which necessarily will focus on the meaning of New Jersey laws and the intent of the NJAG's cease-and-desist letter—is hardly likely to overlap at all with that relevant to the claims against the State Department, which will largely turn on internal agency communications and potentially testimony from agency officials related to the agency's implementation of the Settlement Agreement.

And the third factor—the interest in "judicial efficiency"—trumps all other considerations, because litigating all claims in this district will require substantially *more* judicial resources to decide the threshold jurisdictional issues raised by Plaintiffs' claims against the NJAG. *In re Rolls Royce*, 775 F.3d at 680. As explained above, *supra* I.B., this Court will have to determine whether personal jurisdiction exists as to Plaintiffs' claims against § 2C:39-9(*l*)(2), whether Texas's long-arm statute authorizes jurisdiction over any of the claims against the NJAG, and whether Plaintiffs

can satisfy the higher burden of proving personal jurisdiction needed to award injunctive relief. Yet this mini-trial over jurisdiction is entirely avoidable, as *none* of these issues will exist if venue is transferred to the District of New Jersey. This is also guaranteed to significantly delay resolution of Plaintiffs' claims—both claims against the NJAG *and* against the State Department—whereas if a transfer is granted, they can seek *immediate* relief against the NJAG. Further, given Plaintiffs' duplicative litigation against the NJAG in New Jersey, litigating these claims in this district still risks creating circuit splits on the meaning and validity of New Jersey state laws.

In addition to preventing this waste of judicial resources, severance and transfer would not prejudice any party. If anything, it avoids prejudicing *Plaintiffs*, as these threshold issues will delay their ability to seek injunctive relief in this district, whereas they can seek *immediate* relief if venue is transferred to New Jersey. Maintaining venue in this district similarly prejudices the NJAG, who has to devote significant resources to litigating these threshold issues and retaining local counsel in this action—costs he will not incur if venue is transferred to New Jersey. Nor can Plaintiffs object to litigating their claims against the NJAG and the State Department separately, as the fact that Plaintiffs sued the NJAG in the pending New Jersey Action without joining the State Department officials as defendants demonstrates these claims can be severed. *See Defense Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193 (3d Cir. 2020). All of these factors—that severance will prevent the delay, the increased burden on judicial resources, and the expense to the parties that will only result if venue is maintained in this district—weigh in favor of severance. As a result, the third and fourth *Rolls Royce* factors (which also promote judicial efficiency) further support severance and transfer.

## CONCLUSION

For the foregoing reasons, the Court should sever Plaintiffs' claims against the NJAG and transfer venue to the District of New Jersey under 28 U.S.C. §§ 1404 and 1406.

DATED: November 18, 2020        Respectfully submitted,

Pillsbury Winthrop Shaw Pittman LLP

BY:  *Casey Low*
      Ronald Casey Low
      Texas State Bar No. 24041363

      401 Congress Avenue, Suite 1700
      Austin, TX 78701-3797
      Phone: 512.580.9600
      Fax: 512.580.9601
      casey.low@pillsburylaw.com

      Kenneth W. Taber (admitted *pro hac vice*)
      Pillsbury Winthrop Shaw Pittman, LLP
      1540 Broadway,
      New York, NY 10036
      212-858-1813
      Fax: 212-858-1500
      Kenneth.taber@pillsburylaw.com

      *Attorneys for Defendant Gurbir S. Grewal*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the NJAG previously conferred with Plaintiffs' counsel by phone and by email to discuss this motion, and takes from those discussions that Plaintiffs are opposed to the relief requested herein.

*/s/ Casey Low*
Casey Low