IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| UNITED STATES DEPARTMENT OF STATE, Michael R. Pompeo, in his official capacity as Secretary of State; DIRECTORATE OF TRADE CONTROLS; MIKE MILLER, in his official capacity as Deputy Assistant Secretary of Defense Trade Controls; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy, | § § § § § § § § § § § § | Case No.: 1:18-cv-637-RP |
| and | § § | |
| GURBIR GREWAL, Attorney General of the State of New Jersey, | § § § | |
| Defendants. | § | |

## FEDERAL DEFENDANTS' OPPOSITION TO DEFENDANT GREWAL'S MOTION TO SEVER AND TRANSFER VENUE

### INTRODUCTION AND BACKGROUND

This case has its origins in previous litigation before this Court: *Defense Distributed, et al. v. State et al.*, Case No. 1:15-cv-372-RP (*Defense Distributed I*). In that case, Defense Distributed and the Second Amendment Foundation—the Plaintiffs here—sued the Department of State and several of its officials (collectively, "Department of State" or "State"), alleging, *inter alia*, that State's efforts to regulate exports of information relating to the 3-D printing of small-caliber, non-

automatic firearms violated Plaintiffs' First Amendment rights and exceeded State's statutory authority.  In carrying out this Court's routine instructions that the parties discuss the possibility of settlement, the parties realized that such a resolution could be reached in light of State's longstanding plans to transfer regulatory authority over exports of the underlying firearms to the Department of Commerce.

When the parties announced the settlement, however, three gun-control groups sought to intervene and enjoin the settlement, arguing that the settlement would legalize the domestic distribution of 3-D printing information for firearms, notwithstanding the fact that such domestic distribution to U.S. persons had always been legal under federal law.  *See Defense Distributed I*, Dkt. 97 at 3–4.  When this Court denied the temporary restraining order sought, *see id.*, Dkt. 111, Defendant Grewal and other state officials proceeded to sue in the United States District Court for the Western District of Washington, where they succeeded in preliminarily enjoining State's policy actions to implement the settlement.  *See generally State of Washington, et al. v. Dep't of State, et al.*, No. 2:18-cv-1115 (W.D. Wash. July 30, 2018) ("*Wash. I*"); *see also id.* Compl., Dkt. 1.  And though the *Wash. I* court denied Grewal's request for a permanent injunction, the court vacated the Department of State's administrative actions to implement the settlement agreement.  *See Wash. I*, Dkt. 192 at 24–25.

Plaintiffs here have now added State and the other Federal Defendants to this lawsuit, in which Grewal has long been a defendant.  *See* Second Amended Complaint, Dkt. 117.  Most of Plaintiffs' claims hinge on State's alleged failure to carry out the enjoined provisions of the settlement agreement as a result of Grewal's actions in coordination with other state officials to prevent State from doing so.  Plaintiffs also allege that State breached its contract with Plaintiffs

to carry out the settlement—a claim matched by their claim against Grewal for tortious interference with that contract.

State's actions regarding the 2018 settlement are caused by, and closely intertwined with, the actions of Grewal. The breach-of-contract and tortious-interference claims in this lawsuit overlap in their entirety. And while this litigation is surely distant from Grewal's home jurisdiction of New Jersey, Grewal's objections ring hollow when he previously sought relief against Plaintiffs and the Department of State in this very Court and in the even-more distant district court in the State of Washington. For the reasons explained below, the Court should deny Grewal's motion to sever and transfer.

## ARGUMENT

Grewal moves to sever and transfer the claims against him. His brief gets it backwards, however: it addresses whether the standards for *transfer* of the claims against him are met and then perfunctorily asserts that those claims can easily be *severed* to accomplish the transfer. *Compare* Dkt. 121 at 17–20, *with id.* at 6–14 & 14–17. Grewal makes no attempt to establish that the entirety of this case—including the claims against State—should be transferred to the District of New Jersey. Because the claims against Grewal cannot be severed from the closely intertwined claims against State, neither severance nor transfer is appropriate here.

### I. THE CLAIMS AGAINST GREWAL SHOULD NOT BE SEVERED FROM THE CLAIMS AGAINST THE DEPARTMENT OF STATE.

Federal Rule of Civil Procedure 21 provides courts with the authority to "add or drop a party … [or] sever any claim against a party." Fed. R. Civ. P. 21; *see also* Wright & Miller, *Federal Practice and Procedure* § 1689 (Rule 21 provides a court with the authority to "sever parties improperly joined under Federal Rule of Civil Procedure 20" or to "sever an unrelated

claim and give it separate treatment.").  A district court has "broad discretion" to sever improperly joined parties, or "to sever a claim against a party into separate cases." *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).  However, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (interpreting Fed. R. Civ. P. 2, 18–20, 42).

To determine whether parties were properly joined under Rule 20, and thus, whether severance for misjoinder under Rule 21 is appropriate, a district court must consider: (1) whether the right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences," and (2) whether there is a question of law or fact common to all of the plaintiffs that will arise in the action. Fed. R. Civ. P. 20(a); *see also* Wright & Miller, Federal Practice and Procedure § 1653.  Relevant factors in this analysis include whether severance furthers economy in the use of judicial resources and the parties' time and money, as well as whether the defendant will be unduly prejudiced by evidence offered at trial on dissimilar claims involving unrelated parties.  *See Guedry v. Marino*, 164 F.R.D. 181, 185 (E.D. La. 1995); *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1061 (S.D. Tex. 1996).

If a party seeks to sever a claim for reasons other than misjoinder, courts consider a variety of factors, including the factors in Rule 20, as well as whether severance would promote judicial economy, avert prejudice, or create difficulties related to proof.  *See E. Cornell Malone Corp. v. Sisters of Holy Family, St. Mary's Acad. of Holy Family*, 922 F. Supp. 2d 550, 561 (E.D. La. 2013).  In this analysis, the Court should take seriously the public "interest in facilitating a speedy and

4

less-expensive determination in one forum of *all of the issues* arising out of one episode." *In re Rolls Royce Corp.*, 775 F.3d 671, 680–81 (5th Cir. 2014) (emphasis added).

Severance is inappropriate here because Grewal and the Department of State are properly joined as Defendants in this action, and Plaintiffs claims against State and Grewal are closely related.  Grewal's motion to sever should be denied.

**A.  Joinder Is Proper.**

**1.  The Claims Against Defendants Arise Out of the Same Transaction, Occurrence, and Series of Transactions and Occurrences.**

Defendants are properly joined under Federal Rule of Civil Procedure 20 because Plaintiffs' claims against Defendants "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and there are ample "question[s] of law or fact common to all defendants."  Fed. R. Civ. P. 20(a)(2).  Grewal correctly identifies Plaintiffs' "claims against the State Department" as arising out of State's "performance of [the] 2018 Settlement Agreement between it and Defense Distributed."  Dkt. 121 at 5.  He errs, however, in asserting that these claims are "unrelated" to the claims against Defendant Grewal.  *Id.*  To the contrary, each of Plaintiffs' claims against State are squarely related, both on their face and in their substance, to the claims against Grewal.  Specifically, Plaintiffs challenge the Department of State's alleged non-compliance with the settlement agreement as a result of Grewal's actions.

The conclusion that claims against State and the claims against Grewal arise out of the same transaction and occurrence is most apparent by reference to Counts Five and Sixteen.  Count Five seeks relief from State for a purported breach of contract in connection with the 2018 settlement agreement, alleging that State failed to carry out its obligations under that agreement.  Dkt. 117 ¶¶ 216–24.  Count Sixteen alleges "tortious interference with the settlement agreement"

5

by Grewal for his role in preventing State from carrying out its obligations under that agreement. *Id.* ¶¶ 318–22.  There can be no reasonable dispute that these claims involve the same transaction and occurrence.  Likewise, Plaintiffs' claims in Count Fourteen—that Grewal "violated the AECA and ITAR" by interfering with State's regulation of arms exports by carrying out the actions set forth in the settlement agreement (and similar activities) are claims about the same transaction and occurrence as Plaintiffs' claims against State.  *Id.* ¶¶ 304–10.

Plaintiffs' other claims against State similarly overlap with the claims against Grewal.  As Grewal acknowledges, the claims against State arise out of the 2018 settlement agreement.  *See* Dkt. 121 at 5.  But Plaintiffs do not allege that State failed to comply with the settlement agreement out of deliberate intent, malice, or neglect.  Instead, they acknowledge that State acted pursuant to the order in *Wash. I* that enjoined State "from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and Second Amendment Foundation."  Dkt. 117 ¶ 100; *see Wash. I*, Dkt. 95, 381 F. Supp. 3d 1247 (W.D. Wash. 2018).  Plaintiffs also allege that this Order was procured by Grewal, *see* Dkt. 117 ¶¶ 95–96, as it in fact was.  *See Wash. I*, Dkt. 1; Mot. for Prelim. Inj., Dkt. 43.  Grewal cannot now escape what follows from the order he pursued: Plaintiffs' claims arise out of the enjoined settlement agreement and are inseparable from Plaintiffs' claims against Grewal and State.

Downplaying the significance of Plaintiffs' claims against State, Grewal suggests that the Plaintiffs' challenge to his actions in connection with New Jersey Code of Criminal Justice 2C:39-9 Section (l)(2) involves a different transaction and occurrence, and should therefore be severed. However, "Rule 20 clearly contemplates joinder of claims arising from a 'series of transactions or

occurrences' – a single transaction is not required." *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012). Here, Plaintiffs have alleged that Grewal's actions to enforce Section (l)(2) are part of a series of related steps all targeting Plaintiffs, which includes Grewal's lawsuit against State and Plaintiffs in Washington. *See* Dkt. 117 ¶¶ 148, 149 (explicitly linking Section (l)(2) to the "federal court" lawsuit against State); *id.* ¶¶ 147–52 (linking Section (l)(2) to a series of actions by Grewal targeting Plaintiffs). This conclusion is reinforced by the timing of the challenged actions by Grewal, which include a series of letters sent by Grewal between July 26, 2018 and July 30, 2018, the same five-day period in which Grewal and others sought emergency injunctions against the settlement agreement between Plaintiffs and State. Under the "logical relationship" test for determining whether claims arise out of the same transaction and occurrence, far less is required. *See N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998) (quoting *Moore v. New York Cotton Exch.*, 270 U.S. 593, 609–10 (1926)) (describing "logical relationship" test and explaining that it "may comprehend a series of many occurrences [regardless of] the immediateness of their connection").

In sum, Plaintiffs' claims against Grewal and State are logically related to actions surrounding the 2018 settlement agreement and "arise out of the same transaction" under Rule 20(a)(2). Fed. R. Civ. P. 20(a)(2).

## 2. There Are Common Questions of Fact and Law.

The existence of common questions of law and fact is evident from the face of the Second Amended Complaint and further supports joinder. The most significant common questions of law are those with which this Court is already familiar: to what extent does the First Amendment prevent government regulation of the functional files that can be used to manufacture firearms

through 3-D printers?  *See generally Defense Distributed I*, 1:15-cv-372-RP.  Indeed, all of the legal challenges between Plaintiffs, the Department of State, and Grewal, have involved the question of whether Defense Distributed's actions are "protected by the First Amendment," *see, e.g.*, *Defense Distributed II*, Dkt. 117 ¶ 135, and this question forms a repeated cornerstone of Plaintiffs' claims against both State and Grewal.  *See, e.g.*, *id.* ¶¶ 163, 172, 226–36, 258–66, 339.

Plaintiffs also allege common questions of fact among the claims against State and Grewal. Most prominently, there is a factual overlap between Plaintiffs' claims for alleged breach of contract as to the settlement agreement between Plaintiffs and State, and Plaintiffs' claim against Grewal for tortious interference with that contract, which will turn on the existence of a breach or other harm caused by Grewal and the nature and existence of such contract.  *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W. 3d 74, 77 (Tex. 2000) (enumerating elements of tortious interference with contract).  And there is likely to be other extensive factual overlap related to Plaintiffs' First Amendment claims, such as the nature of Plaintiffs' information for manufacturing 3-D firearms files and the potential harms of the export of those files or their distribution within New Jersey.

To be sure, this case will involve some separate questions of law and fact.  But Rule 20 does not "require that every question of law or fact in the action be common among the parties." *Guedry v. Marino*, 164 F.R.D. 181, 184 (E.D. La. 1995).  To the contrary, Rule 20 "permits party joinder whenever there will be at least one common question of law or fact," *id*, which is consistent with the purpose of the Federal Rules to "strongly encourage[]" "the broadest possible scope of action." *Gibbs*, 383 U.S. at 724.  Thus, in light of the common questions of fact and law described above, the presence of some distinct questions of fact and law is insufficient to warrant severance.

### 3. The Claims Against Grewal May Not Be Severed Because Grewal Is a Required Party Under Rule 19 For the Claims Against the Department of State.

Federal Rule of Civil Procedure 19 requires that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction *must* be joined as a party" in several circumstances.  Fed. R. Civ. P. 19(a)(1) (emphasis added).  These include when a person "is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest," Fed. R. Civ. P. 19(a)(1)(B)(i), or when a party's absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the [absent party's] interest."  Fed. R. Civ. P. 19(a)(1)(B)(ii).  Both of these subparts are implicated in this action.

First, Grewal has repeatedly advanced a legal interest in preventing the Department of State from carrying out the actions to which it agreed in the 2018 settlement agreement.  *See Wash. I*, 2:18-cv-1115, Dkt. 1 ¶ 7, ("The Government entered into the Settlement Agreement in contravention of the statutes and regulations which govern the export designation process."); *id.* ¶ 15 ("The security of the Plaintiff States is threatened by the Government's deregulation of CAD files for the automated production of 3-D printed weapons … "); Dkt. 2 at 3 ("The Government has sought to create new law by tendering and fulfilling the terms of a Settlement Agreement … [i]n fulfilling its obligations under this Settlement Agreement, the Government committed numerous violations of the Administrative Procedure Act … "); *see also State of Washington, et al. v. Dep't of State, et al.*, No. 2:20-cv-111-RAJ (W.D. Wash. 2020) ("*Wash. II*"), Dkt. 55 at 2 ("The Final Rules are unlawful" because they allegedly resulted from "a process that began with

9

the federal government's agreement to settle litigation with private parties whose mission is to eviscerate any regulation of firearms …."). Grewal should not be allowed to disclaim this interest when doing so serves his wish to litigate a subset of Plaintiffs' claims in New Jersey.

Second, because Grewal has been a leading initiator of the efforts to obtain judicial orders precluding State from carrying out its obligations under the 2018 settlement agreement, State risks facing "inconsistent obligations" from contradictory court orders in Texas and New Jersey if Grewal is absent from this litigation.[1] For example, if this Court severs and transfers Plaintiffs' claims against New Jersey, courts in New Jersey and Texas could inconsistently adjudicate parallel and mutually dependent breach of contract claims against Grewal and the Department of State. *See supra* pp. 5–6; *see also* Dkt. 117 ¶¶ 216–24, 304–10. For this reason, maintaining Grewal as a co-defendant in this action avoids the risk of inconsistent adjudications and obligations; it is also proper under Rule 19, now that the Fifth Circuit has confirmed that personal jurisdiction exists over Grewal.

Rule 19's requirement that Grewal participate in Plaintiffs' claims against State should come as no surprise to Grewal. Grewal's lawsuit in the Western District of Washington named Defense Distributed and the Second Amendment Foundation as Defendants. *See Wash. I*, Dkt. 1. When those parties moved to dismiss, Grewal successfully opposed dismissal, contending that "the Private Defendants," including Defense Distributed and the Second Amendment Foundation, were "necessary parties to the suit." *Wash. I*, Dkt. 119 at 4; *see id.* at 1, 9–12 (contending that Defense

---

[1] There may be additional parties whose presence is required by Rule 19; however, those questions are beyond the limited scope of this brief, which addresses only the motion to sever brought by Grewal.

Distributed and the Second Amendment Foundation were "named as necessary parties pursuant to Federal Rule of Civil Procedure 19(a)").

Rule 19 required Defense Distributed to be present in Grewal's lawsuit against State in the Western District of Washington, and that same Rule requires Grewal's presence in this suit. When Defense Distributed contended that "the settlement agreement in the Texas case [was] not the 'true subject' of" *Wash. I*, Dkt. 119 at 7, Grewal disputed that analysis, emphasizing that the purpose of the *Wash. I* action was to "affect[] the status of federal law regulating [the] activities" of Defense Distributed. *Id.* at 11–12. In light of Grewal's involvement in the claims against the Department of State and because "disposing of the action in [his] absence may . . . leave [State] subject to a substantial risk of . . . inconsistent obligations" to Grewal and to Plaintiffs, Fed. R. Civ. P. 19(a)(1)(B)(ii), Grewal is properly joined with State as a defendant with respect to those claims.[2] *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 408–09 (3d Cir. 2017) (where a defendant is a "required party" under Rule 19, it is not "permissible to sever claims against this defendant"); *see also Balboa v. Metso Minerals Indus., Inc.*, No. 18-cv-9968, 2019 WL 8888170, at *3 (E.D. La. Jan. 2, 2019) ("Although Rule 21 allows the Court to 'add or drop a party' or 'sever any claim against a party,' the Court may not drop or sever the claim of a Rule 19 required party.").

**B. The Claims Against Grewal Are Not "Unrelated" To The Claims Against State And Severance of the Claims Would Be Inefficient.**

---

[2] Whether other persons who are currently absent from this litigation are required parties within the meaning of Rule 19 may be considered separately at an appropriate time. For the purposes of Grewal's currently-pending motion, Defendants merely observe that Grewal satisfies the standards of Rule 19, and it would be improper under that Rule, and inconsistent with the efficient litigation of this action, to sever Grewal from the claims against State.

"To determine whether a claim should be severed" when the "requirements . . . for permissive joinder are satisfied," courts may consider the following factors: "(1) whether the claim arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and, (5) whether different witnesses and documentary proof are required for separate claims." *Malone*, 922 F. Supp. 2d at 555, 561. These factors weigh heavily against severance of the claims against Grewal.

The first two factors "track the two-prong test created by Rule 20" for permissive joinder, *Id.* (citation omitted). For the same reasons that Plaintiffs' claims against State are properly joined with Plaintiffs' claims against Grewal, those two factors weigh against severance of the claims on relatedness grounds. Severance would also fail to promote judicial economy and efficiency. As noted above, this Court is among the most familiar with the functional nature of the 3-D firearms technical data and the First Amendment issues that are at the core of the Second Amended Complaint and repeatedly raised in Plaintiffs' claims. *See Defense Distributed v. Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015). This Court can therefore, in a single proceeding, "resolve these [claims] efficiently given its familiarity with the legal, factual and practical issues involved in this litigation." *Adams v. Big Lots Stores, Inc.*, 2009 WL 2160430, at *5 (E.D. La. July 16, 2009). Nor would it promote judicial economy to sever Plaintiffs' claims against Grewal from those against State, potentially obligating the Court to consider, later in these proceedings whether Grewal is a "required party" under Rule 19. *See* Fed. R. Civ. P. 19(a)(2); *supra*, p. 11 n.2.

The fourth and fifth factors also favor denying Grewal's motion to sever, or, are neutral at best. The fourth factor requires the Court to consider "whether prejudice would be averted by

12

severance."   Here, prejudice would be *caused* by severance, because it would require the Department of State to litigate the claims against it for allegedly failing to carry out activities under the settlement agreement without the presence of Grewal, who sought a court order to prevent State from carrying out those activities.   The final factor also weighs against severance, as there will be substantial overlap in the witnesses and documentary proofs presented for each claim.

## II.  TRANSFER IS NOT WARRANTED.

28 U.S.C. § 1404(a) authorizes transfer "[f]or the convenience of parties and witnesses [and] in the interest of justice."  In moving to transfer claims under § 1404(a), a party "who seeks the transfer must show good cause."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (citation omitted).  "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled, . . . [so] when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id.* The Fifth Circuit has articulated a non-exclusive, non-exhaustive list of public and private interest factors for analyzing a requested transfer, none of which have "dispositive weight."  *Id.*  A set of "private interest" factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.*  A set of "public interest" factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.*

28 U.S.C. § 1406(a) allows a district court to transfer "a case laying venue in the wrong division or district" as an alternative to dismissal. "If the original federal forum is a proper venue, transfer of the action may be ordered under Section 1404(a), and Section 1406(a) is inapplicable." Wright & Miller, *Federal Practice and Procedure*, § 3827. This question—whether venue is "wrong" or "improper"—is generally governed by 28 U.S.C. § 1391. That provision states that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper" and § 1406(a) does not apply. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013).

Because the claims against Grewal should not be severed from the claims against State, and because Grewal has not shown—or even argued—that the case should be transferred in its entirety, Grewal has not met his burden to demonstrate that transfer is warranted and the motion should be denied. The motion should also be denied because the private and public interest factors for transfer have not been met, and it would not be in the interests of justice to utilize 28 U.S.C. § 1404(a) to order a transfer of this case. Finally, the case was not filed in the wrong district as is required to invoke 28 U.S.C. § 1406(a).

**A. The Private and Public Interest Factors Do Not Weigh in Favor of Transfer Under Section 1404(a).**

### 1. The Private Interest Factors Do Not Support Transfer.

As set out above, courts considering transfer under Section 1404(a) weigh a number of non-exhaustive "private interest" factors, which include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315.

Grewal summarily contends that the first three factors favor transfer because Plaintiffs' Commerce Clause claims and challenge to Section 2C:39-9(l)(2) turn on New Jersey law and would require sources of proof in New Jersey. Dkt. 121 at 9–10. "The movant bears the burden to show that transfer will result in more convenient access to *specifically-identified* and *material* sources of proof." *Hammers v. Mayea-Chang*, No. 2:19-cv-181-JRG, 2019 WL 6728446, at *7 (E.D. Tex. Dec. 11, 2019) (emphasis added). "A movant fails to meet that burden when it merely offers generalized statements that do not specify the format, relevance, or identity of particular documents or physical evidence." *Id.* (citing *Invitrogen Corp. v. Gen. Elec. Co.*, No. 6:08-cv-113, 2009 WL 331889, at *2 (E.D. Tex. Feb. 9, 2009)). A generalized reference to out-of-state witnesses also does not suffice. This is because there are multiple ways in which the same evidence may be presented, including expert testimony, deposition designations, live witness testimony, or any other method of presenting proof. *See Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012); *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978).

Here, Grewal has offered nothing more than a single conclusory statement that "the [unspecified] sources of proof (including non-party witnesses) are all in New Jersey." Dkt. 121 at 10. His general reference to witnesses in New Jersey is insufficient to satisfy the first three factors

and ignores Plaintiffs' potential witnesses.  What is more, Grewal wholly fails to address the private interest factors as they relate to the Department of State.  Grewal falls far short of showing that these factors favor transfer.

The fourth factor asks the Court to consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315.  Grewal contends that the fourth factor favors transfer because, absent transfer, "this Court will have to resolve . . . threshold issues to establish personal jurisdiction" and Grewal will have to litigate Plaintiffs' claims in two forums.  Dkt. 121 at 13–14.  Grewal contends he should not be forced to fight a "two-front battle."[3]  But if the Court grants Grewal's request, severs the claims against Grewal from the claims State, and transfers the claims against Grewal to New Jersey, then *Plaintiffs* will still be required to "fight a two-front battle," as Grewal puts it: one against the Department of State in Texas and one against Grewal in New Jersey.  And as explained above, these claims are factually and legal intertwined, and should be litigated in the same forum.  *See supra*, pp. 7–8.  The fourth factor does not favor transfer.

### 2.  The Public Interest Factors Do Not Support Transfer.

Courts considering transfer under § 1404(a) must also weigh a number of non-exhaustive "public interest" factors, which include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen*, 545 F.3d at 315.

---

[3]  As explained below, Grewal is not fighting a "two-front battle," as he successfully sought a stay of the New Jersey action "pending final resolution of the Texas action." *Defense Distributed et al. v. Grewal*, 3:19-cv-4753-AET-TBJ, Dkt. 20 at 2 (D. N.J. Mar. 3, 2019).

New Jersey may have an interest in having New Jersey law construed by a New Jersey federal court. *See Defense Distributed v. Grewal*, 971 F.3d 485, 499 n.3 (5th Cir. 2020) (Higginson, J., concurring). But when Defense Distributed filed suit against Grewal in New Jersey challenging the constitutionality of N.J. Stat. § 2C:39-9(*l*)(2), it was Grewal who sought a stay of the suit in New Jersey "pending final resolution of the Texas action." *Defense Distributed et al. v. Grewal*, 3:19-cv-4753-AET-TBJ, Dkt. 20 at 2 (D. N.J. Mar. 3, 2019). Grewal's actions in New Jersey thus cut against his argument that New Jersey law should be construed by a New Jersey federal court. And though Grewal contends that "§ 2C:39-9(l)(2) . . . has no connection to Texas, and . . . was not even the subject of the cease-and-desist letter on which Plaintiffs rely to claim personal jurisdiction," *Defense Distributed II*, Dkt. 121 at 7, Plaintiffs allege that Grewal's efforts to enforce § 2C:39-9(l)(2) is part of a series of related steps targeting Plaintiffs. *See* Dkt. 117 ¶¶ 148, 149; *supra*, pp. 6–7.

Moreover, this Court is well-versed in the complex First Amendment issues at the center of this case, and thus, is familiar with much of the "law that will govern the case." *Volkswagen*, 545 F.3d at 315; *see supra*, p. 12. This Court is also the most familiar with the lengthy procedural history and law of the case, including several Fifth Circuit opinions on the legal and factual issues previously litigated in this case. On balance, the public interest factors do not weigh in favor of transfer.

### B. It would not be in the interests of justice to transfer pursuant to 28 U.S.C. § 1404(a).

Grewal's motion to transfer this case under Section 1404(a) should also be rejected because it is not in the interests of justice. The "interests of justice" prong of the analysis involves equitable considerations, and the history of this dispute weighs against permitting Grewal to assert his

convenience as the basis for a transfer.  When Grewal and others filed suit in *Wash. I*, they haled the Department of State and the Plaintiffs in this action into a distant venue, notwithstanding the fact that the roots of that dispute arose out of a settlement agreement entered into to resolve litigation in *this* Court.  *See Wash. I*, Dkt. 1.  Defense Distributed—a party more impacted by Plaintiffs' forum choice than the United States, which litigates claims nationwide—sought dismissal, and Grewal successfully advocated for Defense Distributed's continuing presence in litigation in that forum.  Grewal has, through his own litigation choices, interwoven himself in the litigation between Defense Distributed and State, and equity is not an escape hatch through which he can avoid his previous litigation choices by now asserting that New Jersey would be a more convenient forum.

### C.  28 U.S.C. § 1406(a) is inapplicable because venue is available in this district.

Finally, Grewal's reliance on § 1406(a) as an alternate basis for transfer is inapposite.  Transfer pursuant to 28 U.S.C. § 1406(a) is available only if venue is not available in this district.  *See Cabrales-Huerta v. United States*, 2007 WL 1512025, at *2 (W.D. Tex. May 18, 2007).  "If the Court finds that venue is proper in the Western District, a transfer under § 1406(a) is unavailable."  *Id.* (citing *Time, Inc. v. Manning*, 366 F.2d 690, 699 (5th Cir. 1966)); *see also Gummow v. Snap-On Tools*, 2008 WL 4349027, at *4 (N.D. Tex. Sept. 22, 2008).  Here, venue is proper in this district because a "substantial part of the events or omissions giving rise to the claim occurred" in this district and "a substantial part of property that is the subject of the action" is also located in this district.  28 U.S.C. § 1391(b).  The Department of State and Plaintiffs reached a settlement agreement based on a lawsuit litigated in this district and, as Grewal concedes, that settlement agreement is central to Plaintiffs' claims against State.  That satisfies the criteria that a

"substantial part of the events" giving rise to Plaintiffs' claims occurred in this district.  Likewise,

Plaintiffs alleged that "Defense Distributed's property" is located in this district.  Dkt. 117 ¶ 32–

33.  Because venue is proper in the Western District of Texas, transfer under § 1406(a) is

unavailable.

**CONCLUSION**

For the foregoing reasons, Grewal's motion to sever and transfer (Dkt. 121) should be

denied.

Dated: January 11, 2021               Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

<u>/s/ Lisa Newman</u>
Lisa Newman
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Rm. #12016
Washington, DC 20005
Tel.: (202) 353-5882
lisa.n.newman@usdoj.gov

Gregg N. Sofer
United States Attorney

Liane Noble
Assistant United States Attorney
Texas Bar No. 24079059
903 San Jacinto Blvd., Suite 334
Austin, Texas  78701
Tel.: (512) 370-1252
liane.noble@usdoj.gov

*Counsel for Federal Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing document was served on the other parties to this action and their counsel of record through electronic filing in the Court's ECF system on January 11, 2021.

/s/ *Lisa Newman*
Lisa Newman