THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 1:18-CV-637 |
| vs. | ) ) | |
| GURBIR S. GREWAL, in his official capacity as New Jersey Attorney General, et al. | ) ) ) | |
| *Defendants.* | ) | |

**DEFENDANT GURBIR S. GREWAL'S REPLY IN SUPPORT OF HIS MOTION TO SEVER AND TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) AND 28 U.S.C. § 1406(a)**

1

Defendant Gurbir S. Grewal, the Attorney General of New Jersey (NJAG), submits this reply brief in support of his motion to sever and transfer venue. (Dkt. 121).

## INTRODUCTION

At its core, this is a simple motion: to recognize that claims seeking to prevent enforcement actions by a New Jersey public official under New Jersey state law best belong in New Jersey. As Judge Higginson previously explained, it makes good sense that a challenge to any state official's enforcement action would be litigated in that official's home state, just as every other challenge to any state official's enforcement action has been in the past. Granting the request to transfer to the District of New Jersey under 28 U.S.C. § 1404(a) makes that possible.

Although Plaintiffs amended their complaint years into this case to add State Department officials (collectively, "State Department") as defendants and assert a slew of claims against them, that does not change the reality of where claims against New Jersey belong. Most notably, despite efforts by the State Department to weigh in on where these claims against a sovereign state may be pursued, the State Department fails to justify why the claims against the United States and against the NJAG *must* be litigated as one—let alone in Texas. The truth is, the State Department has failed to identify even one viable overlapping claim against the NJAG and State Department. Indeed, the only remotely overlapping claim against the two alleges a violation of *state* law by the NJAG, which is quite obviously barred by sovereign immunity and thus is no basis to justify maintaining this case in Texas. There are no other sufficiently overlapping claims that justify keeping a challenge to the enforcement action of a New Jersey public official in Texas courts. And, were it really so important for Plaintiffs to litigate against both New Jersey and the State Department in a single lawsuit, they could have pursued their claims in the District of New Jersey, where Plaintiffs have already filed a similar action and all defendants are amenable to suit.

But the problems with Plaintiffs' and the State Department's arguments run even deeper. Simply put, neither can overcome the fact that consolidating all of Plaintiffs' claims in this District would be considerably *less* efficient than severance. Most obviously, this Court would have to grapple with significant jurisdictional defects that do not exist in the District of New Jersey, including whether personal jurisdiction exists to challenge New Jersey's separate criminal statute, or whether it still exists once additional evidence is adduced. While that alone weighs heavily in the analysis, other considerations point the same way—including New Jersey's interest in having challenges to its state laws heard by local courts and the need to avoid circuit splits on the *meaning* of state laws. Only severance and transfer can resolve these concerns.

## ARGUMENT

### I.     Plaintiffs' Claims Against the NJAG Should Be Severed.

As the NJAG explained in its opening brief, the severance inquiry is guided by whether (1) "the claims arise out of the same transaction or occurrence," (2) "the claims present some common questions of law or fact," (3) "settlement of the claims or judicial economy would be facilitated" by severance, (4) "prejudice would be avoided if severance were granted," and (5) "different witnesses and documentary proof are required for the separate claims." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014). Because the NJAG seeks to sever *and* transfer claims, the inquiry must be "more focused on judicial efficiency" than other considerations. *Id.* at 680. Judicial efficiency would clearly be served by a transfer.

As a threshold matter, the State Department misunderstands the relevant inquiry. Although the State Department argues that it was properly joined as a party, Dkt. 134-1 at 5-8, this is simply a strawman. To be clear, the NJAG does not argue *improper* joinder as the basis for its motion, and a finding of misjoinder is categorically not a prerequisite to ordering severance and transfer of

particular claims. *See United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1980); *Acevedo-Garcia v. Monroig*, 351 F.3d 457, 560 n.5 (1st Cir. 2003) ("the prevailing rule in our sister circuits is that a finding of misjoinder is not a prerequisite to severing parties or claims under Rule 21") (citing cases); *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 722 (W.D. Tex. 2008) ("Rule 21 is an appropriate vehicle to sever or dismiss the claims of even properly joined parties."); *El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 959 (S.D. Tex. 2001) (same); *Gonzalez v. Degollado*, 2020 WL 1955251, at *2 (S.D. Tex. Apr. 22, 2020) (same). Rather, the NJAG maintains that severance is warranted because there are two sets of entirely separate claims arising out of distinct actions—one against the State Department, and the other against the NJAG—such that consolidating all claims in this district undermines judicial economy. Dkt. 121 at 17-20. That is the question this Court must ultimately decide at this stage.

When it does turn to the relevant factors, the State Department errs again. For starters, with respect to the first two factors—whether the claims arise out of the same transaction or occurrence and whether they share common questions of law and fact—the State Department conjures up a factual nexus where none exists by arguing that Plaintiffs' contracts claim (Count Five) and tortious interference claim (Count Sixteen) fit the bill. Dkt. 134-1 at 5-8. However, Count Five concerns whether the State Department failed to perform its obligations under the Settlement Agreement, whereas Count Sixteen concerns the distinct question of whether NJAG's decision to join nineteen other states as a plaintiff in suing the Federal Government over regulatory changes it planned to make (the "Washington Action") qualified as tortious interference. Crucially, as Plaintiffs concede, the Washington Action "never sought relief against the Settlement Agreement" and was limited to whether the State Department's regulations violated the Administrative Procedure Act, SAC, ¶ 98, which is unrelated to whether the State Department breached the

Settlement Agreement. As the district court in the Washington Action noted, that "claim had nothing to do with the facts or law at issue between the existing parties" to the Texas litigation that was resolved by Settlement Agreement. *Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1256 (W.D. Wash. 2018). Any connection to the Settlement Agreement is thus insufficient to show the contract and tortious interference claims arise out of the same transaction or occurrence, which requires that they share a common "nucleus of operative facts or law." *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 2019 WL 9899507, at *12 (E.D. Tex. Mar. 27, 2019). Indeed, there is no better proof than the Washington District Court's decision explicitly finding as much.

Even accepting the State Department's argument that those two claims share underlying facts, which the NJAG does not, this would still be far from enough. For one, this still would at best just identify *one* claim against the NJAG that arises out of similar facts to those underlying the claims against the State Department.[1] More importantly, however, the State Department ignores that the tortious interference claim against the NJAG has no place in this court *anyway*, meaning it is not a basis to keep these claims together in this forum. Indeed, it is black letter law that a tortious interference claim alleging a state official has violated *state* law is barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (federal courts may not grant relief based on claims state officials did not conform to state law, as *Ex Parte Young* does not apply to claims for prospective relief against state officials under state law); *In re Abbott*, 956 F.3d 696, 721 (5th Cir. 2020) (same). In other words, the only potentially

---

[1] Count Fourteen against the NJAG does not overlap with claims against the State Department. *See* Dkt. 134-1 at 6. This claim alleges that the NJAG violated federal regulations by "regulat[ing] conduct that the federal government has expressly authorized." SAC, ¶ 307. This is a challenge to the NJAG's cease-and-desist letter and N.J. Stat. Ann. § 2C:39-9(*l*)(2), the only conduct allegedly "regulating" Plaintiffs' activities, and not to actions in the Washington Action that potentially overlap with the facts underlying Plaintiffs' claims against the State Department.

overlapping claim is one that this Court cannot adjudicate because it is not properly in *any* federal court.[2] Plaintiffs' inclusion of a meritless state law claim cannot justify refusing to sever and transfer any claims against the NJAG, particularly as the remaining *eight* claims against the NJAG do not overlap at all with the claims against the State Department.

The State Department's argument that Plaintiffs' First Amendment claims involve common questions of law, Dkt. 134-1 at 7-8, also glosses over the fact that the respective claims concern independent questions of constitutional law based upon unrelated governmental actions. While Plaintiffs' claim against the State Department is a prior-restraint challenge based on federal regulations' requirement of a license to publish files, SAC, ¶ 82, the crux of Plaintiffs' claim against the NJAG is that § 2C:39-9(*l*)(2) is a content-based restriction on speech, *see id.*, ¶¶ 142-146.[3] Further, the federal regulations and § 2C:39-9(*l*)(2) define differently which files come within each law's reach, with New Jersey's definition more limited to files that can automatically be converted to 3D guns. *Compare* 22 C.F.R. §§ 121.1, 120.10 (defining the "defense articles" and "technical data" covered by federal law), *with*, N.J. Stat. Ann. § 2C:39-9(*l*)(2) (covering "computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program" a 3D printer to produce firearm components). That

---

[2] Indeed, that may be why Plaintiffs did not even pursue this claim when they filed their Amended Complaint in the District of New Jersey. No. 3:19-cv-4753-AET (D.N.J.), Dkt. 17.

[3] The State Department erroneously states that Plaintiffs allege the NJAG "enforce[d] Section (l)(2)" against them. Dkt. 134-1 at 7. The NJAG has taken no such action, Plaintiffs make no such allegation, and § 2C:39-9(*l*)(2) was enacted four months after the NJAG's July 2018 cease-and-desist and state court suit, the only enforcement activity at issue in this case. *See* SAC, ¶ 141.

means that even the threshold question of whether the challenged law implicates protected speech will require separate analyses for the respective claims against each Defendant.[4]

The State Department's alternative claim that severance would require the Court to later determine whether the NJAG is a Rule 19 mandatory party is also easily dispensed with. *Id*. First, the State Department fails to provide a plausible explanation as to how disposing the claims against it will "impair or impede" the NJAG's ability to protect his interests.[5] To the contrary, severance and transfer *protects* the NJAG's interests of having local courts adjudicate challenges to New Jersey laws and avoiding the risks of contradictory interpretations of § 2C:39-9(*l*)(2) by Texas and New Jersey courts. Second, there is no basis for the State Department's claim that it would face "inconsistent obligations from contradictory court orders in Texas and New Jersey" due to the NJAG's absence. *Id.* at 10. If this motion is granted, the only party in the District of New Jersey will be the NJAG, and that court will be unable to impose any obligations on the State Department.

Finally, the State Department erroneously claims that it would be prejudiced by severance because the NJAG successfully "sought a court order" in the Washington Action to enjoin the agency's unlawful actions implementing the Settlement Agreement. *Id.* at 13. Clearly, neither the State Department nor Plaintiffs actually believes this claim because no one is arguing that all *nineteen* other plaintiff states in that action must be joined as necessary parties here. To the degree the proceedings in that action are relevant to Plaintiffs' claims against the State Department, those

---

[4] The State Department ignores these distinctions and argues that severance would be inefficient because of this Court's familiarity with printable guns and the relevant First Amendment issues. Dkt. 134-1 at 12. But that is outweighed by the District of New Jersey's and Third Circuit's expertise in New Jersey's statutes governing firearm safety, which play a central role in evaluating Plaintiffs' challenge to § 2C:39-9(*l*)(2), given that Defense Distributed seeks to circumvent that entire regulatory framework by making printable gun files available to anyone via the internet.

[5] Instead, the State Department cites to statements from the Washington Action involving federal regulations not at issue in Plaintiffs' claims against the NJAG. *Id.* at 9-10.

are all available on the public docket, making the NJAG's presence as a party unnecessary.[6]

## II.   The Claims Against the NJAG Should Be Transferred To New Jersey.

The NJAG's position is straightforward: the claims against him are severable and should be transferred under 28 U.S.C. §§ 1404 and 1406. The NJAG does not seek transfer of the entire action, and so is not required to show that Plaintiffs' separate claims against the State Department meet the criteria for transfer, as the agency erroneously suggests. Dkt. 134-1 at 14, 16, 18. Instead, when this Court considers the claims against *New Jersey*, transfer is plainly warranted.

### A.   Transfer is Appropriate Under 28 U.S.C. § 1404(a).

The private and public interests overwhelmingly support transfer, and neither Plaintiffs nor the State Department have shown otherwise. As the NJAG's moving brief explains, keeping the claims against the NJAG in this District consumes *more* judicial resources to adjudicate the multiple threshold jurisdictional issues, which all cease to exist if the claims against the NJAG are transferred. Dkt. 121 at 19-20. Indeed, Plaintiffs' assertion that "[t]here are no more issues of personal jurisdiction to litigate" grossly misrepresents the Fifth Circuit's opinion. Dkt. 135 at 2. First, as the NJAG's moving brief explains, the panel found jurisdiction exists only as to claims "based on Grewal's cease-and-desist letter," Dkt. 121 at 10, and did not assess personal jurisdiction as to claims against § 2C:39-9(*l*)(2), as no such claims were in the pleading before it. *Id.* at 10-11. The panel also did not reach the long-arm statute, which it found waived vis-à-vis Plaintiffs' original complaint but would be relevant to the Second Amended Complaint. *Id.* at 13. Second, the panel made clear it was reaching its decision based solely on the allegations before it, meaning a Texas court will have to continually reassess personal jurisdiction as additional facts develop—

---

[6] Likewise, the State Department cannot substantiate its conclusory claim that Plaintiffs' separate sets of claims have "substantial overlap in the witnesses and documentary proofs." *Id.*

a non-issue in the District of New Jersey. And finally, for the Court's reference, the NJAG in January 2021 filed a petition for certiorari in the U.S. Supreme Court seeking review of the Fifth Circuit ruling. *See* Supp. Decl. of Casey Low, Ex. A. That possibility, too, may ultimately have a significant impact on the propriety of jurisdiction in this court.

Plaintiffs' and the State Departments' arguments on the remaining public interest factors fare no better. Although Plaintiffs and the State Department claim the NJAG's securing a stay of the action filed in New Jersey undermines the NJAG's interest in having local courts construe New Jersey laws, *see* Dkt. 134-1 at 17; Dkt. 135 at 3-4, that claim patently misrepresents the NJAG's position in the Third Circuit. As that court explicitly found, the NJAG said "he was prepared to defend this action in the District of New Jersey, but that because [Plaintiffs] are pursuing the Texas action, the Attorney General is required to only defend in the first-filed Texas action." *Defense Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193, 197 (3d Cir. 2020). The NJAG has consistently maintained that Plaintiffs' claims are not properly before this Court and that as long as Plaintiffs seek to preserve this action, they may not pursue duplicative litigation as an insurance policy.

The State Department's argument as to the third factor is equally unpersuasive. Dkt. 134-1 at 17. The District of New Jersey and Third Circuit have greater familiarity with New Jersey's overall statutory framework and have a greater ability to certify questions to New Jersey courts, and those courts are equally familiar with the factual and procedural history as a result of Plaintiffs' parallel New Jersey action. *Defense Distributed v. Att'y Gen. of N.J.*, 972 F.3d at 196-97 (summarizing history of these suits). Given this case's "potential to affect a state regulatory scheme," New Jersey's interest in local adjudication of Plaintiffs' claims favors transfer. *Interlink Prods. Int'l, Inc. v. Crowfoot*, 2020 WL 6707946, at *10 (D.N.J. Nov. 16, 2020) (finding public interest factors warrant transfer of similar claims against nonresident state official).

As for the fourth factor, Plaintiffs' argument that no venue problem results from that the risk of conflicting rulings outlined in the NJAG's moving brief, Dkt. 135 at 3, overlooks that conflicts "in the application of foreign law" are expressly part of the transfer inquiry. *Volkswagen*, 371 F.3d at 203. Further, Plaintiffs' claim that "preclusion doctrines" resolve any conflict is unpersuasive. Dkt. 135 at 3. For one, Defense Distributed named additional plaintiffs to the New Jersey action who are not parties here, and those plaintiffs may argue that a judgment in this case does not have res judicata effect as to them. For another, preclusion rules would only prevent the parties in this and the New Jersey action from re-litigating these issues, but would not prevent an inter-circuit conflict on the meaning of § 2C:39-9(*l*)(2) that arises when New Jersey state courts in future actions adopt a meaning of § 2C:39-9(*l*)(2) in conflict with this Court's interpretation.

Ultimately, the private interests point in the same direction. With respect to the first three private interests, the State Department argues the NJAG must point to New Jersey-based sources of proof with greater specificity. Dkt. 134-1 at 15-16. But the fact that sources of proof are located in New Jersey is obvious from the nature of the claims. The NJAG officials and staff who were involved in preparing the cease-and-desist letter sent to Defense Distributed are necessarily based in New Jersey, as are any documents generated by those individuals. Similarly, with respect to the New Jersey Legislature's enactment of § 2C:39-9(*l*)(2), any officials with knowledge of legislative intent are necessarily based in New Jersey. Notably, neither the State Department nor Plaintiffs identifies any witnesses or sources of proof *not* based in New Jersey.

As to the fourth private interest, the State Department complains that transfer would require Plaintiffs to fight a two-front battle against the NJAG in New Jersey and the State Department in Texas. *Id.* at 16. But this is due to Plaintiffs' own choice to sue these parties, which will require Plaintiffs to simultaneously prosecute these two sets of claims no matter where they are venued.

Plaintiffs cannot object to litigating their claims against the NJAG and the State Department separately, given their decision not to join the State Department in the already-pending New Jersey action. Moreover, the State Department again ignores that severance and transfer would *reduce* the resources required of Plaintiffs to litigate these two cases because transfer would allow Plaintiffs to *immediately* seek relief against the NJAG, rather than seeing the case slowed by jurisdictional issues. Given the efficiencies of transfer, the private interests weigh in its favor.

### B.    Transfer is also Warranted Under 28 U.S.C. § 1406(a).

In opposing a § 1406 transfer, the State Department argues only that Plaintiffs' claims against *the State Department* are properly venued in this district and thus should not be transferred. *Id.* at 18-19. This is not responsive to any aspect of New Jersey's argument, which is only that the claims against *the NJAG* should be transferred under § 1406. Dkt. 121 at 16-17. No party contends that the events giving rise to the claims against the NJAG occurred in Texas. Similarly, the State Department's arguments about the 'interests of justice' prong—which falls under § 1406, not § 1404(a)—focus on irrelevant issues. Dkt. 134-1 at 17-18. This prong "does not focus on the interest of the individual parties but on the efficient administration of the court system." *Jones v. TEPPCO Terminaling & Mktg. Co., LLC*, 2011 WL 8198697, at *3 (S.D. Miss. Dec. 22, 2011). The State Department's complaints about venue in the Washington Action have nothing to do with whether Plaintiffs' forum-shopping in *this* action advances justice. And the State Department ignores that Plaintiffs already asserted these claims against the NJAG in the District of New Jersey, foreclosing any argument that litigating against the NJAG in New Jersey is inequitable.

### CONCLUSION

The Court should sever Plaintiffs' distinct claims against the NJAG and transfer these claims to the District of New Jersey.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2021, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Casey Low*

Casey Low