IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:18-CV-637-RP |
| GURBIR S. GREWAL, et. al., | § § § | |
| Defendants. | § | |

# ORDER

Before the Court is Defendant Gurbir S. Grewal, the Attorney General of New Jersey's ("NJAG") motion to sever and transfer venue to the United States District Court for the District of New Jersey. (Dkt. 121). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

## I. BACKGROUND

Plaintiffs Defense Distributed and the Second Amendment Foundation, Inc. ("Plaintiffs") bring seventeen claims against Defendants United States Department of State (the "State Department"), Michael R. Pompeo, former United States Secretary of State, Directorate of Defense Trade Controls, Sarah Heidema, Director of the Office of Defense Trade Controls, Mike Miller, the United States Department of State's Deputy Assistant Secretary of State for Defense Trade in the Bureau of Political-Military Affairs, (collectively, "Federal Defendants"), and Gurbir Grewal, the NJAG (together with Federal Defendants, "Defendants"). Plaintiffs brings this suit against Defendants based on alleged federal and state law violations. (*See* 2d Am. Compl., Dkt. 117).

Before joining Federal Defendants to this lawsuit, Plaintiffs claims as to the NJAG revolved around the NJAG's 2018 cease-and-desist letter warning Defense Distributed that its dissemination

1

of printable gun files to New Jersey residents constituted a violation of New Jersey law. (2d Am. Compl., Dkt. 117, at 38–40). Plaintiffs also filed a lawsuit against the NJAG in the District of New Jersey (the "New Jersey Suit"), alleging substantially similarly causes of action. *Defense Distributed v. Att'y Gen. of N.J.*, No. 3:19-cv-4753, Dkt. 17 (D.N.J. Feb. 2, 2019). That action was stayed pending the resolution of this first-filed action. *Def. Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193, 196–97 (3d Cir. Aug. 25, 2020). This Court previously dismissed Plaintiffs' claim against the NJAG for lack of personal jurisdiction. (Order, Dkt. 100, at 15; Final J., Dkt. 101). Plaintiffs appealed this Court's decision to the Fifth Circuit, which found that personal jurisdiction existed over the NJAG for the claims alleged in Plaintiffs' first amended complaint, namely because Plaintiffs' alleged injuries are "directly attributable to the cease-and-desist letter" the NJAG sent to Defense Distributed asking them to "to cease and desist from publishing printable-gun computer files for use by New Jersey residents." (Cease-and-Desist Letter, Dkt. 117-8); *Def. Distributed v. Grewal*, 971 F.3d 485, 496 (5th Cir. 2020), *cert. denied sub nom. Grewal, Att'y Gen. Of NJ v. Def. Distributed, Et Al.*, No. 20-984, 2021 WL 1163750 (U.S. Mar. 29, 2021).

Plaintiffs' second amended complaint, filed after the Fifth Circuit issued its mandate, added the Federal Defendants to this action based on their alleged failure to comply with the terms of a 2018 settlement agreement between Defense Distributed and the State Department to resolve litigation in this district regarding federal regulation of printable gun files. (*See* 2d Am. Compl., Dkt. 117, at 25). Under the terms of the settlement, the State Department agreed to promulgate rules creating an exception to various regulations for Defense Distributed's publication of printable gun files. (*Id.* at 25–28; Settlement Agreement, Dkt. 117-1). In their second amended complaint, Plaintiffs also complain of the NJAG's role in challenging actions taken by the State Department pursuant to the settlement agreement that would have allowed Defense Distributed to evade compliance with federal regulations regarding the international traffic of arms. (*Id.* at 19–39).

On July 30, 2018, the NJAG, along with other state attorneys general, initiated an action in the United States Court for the Western District of Washington (the "Washington Suit"), claiming that certain actions taken by the State Department to fulfill its settlement agreement with Defense Distributed violated the Administrative Procedures Act ("APA"). (Dkt, 117, at 30); *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL (W.D. Wash. 2018). The United States Court for the Western District of Washington granted summary judgment to the NJAG and the other state attorneys general on their APA claims, and vacated the State Department's actions that violated the APA. (Dkt. 117, at 32–33); *Washington v. United States Dep't of State*, 420 F. Supp. 3d 1130, 1148 (W.D. Wash. 2019), *appeal dismissed sub nom. State v. Def. Distributed*, No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020). The Ninth Circuit dismissed Defense Distributed's appeal of the decision, as well as its motion for reconsideration en banc. (*Id.* at 34); *State v. Def. Distributed*, No. 20-35030, Dkt. 32 (9th Cir. Jan. 5, 2021). Plaintiffs now allege that the NJAG's successful legal challenge to the State Department's unlawful actions constitutes tortious interference. (Dkt. 117, at 80–82). In their second amended complaint, Plaintiffs also bring new claims against NJAG based on New Jersey's passage of Senate Bill 2465, a portion of which criminalizes the manufacturing of printable guns in New Jersey ("§ 2C:39-9(l)(2)"). (2d Am. Compl., Dkt. 117, at 40–44, 79–80).

The NJAG now moves to sever the claims against him and transfer those claims to the United States District Court for the District of New Jersey, where Plaintiffs have filed the New Jersey Suit alleging the same claims against the NJAG. (Mot. Transfer, Dkt. 121, at 9–10). Plaintiffs filed two responses in opposition to the NJAG's motion, (Dkts. 124, 135), and Federal Defendants also filed a response, (Dkt. 136). The NJAG filed a reply in support of their motion, (Dkt. 141).

## II.  LEGAL STANDARD

### A.  Motion to Sever

District courts have broad discretion when deciding a motion to sever. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). Generally, courts consider the following factors when evaluating a motion to sever under Federal Rule of Civil Procedure 21: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, 2012 WL 4442368, at *1 (N.D. Sept. 26, 2012).

When a motion to sever is combined with a motion to transfer, however, this analysis is "collapsed into an inquiry into the relative merits of convenience versus judicial economy." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014). Where an action may have been brought against defendants in the proposed transferee court, "the claims against those defendants may be severed and transferred while the other claims are retained in the original court." *Balthasar Online, Inc. v. Network Sols., LLC*, 654 F. Supp. 2d 546, 549–50 (E.D. Tex. 2009).

### B.  Motion to Transfer

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).[1] If so, the Court turns to

---

[1] Plaintiffs have already filed the New Jersey Suit against the NJAG in the United States District Court for the District of New Jersey and do not contest that venue is proper there. *See Def. Distributed v. Grewal*, D.N.J. No. 3:19-CV-4753, 2019 WL 462758.

consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

The relevant factors include matters of both private and public interest. *Volkswagen AG*, 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen AG*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 n.6 (2013). However, the plaintiff's venue choice "is neither conclusive nor determinative. *In Re: Horsehoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause": a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). But when the movant

demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

### III. DISCUSSION

#### A. Motion to Sever

The NJAG argues that Plaintiffs' claims against him should be severed because all the Rule 21 factors "weigh heavily in favor of severance." (Dkt. 121, at 24). The Federal Defendants respond that severance is inappropriate because the NJAG is properly joined and a necessary party to this action, and "Plaintiffs claims against State and Grewal are closely related." (Dkt. 136, at 5, 9). With regard to severance, Plaintiffs do not offer their own rebuttal but rather state that they "agree with and adopt the State Department's response." (Dkt. 135, at 2). Given that the NJAG does not argue that Defendants are improperly joined in this action, the Court will not address Federal Defendants' arguments on this point and will instead examine whether the factors elucidated in Rule 21 favor severance, with an emphasis placed on "judicial efficiency." *In re Rolls Royce Corp.*, 775 F.3d at 680.

First, the parties dispute whether the claims against the NJAG and the Federal Defendants arise out of the same transaction or occurrence. The parties' disagreement centers around whether the NJAG's filing of the Washington Suit, which successfully challenged certain actions taken by the State Department to comply with the settlement agreement, is part of the same transaction as the settlement agreement Plaintiffs claim Federal Defendants have failed to comply with as a result of the injunction issued in the Washington Suit. Indeed, Counts Fourteen and Sixteen complain of the NJAG's role in the State Department's failure to comply with the settlement agreement. (Dkt. 117, at 78, 80). Yet the parties all acknowledge that the Washington Suit, joined by 19 other state attorneys general, did not challenge the settlement agreement itself but rather certain actions taken by the State Department that violated with APA. The Federal Defendants even argue that all of Plaintiffs' nine claims against the NJAG relate to the 2018 settlement agreement, including Plaintiffs'

claims regarding the New Jersey Senate's passage of a criminal statute, § 2C:39-9(l)(2), arguing that the NJAG's actions "are part of a series of related steps all targeting Plaintiffs." (Dkt. 136, at 7).

"Transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a) if there is some connection or logical relationship between the various transactions or occurrences." *Americans for Fair Patent Use, LLC v. Sprint Nextel Corp.*, 2011 WL 98279, at *3 (E.D. Tex. Jan. 12, 2011). A relationship between transactions or occurrences is "logical" if there is some common nucleus of operative facts or law. *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993). There is no strict rule for determining what constitutes the same transaction or occurrence. *Guedry v. Marino*, 164 F.R.D. 181, 184 (E.D. La. 1995) (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ); *Corkern v. Hammond City*, 2012 WL 2597561, at *2 (E.D. La. July 5, 2012) ("transaction or occurrence" requirement is not a rigid test under joinder rules).

Here, Plaintiffs' claims against the Federal Defendants and the NJAG do not arise from the same transaction or occurrence, or series of transactions or occurrences. Instead, the occurrences that form the bases of Plaintiffs' claims against the NJAG and the Federal Defendants involved different parties and occurred in different places and at different times. Plaintiffs claims against the NJAG largely stem from the 2018 cease-and-desist letter, and other comments made by the NJAG, attempting to curb the dissemination of printable gun files to New Jersey residents, as well as New Jersey's recent passage of § 2C:39-9(l)(2), a criminal statute regarding printable gun files. (*See* 2d Am. Compl., Dkt. 117, at 70–86). While Plaintiffs also allege in Count Sixteen that the NJAG committed tortious interference, the NJAG rightly points out that this claim is likely barred by sovereign immunity. (Dkt. 141, at 5) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 106 (1984)). In any event, the Washington Suit challenged the State Department's violations of the APA, not the separate settlement agreement between Defense Distributed and the State Department. As such, Plaintiffs have not "identified any transaction or occurrence that factually connects all of the

7

Defendants in a relevant or material way." *Tompkins v. Able Planet Inc.,* 2011 WL 7718756, at *2 (E.D. Tex. Feb. 17, 2011).

Second, the Court finds that the claims against the NJAG and the Federal Defendants do not involve common issues of fact and law that would council against severance. Although the Federal Defendants are correct that many of Plaintiffs' claims involve the legal question of whether Defense Distributed's actions are protected by the First Amendment, this is not the case for *all* of Plaintiffs' claims as the Federal Defendants seem to suggest. (Dkt. 136, at 8). In addition, the distinct facts underlying Plaintiffs' claims against Federal Defendants and the NJAG demonstrate that severance would likely promote judicial economy, rather than hamper it. Indeed, Plaintiffs' claims against the Federal Defendants revolve around a 2018 settlement agreement regarding Defense Distributed's compliance with federal regulations, a settlement agreement to which the NJAG was not a party. (*See* 2d Am. Compl., Dkt. 117, at 49–70). Plaintiffs' claims against the NJAG, in contrast, stem from the enforcement actions taken by the NJAG to prevent Defense Distributed from providing printable gun files to New Jersey residents. (*See* 2d Am. Compl., Dkt. 117, at 70–86). Any factual overlap between the claims against the NJAG and the Federal Defendants stemming from the Washington Suit will have a miniscule effect on resolving Plaintiffs' claims and would hardly serve the interests of judicial economy. *See In re Rolls Royce Corp.*, 775 F.3d at 681 ("While judicial economy is not the sole consideration for a district court facing a severance-and-transfer motion, it retains a cardinal role.").

These findings also apply to the final factor, which the Court finds similarly weighs in favor of severance since all of Plaintiffs' claims against the NJAG will rely on evidence distinct from those claims against the Federal Defendants. While the claims against the NJAG will require discovery into "the meaning of New Jersey laws and the intent of the NJAG's cease-and-desisit letter," the claims against the Federal Defendants "largely turn on internal agency communications and potentially

testimony from agency officials related to the agency's implementation of the Settlement Agreement." (Dkt. 121, at 25). In support of their position on this factor, the Federal Defendants state that "there will be substantial overlap in the witnesses and documentary proofs presented for each claim." (Dkt. 136, at 13). Having offered no support for their conclusory statement, the Court rejects the Federal Defendants' one-line argument and finds that this factor weighs in favor of severance.

The Court similarly finds that the NJAG is not a necessary party to this action, as asserted by the Federal Defendants. (Dkt. 136, at 9). While Federal Defendants posit that the NJAG must remain in this action to avoid the potential for "inconsistent obligations," the Federal Defendants offer no concrete examples of how this could be so. The fact that the NJAG, joined by other state attorneys general, successfully challenged unlawful actions by the State Department pursuant to its settlement agreement with Plaintiffs does not mean that inconsistent outcomes in Texas and New Jersey with regard to unrelated claims would subject Federal Defendants to "inconsistent obligations." Indeed, Plaintiffs claims against the NJAG largely revolve around the interpretation of New Jersey law, and this Court sees no reason to cabin its analysis to the parties present in the Washington Suit—a lawsuit regarding APA violations by the State Department, not enforcement actions by the NJAG.

Third, judicial economy, the paramount concern in a motion to sever brought along with a motion to transfer, would be best served by severing the NJAG's claims from those against the Federal Defendants. Although Plaintiffs and Federal Defendants contend that the Fifth Circuit has already ruled that this Court has jurisdiction over the NJAG for Plaintiffs' claims challenging New Jersey's newly-enacted criminal statute, this is simply not the case and this Court would undoubtably have to determine whether jurisdiction exists over the NJAG with regard to the newly-added claims. (Dkt. 135, at 3). While Plaintiffs are correct that they referred to § 2C:39-9(l)(2) in their motion for preliminary injunction, they ignore the fact that the Fifth Circuit's opinion did not assess any claims

9

against the NJAG regarding this criminal statute. (Mot. PI, Dkt. 67, at 3). Plaintiffs selectively quote from the Fifth Circuit's opinion to argue that it addressed then un-pleaded claims arising from § 2C:39-9(l)(2), when in reality those passages reveal that the Fifth Circuit relied on Plaintiffs' factual allegation that the NJAG verbally threatened Defense Distributed with criminal sanctions. (Dkt. 100, at 4) ("[P]laintiffs allege these actions by Grewal . . . threatening Defense Distributed with criminal sanctions at a live press conference."). Nowhere does the Fifth Circuit state that its decision applies to any un-pleaded claims regarding § 2C:39-9(l)(2), and the Court reminds Plaintiffs that specific jurisdiction must be established for each claim. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) ("[S]pecific jurisdiction must be established for each claim"). The NJAG's concerns regarding this Court's jurisdiction over him with regard to the § 2C:39-9(l)(2) claims do not reflect an attempt to create "jurisdictional carveouts," as Plaintiffs insist, but rather an accurate understanding of how specific jurisdiction operates. This Court will thus save substantial judicial resources by severing the NJAG from this action and transferring the claims against him to a Court that clearly has personal jurisdiction over the NJAG with regard to the claims stemming from the criminal statute. Severing the NJAG from this action would further preserve judicial resources by allowing a New Jersey court to make determinations regarding the propriety of the NJAG's enforcement actions and the interpretation of § 2C:39-9(l)(2).

The fourth factor likewise weighs in favor of severance because prejudice to Plaintiffs and the Federal Defendants may be avoided by severing the claims against the NJAG and transferring them to a court that clearly has personal jurisdiction over all of Plaintiffs' claims against the NJAG. The Federal Defendants argue that it would suffer prejudice in having to litigate "the claims against it for allegedly failing to carry out activities under the settlement agreement without the presence of" the NJAG. (Dkt. 136, at 13). While Federal Defendants would clearly like to blame NJAG for their failure to abide by their settlement agreement with Plaintiffs, their failure to do so stems from their

10

inability to carry out the settlement agreement in such a way that did not violate the APA, not the NJAG's actions that form the basis of Plaintiffs' claims against him. This factor thus weighs in favor of severance.

Based on the foregoing, the Court finds that the NJAG's motion to sever should be granted.

### B.  Motion to Transfer

The NJAG also moves to transfer the now-severed claims against him to the United States District Court for the District of New Jersey, where Plaintiffs have brought the same causes of action against him. The Court will address the public and private factors relevant to transfer under 28 U.S.C. § 1404(a) below.

1.  Public Interest Factors

To determine whether to transfer Plaintiffs' claims against the NJAG under § 1404(a), this Court must balance four public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The NJAG asserts that transfer is warranted largely because of "New Jersey's strong interest in not having an out-of-state court determine the validity of it laws and the public interest in avoiding conflicting judgments on novel issues of constitutional law." (Dkt. 121, at 12). The Federal Defendants respond that because the NJAG successfully sought a stay of the later-filed New Jersey action brought by Plaintiffs' against him, the public interest factors weigh against transfer. Plaintiffs "agree with and adopt" the Federal Defendants' response, while adding a handful of additional arguments challenging the NJAG's arguments regarding the risk of conflicting rulings and interest in judicial economy. (Dkt. 135, at 2, 4).

The first factor is neutral, as both the District of New Jersey and the Western District of Texas are among the busiest judicial districts in the country. (Dkt. 121, at 14; *see also* Low Decl., Dkt. 121-1). Evaluating the second and third factors together, the Court finds that they weigh in favor of transfer, as New Jersey has a strong interest in having Plaintiffs' claims relating to § 2C:39-9(l)(2), a New Jersey criminal statute, "examined by local state or federal courts—courts that have expertise interpreting its laws." *Def. Distributed v. Grewal*, 971 F.3d 485, 499 n.3 (5th Cir. 2020 Higginson, J., concurring) (quoting *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008)) ("From my review of cases against government officials who attempt to enforce a state law, so for no personal or commercial profit, the litigation has taken place in the governmental official's state."). In addition, New Jersey courts have greater "familiarity with New Jersey's overall statutory framework regulating firearms and the public policies those laws promote" and "have been the primary fora for deciding legal challenges to New Jersey firearms laws." (Dkt. 121, at 13).

The Federal Defendants respond that this Court has previously examined "complex First Amendment issues" and is "the most familiar with the lengthy procedural history and law" of this case. (Dkt. 136, at 17). While this Court has previously evaluated a First Amendment claim regarding printable gun files, Plaintiffs' First Amendment claims make up only two of Plaintiffs' seventeen causes of action in this case. (*See* Dkt. 117). Furthermore, the Federal Defendants have not suggested, and the Court is unaware of any reason to believe that, the District of New Jersey is not well equipped to evaluate "complex First Amendment issues," especially given that is has heard challenges to New Jersey firearms laws for over ten years. (Dkt. 121, at 13). Furthermore, the "lengthy procedural history and law" to which the Federal Defendants refer was dominated by questions of personal jurisdiction, which will be eliminated if the claims against the NJAG are transferred to the District of New Jersey.

The fourth factor—avoiding unnecessary problems of conflict of laws—likewise weighs in favor of transfer. The NJAG argues that transfer to the District of New Jersey averts the potential for "conflicting rules and a possible split" between circuits regarding the interpretation of a New Jersey criminal statute and on constitutional issues. (Dkt. 121, at 14–15). Plaintiffs respond, without support, that the NJAG's arguments on the fourth factor should be disregarded because "they are not matters of venue." (Dkt. 135, at 4). The Court finds this argument curious as the risk of rulings that create conflicts is explicitly part of the venue analysis. *See In re Volkswagen AG*, 371 F.3d at 203 ("The public concerns include . . . the avoidance of unnecessary problems of conflict of laws."). Plaintiffs further argue, again without citing to any authority, that "the Court should disregard the concern for conflicting rulings because preclusion doctrines solve for that completely." (Dkt. 135, at 4). While Plaintiffs contend that "Grewal has no answer to this," the NJAG rightly responds that "preclusion rules would only prevent the parties in this and the New Jersey action from re-litigating these issues, but would not prevent an inter-circuit conflict on the meaning of § 2C:39-9(l)(2) that arises when New Jersey state courts in future actions adopt a meaning of § 2C:39-9(l)(2) in conflict with this Court's interpretation." (Reply, Dkt. 141, at 10). Furthermore, the District of New Jersey's ability to certify questions regarding § 2C:39-9(l)(2) to New Jersey state courts, and thus avoid any conflict in the interpretation of the state statute, weighs in favor of transfer. (Dkt. 141, at 9).

Lastly, Plaintiffs claim that because the NJAG successfully sought a stay of the New Jersey Suit pending the resolution of the instant action, he is estopped from arguing in favor of transfer. (Dkt. 135, at 4–5). The Court is once again perplexed by this argument. While Plaintiffs are correct that "a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory," the NJAG sought a stay because this action was filed first, not on the basis that this Court is the proper venue for the claims against him. (Dkt. 135, at 5) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001)); *Def. Distributed v.*

13

*Att'y Gen. of N.J.*, No. 3:19-cv-4753, Dkt. 20 (D.N.J. Feb. 2, 2019). The NJAG's two arguments are thus entirely compatible, especially given that at that time he sought the stay of the New Jersey Suit, Plaintiffs had not added their § 2C:39-9(l)(2) claims and the NJAG was actively challenging personal jurisdiction in this Court. Plaintiffs unsubstantiated arguments must be rejected. The NJAG's arguments regarding the risk of conflicting rulings are thus not estopped, and the fourth factor weighs in favor of transfer.

Having found that the first public interest factor is neutral and the remaining factors weigh in favor of transfer, the Court next addresses the private factors pertinent to a motion to transfer venue under 1404(a).

2. <u>Private Interest Factors</u>

The private interest factors this Court must evaluate to determine whether to transfer a case under 28 U.S.C. § 1404(a) include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d at 203.

The NJAG argues that the first three factors favor transfer because Plaintiffs' § 2C:39-9(l)(2) claim and Commerce Clause claim "turn on the meaning and intent of New Jersey state laws and on the intent of the NJAG's cease-and-desist letter, and the sources of proof relevant to these issues (including any non-party witnesses) are all in New Jersey." (Dkt. 121, at 15–16). The Federal Defendants respond that the NJAG has failed to meet his burden on the first three factors, as a "generalized reference to out-of-state witnesses does not suffice." (Dkt. 136, at 15). The Federal Defendants cite to *Hammers v. Mayea-Chang*, 2019 WL 6728446, at *7 (E.D. Tex. Dec. 11, 2019) for the proposition that the NJAG must "specify the format, relevance, or identity of particular documents or physical evidence" located in a different district. (Dkt. 136, at 15). The NJAG asserts

14

that the fact that the sources of proof are located in New Jersey "is obvious from the nature of the claims" since they challenge actions by state officials. (Dkt. 141, at 10). While the Court agrees that any documentation relevant to the preparation of the cease-and-desist letter and the enactment of § 2C:39-9(l)(2) are invariably located in New Jersey, because the NJAG did not specifically identify the "type of documents" or "the format of their storage (e.g. electronic or physical)," the Court finds that the first factor is neutral. *Hammers*, WL 6728446, at *8.

In *Hammers*, the court noted that although witnesses are sources of proof in a sense, their availability is properly evaluated under the second factor. *Id.* at *9. There, the court denied transfer where the moving party had made reference to first responder witnesses to the car accident at issue, yet the non-moving party disputed that any of those witnesses lived within the jurisdiction of the transferee court and there was no other evidence before the court that would allow it to "determine what and how important their testimony will be." *Id.* Here, in contrast, there is no such dispute—indeed, the state officials who prepared the cease-and-desist letter and passed § 2C:39-9(l)(2) are "necessarily based in New Jersey" and their testimony is likely necessary in resolving Plaintiffs' claims related to the state criminal statute. (Dkt. 141, at 10).

The Federal Defendants also point out that the NJAG failed to carry his burden on the first three factors by not considering the evidence to be presented by Plaintiffs, or the impact of transfer on Federal Defendants. First, while Plaintiffs may plan to present evidence more conveniently located in Texas, their decision to initiate a lawsuit in New Jersey against the NJAG belies any assertion that they will suffer prejudice in presenting evidence there. Second, the Federal Defendants have not elucidated how their ability to present evidence in support of their claims is hampered by the transfer of claims against the NJAG to New Jersey. Indeed, even if the Federal Defendants plan to blame their failure to fulfill the terms of the settlement agreement on the Washington Suit, information about that lawsuit is publicly available and does not require the presence of the NJAG.

As such, the second factor weighs in favor of transfer. Because neither party has briefed the Court on the cost of attendance for willing witnesses, the third factor is neutral.

With regard to the fourth factor, the NJAG contends that transfer to New Jersey "would obviate the need to adjudicate threshold jurisdictional issues undecided by the Fifth Circuit and thus make this litigation more expeditious and less expensive." (Dkt. 121, at 16). The Federal Defendants respond that transfer would require Plaintiffs to litigate their claims in both Texas and New Jersey. (Dkt. 136, at 16). Yet Plaintiffs are the ones who chose to file multiple lawsuits against the NJAG and, as discussed above, their claims against the Federal Defendants are not so intertwined with those against the NJAG as to warrant the claims being tried together. In addition, as the NJAG points out, Plaintiffs may more immediately seek relief against the NJAG in New Jersey rather than having to engage in further factual discovery and briefing regarding jurisdiction over the NJAG for Plaintiffs' § 2C:39-9(l)(2) claims in this Court. Accordingly, the fourth factor weighs in favor of transfer.

Based on the foregoing, the Court finds that because all the relevant factors are neutral or weigh in favor of transfer, the NJAG's motion to transfer the claims against him to the United States District Court for the District of New Jersey should be granted.

## IV.  CONCLUSION

For the reasons given above, **IT IS ORDERED** that NJAG's Motion to Sever and Transfer Venue, (Dkt. 121), is **GRANTED**.

**IT IS ORDERED** that Plaintiffs' claims against the NJAG are **SEVERED** and shall be **TRANSFERRED** the United States District Court for the District of New Jersey.

**IT IS FINALLY ORDERED** that the NJAG's Unopposed Motion for Oral Argument, (Dkt. 144), is **MOOT**.

**SIGNED** on April 19, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE